UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 05-cv-40035 (FDS) |
| v. | ) |
| | ) |
| PFERD, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF SAINT-GOBAIN'S MOTION TO PRECLUDE
SUPPLEMENTATION OF PFERD'S INVALIDITY OR WILLFULNESS DEFENSES**

This is a motion by plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") to preclude

Pferd from relying on an invalidity defense or a defense to Saint-Gobain's allegation of

willfulness and arguments not identified during the discovery period. Defendant Pferd bears the

burden of proving that the claims of the Saint-Gobain patent-in-suit, U.S. Patent No. 5,895,317

(the "'317 patent"), are invalid and that its infringement was not willful. As the liability

discovery period comes to a close today, Pferd has not proffered sufficient evidence to meet its

burden, or even to explain its defenses. Apparently, Pferd is of the view that it can avoid

explaining its defenses in interrogatory answers and also keep its corporate representatives

ignorant of its defenses, as a vehicle to keep Saint-Gobain in the dark about the defenses and

how to respond to them.

Saint-Gobain requests that Pferd be prohibited from relying on any of the references

listed in Pferd's Second Revised Preliminary Invalidity Contentions at trial and from relying on

any new reference raised for the first time after the close of the liability discovery period on

January 26, 2006.  A copy of Pferd's Second Revised Preliminary Invalidity Contentions, as provided to Saint-Gobain via electronic mail today, is attached as Exhibit A.

Saint-Gobain also requests that Pferd be prohibited from relying on any opinion of counsel in support of its defense of willful infringement, as the willfulness discovery period was open, no such opinion was produced during the discovery period, and use of an opinion has therefore been waived.

## INTRODUCTION

Pferd's burden of proving that the claims of the '317 patent are invalid is a heavy one, as United States patents carry a presumption of validity and can be proved invalid only by clear and convincing evidence—a standard "reserved to protect particularly important interests" in civil cases, including, for example, individual liberty in civil commitment cases.  See Price v. Symsek, 988 F.2d 1187, 1191 (Fed. Cir. 1993).

To date, however, Pferd has failed to make any showing—in its interrogatory answers, in the deposition testimony of its designee on the issue of validity (or of its other corporate representative for that matter), or in its preliminary, revised preliminary, or second revised preliminary invalidity contentions—that any prior art renders any Saint-Gobain patent claim invalid as anticipated or obvious, or that the claims are not enabled, or any other theory of invalidity.  While Saint-Gobain could move for summary judgment, these defenses should not make it that far.  Pferd has not articulated a prima facie case, and should not be permitted to do so for the first time after fact discovery closes.

The Saint-Gobain patent asserted in this case is directed to a wheel hub for an abrasive grinding wheel.  Pferd's attempt to rely on general, unsupported, and conclusory assertions that all of the asserted claims of the Saint-Gobain patent are "anticipated," "obvious," or that the

descriptions are "vague and indefinite" is insufficient to constitute clear and convincing evidence of invalidity or even to explain a <u>prima facie</u> case of invalidity.  They are certainly insufficient to permit Saint-Gobain to make decisions about the fact discovery it would like to take concerning those defenses.

Saint-Gobain is entitled to know <u>all</u> of Pferd's invalidity arguments during the discovery period, so that it can make decisions about whether and how much discovery to take on them. Pferd has deprived Saint-Gobain of that fundamental opportunity.  When fact discovery has closed (or even where it's extended to bring closure to open discovery issues), new prior art references and new invalidity defenses may be stricken.  <u>See</u> <u>Praxair, Inc. v. ATMI, Inc</u>., 231 F.R.D. 457 (D. Del. 2003) (granting plaintiff's motion to strike defendants' invalidity defenses based on prior art references disclosed after the extension of the discovery period, including the references themselves and the expert report relying on them, even where the defendants had argued that plaintiffs were previously aware of the references).

Similarly, Saint-Gobain is entitled to know the contents of an opinion of counsel, and the subject matter surrounding that opinion, if Pferd intends to rely on that opinion in defense of an allegation of willfulness, so that Saint-Gobain can make decisions about whether and how much discovery to take on the opinion and surrounding subject matter.  When willfulness discovery has closed, reliance on an opinion of counsel has been waived.

### LEGAL BACKGROUND

In its affirmative defenses to the Complaint, its Counterclaims, and in its Second Revised Preliminary Invalidity Contentions, Pferd states that the claims of the patent-in-suit are invalid under 35 U.S.C. §§ 102, 103, and 112.  Pferd has not identified sufficient evidence or contentions to meet the legal standards required to support such allegations, as described below.

It is well within this Court's discretion to exclude evidence of invalidity, and this Court should do so in this case.  See ATD Corp. v. Lydall, Inc., 159 F.3d 534, 550-51 (Fed. Cir. 1998); Recycling Scis. Int'l, Inc. v. Gencor Indus., Inc., No. 95-4422, 1999 U.S. Dist. LEXIS 3927, at *41 (N.D. Ill. 1999).

Pferd has an on-going duty to supplement its discovery answers.  Their failure to do so on a timely basis is further grounds for precluding supplementation of the defenses of invalidity or willfulness.  As the close of discovery is today, and no facts have been presented that meet the clear and convincing standard of proof required, further supplementation of their defense of invalidity should be precluded. Similarly, reliance on an opinion of counsel that has not been produced during the willfulness discovery period should be prohibited.

## I.    PFERD'S PRIOR ART ARGUMENTS

Pferd's invalidity arguments consist of (1) unsupported arguments for seven references, and (2) identifying large numbers of patents and other references and summarily claiming that each and every one invalidates all of the asserted claims of the Saint-Gobain patent.  The prior art references summarized and discussed below are from Pferd's Second Revised Preliminary Invalidity Contentions of January 26, 2006, which are attached as Exhibit A.

### A.  Pferd's "Primary Prior Art" References

Pferd lists three United States Patents amongst its seven "primary prior art" references, including U.S. Patent Nos. 5,538,464 (the "'464 patent"); 4,240,230 (the "'230 patent"); and 3,136,100 (the "'100 patent"), but then never actually articulates a prima facie invalidity defense based on any of them.

For the first reference (the '464 patent), Pferd baldly asserts that "[a]ll claims of the '317 patent are anticipated" by the '464 patent. A naked assertion such as this cannot support an anticipation defense.

"Anticipation under 35 U.S.C. § 102 requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention." Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000); see Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil, 308 F.3d 1167 (Fed. Cir. 2002) (granting JMOL to patent holder where infringer failed to prove by clear and convincing evidence that every limitation was contained in a single prior art reference). What is more, factual evidence explaining how each limitation is met must be provided. A conclusory statement that a limitation is not met does not create a fact issue. See Motorola, Inc. v. Interdigital Technology Corp., 121 F.3d 1461, 1473 (Fed. Cir. 1997) (explaining that "conclusory testimony" is insufficient).

Here, Pferd has offered not an iota of evidence, or even explanation, during the discovery period to make a prima facie case. This failure is not for lack of Saint-Gobain asking for it. It requested them in interrogatories, during the 30(b)(6) depositions of Pferd, in written correspondence, and during a teleconference today.

In its First Set of Interrogatories, Saint-Gobain requested that Pferd state the basis for its affirmative defenses that the patent-in-suit is invalid. See Interrogatories Nos. 9 and 10 of Saint-Gobain's First Set of Interrogatories, attached as Exhibit B. The answer included a laundry list of 70 or so references, without an iota of explanation as to the bearing any of them had on any issue in the case.

Saint-Gobain then asked during the first 30(b)(6) deposition of Pferd that Pferd produce a witness knowledgeable on the scope and content of the prior art, as noticed in the 30(b)(6)

deposition topics.  During the second 30(b)(6) deposition, when it became apparent that the second witness had not been prepared on the scope and content of the prior art, Saint-Gobain again objected.[1]

In follow-up correspondence to the second deposition, Saint-Gobain requested that a knowledgeable witness be produced or that the invalidity contentions be withdrawn.  See January 10, 2006 Letter from E. Berger to L. Carroll, attached as Exhibit C.  Finally, in response to receiving Pferd's revised preliminary contentions, which did nothing but add an additional reference to its list, Saint-Gobain noted that they "inadequately describe why the (non-patent) 'Primary Prior Art' references listed in paragraph A are, in fact, prior art" and queried "what evidence Pferd intends to offer to meet its burden to prove that it is prior art."  See January 20, 2006 Letter from E. Berger to L. Carroll, attached as Exhibit D.

Of course, Pferd's failure to actually articulate any theory of an anticipation defense based on this reference may very well be explained by Pferd's inability to do so.  The '464 patent cited as a primary reference was actually <u>cited to the United States Patent Office</u> during the prosecution of the application that issued as the patent-in-suit.  The Patent Office necessarily determined that the claims of the '317 patent are patentable over this reference (and the Patent Office was right).  Pferd should not be permitted to argue that the '464 patent renders invalid any claim of Saint-Gobain's '317 patent when the Patent Office has necessarily considered and rejected this theory <u>and Pferd is unwilling to explain its defense or offer evidence to support it,</u> <u>during the fact discovery period in this case</u>.

---

[1] Pferd has currently designated the entirety of the deposition transcript as confidential. Should it contest the conclusions stated herein regarding the testimony and objections, Saint-Gobain may file the transcript, or portions thereof, under seal to support the conclusions.

What explanations Pferd has provided appear to concede that Pferd can articulate no anticipation defense.  Pferd provides no support as to why the '464 patent would be an anticipatory reference and when producing claim charts does not include this reference in connection with each element of the asserted claims in its claim charts.

That is, Pferd implicitly concedes that the '464 patent is not an anticipatory reference because Pferd provided a claim chart that admits (by omission) that not every element of each asserted claim is present in the '464 patent.  For example, on pages 10 and 11 of its Second Revised Preliminary Invalidity Contentions, Pferd references the '464 patent only with regard to the preamble and the final clause of the claim, but does not cite it with respect to the five other elements set forth from the claim.  Thus, according to Pferd's own analysis, the '464 patent does not appear to have "an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture," "a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel," "a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face," or one "wherein said backing flange has a substantially concave surface adapted to face the backing face."   As such, the '464 patent cannot be an anticipatory reference for at least claim 1.  Since Pferd similarly fails to mention the '464 reference at all with respect to most of the remaining claims and at least to similarly fail to support the entirety of the claim as it did with claim 1, the '464 patent cannot be an anticipatory reference for the remaining asserted claims.

At deposition, Pferd's own 30(b)(6) witnesses could not say otherwise.  See FN 1.

Pferd does not assert at all (or at least has not yet articulated) that the Saint-Gobain patent-in-suit is anticipated by either of the other two "Primary Prior Art" references, the '230

7

patent and the '100 patent that it cites, but it does nakedly assert that the claims of the '317 patent "are obvious over either the ['464 patent] in view of the ['230 patent] and/or the ['100 patent]."

Yet, Pferd utterly fails to support an obviousness defense with either a proffer of evidence or even an explanation. Pferd must establish and also demonstrate that by claim charts (or any other way) how these patents would be combined to render the claims of the patent-in-suit obvious, or the requisite motivation in the prior art to make the combination. Pferd does not even express any argument as to why these references, when combined, teach the claimed invention.

Of course, all of these things are necessary for an obviousness defense. For example, an attorney opinion on obviousness is not even competent without claim charts. A statement that references render a claim obvious is <u>not a prima facie</u> articulation of a defense.

What is more, like the '464 patent, the '230 patent and the '100 patent were <u>also cited to the United States Patent Office</u> during prosecution of the patent-in-suit. Again, there is a statutory presumption (35 U.S.C. § 282) that the patent is valid, the patent examiner specifically reviewed the patents that Pferd points to for its obviousness allegation, and Pferd provides no acknowledgement of this principle or any basis as to why the presumption of validity should be overcome on the basis of these three U.S. patents.

Pferd then lists an "ANSI Type 27 Grinding Wheel Standard" catalog as a "primary prior art" reference. Again, there is little to no support why this reference is listed as one that anticipates the claims of the patent-in-suit. Pferd simply states that it "describe[s], or show[s], a mini-hub for use with Type 27 grinding wheels."

There is no explanation as to where in the ANSI reference there is an anticipatory disclosure, and there are no details as to how each element of the claims of the patent-in-suit is met by this reference. Like the '464 patent, it is not listed with respect to most of the elements of most of the claims on the claim charts that Pferd provides. Furthermore, Pferd does not appear to assert that this reference is one that renders the claims obvious, as it does not list the reference under the "obviousness" category in its contentions. See Exhibit A, at 3.

Pferd also cites the "Dualock Catalog" as an invalidating reference under both §§102 and 103. It states that the reference "shows a mini-hub, with all the features claimed in the '317 patent and discloses a method for assembling the hub to a grinding wheel that anticipates the method claims of the '317 patent." Pferd has not demonstrated this in its claim charts or anywhere else.

In fact, Pferd's 30(b)(6) witnesses stated quite the opposite. Its first 30(b)(6) witness could not even understand what was shown in the Dualock Catalog, much less describe why or how it would show all of the features of the claimed invention. Pferd's second 30(b)(6) witness described the Dualock Catalog Hub as one that was not mounted in the same manner as described by the patent-in-suit. (Deposition of Leblanc, at p. 45). See FN 1. Claim 1 of the patent-in-suit, for example, requires a "cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel." Pferd has not presented any evidence, much less clear and convincing evidence, that the Dualock Catalog discloses each element of the claims of the patent-in-suit. In fact, as noted above, it has presented evidence to the contrary.

Moreover, Pferd does not present any evidence that the Dualock Catalog or the Hub listed therein was "known," "used," or "described in a publication" prior to the date of filing of

the patent-in-suit.  See 3M v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002).  The catalog has no date, and there is no person with knowledge at Pferd who can verify the date of the publication.  Pferd inserted a loose price list with "3/95" at the bottom of it into the originally bound catalog, but there is no indication that this price list corresponds to the Dualock Catalog or otherwise verifies the date that the information disclosed in the catalog was known to the public.

Once again, Pferd has not offered sufficient evidence during the discovery period to support a claim that the Dualock Catalog is prior art and Saint-Gobain has been unfairly put in a position of not knowing whether to take discovery on this contention.

Pferd states that the '317 patent is obvious over either the Dualock Catalog reference or the Shakespeare reference described below, but again provides no evidence as to how or what reference the Dualock Catalog should be combined with, any other reference, or why.  There is thus no offer of clear and convincing evidence of the Dualock Catalog as an invalidating reference.

Pferd next presents a Norton Drawing (Norton isSaint-Gobain's predecessor company) as one that "shows the invention of the '317 patent was ready for patenting prior to the critical date of the application."

That is hardly an invalidity defense and Pferd either does not understand the law or has articulated its theory so poorly that it is incomprehensible.  So long as the Norton Drawing was not disclosed to the public prior to the critical date, even if it were to disclose every element of every claim in its four corners, it cannot be an anticipatory reference.  Pferd has presented no evidence, much less clear and convincing evidence that the Norton Drawing was disclosed to the public prior to the critical date of the application resulting in the '317 patent.

Pferd's final "primary prior art" reference is the Shakespeare LZ Hub drawing. This drawing again does not depict an anticipatory reference as evidenced, not least, by Pferd's 30(b)(6) witness noting that the LZ Hub is not even of the type of hub covered by the patent-in-suit but rather one that contacts the outer portion of the grinding wheel.

Pferd hardly focused on validity at the scheduling conference. That lack of focus may have continued through the discovery period; Pferd certainly has not developed any coherent theory that the patent is invalid based on the alleged prior art it cites (most of which the Patent Office knew about when it granted the patent).

Whatever the motive, Pferd has steadfastly refused to articulate a coherent (or prima facie) theory that any Saint-Gobain claim is invalid based on prior art. Apparently, Pferd believes that it can keep its witnesses uneducated about its factual contentions, and blast an unexplained 70-reference interrogatory answer, as a vehicle to keep Saint-Gobain unaware of Pferd's actual contentions and, therefore, in no position to take discovery on them.

As a result, Saint-Gobain has not been in a position to take fact discovery on whatever unarticulated theories or contentions Pferd may have. Pferd may be seeking to hide its theories until after the close of discovery and perhaps to unveil them in expert reports. This would, of course, be inappropriate. Saint-Gobain is entitled to an articulation of Pferd's defenses in sufficient detail to permit Saint-Gobain to prepare a response during the fact discovery period. Since Pferd has refused to do so, Pferd should be barred from supplementing its responses or answers, after the discovery period has closed.

There are 70 other pieces of prior art (58 patents and 12 other references) that were not granted the privilege of being "primary" prior art and are therefore included in Pferd's Second Revised Preliminary Invalidity Contentions for no reason at all that has been disclosed to Saint-

Gobain.  When Saint-Gobain noticed a 30(b)(6) deposition and included a topic covering the "scope and content of the prior art," Pferd designated Mr. Gene Huegin to testify on that topic. Mr. Huegin had no understanding of the prior art.  <u>See</u> FN 1.  Saint-Gobain also questioned Pferd's second 30(b)(6) witness Mark LeBlanc, and he had no knowledge or understanding of the 70 references.  <u>See</u> FN 1.  When Saint-Gobain requested multiple times (during depositions and in subsequent correspondence) that Pferd tender a knowledgeable witness or withdraw its reliance on these 70 references, it stated that it would not and provided no basis for its continued reservation of the right to rely on these references.  With respect to these 70 references, Pferd's laundry list of allegedly invalidating prior art is evasive and misleading.  Under these circumstances, Pferd's reliance on them should be precluded.  <u>See</u>, <u>e.g.</u>, <u>Texas Instruments, Inc.</u> <u>v. Hyundai Elecs. Indus. Co</u>., No. 98-74, 1999 U.S. Dist. LEXIS 21523, at *13 (E.D. Tex. 1999).

**B.  Pferd's Vague Enablement Argument**

Pferd states that the claims of the patent-in-suit are "vague and indefinite and the specification does not set forth the alleged invention so as to enable one skilled in the art to make and use the invention without undue experimentation" and that the "written description does not disclose that the inventors were in possession of the claimed invention, the specification as originally filed fails to support the claim, and the specification fails to disclose the best mode of practicing the invention."  That is it.  That is all Pferd has to say about why it asserts that the patent is invalid under § 112.

Section 112 demands simply that the claims, when read in light of the specification, "reasonably apprise those skilled in the art of the scope of the invention."  <u>S3 Inc. v. nVIDIA</u> <u>Corp.</u>, 259 F.3d 1364, 1367 (Fed. Cir. 2001).  Paragraph 1 of § 112 of the Patent Act requires that a patent specification "enable any person skilled in the art to which [the invention] pertains .

. . to make and use the same." 35 U.S.C. § 112, ¶ 1. The presumption of validity also applies to

a challenge under § 112 and, thus, an infringer seeking to invalidate a patent for lack of

enablement must do so by clear and convincing evidence. See Union Carbide, 308 F.3d 1167,

1186 (Fed. Cir. 2002). The determination of whether the claims are properly enabled is a

conclusion of law based on underlying facts. See Crown Operations, 289 F.3d at 1378-79.

A patent "need not disclose what is well known in the art." In re Wands, 858 F.2d 731,

735 (Fed. Cir. 1988). Thus, the statute

> permits resort to material outside of the specification in order to satisfy the
> enablement portion . . . because it makes no sense to encumber the specification
> of a patent with all the knowledge of the past concerning how to make and use the
> claimed invention. One skilled in the art knows how to make and use a bolt, a
> wheel, a gear, a transistor, or a known chemical starting material. The
> specification would be of enormous and unnecessary length if one had to literally
> reinvent and describe the wheel.

Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1382 (Fed. Cir. 1999)

(emphasis added); see also Adang v. Fishhoff, 286 F.3d 1346, 1358 (Fed. Cir. 2002) ("It is well

settled that omission of minor details does not cause a specification to fail to meet the

enablement requirement.").

Beyond making conclusory statements that the claims are not supported, Pferd states no

basis for why it believes that the patent does not enable one of skill in the art to make and use the

grinding wheel hub. The presumption of validity also applies to a challenge under § 112 and,

thus, an infringer seeking to invalidate a patent for lack of enablement must do so by clear and

convincing evidence. See Union Carbide, 308 F.3d 1167, 1186 (Fed. Cir. 2002).

Once again, the United States Patent Office determined that the '317 patent was definite,

enabling, and met the written description requirement. At the close of discovery, Pferd still has

presented no evidence, much less clear and convincing evidence, that this conclusion was wrong or that Pferd can raise any prima facie challenge under § 112.

To leave Saint-Gobain in the dark through the close of discovery, as to the theory of this defense, is inexcusable and certainly does not put Saint-Gobain in a position to take discovery or prepare a response to whatever argument Pferd might later assert. Discovery is closed and Pferd should be barred from later supplementing its discovery answers in a way that actually does articulate a defense. Rather, the defense should be prohibited.

### C. Pferd's Opinion of Counsel

At the scheduling conference, counsel for Sain-Gobain raised the issue of willfulness and noted that it is often interwoven with the issue of liability. In response, Pferd's counsel responded that "as of this point, we're not relying on opinion of counsel on the willfulness issue." See excerpt from August 2005 Scheduling Conference Transcript, attached as Exhibit E. The Court responded that "[b]ased on that representation, …there is probably not an issue." See id.

Saint-Gobain then noticed a 30(b)(6) deposition of Pferd that included a request for a witness on "[a]ny studies, investigations, determinations, opinions, or other documents, including without limitation documents generated in connection with this or any prior suit or threat of suit, concerning the scope or interpretation, patentability or unpatentability, validity or invalidity, enforceability or unenforceability, or infringement or non-infringement of any claim of the Asserted Patent." See Topic 25 of Schedule A to Saint-Gobain's 30(b)(6) Notice of Deposition of Pferd, attached as Exhibit F. Pferd offered a witness on Topic 25. See Electronic Mail from L. Carroll to E. Berger, attached as Exhibit G. That witness suggested that an opinion of counsel relating to the patent-in-suit may exist. To date, no such opinion has been produced,

and Pferd should hence be prohibited from relying on one produced after the close of discovery today.

## CONCLUSION

Saint-Gobain requests that Pferd's defense of invalidity be stricken. The fact discovery period in this case has closed and Pferd has not articulated a prima facie theory of invalidity – despite repeated requests. To permit Pferd to identify its contentions only after the close of discovery would allow Pferd to prevent Saint-Gobain from preparing a defense to those arguments. Since discovery has closed and Pferd has repeatedly refused to explain its contentions, it should be barred from supplementing them after the close of fact discovery and the defenses should be stricken.

SAINT-GOBAIN ABRASIVES, INC.,

By its attorneys,

January 26, 2006                    /s/ Emily A. Berger
                                    Matthew B. Lowrie (BBO # 563414)
                                    Aaron W. Moore (BBO # 638076)
                                    Emily A. Berger (BBO # 650841)
                                    LOWRIE, LANDO & ANASTASI, LLP
                                    Riverfront Office Park
                                    One Main Street - 11th Floor
                                    Cambridge, MA 02142
                                    Tel: 617-395-7000
                                    Fax: 617-395-7070

15

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing [Doc Name] was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants this 26th day of January, 2006.

Laura L. Carroll, Esq.
lcarroll@burnslev.com
Merton E. Thompson, Esq.
mthompson@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02210

Dated:                              /s/ Emily A. Berger

16

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 05-40035 FDS |
| | ) | |
| PFERD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PFERD, INC.'S SECOND REVISED PRELIMINARY INVALIDITY CONTENTIONS

### INTRODUCTION

Defendant Pferd, Inc. ("Pferd"), hereby submits these Second Revised Preliminary Invalidity Contentions, without prejudice, and reserves its ability to supplement, amend and/or modify these contentions as circumstances warrant. These contentions relate to what plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain"), has stated are the claims it is likely to assert, claims 1-11 and 13-24 of the patent-in-suit, U.S. Patent No. 5,895,317 ("the '317 patent").

These Invalidity Contentions constitute Pferd's good faith attempt to respond without the benefit of Saint-Gobain's claim construction. Pferd therefore reserves the right to modify, supplement, and/or amend these Preliminary Invalidity Contentions.

The references presently deemed to be the most relevant for the '317 patent are listed below. In addition, a listing of the cited prior art of record for each patent, and other relevant prior art references, on which Pferd reserves the right to rely, is attached as Exhibit A.

J:\Docs\25266\00008\00986152.DOC

## CONTENTIONS

**A.    Primary Prior Art References**

1.    U.S. Patent No. 5,538,464 ("MacKay patent" or "the '464 patent")

2.    ANSI Type 27 Grinding Wheel Standard (Bates No. PF 1233-1364)

3.    Dualock Catalog (Bates No. PF 1365-1369)

4.    Norton Drawing No. (Bates No. SG00451)

5.    U.S. Patent No. 4,240,230 ("Ferrantini patent" or "the '230 patent")

6.    U.S. Patent No. 3,136,100 ("Robertson patent" or "the '100 patent")

7.    Shakespeare LZ Hub drawing and LZ hub(Bates Nos . PF 0127 and PF 1621)

**B.    Anticipation (35 U.S.C. § 102)**

All claims of the '317 patent are anticipated by one of more of Primary Prior Art References 1, 2, 3, 4 and 7.  Reference 3 shows a mini-hub, with all the features claimed in the '317 patent and discloses a method for assembling the hub to a grinding wheel that anticipates the method claims of the '317 patent.  Reference 4 shows that the invention of the '317 patent was ready for patenting prior to the critical date of the application.  Moreover, witness testimony from Saint-Gobain raises a serious question as to whether Reference 4 was on sale prior to the critical date of the '317 patent.  References 2, 3 and 7 describe, or show, a mini-hub for use with Type 27 grinding wheels.  Reference 7 show a prior art mini-hub with all the features claimed in the '317 patent and discloses by inference a method for assembling the hub to a grinding wheel

that anticipates the method claims of the '317 patent. Charts illustrating where each claim element of Claim 1 of the '317 patent can be found in Reference 7 are attached hereto as Exhibit C.

By way of corroboration as to the prior art status of the Primary Prior Art References we note that References 1,2,5 and 6 are dated official documents that speak for themselves. With respect to Reference 3, a dated document, witness testimony from Pferd and Saint-Gobain corroborate its status as prior art, as do documents Bates numbered. PF 1475-1620. With further respect to Reference 3, witness testimony from Saint-Gobain confirmed its prior art status and that Saint-Gobain itself had purchased versions of Reference 3 prior to the critical date of the '317 patent. .Further corroboration of the prior art status of Reference 3 may be provided through testimony of previously identified witnesses. With respect to Reference 4, a dated document, witness testimony from Saint-Gobain confirmed its date and status. With respect to Reference 7, a dated document (in part), witness testimony from Pferd and Saint-Gobain corroborated its status as prior art, as does Defendant's Exhibit No. 11 from the Rule 30(b)(6) Deposition of Saint-Gobain and Bates No. PF 1474.

**C.    Obviousness (35 U.S.C. § 103)**

All claims of the '317 patent are obvious over either the Mackay patent in view of the Ferrantini patent and/or the Robertson patent. A person of ordinary skill in the art would have had a motivation to adapt or combine these references because the combination is suggested by

the nature of the problem to be solved, and the references themselves suggest the combination in that all the references are directed to grinding wheel art. Pferd characterizes the person of ordinary skill in the art as an engineer or technologist with working knowledge of the design, use and characteristics of hubbed Type 27 grinding wheels, the ANSI B7.1 Standard (Reference 2) and general mechanical part design expertise.

All claims of the '317 patent are also obvious over either Reference 3 and/or 7. A person of ordinary skill in the art would have known to make the minor modification in diameter that distinguishes the preferred embodiment of the '317 patent from Reference 7, as that reference is directed to the relevant grinding wheel art, namely, small diameter Type 27 grinding wheels as it was also well known in the art (see Reference 2) that hubs or flanges for small diameter Type 27 grinding wheels could be of reduced diameter compared to larger size wheels. A person of ordinary skill in the art would have known to make a change in the hub material and fastening style of Reference 3 that distinguishes it from the preferred embodiment of the '317 patent from Reference 3, as that reference is directed to the relevant grinding wheel art, namely, small diameter Type 27 grinding wheels and the alternative materials and fastening style were also well known in the art.

Charts illustrating where each element can be found in each cited reference and additional obviousness notations are attached hereto as Exhibit B.

## D.    Invalidity Under 35 U.S.C. §§ 112(1) and 112(2)

The asserted claims are invalid under these sections in that the claims are vague and indefinite and the specification does not set forth the alleged invention so as to enable one skilled in the art to make and use the invention without undue experimentation. The claims are also

invalid under these sections because the written description does not disclose that the inventors were in possession of the claimed invention, the specification as originally filed fails to support the claim, and the specification fails to disclose the best mode of practicing the invention.

## E.    Inequitable Conduct

The '317 patent is invalid and/or unenforceable due to inequitable conduct on the part of Saint-Gobain, as it failed to disclose prior art including Reference 3, which on information and belief, was known to John Marone of Norton Corporation. Moreover, Saint-Gobain admitted to having purchased versions of Reference 3 prior to the critical date of the '317 patent. Saint-Gobain also failed to disclose Reference 2, which it admits was in the possession of Norton Corporation. Furthermore, Saint-Gobain failed to disclose Reference 4, which it admits was in the possession of Norton Corporation and on-sale prior to the date of application. Furthermore, Saint-Gobain failed to disclose Reference 7, which it admits is material and was in Norton/Saint-Gobain's possession.

**PFERD, INC.,**

By its attorneys,

Date:  January 26, 2006

_/s/_   Merton E. Thompson
Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel.  617-345-3000
Fax  617-345-3299

# EXHIBIT A

U.S. Patent No. 5,538,464

U.S. Patent Documents

489149
566883
791159
791791
872932
1162970
1724742
1998919
2278301
2567782
3041797
3081584
3136100
3210892
3500592
3566547
3596415
3621621
3800483
3879178
3912411
3960516
4015371
4026074
4054425
4088729
4240230
4322920
4439953
4449329
4541205
4601661
4637170
4694615
4754577
4760670
4878316
4924634

4934107
4979336
5031361
5072223


Foreign Patent Documents

2172823 GB


## U.S. Patent No. 4,240,230


U.S. Patent Documents

3136100
3210892
3500592
3800483
4015371
4138804


## U.S. Patent No. 3,136,100


U.S. Patent Documents

2810239
2823496
3040485
3041797


## Additional Prior Art References


PF 0072-75     US Patent No. 3,081,584 (Bullard)
PF 0081-85     US Patent No. 4,015,371 (Grayston)
PF 0090-94     US Patent No. 4,774,788 (Shacham)
PF 0095-106    US Patent No. 5,494,368 (Matthews)
PF 0107-114    US Patent No. 5,718,621 (Turley)

Other References

<u>Bates No.</u>

| | |
|---|---|
| PF 0121-126 | Shakespeare – Fig. 1 and Fig. 3, from website |
| PF 0127 | Shakespeare shop drawing 5/3/94 |
| PF 0128 | Shakespeare production record 5/14/90 |
| PF 0129 | Ridco shop drawing 11/27/72-4/2/73 |
| PF 0130-135 | Ridco shop drawings 1/7/86 |
| PF 0136-137 | Ridco invoice to Bullard, 11/29/85 |
| PF 0138 | Pferd drawing (from Ridco) |
| PF 0139 | Shakespeare drawing (from Ridco) |
| PF 0140-141 | Norton drawing (from Ridco), 8/3/78 |
| PF 0142-143 | Ridco letter to Norton with drawing, 2/5/85 |
| PF 0144 | Ridco letter, with shipment, to Norton |
| PF 0145-148 | Donahue Industries, with pictures of flanges/hubs. |

**EXHIBIT B**

| CLAIMS | INVALIDITY CONTENTIONS |
|---|---|
| 1. A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; | It was well known in the art to have a grinding wheel with a depressed center (See Primary Prior Art References 1, 2, and 3)<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| said grinding wheel hub comprising: an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | The '230 patent discloses a grinding wheel hub comprising an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | The '230 patent discloses a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | The '230 patent discloses a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 |

| | discletes all limitations herein. |
|---|---|
| an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel; | The '230 patent discloses an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| wherein said backing flange has a substantially concave surface adapted to face the backing face; | The '230 patent discloses the feature wherein said backing flange has a substantially concave surface adapted to face the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| and said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel. | Primary Prior Art Reference 3 discloses all limitations herein.<br><br>One of skill in the art would have known to use the disclosure of the '464 patent in combination with the teaching of the '230 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 2.  The grinding wheel hub as set forth in claim 1, wherein: | |
| the backing flange has a bond surface adapted to face the backing face; | The '100 patent discloses the feature wherein the backing flange has a bond surface adapted to face the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 |

| | discloses all limitations herein. |
|---|---|
| and said bond surface is sized and shaped to provide a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 3. The grinding wheel hub as set forth in Claim 1, wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. | The '230 patent discloses a grinding wheel hub wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 4. The grinding wheel hub as set forth in Claim 1, further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface. | The '230 patent discloses a grinding wheel hub further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 5. The grinding wheel hub as set forth in Claim 4, wherein said backing flange and said peripheral lip define said substantially concave surface. | The '230 patent discloses a grinding wheel hub wherein said backing flange and said peripheral lip define said substantially concave surface.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

| | |
|---|---|
| 6. The grinding wheel hub as set forth in Claim 5, wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel. | The '230 patent discloses a grinding wheel hub wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 7. The grinding wheel hub as set forth in Claim 2, wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel. | The '100 patent discloses the feature wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel.<br><br>Primary Prior Art Reference 3 discloses all limitations herein.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 8. The grinding wheel hub as set forth in Claim 2, wherein said flange further comprises a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive. | The '230 patent describes a flange having a plurality of surface irregularities. The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 9. The grinding wheel hub as set forth in Claim 8 wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | The '230 patent describes a flange having a plurality of surface irregularities. The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in |

| | combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
|---|---|
| 10. The grinding wheel hub as set forth in Claim 1, wherein said annular engagement surface is adapted for surface to surface engagement with the backing face. | The '230 patent describes an annular engagement surface, which is adapted for surface to surface engagement with the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 11. The grinding wheel hub as set forth in Claim 10, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel hub, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. |
| 13. The grinding wheel hub as set forth in claim 12, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel hub, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. |
| 14. the grinding wheel hub as set forth in Claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel hub, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. |
| 15. The grinding wheel hub of Claim 7, wherein the adhesive is an epoxy resin. | The '100 patent describes a grinding wheel hub wherein the adhesive is an epoxy resin. Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

| | |
|---|---|
| 16. A grinding wheel assembly adapted for being mounted on a grinding apparatus, comprising; | It was well known in the art to have a grinding wheel assembly adapted for being mounted on a grinding apparatus (see Primary Prior Art References 1, 2, and 3). |
| | Moreover, both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel assembly adapted for being mounted on a grinding apparatus. |
| an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel; | The '230 patent discloses an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel. |
| | Moreover, Primary Prior Art Reference 3 discloses all limitations herein. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| the grinding wheel hub of Claim 1; | See above. |
| and a bonding agent between the backing face and the wheel hub. | The '100 patent discloses a bonding agent between the backing face and the wheel hub. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 17. A method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said method comprising: | It was well known in the art to have a method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel (see Primary Prior Art References 1, 2, and 3). |
| | Moreover, Primary Prior Art Reference 3 discloses all limitations herein. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension | The '230 patent discloses a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial |

| | |
|---|---|
| through and engagement with the surface of the mounting aperture; | extension through and engagement with the surface of the mounting aperture.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| inserting the aperture bushing through and in engagement with the surface of the mounting aperture; | The '230 patent discloses inserting the aperture bushing through and in engagement with the surface of the mounting aperture.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel; | The '230 patent discloses fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel; | The '100 patent discloses applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| disposing the backing flange on the aperture bushing to engage the annular engagement surface with the backing face of the wheel, the annual engagement surface being adapted to | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, disposing the backing flange on the aperture bushing to engage the annular engagement |

| | |
|---|---|
| engage the backing face of the wheel proximate a periphery of the depressed center of the wheel; | surface with the backing face of the wheel, the annual engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel. |
| wherein the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel. | One of skill in the art would have known to use the disclosure of the '100 patent in combination with the teaching of the '464 patent and Primary Prior Art Reference 3, since all patents/references relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 18.  The method as set forth in claim 17, wherein said step of providing the backing flange with a concave surface further comprises the steps of providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface. | One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '464 patent and Primary Prior Art Reference 3, since all patents/references relate to the grinding wheel art.<br><br>Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 19.  The method as set forth in claim 17, wherein the bonding agent comprises an epoxy resin. | The '100 patent discloses a bonding agent between the backing face and the wheel hub.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 20.  The method as set forth in claim 17, further comprising the step of providing the concave surface with a plurality of surface irregularities adapted to provide a textured surface area for engagement with the bonding agent. | The '230 patent describes a concave flange having a plurality of surface irregularities.  The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

| | |
|---|---|
| 21. The method as set forth in claim 19, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | The '230 patent describes a flange having a plurality of surface irregularities extending radially from said aperture. The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 22. The method as set forth in claim 17, wherein the annular engagement surface is in superimposed engagement with a portion of the backing face. | The '230 patent describes an annular engagement surface, which is in superimposed engagement with a portion of the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 23. The method as set forth in claim 22, wherein said annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, an annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel. |
| 24. A grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said grinding wheel hub comprising: | The '230 patent describes a grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 |

| | |
|---|---|
| | discloses all limitations herein. |
| an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | The '230 patent discloses a grinding wheel hub comprising an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | The '230 patent discloses a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| A backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | The '230 patent discloses a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| said backing flange having a substantially concave surface adapted to face the backing face; | The '230 patent discloses the feature wherein said backing flange has a substantially concave surface adapted to face the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center; | The '230 patent discloses an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel. |

| | |
|---|---|
| | Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| wherein said substantially concave surface of said flange provides a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | The '100 patent discloses applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein.  Primary Prior Art Reference 3 discloses a substantially concave surface of said flange which provides a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of Primary Prior Art Reference 3, since both references relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

**EXHIBIT C**

Shakespeare LZ Hub Bates No. PF 1621
and 5 inch Type 27 wheel
Defendant's Exhibits 10 and 25



1. A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; said grinding wheel hub comprising:

an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture;

a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel;

a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face;

an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel;

wherein said backing flange has a substantially concave surface adapted to face the backing face; and

said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel.

00987334

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | |
| Plaintiff, | Civil Action No.:  05-cv-40035 (FDS) |
| v. | |
| PFERD, INC., | |
| Defendant. | |

## SAINT-GOBAIN ABRASIVES, INC.'S
## FIRST SET OF INTERROGATORIES TO PFERD, INC.

Pursuant to Fed. R. Civ. P. 33, Plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") propounds the following interrogatories upon Pferd, Inc. ("Pferd") and requests that they be answered separately, fully, and under oath within thirty (30) days of service.

### Definitions

1.    The Uniform Definitions in Discovery Requests of Local Rule 26.5 are incorporated herein by reference.

2.    "'317 patent" means U.S. Patent No. 5,895,317.

3.    "Grinding Wheel" means any "Grinding Wheel" means any depressed center grinding wheel (Type 27)

(c)    the total number of units made, used, sold, licensed, or offered for sale or license by or for Pferd up to the present;

(d)    the unit price or prices charged; and

(e)    the associated costs and profits.

Interrogatory No. 7

Identify each customer and/or prospective customer for each Grinding Wheel and Hub identified in the answer to Interrogatory No. 3.

Interrogatory No. 8

State with specificity the basis for the contention asserted by Pferd in its "First Affirmative Defense" to Saint-Gobain's Complaint that "Defendant is not now, and has not infringed any claim of the asserted patent, literally and/or by equivalents, either directly, contributorily, and/or by inducement."

Interrogatory No. 9

State with specificity the basis for the contention asserted by Pferd in its "Second Affirmative Defense" to Saint-Gobain's Complaint that "The asserted patent, and each of the claims thereof, is invalid, void, and/or unenforceable pursuant to one or more provisions of 35 U.S.C. §§ 102, 103 and/or 112." If Section 102 is relied upon, please specifically identify the prior art relied upon, any evidence that it is in fact prior art, and include a claim chart indicating where or how each limitation of each claim of the '317 patent is met in such prior art. If Section 103 is relied upon, please specifically identify the prior art relied upon, any

evidence that it is in fact prior art, the motivation (if any) to alter such prior art and where this is found, and what the result would be, as well as the level of skill in the pertinent art and any assumptions made about objective indicia of nonobviousness. If Section 112 is relied upon, please specify the portion of Section 112 relied upon and all facts, contentions and conclusions supporting reliance on Section 112. If any other section or rule is relied upon, please identify with specificity the section or rule and the basis of the contention.

Interrogatory No. 10

State with specificity the basis for the contention asserted by Pferd in its "Third Affirmative Defense" to Saint-Gobain's Complaint that "The '317 patent is invalid for failure to comply with the legal standards for patentability statutorily mandated by United States patent law, including 35 U.S.C. §§ 102, 103 and/or 112." If Section 102 is relied upon, please specifically identify the prior art relied upon, any evidence that it is in fact prior art, and include a claim chart indicating where or how each limitation of each claim of the '317 patent is met in such prior art. If Section 103 is relied upon, please specifically identify the prior art relied upon, any evidence that it is in fact prior art, the motivation (if any) to alter such prior art and where this is found, and what the result would be, as well as the level of skill in the pertinent art and any assumptions made about objective indicia of nonobviousness. If Section 112 is relied upon, please specify the portion of Section 112 relied upon and all facts, contentions and conclusions supporting reliance on Section 112. If any other section or rule is relied upon, please identify with specificity the section or rule and the basis of the contention.

Plaintiff's claims are barred by inequitable conduct during the prosecution of the '317 Patent, including without limitation, the knowing failure to disclose material prior art."

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC.

Dated: August 5, 2005                                   by:

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

- 10 -

# EXHIBIT C



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

January 10, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*lcarroll@burnslev.com*

Laura L. Carroll, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

      Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
             Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
             <u>Our File No. S1432-6004</u>

Dear Laura:

      It is apparent from both the testimony and your comments at last Thursday's second 30(b)(6) deposition of Pferd that no one at Pferd is currently prepared to fully address the scope and content of any Prior Art that Pferd asserts invalidates any claim of the Asserted Patent, particularly to the extent that the alleged Prior Art includes those references listed in Exhibit A to Pferd's Preliminary Invalidity Contentions served on November 30, 2005.

      If you are able and willing to adequately prepare a 30(b)(6) witness on that information, that is, to Topic 17, please indicate so immediately in conjunction with the witness's availability for deposition prior to the close of discovery on January 26, 2006. If you are unable or unwilling to prepare a witness, we request that you withdraw Exhibit A and any of the references listed therein from your contentions and agree not to use them in future stages of this litigation. If you refuse to either provide a witness or to withdraw the references from your contentions, we will be forced to move for an order precluding Pferd from relying on these references as Saint-Gobain was denied adequate discovery on them. We would further seek for the order to include a provision that Pferd be required to show cause as to why any reference, beyond those six listed on page 2 of Pferd's Preliminary Invalidity Contentions, was not provided to Saint-Gobain prior to the 30(b)(6) depositions and prior to the close of fact discovery.

      It is also notable that, although you had in written correspondence stated that Mr. Leblanc was designated on behalf of Pferd to testify as to Topics 1-3, 8, and 26-27, he was not entirely prepared. At first, as you know, he denied being prepared or designated to testify as to any of Topics 1-9. Even after your extenuated "interjection" on the issue, he admitted to having only limited knowledge, personal or otherwise, of the topics for which he was designated. For



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Laura L. Carroll, Esq.
January 10, 2006
Page 2

example, he stated that he did not have any information regarding comments by or information received from potential Pferd customers or from actual customers relating to any product competitive with any Pferd grinding wheel sold or used with hubs, which information was sought in Topic 8. He also stated that he could speak only to recent communications with Shakespeare, not any statements, agreements, or communications with or mentioning the company's provision of hubs, as sought in Topic 26.

Furthermore, Mr. Leblanc stated that he had no knowledge of certain topics that Mr. Huegin had been designated on but had clearly been unable to address and for which we were expecting Mr. Leblanc would be prepared. For example, neither man was able to testify as to even the underlying factual basis for Pferd's allegations that the patent-in-suit was not willfully infringed or that anyone involved in the prosecution of the patent-in-suit committed inequitable conduct. Mr. Huegin suggested that Pferd sought a written opinion from your firm after the start of the litigation. If you intend to submit this opinion or any other opinion or investigation as a component of Pferd's defense to Saint-Gobain's claim that its patent was willfully infringed, please do so by the end of the week so that Saint-Gobain may seek additional discovery related to the defense to the extent required.

Finally, it is also apparent from Mr. Leblanc's testimony that not all electronic files were properly searched in response to Saint-Gobain's First Set of Requests for Production. For example, Mr. Leblanc testified that he had not searched his own electronic files for Saint-Gobain or Norton. Please do everything within your power to ensure that all electronic files maintained by any person at the company have been searched for relevant documents covered by Saint-Gobain's First or Second Requests for Production, and inform us as to the procedure which you followed in undertaking such a search.

Thank you for your prompt attention to the issues outlined above.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

EAB/cdd

# EXHIBIT D

LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

January 20, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*lcarroll@burnslev.com*

Laura L. Carroll, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

Re:     Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
        Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
        <u>Our File No. S1432-6004</u>

Dear Laura:

As I noted to you in my letter of January 10, 2006, it was apparent from Saint-Gobain's 30(b)(6) depositions of Pferd that no one at Pferd was prepared to fully address the scope and content of the Prior Art listed in Pferd's Preliminary Invalidity Contentions. The Revised Invalidity Contentions you sent over late last night do nothing to remedy the deficiencies of the Preliminary Invalidity Contentions, specifically with regard to those references listed in Exhibit A. As you have not indicated that you are able and willing to adequately prepare a 30(b)(6) witness on the information requested in Topic 17, we ask again that you withdraw Exhibit A of your Revised Invalidity Contentions. Short of an immediate notice to that effect, we will move for an order precluding Pferd from relying on those, as I described in my previous letter.

Furthermore, it is also apparent that these revised contentions inadequately describe why the (non-patent) "Primary Prior Art" references listed in paragraph A are, in fact, prior art and what evidence Pferd intends to offer to meet its burden to prove that it is prior art. Obviously, we need that information in order to determine what discovery Saint-Gobain would need to take to rebut such contentions. The failure to provide that information while there is time for fact discovery on them would plainly prejudice Saint-Gobain. As such, absent a timely response and opportunity for discovery, we will seek to preclude Pferd from relying on any reference for which it has not proffered, during the fact discovery period, clear and convincing evidence that it constitutes prior art.



Laura L. Carroll, Esq.
January 20, 2006
Page 2


Thank you for your attention to this matter.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

EAB/cdd

# EXHIBIT E

1            UNITED STATES DISTRICT COURT
2             DISTRICT OF MASSACHUSETTS
3
4
       -----------------------------
5     SAINT-GOBAIN,                  )
              Plaintiff,             )
6                                    )        DOCKET NO.:
        Vs.                          )        CV 05-40045
7                                    )
      PFERD,                         )
8             Defendant.             )
       -----------------------------
9
10
11
12            SCHEDULING CONFERENCE
13
14    BEFORE:   The Honorable F. Dennis Saylor, IV
15
16
17                  United States District Court
                    District of Massachusetts
18                  595 Main Street
                    Worcester, Massachusetts
19                  Thursday, August 25, 2005
                    Courtroom No. 2
20
21          *   *   *   *   *   *   *   *   *   *
22              TARALLO & TARALLO
            PROFESSIONAL COURT REPORTERS
23
                    P.O. BOX 85
24          AUBURN, MASSACHUSETTS 01501
      TEL: (508) 832-0048          FAX: (508) 832-0209

1    schedule.

2              THE COURT:  Yes.

3              MR. LOWRIE:  Often people ask for a

4    bifurcation of damages and liability because of an

5    attorney opinion.  There is an issue of willfulness

6    of infringement.  The issue of willfulness is often

7    interwoven with the issue of liability.

8              And so it would be my proposal -- and I

9    hope this is what the Court is ordering -- that the

10   discovery on that issue is going forward with the

11   liability rather than being held off for the

12   accounting phase.

13             THE COURT:  Miss Carroll.

14             MS. CARROLL:  Well, as of this point,

15   we're not relying on opinion of counsel on the

16   willfulness issue.

17             THE COURT:  All right.  Based on that

18   representation, I think there is probably not an

19   issue.  If it changes, the parties can feel free to

20   ask me for clarification.

21             And by the way, you should also feel

22   free to request a telephone conference particularly

23   for something that is going to be relatively short.

24   You need not come out here, which is one way to cut

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | |
| Plaintiff, | Civil Action No.: 05-cv-40035 (FDS) |
| v. | |
| PFERD, INC., | |
| Defendant. | |

TO:     Laura L. Carroll, Esq.
        Merton E. Thompson, Esq.
        Anne C. Pareti, Esq.
        BURNS & LEVINSON LLP
        125 Summer Street
        Boston, MA 02110

## RE-NOTICE OF DEPOSITION

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 30(b)(6), plaintiff

Saint-Gobain Abrasives, Inc. will take the deposition of Pferd, Inc. at the offices of

Lowrie, Lando & Anastasi, LLP, Riverfront Office Park, One Main Street, 11th Floor,

Cambridge, MA 02142 on Tuesday, December 20, 2005 at 9:30 a.m. on the topics listed

on the attached Schedule A. The deposition will be recorded by videographic and

stenographic means and will continue from day-to-day until completed.

Because there will be considerable expense in preparing for and taking the

deposition, defendant is reminded that the person designated to testify on each topic is

expected to have conducted a sufficient investigation or to have been given sufficient

information to be prepared to give testimony on behalf of the defendant.

You are invited to attend and cross-examine.


Dated:  December 12, 2005

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
LOWRIE, LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070


## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this Notice of Deposition to be served, by electronic mail and U.S. First-Class Mail, on the following counsel of record:

Laura L. Carroll, Esq.
Merton E. Thompson, Esq.
Anne C. Pareti, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110


Dated:  December 12, 2005

Emily A. Berger


- 2 -

19.    All facts and contentions supporting any Pferd allegation that any claim of the Asserted Patent is not infringed by Pferd's Grinding Wheels sold or used with Hubs.

20.    All facts and contentions supporting Pferd's allegation that the Asserted Patent was not willfully infringed by Pferd.

21.    All facts and contentions supporting any allegation by Pferd that the asserted Patent is unenforceable.

22.    All facts and contentions supporting any allegation by Pferd that Saint-Gobain, the inventors, or anyone else involved in the prosecution of the Asserted Patent committed inequitable conduct.

23.    Pferd's first knowledge or awareness of the Asserted Patent.

24.    Pferd's first knowledge or awareness of any Saint-Gobain grinding wheels.

25.    Any studies, investigations, determinations, opinions, or other documents, including without limitation documents generated in connection with this or any prior suit or threat of suit, concerning the scope or interpretation, patentability or unpatentability, validity or invalidity, enforceability or unenforceability, or infringement or non-infringement of any claim of the Asserted Patent.

26.    Any statements, agreements, or communications to, from, with, or mentioning Shakespeare Abrasive Industry Suppliers' ("Shakespeare") provision of hubs that are used with Grinding Wheels.

27.    Any defect, recall, discontinuation, or suspension of production of any Pferd Grinding Wheel sold or used with Hubs.

- 4 -

# EXHIBIT G

-----Original Message-----
**From:** Laura Carroll [mailto:lcarroll@burnslev.com]
**Sent:** Monday, December 19, 2005 4:56 PM
**To:** Emily Berger
**Cc:** Merton Thompson
**Subject:** RE: deposition tomorrow

While we do not presume to plan your deposition for you, we offer the following general guidance, subject to our objections, as to which witness may be more knowledgeable for a given topic:

1-3 LeBlanc (1-3 objected to)
4-7 Huegin (4-6 objected to)
8 LeBlanc
9-25 Huegin (11, 14, 15, 18-22 and 25 objected to)
26-27 LeBlanc
28-31 Huegin

*Laura*

---

**From:** Emily Berger [mailto:eberger@ll-a.com]
**Sent:** Monday, December 19, 2005 4:29 PM
**To:** Laura Carroll
**Cc:** Merton Thompson; James Belanger; SG6004
**Subject:** RE: deposition tomorrow

Laura,

Thank you, but that didn't quite answer the question I was asking. Which topics will Mr. Huegin be prepared to testify on? And Mr. LeBlanc?

Emily

-----Original Message-----
**From:** Laura Carroll [mailto:lcarroll@burnslev.com]
**Sent:** Monday, December 19, 2005 4:28 PM
**To:** Emily Berger
**Cc:** Merton Thompson; James Belanger
**Subject:** RE: deposition tomorrow

Gene Huegin is Pferd's president, and has executive-level knowledge of the present dispute, as well as the company's business structure. Mark LeBlanc is Pferd's distribution manager and has more hands-on operations experience, as well as knowledge about the technology in suit.

*Laura*

---

**From:** Emily Berger [mailto:eberger@ll-a.com]
**Sent:** Monday, December 19, 2005 4:10 PM
**To:** Laura Carroll
**Cc:** Merton Thompson; James Belanger; SG6004
**Subject:** RE: deposition tomorrow

Laura,

Please let us know which representative will be testifying as to which topics.

Thank you,

Emily

> -----Original Message-----
> **From:** Laura Carroll [mailto:lcarroll@burnslev.com]
> **Sent:** Monday, December 19, 2005 3:57 PM
> **To:** Emily Berger
> **Cc:** Merton Thompson; James Belanger
> **Subject:** deposition tomorrow
>
> Dear Emily,
>
> You had asked who would be attending the deposition tomorrow, so that you could notify security in your building. Please be advised that Merton Thompson and I will be attending, as counsel for Pferd, and we will be producing Eugene ("Gene") Huegin and Mark LeBlanc as Pferd representatives.
>
> Please let me know if you have any questions. Otherwise, we will plan to be at your office at 9:30 a.m. tomorrow.
>
> Laura L. Carroll, Esq.
> Burns & Levinson LLP
> 125 Summer Street
> Boston, MA 02110
> 617-345-3339 (direct dial)
> 617-345-3299 (fax)
> LCarroll@burnslev.com
> www.burnslev.com