## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| SAINT-GOBAIN ABRASIVES, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | NO. 05-40035-FDS |
| v. ) | |
| ) | |
| PFERD, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF DEFENDANT PFERD, INC.
## IN SUPPORT OF ITS MOTION TO COMPEL DEPOSITION

**I.    Introduction**

Defendant Pferd, Inc. ("Pferd"), hereby submits this Memorandum in support of its Motion to Compel the deposition of Mary Porter.  On January 18, 2006, Pferd noticed the deposition of Ms. Porter, a Saint-Gobain employee, for January 25, 2006.  Saint-Gobain refused to produce Ms. Porter for deposition on that day, and subsequently has sought to condition producing Ms. Porter for deposition on Pferd agreeing to unwarranted restrictions on the scope and duration of that deposition.  Pferd has therefore moved to compel Saint-Gobain to produce Ms. Porter for deposition, in accordance with Fed. R. Civ. P. 30.

**II.    Background Statement**

**A.    Introduction.**

This is a patent infringement suit, brought by plaintiff Saint-Gobain Abrasives, Inc., against Pferd.  There is a single patent in suit, U.S. Patent No. 5,895,317, issued

April 20, 1999, and entitled "Wheel Hub for Longer Wheel Life" ("the '317 patent"). (A copy of the '317 patent is attached as **Exhibit 1**.) The '317 patent is directed at hubs for abrasive grinding wheels. In its Complaint (Docket #1), Saint-Gobain accuses Pferd of infringing the '317 patent. In its Answer and Counterclaim (Docket #3), Pferd has denied that it has infringed the '317 patent, and has asserted counterclaims seeking declarations of non-infringement and invalidity.

### B.    **Background of Discovery Dispute**

At the initial scheduling conference held in this matter on August 25, 2005, this Court ordered the parties to complete liability discovery by December 15, 2005, a deadline which was subsequently extended to January 26, 2006, by Electronic Order of the Court on December 6, 2005.

Mary Porter is an in-house patent attorney at Saint-Gobain. She is listed as the prosecuting attorney on the '317 patent. *See* Exh. 1. In Saint-Gobain's Initial Disclosures (a copy of which is attached as **Exhibit 2**), Saint-Gobain identified Ms. Porter as one of only three individuals "likely to have discoverable information that Saint-Gobain may use to support its claims or defenses." The Initial Disclosures state that Ms. Porter "prosecuted the patent-in-suit. As such, Ms. Porter possesses information concerning the subject matter and prosecution of the patent-in-suit."

The parties both served interrogatories and document requests. In Interrogatory No. 15, Pferd asked Saint-Gobain to identify the persons most knowledgeable "about the preparation and prosecution of the application that led to the '317 patent. In response, following objections, Saint-Gobain stated that "its employee, Mary E. Porter, was primarily responsible for the preparation and prosecution of the application that led to the

'317 patent." (The pertinent portions of Saint-Gobain's Answers to Pferd's Interrogatories are attached hereto as **Exhibit 3**.)

The parties also served deposition notices pursuant to Fed. R. Civ. P. 30(b)(6). (A copy of Pferd's deposition notice to Saint-Gobain is attached as **Exhibit 4**.) In response to that Notice, Saint-Gobain produced a single witness, F. Guy Timm, the named inventor of the '317 patent. Although Pferd had noticed the Rule 30(b)(6) deposition for December 19, 2005, Saint-Gobain advised that Mr. Timm was not available for deposition until mid-January 2006; his deposition was ultimately taken on January 17, 2006.

At the Rule 30(b)(6) deposition on January 17, 2006, Mr. Timm repeatedly expressed ignorance on critical topics. When asked who at Saint-Gobain would be knowledgeable about those topics, Mr. Timm identified Ms. Porter.

As one example, three of the topics in Pferd's Rule 30(b)(6) deposition notice were:

> 5.    Saint-Gobain's communications with third parties regarding its rights under the Asserted Patent..
>
> 7.    Saint-Gobain's first knowledge or awareness of any Hub manufactured by Shakespeare Abrasive Industry Suppliers ("Shakespeare").
>
> 8.    Any statements, agreements, or communications to, from, with, or mentioning Shakespeare's provision of Hubs that are used with Grinding Wheels.

(Exh. 4, Schedule A.)

At the deposition, Mr. Timm initially testified that he was prepared to testify on these topics. (The pertinent pages from a draft of Mr. Timm's transcript are attached hereto as **Exhibit 5**; his testimony concerning his preparation to testify concerning these topics is on pages 8-9.) Documents produced by Saint-Gobain in this litigation reveal

that six years ago, in 2000, Ms. Porter sent cease-and-desist letters on behalf of Saint-Gobain to three hub vendors, in which she asserted that those vendors were infringing the '317 patent. One of the three recipients of a cease-and-desist letter from Ms. Porter in 2000 was Shakespeare, the vendor from whom Pferd has obtained the hubs which Saint-Gobain contends infringe the '317 patent. (Pferd identified Shakespeare's president as a person likely to have discoverable information in Pferd's initial disclosures.)

At his deposition, Mr. Timm repeatedly expressed his ignorance concerning Ms. Porter's communications with the hub vendors, including Shakespeare. *See* Exh. 5, pp.63-83. Mr. Timm ultimately admitted that Ms. Porter was "more knowledgeable" than he about Saint-Gobain's "enforcement activities relating to the '317 patent." *See* Exh. 5, pp.111-112.

Pferd's Rule 30(b)(6) deposition notice also listed as topics for deposition:

2.    The prosecution of the Asserted Patent.
3.    The Prior Art known to Saint-Gobain before and/or during prosecution of the Asserted Patent.

Exh. 4, Schedule A.

At the Rule 30(b)(6) deposition, Mr. Timm initially testified that he was prepared to testify on these topics. *See* Exh. 5, pp.7-8. Notwithstanding his role as inventor, however, Mr. Timm repeatedly expressed ignorance about the prosecution of the '317 patent, following his initial submission of an invention disclosure to Ms. Porter. *See* Exh. 5, pp.20, 58-59. He was not familiar with what prior art was submitted to the U.S. Patent and Trademark Office (the "USPTO") during the prosecution of the '317 patent. *See* Exh. 5, pp.55-60,110-111. He ultimately conceded that Ms. Porter was more knowledgeable than he about the prosecution of the '317 patent. *See id*., pp.109-110.

C.     **Pferd's Deposition Notice to Mary Porter**

In light of Mr. Timm's inability to testify concerning these topics at the Rule 30(b)(6) deposition, the next day, January 18, 2006, Pferd served a notice to take Mary Porter's deposition.  (A copy of the deposition notice is attached as **Exhibit 6**.)  Because of the impending liability discovery deadline of January 26, 2006, Pferd noticed the deposition for January 25, 2006, providing seven days' notice for the deposition.

A flurry of correspondence ensued.  By letter dated January 19, 2006 (copy attached as **Exhibit 7**), Saint-Gobain's counsel advised that Ms. Porter was not available, described the notice as "unreasonable," and demanded to know "on what basis" Pferd was seeking to depose Ms. Porter.  In response, Pferd's counsel explained why it desired to depose Ms. Porter, referencing Mr. Timm's deposition testimony on January 17.  *See* copy of letter by Pferd's counsel, dated January 20, 2006, attached as **Exhibit 8**.  She also expressed willingness to change the deposition date to accommodate Ms. Porter's schedule.  (*See id.*)  Another round of correspondence ensued.  *See* letter from Saint-Gobain's counsel dated January 23 and Pferd's counsel's response dated January 23, attached as **Exhibits 9 and 10**.

In an effort to resolve this, as well as other, discovery disputes, Pferd's counsel scheduled a teleconference with Saint-Gobain's counsel, in accordance with their obligations under Local Rules 7.1(A)(2) and 37.1.  *See* letter dated January 24, 2006, attached as **Exhibit 11**.  Saint-Gobain's counsel was not available to confer until January 26; the teleconference began at 1 p.m.  Saint-Gobain's counsel ultimately offered to produce Ms. Porter for a deposition, limited to four hours.  Because Ms. Porter is clearly a fact witness, and has been repeatedly identified by Saint-Gobain as a knowledgeable

person likely to have discoverable information concerning liability issues in this litigation

(including prior art, the prosecution of the '317 patent, and earlier efforts to enforce the

'317 patent, including against Pferd's hub supplier), Pferd sees no reason why it should

be limited to less than the seven hours provided for in Fed. R. Civ. P. 30(d)(2).

**III.    Legal Argument.**

**A.    The Deposition Notice for**
**Mary Porter's Deposition Was Not Untimely.**

As noted above, Pferd noticed the deposition of Ms. Porter within a day after the

deposition of Saint-Gobain's proffered Rule 30(b)(6) witness, based in large part on that

witness' repeated deferral to Ms. Porter as the person more knowledgeable on critical

noticed topics.  The deposition notice gave seven days' notice for the deposition.  While

the Federal Rules only require "reasonable notice," Fed. R. Civ. P. 30(b)(1), and do not

specify the amount of advance notice required, Pferd notes that Massachusetts state court

procedural rules consider seven days to constitute adequate notice.  *See* Mass. R. Civ. P.

30(b).  The seven-day notice was mandated by the short period of time between the

conclusion of Mr. Timm's deposition and the close of discovery on liability issues.

Pferd's counsel expressed willingness to accommodate the witness' schedule by seeking

a short extension of the discovery deadline.  *See* Exh. 8.  Accordingly, the advance notice

given for the deposition was reasonable, and should not preclude taking that deposition.

**B.    That Ms. Porter Is Patent Counsel for Saint-Gobain Does Not**
**Preclude her Deposition.**

Pferd recognizes that some of Ms. Porter's communications may be protected by

the attorney-client or work product privileges.  Ms. Porter's status as an attorney does

not, however, shield her from deposition, particularly where Saint-Gobain has identified

her as a person likely to have discoverable information in its Initial Disclosures (*see* Exh. 2) and interrogatory answers (*see* Exh. 3), and Saint-Gobain's proffered Rule 30(b)(6) witness pointed to her as the knowledgeable person on critical topics on which he lacked information.  (*See* Exh. 5.)  In particular, Mr. Timm identified prior art (*e.g.*, Shakespeare's LZ hub) which was known to him, and apparently not disclosed to the USPTO, and he professed ignorance concerning the prior art which was disclosed.  *See* Exh. 5, pp.49-57.

As this Court is undoubtedly aware, in patent cases, the attorney responsible for prosecuting the patent-in-suit is frequently deposed.  *See, e.g.*, Teknowledge Corporation v. Akamai Technologies, Inc., No. C 02-5741 SI, 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. August 10, 2004); Bristol-Myers Squibb Co. v. Rhone-Polenc Rorer, Inc., No. 95 Civ. 8833 (RPP), 1998 U.S. Dist. LEXIS 12, 45 U.S.P.Q.2d (BNA) 1775 (S.D.N.Y. January 6, 1998); *see also* United Technologies Motor Systems, Inc. v. Borg-Warner Automotive, Inc., Civil Action No. 97-71706, 1998 U.S. Dist. LEXIS 21837, 50 U.S.P.Q.2d (BNA) 1060.(E.D. Mich. September 4, 1998).

While certain of Ms. Porter's communications with others at Saint-Gobain may be shielded by attorney-client privilege, that does not prevent the deposition from going forward at the outset.  Rule 30(d)(1) of the Federal Rules of Civil Procedure states that a witness may be instructed not to answer "when necessary to enforce a privilege;" that Rule does not preclude a witness in possession of privileged information from being deposed.

Moreover, the attorney-client privilege does not extend to communications with third-parties, such as the USPTO or alleged infringers, such as Shakespeare, Pferd's hub

supplier.  Pferd justifiably seeks information concerning what was disclosed to the USPTO during the prosecution of the '317 patent.  Pferd also has a legitimate interest in learning about communications between Ms. Porter and Shakespeare concerning the '317 patent, since those communications apparently took place five years before the present suit was filed.

Moreover, even when a communication is clearly between attorney and client, the privilege attaches, "not to the information itself, but to the communication of the information."  Bristol-Myers Squibb, *supra*, 1998 U.S. Dist. LEXIS at *12.  In addition, it appears to be well settled that the work product privilege does not apply to patent prosecution, since it is not "in anticipation of litigation."  *See* Teknowledge Corp., *supra*; Bristol-Myers Squibb, *supra*, 1998 U.S. Dist. LEXIS at *15-16.  As a consequence, there are clearly a number of topics on which Ms. Porter can testify without impinging upon on legitimate attorney-client communications.

For all the foregoing reasons, defendant Pferd, Inc. asks that this Court grant its Motion to Compel the Deposition of Mary Porter, award Pferd its reasonable expenses incurred in making this Motion, including reasonable attorneys' fees, pursuant to Fed. R. Civ. P. 37(a)(4), and grant Pferd such other and further relief as this Court deems appropriate.

Respectfully submitted,

**PFERD, INC.,**

By its attorneys,

Date:  January 26, 2006          /s/ Laura L. Carroll_____
                                 Laura L. Carroll (BBO #076180)
                                 Merton E. Thompson (BBO #637056)
                                 Anne C. Pareti (BBO #660496)
                                 BURNS & LEVINSON LLP
                                 125 Summer Street
                                 Boston, MA  02110
                                 Tel.  617-345-3000
                                 Fax   617-345-3299


## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this Memorandum

to be served, by electronic and First Class Mail upon the following counsel of record:

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142


Dated: January 26, 2006          /s/ Laura L. Carroll_____
                                 Laura L. Carroll

# EXHIBIT 1

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter



US005895317A

# United States Patent [19]

## Timm

| [11] | Patent Number: | **5,895,317** |
|---|---|---|
| [45] | Date of Patent: | **Apr. 20, 1999** |

[54] **WHEEL HUB FOR LONGER WHEEL LIFE**

[75] Inventor: **F. Guy Timm**, Harlingen, Tex.

[73] Assignee: **Norton Company**, Worcester, Mass.

[21] Appl. No.: **08/768,520**

[22] Filed: **Dec. 18, 1996**

[51] Int. Cl.⁶ ....................................... **B24B 41/04**

[52] U.S. Cl. ............................. **451/548**; 451/359

[58] Field of Search ......................... 451/344, 359,
451/360, 548, 549, 550, 508

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| 2,149,645 | 3/1939 | Van Sittert | 451/359 |
|---|---|---|---|
| 2,259,345 | 10/1941 | Kuzmick et al. | 51/206 |
| 2,308,472 | 1/1943 | Smith | 451/548 |
| 2,726,493 | 12/1955 | Young et al. | 51/168 |
| 3,136,100 | 6/1964 | Robertson, Jr. | 51/209 |
| 3,889,430 | 6/1975 | Scandaletos | 51/206 |
| 4,015,371 | 4/1977 | Grayston | 451/548 |
| 4,088,729 | 5/1978 | Sherman | 264/259 |
| 4,240,230 | 12/1980 | Ferrantini | 51/168 |
| 4,774,788 | 10/1988 | Shacham et al. | 51/168 |
| 4,899,494 | 2/1990 | MacKay, Jr. | 51/168 |
| 4,979,336 | 12/1990 | MacKay, Jr. | 51/168 |
| 5,431,596 | 7/1995 | Akita et al. | 451/540 |
| 5,516,326 | 5/1996 | Virnich | 451/340 |
| 5,538,464 | 7/1996 | MacKay, Jr. | 451/342 |

| 5,718,621 | 2/1998 | Turley | 451/359 |
|---|---|---|---|

### FOREIGN PATENT DOCUMENTS

| 709137 | 5/1965 | Canada | 51/195 |
|---|---|---|---|

*Primary Examiner*—Eileen P. Morgan
*Attorney, Agent, or Firm*—Mary E. Porter

[57] **ABSTRACT**

A wheel hub is provided for use in combination with conventional depressed center grinding wheels. The hub includes a generally cylindrical aperture bushing. A disc shaped flange extends radially from a medial portion of the bushing and terminates at a peripheral lip. The bushing is adapted to extend through a central bore of the wheel so that the lip engages the backing face of the wheel proximate an outermost circumference of the depressed center. A grinding face end of the bushing is flangeable radially outward to engage the front grinding face of the wheel and mechanically capture the wheel between the grinding face end and the flange. The flange, lip and backing face form a cavity into which epoxy resin is placed to chemically bond the hub to the wheel. The combination of mechanical fastening and chemical bonding adequately secures the hub to the wheel, nominally without requiring the flange to extend over the stub. The present invention thus advantageously enables the wheel to be ground nominally to the stub, to provide improved wheel utilization.

**24 Claims, 1 Drawing Sheet**





5,895,317

**1**

# WHEEL HUB FOR LONGER WHEEL LIFE

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates to abrasive grinding wheels, and more particularly to an improved wheel hub for mounting a grinding wheel to a grinding apparatus.

### 2. Background Information

Grinding machines that utilize abrasive grinding wheels mounted therein may be employed to perform many distinct grinding operations. The varied operations have led to the development of a wide variety of grinding wheel shapes and sizes. One type of grinding wheel in particular is the depressed center wheel, characterized by the central portion of the wheel being offset in the axial direction from the wheel periphery. The wheel thus has a concavo-convex stub portion in which a grinding face has a depressed or concave central portion and an opposite backing face has a raised or convex central portion. This design allows a user to perform face grinding operations using the grinding face having the depressed central portion. Often, such operations are performed on metal, masonry or concrete surfaces and the like, using portable grinding machines. Depressed center wheels are classified by the American National Standards Institute (ANSI) as Type 27 and 28 grinding wheels.

The means by which a grinding wheel is secured to the grinding machine spindle is particularly important with depressed center wheels. In general, the mounting means must be capable of holding the wheel perpendicular to the spindle during grinding operations, and must provide support to the wheel to distribute stresses away from the central mounting aperture, where stresses tend to concentrate. The mounting means also must be firmly secured to the abrasive wheel, to prevent any slippage therebetween. In addition, the mounting means for Types 27 and 28 wheels have generally been provided with extra support to the wheel periphery, as well as to the central portion of the backing (non-grinding) face of the wheel to resist the additional stresses imposed by face grinding operations.

To satisfy these requirements, it is common to provide Type 27 and 28 wheels with a hub having a flange that extends over the central raised portion, the concavo-convex stub portion, and onto and in contact with the peripheral portion of the wheel, to resist side pressure or otherwise uneven force applied to the grinding face of the wheel. The opposite face of the wheel is provided with a flange contained completely within the depressed area thereof.

Although such hub construction may produce satisfactory results in many instances, it is not without drawbacks. In particular, extension of the flange beyond the raised stub portion of the backing face tends to limit the useful life of the wheel. In this regard, the wheel must be replaced before it is ground down to the diameter of the backing flange to avoid potentially damaging contact between the backing flange and the workpiece. Accordingly, grinding wheels that utilize this hub construction tend to be discarded with a substantial portion of valuable and otherwise usable abrasive remaining thereon. Such relative under-utilization of the wheel tends to add undesirable expense to grinding operations in terms of both wheel cost and labor costs associated with the frequency of wheel removal and installation.

A need thus exists for an improved grinding wheel hub that overcomes the drawbacks of the prior art.

## SUMMARY OF THE INVENTION

According to an embodiment of this invention, a grinding wheel hub is provided for mounting an abrasive grinding

**2**

wheel on a grinding apparatus. The hub is adapted for use with an abrasive grinding wheel of the type that has a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel. The grinding wheel hub includes an aperture bushing of substantially cylindrical configuration, adapted for extension through and engagement with the surface of the mounting aperture. A grinding face fastener is disposed on the aperture bushing and adapted to extend radially outward from the mounting aperture to engage the grinding face of the wheel. A backing flange of substantially discoid shape, extends radially outward from the aperture bushing member and is adapted for being superposed with the backing face. An annular engagement surface is located along a periphery of the backing flange and is adapted to engage the backing face of the wheel. The backing flange has a bond surface adapted to face the backing face, and is sized and shaped to provide a cavity between the backing flange and the backing face of the grinding wheel when the annular engagement surface is engaged with the backing face. The cavity is adapted to receive a bonding agent therein to bond the grinding wheel hub to the abrasive grinding wheel.

The present invention provides, in a second aspect, a grinding wheel assembly adapted for being mounted on a grinding apparatus. The assembly includes an abrasive grinding wheel having a depressed center, a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel. The assembly also includes a grinding wheel hub of the invention and a mechanical and a chemical bond between the hub and the wheel.

In a third aspect of the present invention, a method is provided for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel. The method includes providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for extension through and in engagement with the surface of the mounting aperture. A grinding face fastener is placed on the aperture bushing and is adapted to extend radially outward from the mounting aperture to engage the grinding face of the wheel. A backing flange of substantially discoid shape is placed on the aperture bushing member, extending radially outward therefrom, and adapted for being superposed with the backing face. The backing flange is provided with a bond surface adapted to face the backing face. An annular engagement surface is provided along a periphery of the backing flange, and is adapted to engage the backing face of the wheel. A bonding agent is applied to the surface adapted to face the backing face. The aperture bushing is subsequently inserted through and in engagement with the surface of the mounting aperture so that the annular engagement surface is engaged with the backing face of the wheel. The grinding face fastener is then engaged with the grinding face of the wheel so that the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the grinding wheel hub to the wheel.

The above and other features and advantages of this invention will be more readily apparent from a reading of the following detailed description of various aspects of the invention taken in conjunction with the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a plan view of a wheel hub according to the subject invention;

5,895,317

3

FIG. 2 is a cross-sectional, elevational view of a wheel hub of the subject invention, taken along 2—2 of FIG. 1;

FIG. 3 is a view similar to that of FIG. 2, of the subject invention on an enlarged scale, with portions broken away and portions thereof shown in phantom;

FIG. 4 is a bottom view of the wheel hub of FIGS. 1 and 2, with portions thereof shown in phantom;

FIG. 5 is an enlarged cross-sectional schematic view taken along 5—5 of FIG. 4, with portions thereof broken away; and

FIG. 6 is a view similar to that of FIG. 2, with the wheel hub shown fully installed in a mounting aperture of a grinding wheel.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Briefly described, the invention includes a wheel hub 10 for use in combination with a conventional depressed center grinding wheel 12 (FIG. 6) having a generally flat, depressed center 13, concavo-convex stub portion 23 and nominally flat grinding portion 25. Wheel hub 10 (FIG. 2) includes a generally cylindrical aperture bushing 14. A disc shaped flange 16 extends radially from a medial portion of the bushing and terminates at a peripheral lip 18. Bushing 14 (FIG. 6) is adapted to extend through central bore 21 of wheel 12 so that lip 18 engages backing face 32 of the wheel proximate an outermost circumference of depressed center 13 or the junction of depressed center 13 and stub portion 23 as shown at shoulder 30. A grinding face end 29 (FIG. 2) of bushing 14 is flangeable radially outward to engage front grinding face 34 of wheel 12 and mechanically capture the wheel between grinding face end 29 and flange 16. Flange 16, lip 18 and the backing face 32 form a cavity 20 into which an adhesive, such as epoxy resin, is placed to chemically bond hub 10 to wheel 12.

This combination of mechanical fastening and chemical bonding adequately secures the hub to the wheel without requiring flange 16 to extend over stub 23 and/or onto grinding portion 25. The present invention thus advantageously enables wheel 10 to be ground nominally completely to stub 23, to provide improved wheel utilization relative to the prior art.

For definitional purposes, throughout this disclosure, the terms "axial" and "co-axial" shall refer to a direction substantially parallel to the axis of rotation of wheel hub 10 and/or grinding wheel 12. The terms "transverse" and "radial" shall refer to directions substantially orthogonal to the axial or co-axial direction.

Referring now to the drawings in detail, as shown in FIGS. 1 and 2, aperture bushing 14 is substantially cylindrical, extending from grinding face end 29 to backing face end 28 (FIG. 2). Backing face end 28 is provided with a hex head 31. A central bore 26 extends axially along the length of the bushing. The bushing has a predetermined outer diameter d sufficient to enable grinding face end 29 of bushing 14 to be slidably received within central aperture 21 of grinding wheel 12 (FIG. 6). Central bore 26 and hex head 31 facilitate fastening wheel hub 10 to a conventional grinding apparatus (not shown) in a manner familiar to one skilled in the art.

Disc shaped flange 16 extends radially from a medial portion of bushing 14 and terminates at peripheral lip 18. Lip 18 is generally cylindrical, depending from flange 16 in the axial direction towards grinding face end 29 of the bushing. Lip 18 thus provides flange 16 with a generally concave

4

surface, including cavity 20, that faces grinding face end 29 of bushing 14. Cavity 20 is adapted to receive a bonding agent such as an epoxy resin therein, to chemically bond hub 10 to grinding wheel 12 as will be discussed hereinafter.

Lip 18 terminates at an annular wheel engagement surface 22 adapted to engage backing face 32 of grinding wheel 12. In a preferred embodiment, as shown, surface 22 engages backing face 32 proximate the junction of depressed center 13 and stub portion 23, or shoulder 30, as shown in FIG. 6. As best shown in FIG. 3, an axial cross-section of wheel engagement surface 22 is preferably disposed at a predetermined oblique angle relative to the radial direction. As hub 10, including wheel engagement surface 22, is symmetrical about axis a, angle thus provides surface 22 with a generally frusto-conical configuration. Angle is determined nominally to match the angle curvature of backing face 32 at the point of engagement therewith, as will be discussed in greater detail hereinafter. In a preferred embodiment, as shown, angle is approximately 19 degrees.

The size of wheel engagement surface 22 is predetermined to provide an area of contact between surface 22 and backing face 32, sufficient to nominally prevent leakage of the epoxy resin from cavity 20 once the hub is installed onto wheel 12 as shown in FIG. 6. Moreover, cavity 20 is provided with an axial dimension d1 predetermined to minimize the thickness of the epoxy resin layer disposed therein, while providing sufficient clearance to nominally prevent direct contact between flange 16 and backing face 32. In this regard, dimension d1 preferably varies as a function of the radial distance from aperture bushing 14, wherein dimension d1 is relatively large proximate bushing 14 and decreases progressively towards lip 18. This variation accommodates a need for greater clearance due to burrs or increased wheel thickness proximate central aperture 21, and for lesser clearance towards the edge of depressed center 13 as backing face 32 begins to curve or fair away from flange 16 into concavo-convex stub portion 23.

Referring now to FIGS. 4 and 5, the surface of flange 16 that defines cavity 20 is provided with a series of discontinuities or grooves 24 which serve to increase the surface area of contact with the epoxy resin. In a preferred embodiment, as shown, discontinuities 24 comprise a series of radially extending grooves of substantially V-shaped or saw-tooth cross-section as shown in FIG. 5. The grooves are preferably spaced about the flange at an angular interval of approximately 3 degrees. The increased surface area of contact with the epoxy resin serves to advantageously lower the force per unit area generated between the resin and hub during grinding operations. This serves to effectively increase the overall magnitude of force the hub and wheel combination is capable of withstanding.

Hub 10 may be fabricated from any number of materials capable of providing the requisite structural characteristics, such as, for example, a metallic material or alloy. In a preferred embodiment, hub 10 is fabricated from a steel alloy of relatively high zinc content. An example of a suitable material is a zinc alloy sold under the trademark "Zamac 3" available from Celtic Metal, Inc., Sapula, Okla.

The hub may be formed by any convenient method, including, for example, casting, forging or powder metal forming. In a preferred embodiment, hub 10 is formed by die casting.

Hub 10 is installed onto wheel 12 by filling cavity 20 with a suitable bonding agent such as an epoxy resin as discussed hereinabove. Grinding face end 29 (FIG. 1) of bushing 14 is then inserted into central aperture 21 of wheel 12 until wheel

5,895,317

5

engagement surface 22 engages backing face 32 of the wheel, nominally at shoulder 30 thereof, as shown in FIG. 6. Once so disposed, grinding face end 29, which extends a predetermined distance beyond grinding face 34, is then swaged or flanged in a conventional manner to splay the walls thereof radially outward and form a flange or annular bead 36 as shown in FIG. 6. Bead 36 serves to engage grinding face 34 about the perimeter of central aperture 21 to capture wheel 12 between the bead and flange 16 and thus complete assembly of hub 10 onto wheel 12. Once sufficient time has elapsed to permit the epoxy resin to cure, the hub and wheel assembly may be utilized in a conventional manner in combination with a grinding apparatus.

As shown in FIG. 6 and as discussed hereinabove, the diameter of flange 16, including lip 18, is predetermined to be substantially coextensive with that of depressed center 13 of wheel 12. In this connection, lip 18 nominally extends to shoulder 30 disposed at the junction of depressed center 13 and stub portion 23. In a preferred embodiment as shown, lip 18 is provided with a diameter of approximately 2 inches (5 cm) for use on a conventional 4.5 inch (11.4 cm) diameter ANSI Type 27 wheel. It is also contemplated that a 2 inch (5cm) diameter hub may be utilized in conjunction with a 5 inch (12.7 cm) diameter Type 27 wheel.

In the Type 27 wheel preferred embodiment, the coaxial height of lip 18 is 0.180 inch (0.46 cm), resulting in a cavity 20 for the bonding agent having a coaxial dimension d1 of 0.082 inch (0.21 cm) at the lip 18. The flange 16 used in this embodiment contains grooves 24 to increase the bonding surface area. In an alternate embodiment of the Type 27 wheel, assembled without grooves 24 in the flange 16, the coaxial dimension of the cavity 20 is 0.020 inch (0.05 cm) at lip 18 so as to insure bonding of the flange 16 to the backing face 30 of the wheel 12.

As discussed hereinabove, wheel engagement surface 22 is preferably disposed at an oblique angle of approximately 19 degrees to match the curvature of backing face 32 of a 4.5 inch (11.4 cm) diameter Type 27 wheel at a diameter of approximately 2 inches (5 cm) thereon. In the event the 2 inch (5 cm) hub is utilized in combination with a 5 inch (12.7 cm) diameter Type 27 wheel, angle may be reduced, as required, to facilitate surface to surface engagement of surface 22 with the backing face thereof.

The subject invention thus securely engages wheel 12 with a relatively small overall diameter, nominally without superposing flange 16 over stub portion 23 and/or grinding portion 25. This feature nominally permits grinding of the wheel down to stub 23 without risk of accidental contact of hub 10 with the workpiece. This invention thus permits improved wheel utilization for longer wheel life relative to prior art hub configurations which typically engage the wheel over and radially beyond the concavo-convex or stub portions thereof. In this regard, the present invention has been shown to provide an approximately 10 percent increase in wheel life relative to such prior art wheels.

Although the grinding wheel hub of the subject invention has been shown and described in combination with depressed center grinding wheels, one skilled in the art should recognize that the hub may be utilized in combination with grinding wheels of substantially any configuration, including, but not limited to, conventional cup wheels, dish wheels, recessed wheels, Type 27 and 28 wheels, or any other grinding wheel having a depressed center and a central mounting aperture, without departing from the spirit and scope of the subject invention.

The foregoing description is intended primarily for purposes of illustration. Although the invention has been shown

6

and described with respect to an exemplary embodiment thereof, it should be understood by those skilled in the art that the foregoing and various other changes, omissions, and additions in the form and detail thereof may be made therein without departing from the spirit and scope of the invention.

I claim:

1. A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; said grinding wheel hub comprising:

an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture;

a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel;

a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face;

an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel;

wherein said backing flange has a substantially concave surface adapted to face the backing face; and

said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel.

2. The grinding wheel hub as set forth in claim 1, wherein: the backing flange has a bond surface adapted to face the backing face; and

said bond surface is sized and shaped to provide a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel.

3. The grinding wheel hub as set forth in claim 1, wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face.

4. The grinding wheel hub as set forth in claim 1, further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface.

5. The grinding wheel hub as set forth in claim 4, wherein said backing flange and said peripheral lip define said substantially concave surface.

6. The grinding wheel hub as set forth in claim 5, wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel.

7. The grinding wheel hub as set forth in claim 2, wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel.

8. The grinding wheel hub as set forth in claim 2, wherein said flange further comprises a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive.

9. The grinding wheel hub as set forth in claim 8, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture.

10. The grinding wheel hub as set forth in claim 1, wherein said annular engagement surface is adapted for surface to surface engagement with the backing face.

5,895,317

**7**

11. The grinding wheel hub as set forth in claim **10**, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face.

12. The grinding wheel hub as set forth in claim **11**, wherein said annular engagement surface is disposed at an approximately 19 degree angle relative the co-axial direction.

13. The grinding wheel hub as set forth in claim **12**, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion.

14. The grinding wheel hub as set forth in claim **13**, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel.

15. The grinding wheel hub of claim **7**, wherein the adhesive is an epoxy resin.

16. A grinding wheel assembly adapted for being mounted on a grinding apparatus, comprising:

an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel;

the grinding wheel hub of claim 1; and

a bonding agent between the backing face and the wheel hub.

17. A method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said method comprising:

providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture;

inserting the aperture bushing through and in engagement with the surface of the mounting aperture;

fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperature bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel;

applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel;

disposing the backing flange on the aperature bushing to engage the annular engagement surface with the backing face of the wheel, the annular engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel;

**8**

wherein the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel.

18. The method as set forth in claim 17, wherein said step of providing the backing flange with a concave surface further comprises the steps of providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface.

19. The method as set forth in claim 17, wherein the bonding agent comprises an epoxy resin.

20. The method as set forth in claim 17, further comprising the step of providing the concave surface with a plurality of surface irregularities adapted to provide a textured surface area for engagement with the bonding agent.

21. The method as set forth in claim 19, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture.

22. The method as set forth in claim 17, wherein the annular engagement surface is in superimposed engagement with a portion of the backing face.

23. The method as set forth in claim 22, wherein said annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel.

24. A grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said grinding wheel hub comprising:

an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture;

a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel;

a backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face;

said backing flange having a substantially concave surface adapted to face the backing face;

an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center;

wherein said substantially concave surface of said flange provides a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel.

*   *   *   *   *

# EXHIBIT 2

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter

8/5/05

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

SAINT-GOBAIN ABRASIVES, INC.,

                Plaintiff,

v.

PFERD, INC.,

                Defendant.

Civil Action No.:  05-cv-40035 (FDS)

## SAINT-GOBAIN'S INITIAL DISCLOSURES

Plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain"), by its counsel, hereby provides the following information pursuant to Fed. R. Civ. P. 26(a)(1).

Saint-Gobain's investigation is ongoing, and it expressly reserves the right to supplement these disclosures as additional information is developed.

**A.**    **Individuals Likely to Have Discoverable Information
That Saint-Gobain May Use to Support Its Claims or Defenses**

      1.      Guy F. Timm
             Saint-Gobain Abrasives, Inc.
             1505 Morningside Road
             Brownsville, TX 78521

Guy F. Timm is the named inventor on the patent-in-suit.  As such, Mr. Timm has information related to the invention and reduction to practice of the patent-in-suit.

      2.      Doug I. Nixon
             Saint-Gobain Abrasives, Inc.
             4600B Cantrell Road
             Flowery Branch, GA 30542

Doug I. Nixon is an employee of Saint-Gobain Abrasives, Inc.  Mr. Nixon has information related to the subject matter of the patent-in-suit.

3.    Mary E. Porter
       Saint-Gobain Abrasives, Inc.
       One New Bond Street
       Worcester, MA 01615

Mary E. Porter prosecuted the patent-in-suit. As such, Ms. Porter possesses information concerning the subject matter and prosecution of the patent-in-suit.

**B.    Description by Category and Location of Documents and Things
       That Saint-Gobain May Use to Support Its Claims or Defenses**

File histories of the patent-in-suit; memoranda, correspondence, data, research, and other documents relating to development of the patented subject matter; memoranda, correspondence, data, research, and other documents relating to the accused products; samples of the accused products; and marketing, sales, and strategic planning documents evidencing infringement and damages from sales of the accused products. All of the foregoing is believed to be located at offices of Saint-Gobain in Worcester, MA, Brownsville, TX, and/or Flowery Branch, GA, and/or offices of its counsel in Cambridge, MA.

**C.    Computation of Damages Claimed by Saint-Gobain**

Saint-Gobain is not able to compute damages without discovery from Pferd, Inc. and third parties.

**D.  Any Insurance Agreement That May Be Available
to Satisfy Part or All of a Judgment Against Saint-Gobain**

None.

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC.,

Dated:   August 5, 2005                    by:

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
Lowrie, Lando & Anastasi, LLP
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2005, a true copy of the foregoing was served by hand addressed to the following:

Laura L. Carroll, Esq.
Merton E. Thompson, Esq.
Anne C. Pareti, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

_____
Emily A. Berger

768917.1

4

# EXHIBIT 3

## to Defendant Pferd, Inc.'s Motion

## to Compel Deposition of Mary Porter

9/29/05

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., <br><br>        Plaintiff, <br><br> v. <br><br> PFERD, INC., <br><br>        Defendant. | Civil Action No.:  05-cv-40035 (FDS) |

**SAINT-GOBAIN ABRASIVES, INC.'S ANSWERS TO PFERD, INC.'S
<u>FIRST SET OF INTERROGATORIES</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Saint-Gobain

Abrasives, Inc. ("Saint-Gobain") hereby responds to the First Set of Interrogatories propounded

by Pferd, Inc. ("Pferd").

Saint-Gobain's investigations are ongoing, and Saint-Gobain reserves the right to

supplement, amend, or modify these responses if additional or different information is

discovered.

Saint-Gobain's responses are not to be construed as a waiver of any right or objection, or

as an admission of relevance, materiality, or admissibility of any information or document.

<u>General Objections</u>

The following general objections are incorporated by reference into each Answer set

forth hereafter.

1.      Saint-Gobain objects to interrogatories that call for information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege or protection.

2.      Saint-Gobain objects to these interrogatories as overly broad, unnecessarily burdensome, and calling for information that is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.

3.      Saint-Gobain objects to providing information that Saint-Gobain is under a legal or contractual duty not to disclose to a third party.

4.      Saint-Gobain objects to these interrogatories to the extent that they impose any duty beyond that specified in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

5.      Saint-Gobain objects to these interrogatories as unnecessarily burdensome to the extent they seek information already in Pferd's possession.

6.      Saint-Gobain objects to these requests to the extent they seek information not readily in the possession, custody or control of Saint-Gobain.

7.      Saint-Gobain objects to these interrogatories to the extent they seek information that Saint-Gobain has sought from Pferd through its discovery requests of Pferd.

8.      Saint-Gobain objects to these interrogatories to the extent they call for information that Saint-Gobain requires a reasonable opportunity to discover and analyze before providing a complete response.

9.      Saint-Gobain objects to these interrogatories to the extent they call for information not in existence at the time the suit was initiated.

10.     Saint-Gobain objects to these interrogatories as vague and ambiguous.

11.    Saint-Gobain objects to these interrogatories to the extent they seek Saint-Gobain's contentions on issues not raised in this suit and/or not material to an issue raised in this suit.

12.    Saint-Gobain objects to these interrogatories to the extent they are premature.

13.    Saint-Gobain's responses to these interrogatories are subject to and without waiver of any objections, including claims of privilege and/or work product.

## **Interrogatories**

Interrogatory No. 1

Identify each accused product.

ANSWER TO INTERROGATORY NO.1

Saint-Gobain objects on the grounds that this interrogatory is premature as Pferd has not yet provided any discovery with regard to its products.  Subject to the foregoing, Saint-Gobain states that it believes that some or all of Pferd's depressed center grinding wheels (Type 27) (as that phrase is used in Pferd's catalog, available on-line at http://www.pferd.com/images/PferdProducts/PDF_V20/206.PDF), that are specified for use with or provided with hubs that, when mounted on the grinding wheel, do not contact the outer, flat portion of the grinding wheel, infringe the claims of the '317 patent. Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully develop its infringement positions.


Interrogatory No. 2

Identify each claim of the '317 patent that Saint-Gobain asserts to be infringed by each accused product, and, for each such claim, identify where on each accused product is a backing

- 3 -

Saint-Gobain further objects to this interrogatory on the grounds that it is premature.  Saint-Gobain objects to this interrogatory as calling for a legal conclusion.  Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 15

Identify the persons (including, but not limited to, any patent lawyer, patent agent and/or Saint-Gobain employee) most knowledgeable about the preparation and prosecution of the application that led to the '317 patent.

ANSWER TO INTERROGATORY NO. 15

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party.  Saint-Gobain further objects to this interrogatory on the grounds that it is premature.  Saint-Gobain objects to this interrogatory as calling for a legal conclusion.  Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to the foregoing, Saint-Gobain states that its employee, Mary E. Porter, was primarily responsible for the preparation and prosecution of the application that led to the '317 patent.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.


Interrogatory No. 16

Identify any person you intend to all to testify as an expert at trial, and include the following: (a) the subject matter on which that person is expected to testify; (b) the substance of the facts and opinions to which that person is expected to testify; and (c) a summary of the ground for each such opinion

ANSWER TO INTERROGATORY NO. 16

Saint-Gobain objects to this interrogatory on the grounds that it is premature, as Saint-Gobain has not yet identified any fact or expert trial witness. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC.

Dated: September 29, 2005        by:

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

- 15 -

## VERIFICATION

The undersigned states that he is <u>PLANT MANAGER</u> at Saint-Gobain Abrasives, Inc., that he has read Saint-Gobain Abrasives, Inc.'s Answers to Pferd, Inc.'s First Set of Interrogatories, that he is authorized to sign this Verification, and that he is informed and believes that the facts stated in such responses are correct, based on the records of Saint-Gobain Abrasives, Inc. and information reasonably available to its employees, agents, and/or legal representatives.

Dated this 29th day of September, 2005.     SAINT-GOBAIN ABRASIVES, II.C.,

F. Guy Timm,

# EXHIBIT 4

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | NO. 05-40035-FDS |
| ) | |
| PFERD, INC., ) | |
| ) | |
| Defendant. ) | |

TO:    Matthew B. Lowrie, Esq.
       Aaron W. Moore, Esq.
       Emily A. Berger, Esq.
       Lowrie, Lando & Anastasi, LLP
       Riverfront Office Park
       One Main Street – 11th Floor
       Cambridge, MA 02142

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 30(b)(6), Defendant

Pferd, Inc. ("Pferd"), will take the deposition of Plaintiff Saint-Gobain Abrasives, Inc.

("Saint-Gobain"), at the office of Burns & Levinson LLP, 125 Summer Street, Boston,

MA 02110 on Monday, December 19, 2005, beginning at 10:00 a.m. Saint-Gobain is

instructed, pursuant to Fed. R. Civ. P. 30(b)(6), to designate one or more officers,

directors, managing agents, or other persons who consent to testify on Saint-Gobain's

behalf about each topic set forth in Schedule A. If Saint-Gobain does not presently have

a witness to designate for each topic, then Saint-Gobain is required to educate a witness

as to its position with respect to each such topic. Pferd requests that at least 72 hours

prior to the commencement of the deposition, Saint-Gobain identify the person(s) who

will testify on Saint-Gobain's behalf and indicate the topic(s) for which each such person

is designated. before a notary public, or before some other officer authorized by law to

administer oath.  The witness is required to testify on the topics listed in the attached

Schedule A.

You are invited to attend and cross-examine the witness.

PFERD, INC.,

By its attorneys,

Date:  November 29, 2005

Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel.  617-345-3000
Fax  617-345-3299

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand)(mail) on  11/29/05      .

## SCHEDULE A

### Definitions

1.     "Asserted Patent" means U.S. Patent Number 5,895,317 and all foreign counter-parts.

2.     "Grinding Wheel" means any depressed center grinding wheel (Type 27) made, used, sold imported or offered for sale by Saint-Gobain.

3.     "Hub" means any hub for a Grinding Wheel that, when mounted on the grinding wheel, does not contact the outer, flat portion of the grinding wheel.

4.     "Prior Art" means any publication, patent, physical device, prototype, use, sale, offer for sale, or other material, item, or activity concerning the subject matter of any of the Asserted Patent existing on or occurring before a date such as to be relevant under any subdivision of 35 U.S.C. §§ 102, 103, or 11.

### Topics

1.     Any decision by or on behalf of Saint-Gobain to acquire, design, develop, test, manufacture, sell, or offer for sale product(s) covered by the Asserted Patent.

2.     The prosecution of the Asserted Patent.

3.     The Prior Art known to Saint-Gobain before and/or during prosecution of the Asserted Patent.

4.     Saint-Gobain's purchase or evaluation of any Hubs sold or used with Grinding Wheels prior to the filing date of the Asserted Patent.

5.     Saint-Gobain's communications with third parties regarding its rights under the Asserted Patent.

6.     All facts and contentions supporting any Saint-Gobain allegation that any claim of the Asserted Patent is infringed by Pferd.

7.     Saint-Gobain's first knowledge or awareness of any Hub manufactured by Shakespeare Abrasive Industry Suppliers ("Shakespeare").

8.     Any statements, agreements, or communications to, from, with, or mentioning Shakespeare's provision of Hubs that are used with Grinding Wheels.

9.     Any statements by Saint-Gobain relating to Pferd..

10.     Communications between Saint-Gobain and any manufacturers, sales representatives, distributors, customers, and/or any other third-party that concern, the Asserted Patent, any Pferd product, Pferd, or this litigation.

11.     Any communications, agreements, settlements or licenses relating to the Asserted Patent.

12.     Any comparison by Saint-Gobain of the claims of the Asserted Patent with any Pferd product or the Grinding Wheels and/or Hubs of any third party.

13.     All facts and contentions supporting Saint-Gobain's allegation that the Asserted Patent is willfully infringed by Saint-Gobain.

14.     The organizational structure of Saint-Gobain from 1995 to present, including without limitation the organizational structure relating to research, development, manufacture, marketing, patenting, and/or licensing any Saint-Gobain Grinding Wheel sold or used with Hubs.

15.     Saint-Gobain's policies regarding document retention, document control and/or document destruction from 1995 to the present.

16.     The search for the documents requested in Pferd's First Request for the Production of Documents.

# EXHIBIT 5

## to Defendant Pferd, Inc.'s Motion

## to Compel Deposition of Mary Porter

## <u>Confidential</u>

## Filed under Protective Order.

# EXHIBIT 6

## to Defendant Pferd, Inc.'s Motion

## to Compel Deposition of Mary Porter

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC.,   )<br>  )<br>      Plaintiff,   )<br>  )<br>v.   )<br>  )<br>PFERD, INC.,   )<br>  )<br>      Defendant.   )<br>  ) | CIVIL ACTION<br>NO. 05-40035-FDS |

TO:    Matthew B. Lowrie, Esq.
         Aaron W. Moore, Esq.
         Emily A. Berger, Esq.
         Lowrie, Lando & Anastasi, LLP
         Riverfront Office Park
         One Main Street – 11th Floor
         Cambridge, MA 02142

## <u>NOTICE OF DEPOSITION</u>

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 30, Defendant

Pferd, Inc. ("Pferd") will take the deposition, upon oral examination, of Mary Porter, at

the office of Burns & Levinson LLP, 125 Summer Street, Boston, MA 02110 on

Wednesday, January 25, 2006, beginning at 10:00 a.m. The witness is required to bring

all documents and things available to her to the deposition which are responsive to

Pferd's First Request for the Production of Documents and Things, and which have been

or will be designated as attorney client privileged in this litigation. The deposition will

be recorded by videographic and stenographic means before a Notary Public in and for

the Commonwealth of Massachusetts or before some officer authorized to administer oaths and will continue from day to day until concluded.

You are invited to attend and cross-examine the witness.

**PFERD, INC.,**

By its attorneys,

Date:  January 18, 2006

Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel.  617-345-3000
Fax   617-345-3299

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this Notice of Deposition to be served, by electronic and First Class Mail upon the following counsel of record:

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142

Dated: January 18, 2006

Merton E. Thompson

# EXHIBIT 7

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

January 19, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*lcarroll@burnslev.com*

Laura L. Carroll, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

      Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
               Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
               <u>Our File No. S1432-6004</u>

Dear Laura:

      We are in receipt of Pferd's Notice of Deposition of Mary Porter, which was served after the close of business yesterday and noticed for Wednesday. Not only is Ms. Porter unavailable on Wednesday, the request is unreasonable since the notice period, less than five business days, is manifestly insufficient.

      In addition, it is unclear on what basis Pferd would be seeking a deposition of Saint-Gobain's Intellectual Property Counsel. I am certain that, were Saint-Gobain to notice the deposition of you or Mr. Thompson, you would demand an explanation of why such a deposition is appropriate. Here, Saint-Gobain will not permit the deposition of a lawyer who has worked on this matter, absent the legitimate need for such a deposition. Certainly, testimony on legal issues such as claim construction or the prosecution history of the patent-in-suit does not qualify. As a result, before we would entertain the notion of allowing such a deposition, we would need a narrow list of topics for the testimony, even had the deposition been timely noticed, which it was not.

      In short, the deposition will not be going forward next Wednesday.

      Sincerely,

      LOWRIE, LANDO & ANASTASI, LLP

      Emily A. Berger

EAB/cdd

# EXHIBIT 8

## to Defendant Pferd, Inc.'s Motion

## to Compel Deposition of Mary Porter

BURNS & LEVINSON LLP

125 SUMMER STREET BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
WWW.BURNSLEV.COM

LAURA L. CARROLL
617.345.3339
LCARROLL@BURNSLEV.COM

January 20, 2006

*VIA EMAIL and BY MAIL*

Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th floor
Cambridge, MA  02142

> Re:  *Saint-Gobain Abrasives, Inc. v. Pferd, Inc.*
>      *U.S.D.C. (D. Mass.) Civil Action No. 05-40035-FDS*

Dear Emily:

I am writing in response to your letter yesterday to me concerning our recent deposition notice to Mary Porter.

We do not think your complaints concerning our intent to take Ms. Porter's deposition are warranted. We are not proposing to examine her concerning this lawsuit, just as we do not propose to depose you or Matt, and assume you do not propose to depose Merton or me. Indeed, we had not realized that we would need to depose her, until Guy Timm, Saint-Gobain's Rule 30(b)(6) witness, expressed ignorance at his deposition last Tuesday, January 17, on a number of the topics in our notice (none of which you objected to, I should add), and indicated that Ms. Porter would be the person at Saint-Gobain most knowledgeable about them. As simply one example, Mr. Timm had no idea of the origin of the primary references cited in the '317 patent. Mr. Timm also testified about highly material prior art known to him at the time of the application which led to the '317 patent, which was not submitted to the U.S. Patent Office; I believe we are entitled to examine Ms. Porter on that issue as well. It also became clear at Mr. Timm's deposition that there were a number of relevant documents, which Saint-Gobain has not produced, many of which were authored by Ms. Porter. We have asked that they be produced immediately. In addition, since those documents involved communications with third parties concerning the '317 patent, I cannot imagine that Ms. Porter's testimony concerning those communications (whether oral or in writing) would be privileged.

We realize that our deposition notice provided only one week's notice for Ms. Porter's deposition. Please note, however, that we sent you the notice within one day of Mr. Timm's deposition; in our view, we have acted promptly, and not unreasonably, as you contend. If Ms. Porter is not available next Wednesday, January 25, we are willing to work with you to find a

00986610

Emily A. Berger, Esq.
January 20, 2006
Page 2

BURNS & LEVINSON LLP

date convenient for Ms. Porter and counsel for her deposition, and to make an appropriate
motion for a short extension of the current discovery schedule, if necessary in order to take her
deposition. Please propose some dates at your earliest convenience.

Sincerely,

Laura L. Carroll

cc:     Pferd, Inc.
        James H. Belanger, Esq.
        Merton E. Thompson, Esq.

00986610

# EXHIBIT 9

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

January 23, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*lcarroll@burnslev.com*

Laura L. Carroll, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02210

Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
       Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
       <u>Our File No. S1432-6004</u>

Dear Laura:

I write in response to the letter you sent to me on Friday night regarding the deposition of Mary Porter that Pferd recently noticed. We re-emphasize our position as stated in my letter of January 19, 2006. Your letter states that you are "not proposing to examine her concerning this lawsuit." It seems to me that there can be no relevant information that you would be seeking from Ms. Porter that does not concern this lawsuit. It is still unclear, then, on what basis you do intend to examine her and why you did not provide notice of your intent to depose her earlier.

Your allegation that you "had not realized that [Pferd] would need to depose her" until after Pferd took its 30(b)(6) deposition of Saint-Gobain is no excuse. Pferd was well aware of Ms. Porter and her role in the company long before the 30(b)(6) took place. Further, it was December 5, 2005 when I notified you that Saint-Gobain would be producing Guy Timm as a corporate representative for a deposition in January. Pferd never made any response or indication that it had any expectation that it would seek testimony from Ms. Porter as an individual.

Finally, some, if not all, of the limited issues that you contend entitle you to examine Ms. Porter are faulty. For example, you indicate that there are "a number of relevant documents, which Saint-Gobain has not produced, many of which were authored by Ms. Porter." Which documents are you referring to? As I indicated in my letter earlier today, Saint-Gobain produced Ms. Porter's communications with third parties concerning the '317 patent two months ago. There is, again, no excuse for the late notice as to why you could not have sought her deposition on these documents at that time.


LOWRIE, LANDO
&ANASTASI, LLP
*Devoted to Intellectual Property Law*

Laura L. Carroll, Esq.
January 23, 2006
Page 2


    We had already agreed to extend the discovery period to January 26, 2006 in order to accommodate the depositions of those persons we had agreed upon in December.  You have still provided no basis as to why we should agree to extend the discovery period for purposes of your deposing Saint-Gobain's Intellectual Property Counsel.


                        Sincerely,

                        LOWRIE, LANDO & ANASTASI, LLP

                        Emily A. Berger

EAB/cdd

# EXHIBIT 10

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter

BURNS & LEVINSON LLP

125 SUMMER STREET BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
WWW.BURNSLEV.COM

LAURA L. CARROLL
617.345.3339
LCARROLL@BURNSLEV.COM

January 23, 2006

*VIA EMAIL and BY MAIL*

Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th floor
Cambridge, MA  02142

> *Re:*   *Saint-Gobain Abrasives, Inc. v. Pferd, Inc.*
> <u>*U.S.D.C. (D. Mass.) Civil Action No. 05-40035-FDS*</u>

Dear Emily:

I am writing in response to your letter this afternoon to me concerning our deposition notice to Mary Porter, and in accordance with Local Rule 7.1(A)(2).

We remain firmly of the view that your protestations about our notice to take Ms. Porter's deposition are without merit.  In response to Pferd's Rule 30(b)(6) notice, Saint-Gobain did not object to any of the identified topics, and produced Guy Timm as its sole witness.  We therefore reasonably assumed that Mr. Timm would have educated himself as to Saint-Gobain's knowledge of the topics in our deposition notice.  As I trust Matt Lowrie can tell you, at his deposition last Tuesday, January 17, Mr. Timm expressed complete ignorance on a number of critical topics in this case, including the prosecution of the '317 patent, prior art (both prior art disclosed to the USPTO and prior art known to Norton/Saint-Gobain and not disclosed), and Saint-Gobain's prior efforts to enforce the '317 patent.  In addition to confessing his ignorance, Mr. Timm repeatedly testified that Ms. Porter was the person at Saint-Gobain with knowledge on those topics.  Accordingly, we sent you a deposition notice for Ms. Porter the day after Mr. Timm's deposition, January 18.

Your apparent indignation that we want to depose Ms. Porter rings hollow – we note that Saint-Gobain previously identified Ms. Porter as a knowledgeable fact witness in its responses to Pferd's interrogatories.  We had hoped to obtain the information we sought through our Rule 30(b)(6) deposition.  Since Saint-Gobain ignored its obligations under that rule to provide a witness knowledgeable about all of the noticed topics, we are proceeding with depositions of a witness your Rule 30(b)(60 witness identified as knowledgeable.

00987015

Emily A. Berger, Esq.
January 23, 2006
Page 2

BURNS ⚭ LEVINSON LLP

Finally, we reject your contention that we are providing you with "late notice" of this deposition, or that we are seeking to extend the discovery schedule. We sent you the notice for Ms. Porter's deposition within a day after the conclusion of Mr. Timm's deposition, we provided a full week's notice of that deposition, and we noticed her deposition for January 25, a date within the current discovery deadline. The only reason I mentioned a possible extension of discovery in my January 20 letter was to accommodate Ms. Porter, since you indicated she was not available on January 25.

Please advise me by no later than tomorrow (January 24) whether you will produce Ms. Porter for deposition on Wednesday, January 25, or as soon thereafter as Ms. Porter is available. If you are unwilling to do so, we intend to make a motion to compel.

Sincerely,

Laura L. Carroll

cc:    Pferd, Inc.
       James H. Belanger, Esq.
       Merton E. Thompson, Esq.

00987015

# EXHIBIT 11

to Defendant Pferd, Inc.'s Motion

to Compel Deposition of Mary Porter

BURNS *&* LEVINSON LLP

125 SUMMER STREET BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
WWW.BURNSLEV.COM

LAURA L. CARROLL
617.345.3339
LCARROLL@BURNSLEV.COM

January 24, 2006

*VIA EMAIL and BY MAIL*

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th floor
Cambridge, MA  02142

> **Re:** ***Saint-Gobain Abrasives, Inc. v. Pferd, Inc.***
> ***U.S.D.C. (D. Mass.) Civil Action No. 05-40035-FDS***

Dear Matt and Emily:

I am writing you pursuant to Local Rules 37.1 and 7.1(A)(2), which, as you know, require us to confer (in person or by telephone), in a good faith effort to resolve or narrow our areas of disagreement to the greatest extent possible, before we file a motion to compel. At this time, notwithstanding Pferd's repeated efforts to obtain needed discovery from Saint-Gobain, it appears we have discovery disputes concerning the following:

(1)  Saint-Gobain's refusal to produce Mary Porter for deposition;

(2)  Saint-Gobain's failure to provide adequate answers to Pferd's Interrogatory Nos. 2-5, 8-10, and 12-14; and

(3)  Saint-Gobain's failure to produce documents responsive to Pferd's Document Requests Nos. 7-11, 13-15, 17-19, 23, 24, 34, 36-38, and 40;

In an effort to clarify and focus our dispute concerning the adequacy of Saint-Gobain's document production, we have proposed that the parties produce privilege logs and supplemental document responses, which identify with particularity the documents each party has produced in response to each document request, by tomorrow, Wednesday, January 25. We are prepared to do so.

Please let us know immediately when you are available tomorrow, Wednesday, January 25, to confer with us by telephone concerning these matters, in accordance with Local Rules 37.1 and 7.1(A)(2).

00987438

MASSACHUSETTS ⠿ RHODE ISLAND ⠿ DISTRICT OF COLUMBIA

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
January 24, 2006
Page 2

BURNS & LEVINSON LLP

Sincerely,

Laura L. Carroll

cc:     Pferd, Inc.
        James H. Belanger, Esq.
        Merton E. Thompson, Esq.

00987438

MASSACHUSETTS ⠿ RHODE ISLAND ⠿ DISTRICT OF COLUMBIA