## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., )<br><br>                          Plaintiff,<br><br>v.<br><br>PFERD, INC.,<br><br>                          Defendant. | CIVIL ACTION<br>NO. 05-40035-FDS |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS

### MOTION TO COMPEL DISCOVERY

#### Introduction

Saint-Gobain Abrasives, Inc. ("Saint-Gobain") is a Plaintiff who refuses to make

its case. At present, nearly a year after this patent infringement action was filed, Saint-

Gobain has yet to crystallize its theory of infringement, even though it has been aware of

the key claim construction issues since the first communications between the parties.

Defendant Pferd, Inc. ("Pferd"), recognizing that clarification of the lynchpin issues

could resolve this case efficiently, has repeatedly requested in discovery that Saint-

Gobain express its theory of infringement and claim constructions and has been met with

stonewalling, refusals and denials. Pferd makes this motion after having exhausted all

reasonable avenues of informal resolution.

On January 26, 2006, the parties' lead counsels had a telephonic discovery

conference pursuant to Local Rule 37.1(a) to discuss unanswered discovery requests on

both sides.  In response to Plaintiff's position that Pferd's Preliminary Invalidity

Contentions were insufficient, Defendant Pferd promised to, and did, serve revised

contentions on Plaintiff that same day.  Plaintiff acknowledged its failure to produce the

information Defendant had requested throughout discovery prior to that date.  These

discovery requests include Defendant's First Set of Interrogatories and First Requests for

Production to Plaintiff.  Defendant Pferd propounded these requests on August 10, 2005.

To date, Plaintiff has not responded at all, or insufficiently responded, to most of these

requests.

        In an effort to reduce or focus the issues with regard to sufficiency of document

production, the parties had agreed to supplement their respective Responses to Request

for Document Production and identify by Bates No. which documents were produced in

response to each numbered request (See Exhibit A).  While Pferd has provided its

supplemental response, Saint-Gobain has not and now reneges on its promise to do so

(See Exhibits B and C).  On January 26, 2006 counsel had a telephone discussion

regarding the filing of this motion.  No resolution was reached in this discussion.

**Areas of Dispute**

        There are several apparent causes for the lack of responsiveness of Saint-Gobain.

First is Saint-Gobain's view of relevance.  For example, Pferd is seeking documents and

information regarding the first commercialization of the subject matter of the 5,895,317

("'317 patent"); accordingly, Pferd propounded its Interrogatory No. 12 (See Exhibit D).

Interrogatory No. 12

        For each claim of the '317 patent, state the date and circumstances of the first
commercial activities involving the subject matter claimed including, but not limited to,
offers for sale.

Saint-Gobain responded: "Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that its products that are covered by the claims of the patent-in-suit or may be used in systems or in ways that would be covered by the patent-in-suit and states that none of these products was made public or offered for sale prior to the earliest effective filing date for the patent-in-suit.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses."

Discovery obtained from a third party and Saint-Gobain's admissions in its Rule 30(b)(6) deposition firmly establish that Saint-Gobain was in fact commercializing an embodiment disclosed in the '317 patent prior to the filing date of the patent application that later matured into the '317 patent. (See Exhibit E, p. 30.) When pressed during the January 26th teleconference on the issue of why it had not provided a true answer to Interrogatory 12, or provided so much as a single document in response to a related document request, Saint-Gobain took the position that commercial activities are not relevant to liability issues if they occur less than one year before the date of application for patent and therefore, as discovery as to liability only was ongoing, it would not respond. (See Exhibits E and F.) Saint-Gobain should not be allowed to determine whether a document is relevant to a discrete issue in the case. Any request that appears "reasonably calculated to lead to the discovery of admissible evidence" is appropriate in discovery. As Pferd considers issues such as the first commercialization activities involving the Saint-Gobain mini-hub as likely to lead to discovery of admissible evidence, this Court should compel production on all identified requests.

A second area that is a source of discovery problems is Saint-Gobain's overbroad interpretation of the Attorney-Client Privilege. In a privilege log served on January 25, 2006, Saint-Gobain is asserting privilege and refusing to produce any non-public documents (or answer interrogatories) relating to the underlying invention and

prosecution of the '317 patent (See Exhibit G).  Communications between an inventor and patent counsel are not inherently privileged unless they contain an express request for, or provision of, legal advice.  *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298 at 302-304 (E.D.N.Y. 1992).  In the interest of efficient resolution, Pferd asks that this Court order Saint-Gobain to deliver documents designated Nos. 1-20, 45, 52-54, 95-104, 112-117 and 130 in its privilege log for an *in camera* review, so that the appropriateness of the designation can be evaluated in confidence.  Discovery as to the actions of Saint-Gobain in prosecuting its patent is highly relevant to Pferd's defense of invalidity for inequitable conduct and can not be had from any other source.  The basis for Pferd's investigation on inequitable conduct is that discovery obtained from a third party and Saint-Gobain's admissions in its Rule 30(b)(6) deposition establish that Saint-Gobain was in possession of material prior art that was not disclosed to the USPTO (See Exhibit E).

A third source of discovery conflict is Saint-Gobain's refusal to substantiate the basis for its claim.  For example, Defendant Pferd specifically asked Plaintiff Saint-Gobain by interrogatory to provide constructions of key patent claim terms that would shed light on how Saint-Gobain contends the Accused Device of Pferd infringes.

Interrogatory No. 3

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused product, state Saint-Gobain's construction of each claim element identified in this Response to Interrogatory No. 2.

ANSWER TO INTERROGATORY NO. 3

[form objections omitted]
Subject to the foregoing, Saint-Gobain states that the terms of the claims have their ordinary meaning but reserves the right to amend this response as discovery proceeds.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully state its infringement positions.

Saint-Gobain refuses to supplement its answer to this interrogatory, even though Pferd, in response to Saint-Gobain's contention interrogatory, has provided its Non-Infringement Contentions including constructions of key claim terms (See Exhibit H). Pferd sent five letters to Saint-Gobain requesting that it answer this Interrogatory (among others) which were propounded last August. This conduct is particularly specious as Saint-Gobain has now moved to exclude Pferd's Invalidity Defenses while at the same time refusing to provide the information that is critically relevant to both Pferd's Invalidity Contentions and Non-Infringement Contentions.

The last impediment to cooperative discovery is litigation misconduct on the part of Saint-Gobain. As mentioned previously, in an effort to reduce or focus the issues with regard to sufficiency of document production, the parties had agreed to supplement their respective Responses to Request for Document Production and identify by Bates No. which documents were produced in response to each numbered request (See Exhibit A). Pferd has provided its supplemental response; Saint-Gobain has not and now reneges on its promise to do so (See Exhibits B and C). Saint-Gobain should be compelled to keep its word.

In the Local Rule 37.1 conference held January 26, 2006, counsel for Saint-Gobain promised to provide answers to Pferd's Interrogatories 3, 4, 8 and 14 by February 3, 2006, and to review the sufficiency of its document production. Counsel for Pferd stated that it would not move to compel answers until it reviewed the promised responses. In a letter dated January 26, 2006, counsel for Saint-Gobain acknowledged that it

promised answers to Interrogatories 3, 4 and 8 (omitting 14), but sought to exact

additional concessions or qualifications (See Exhibit C).  In a letter dated January 27,

2006, counsel for Pferd pointed out inaccuracies in Saint-Gobain's characterizations (See

Exhibit I).  In its letter of January 27, 2006, Saint-Gobain confirmed its refusal to produce

documents and maintained that Pferd should be precluded from moving to compel even

though the parties had agreed to wait until the promised responses were delivered (See

Exhibit F).

Defendant respectfully moves this court to order Plaintiff, Saint-Gobain, to supply

the requested production of documents and answers to interrogatories in Pferd's

discovery requests.  Specifically, Plaintiff owes Pferd responses or supplementations to

Defendants' Requests for Production of Documents and Interrogatories.  This requested

information is provided below, as copied from Pferd's original discovery requests and

Saint-Gobain's Responses to Interrogatories and Document Requests (See Exhibits D and

J).


### Defendant's Discovery to Plaintiff


## DEFENDANT'S FIRST SET OF INTERROGATORIES

Interrogatory No.2

Identify each claim of the '317 patent that Saint-Gobain asserts to be infringed by
each accused product, and, for each such claim, identify where on each accused product
is a backing flange that has a substantially concave surface adapted to face the backing
face; and where on each accused product is an annular engagement surface adapted to
engage the backing face of the wheel proximate an outermost circumference of the
depressed center of the wheel.

**Plaintiff's Response**

Incomplete response received.

Interrogatory No. 3

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused product, state Saint-Gobain's construction of each claim element identified in this Response to Interrogatory No. 2.

**Plaintiff's Response**

Incomplete response received.

Interrogatory No. 4

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused product, under the doctrine of equivalents, state the basis for such assertion for each such product on an element by element basis.

**Plaintiff's Response**

No response received.

Interrogatory No. 5

Specify all objective evidence of nonobviousness for the claims of the '317 patent upon which Saint-Gobain may rely and state the basis and nexus thereof.

**Plaintiff's Response**

No response received.

Interrogatory No. 8

For each claim of the '317 patent, state the date of conception and the date of reduction to practice of the subject matter claimed.

**Plaintiff's Response**

Incomplete response received.

Interrogatory No. 9

For each claim of the '317 patent, state the date of first disclosure of the subject matter claimed to any person not employed by Saint-Gobain.

**<u>Plaintiff's Response</u>**

No response received.

<u>Interrogatory No. 10</u>

Identify all products made by Saint-Gobain that fall within the scope of the claims of the '317 patent.

**<u>Plaintiff's Response</u>**

No response received

<u>Interrogatory No. 12</u>

For each claim of the '317 patent, state the date and circumstances of the first commercial activities involving the subject matter claimed including, but not limited to, offers for sale.

**<u>Plaintiff's Response</u>**

Factually incorrect response received.

<u>Interrogatory No. 13</u>

Identify all items of prior art relevant to the subject matter disclosed and/or claimed in the '317 patent in the custody and/or control of Saint-Gobain, including Saint-Gobain's patent prosecution counsel.

**<u>Plaintiff's Response</u>**

Incomplete response received.

<u>Interrogatory No. 14</u>

Describe the person of ordinary skill in the art at the time of the alleged invention of the subject matter claimed in the '317 patent.

**<u>Plaintiff's Response</u>**

No response received.

## DEFENDANT'S REQUESTS FOR PRODUCTION

Document Request No. 1

    All documents and things concerning the conception, development activities, and reduction to practice of the subject matter of each claim of the '317 patent.

**Plaintiff's Response**

    Although the inventor admitted to working on the invention for years before filing, performing in-house testing, revising his design and providing an invention disclosure in writing, Saint-Gobain has produced but 2 single page engineering drawings in response to this request.(See Exhibit E, pp. 14-16)

Document Request No. 2

    All documents and things concerning development of the subject matter disclosed and/or claimed in the '317 patent.

**Plaintiff's Response**

    Although Saint-Gobain admitted to working on the invention for years before filing, performing in-house testing, revising his design and providing an invention disclosure in writing, Saint-Gobain has produced but 2 single page engineering drawings in response to this request. (See Exhibit E, pp. 14-16)

Document Request No.3

    All documents and things concerning disclosures to others of any aspect of the subject matter of the claims of the '317 patent made prior to December 18, 1995.

**Plaintiff's Response**

    Although Saint-Gobain admitted to reducing at least one disclosed embodiment of its invention to practice prior to the critical date of the '317 patent and admitted that a third party vendor used to make parts as described in said disclosed embodiment of '317 patent "was in the plant almost every day," Saint-Gobain has produced but 1 single page engineering drawing in response to this request. (See Exhibit E, pp. 15, 30, 34 and 35)

Document Request No. 4

    All documents and things concerning all efforts to commercialize the subject matter disclosed and/or claimed in the '317 patent made prior to December 18, 1995.

**Plaintiff's Response**

      Although Saint-Gobain admitted to reducing at least one disclosed embodiment of its invention to practice prior to the critical date of the '317 patent and admitted that a third party vendor used to make parts as described in said disclosed embodiment of '317 patent "was in the plant every day," Saint-Gobain has produced but 1 single page engineering drawing in response to this request. (See Exhibit E, pp. 15, 30, 34 and 35)

Document Request No. 5

      All documents and things concerning experiments referring or relating to the subject matter disclosed and/or claimed in the '317 patent.

**Plaintiff's Response**

      Although Saint-Gobain admitted to working on the invention for years before filing, performing in-house testing, revising his design and providing an invention disclosure in writing, Saint-Gobain has produced not one document in response to this request. (See Exhibit E, pp. 14-16)

Document Request No. 6

      All documents and things concerning the contributions of each person who contributed to the development of the subject matter disclosed and/or claimed in the '317 patent.

**Plaintiff's Response**

      Although Saint-Gobain admitted to working on the invention for years before filing, performing in-house testing, revising his design, having assistance from a third party and providing an invention disclosure in writing, Saint-Gobain has produced not one document in response to this request. (See Exhibit E, pp. 14-16)

Document Request No. 7

      All documents and things concerning any communication with a third party about the subject matter disclosed and/or claimed in the '317 patent prior to the filing of the application leading to the '317 patent.

**Plaintiff's Response**

      Although documents late received from third parties and Saint-Gobain's own admissions established that Saint-Gobain had product covered by at least one disclosed embodiment of its invention made by a third party and contracted for the manufacture and sale of product covered by at least one disclosed embodiment of its invention at least 5 months prior to filing, Saint-Gobain has produced not one document in response to this request. (See Exhibit E, pp. 15, 30-32, 34 and 35)

Document Request No. 8

All documents and things concerning prior art known by Saint-Gobain that pertains to the subject matter disclosed and/or claimed in the '317 patent, whether or not cited to the U.S. Patent and Trademark Office, including, but not limited to, hubs, flanges, wheels, specifications, catalogs, shop drawings, patents, published patent applications, books, journals, manuals, articles, course materials, seminar materials, and drawings.

**Plaintiff's Response**

Although Saint-Gobain admitted it was aware and in possession of a key piece of prior art prior to the critical date and that said prior art was a closer reference to the primary art disclosed and relied upon by the USPTO, Saint-Gobain has produced not one responsive document that was not already part of the file history of the '317 patent. (See Exhibit E, p. 57)

Document Request No. 9

All documents and things concerning objective evidence of nonobviousness of the subject matter claimed in the '317 patent.

**Plaintiff's Response**

Although Pferd propounded Invalidity Contentions that detailed evidence of obviousness, Saint-Gobain has produced not one document in response to this request.  It stated in its Response: "Saint-Gobain declines to respond to this Request at this time unless and until Pferd produces evidence of obviousness."

Document Request No. 10

All documents and things concerning the preparation and prosecution of the application leading to the '317 patent.

**Plaintiff's Response**

Saint-Gobain has produced not one responsive document that was not already part of the public file history of the '317 patent.

Document Request No. 11

All documents and things concerning the preparation and prosecution of each and every patent application that claims priority from (or the benefit of the filing date of) the application leading to the '317 patent, including patent applications filed in countries other than the United States.

**Plaintiff's Response**

Saint-Gobain has produced not one responsive document that was not already part of the public file history of the '317 patent or the public file histories of foreign counterparts thereof.

Document Request No. 13

     All documents and things concerning patentability searches and/or opinions pertaining to the subject matter disclosed and claimed in the '317 patent.

**Plaintiff's Response**

     Saint-Gobain has produced not one responsive document.

Document Request No. 14

     All documents and things concerning opinions or studies that have been conducted to ascertain the scope, validity, or enforceability of the '317 patent.

**Plaintiff's Response**

     Although Saint-Gobain admitted to conducting evaluations of potential infringers, Saint-Gobain has produced not one responsive document. (See Exhibit E, p. 101)

Document Request No. 15

     All documents and things concerning each equivalent known or foreseen by Saint-Gobain for any of the structures or features recited by Saint-Gobain in claims prior to the time of issuance of the '317 patent.

**Plaintiff's Response**

     Saint-Gobain has produced not one responsive document

Document Request No. 17

     All documents and things concerning Saint-Gobain's use of the subject matter disclosed and/or claimed in the '317 patent.

**Plaintiff's Response**

     Although documents late received from third parties and Saint-Gobain's own admissions established that Saint-Gobain had product covered by at least one disclosed embodiment of its invention made by a third party and contracted for the manufacture and sale of product covered by at least one disclosed embodiment of its invention at least 5 months prior to filing, Saint-Gobain has produced not one document in response to this request. (See Exhibit E, pp. 15, 30-32, 34 and 35)

Document Request No. 18

All documents and things concerning Saint-Gobain's use of the subject matter disclosed and/or claimed in the '317 patent to manufacture products for sale.

**Plaintiff's Response**

Although documents late received from third parties and Saint-Gobain's own admissions established that Saint-Gobain had product covered by at least one disclosed embodiment of its invention made by a third party and contracted for the manufacture and sale of product covered by at least one disclosed embodiment of its invention at least 5 months prior to filing, Saint-Gobain has produced not one document in response to this request.  (See Exhibit E, pp. 15, 30-32, 34 and 35)

Document Request No. 19

All documents and things concerning the efforts of Saint-Gobain to commercialize the subject matter disclosed and/or claimed in the '317 patent.

**Plaintiff's Response**

Although documents late received from third parties and Saint-Gobain's own admissions established that Saint-Gobain had product covered by at least one disclosed embodiment of its invention made by a third party and contracted for the manufacture and sale of product covered by at least one disclosed embodiment of its invention at least 5 months prior to filing, Saint-Gobain has produced not one document in response to this request. (See Exhibit E, pp. 15, 30-32, 34 and 35)

Document Request No. 23

All patent procurement policies and patent licensing policies of Saint-Gobain.

**Plaintiff's Response**

Saint-Gobain has produced not one document in response to this request.

Document Request No. 24

All documents and things concerning all steps taken by Saint-Gobain to enforce the '317 patent against any third party, including, but not limited to, charges of infringement of the '317 patent and/or offers of license in and/or to the '317 patent.

**Plaintiff's Response**

Although Saint-Gobain admitted to conducting evaluations of potential infringers, Saint-Gobain has produced not one responsive document. (See Exhibit E, p. 101)

Document Request No. 34

To the extent not covered elsewhere in these requests, all opinions or studies concerning each accused product.

**Plaintiff's Response**

Although Saint-Gobain admitted to conducting evaluations of potential infringers, Saint-Gobain has produced not one responsive document (See Exhibit E, p. 101)

Document Request No. 36

To the extent not covered elsewhere in these requests, all documents and things concerning the '317 patent and corresponding patents and patent applications issued and/or filed in countries other than the United States.

**Plaintiff's Response**

Saint-Gobain has produced not one non-public responsive document.

Document Request No. 38

To the extent not covered elsewhere in the requests, all documents and things concerning any information that refutes any of the allegations in the pleadings.

**Plaintiff's Response**

Although Saint-Gobain admitted it was aware and in possession of a key piece of prior art prior to the critical date and that said prior art was a closer reference to the primary art disclosed and relied upon by the USPTO, Saint-Gobain has produced not one responsive document that was not already part of the file history of the '317 patent. (See Exhibit E, p. 50)

Document Request No. 40

To the extent not covered elsewhere in the requests, all documents and things identified in response to Pferd's First Set of Interrogatories or otherwise relied on as a source of responsive information to the Interrogatories.

**Plaintiff's Response**

Saint-Gobain has yet to fulfill its obligation to answer Interrogatories and as such it is impossible to evaluate its response.

## <u>CONCLUSION</u>

As demonstrated above, Defendant has not received responses to most of its discovery requests.  Pferd not only needs this information in preparation for trial, but it is essential for Plaintiff to sustain any of the claims it asserts against Defendant.

Accordingly, Defendant requests that this court compel Plaintiff to produce all documents, answers and responses that have been identified above as missing or insufficient.

Defendant certifies under Local Rules 7.1 and 37.1 that conferences were held in a good faith attempt to narrow the issues raised herein.

**PFERD, INC.,**

By its attorneys,

Date:  February 3, 2006

   /s/ Merton E. Thompson
Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel.  617-345-3000
Fax   617-345-3299

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that today I caused a true and correct copy of this Notice of

Deposition to be served, by electronic and First Class Mail upon the following counsel of

record:

      Matthew B. Lowrie, Esq.
      Emily A. Berger, Esq.
      Lowrie, Lando & Anastasi, LLP
      Riverfront Office Park
      One Main Street – 11th Floor
      Cambridge, MA 02142


Dated: February 3, 2006             _____/s/ Merton E. Thompson_____
                              Merton E. Thompson

**<u>EXHIBIT A</u>**



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

**Emily A. Berger**
eberger@LL-A.com
direct dial 617-395-7038

January 19, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*mthompson@burnslev.com*

Merton E. Thompson Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

      Re:   Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
             Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
             <u>Our File No. S1432-6004</u>

Dear Merton:

      You ask for Saint-Gobain's claim constructions.  We will agree to a mutual date of exchange of disputed terms, followed by a mutual date of exchange of each party's proposed constructions.

      I also propose that we set a mutual date of exchange for privilege logs, immediately following the close of liability discovery, on January 27, 2006.   Please let me know if you will agree.

      You also request additional discovery, but are not very specific.  Please explain what exactly you believe you do not have and specifically which document requests are at issue.

      Finally, we will agree to identify the documents responsive to each document request, if you will agree to do the same.  Please let me know on which day you would like to make a mutual exchange of Supplemental Responses to both parties' document requests which include a listing of documents responsive to each individual request.

      I look forward to hearing from you.

                Sincerely,

                LOWRIE, LANDO & ANASTASI, LLP

                Emily A. Berger

EAB/cdd

**EXHIBIT B**

BURNS & LEVINSON LLP

MERTON E. THOMPSON
617.345.3697
MTHOMPSON@BURNSLEV.COM

125 SUMMER STREET BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
WWW.BURNSLEV.COM

BY EMAIL AND FIRST CLASS MAIL

January 24, 2006

Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, Eleventh Floor
Cambridge, MA  02142

Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
       U.S.D.C. (D. Mass.) Civil Action No. 05-40035 FDS

Dear Emily:

I am writing to respond to your letter of January 24, 2006 and pursuant to Local Rule 7.1(A)(2).

Notwithstanding your attempt to create an obligation, Pferd is under no duty to produce any further claim constructions at this point in the case.  As you know, Saint-Gobain propounded discovery requests relating to claim construction that sought:

**Interrogatory No. 4:**

> For each Grinding Wheel and Hub identified in the answer to Interrogatory No. 3, and for each claim of the '317 patent, please identify any claim limitation that Pferd asserts is not met when the Hub is mounted on the Grinding Wheel, and for each such limitation (i) state the basis for your interpretation of the claim limitation, (ii) state the basis for your reasons why such limitation is not met literally, (iii) state the basis for your reasons why the limitation is not met by equivalents, and (iv) identify any facts, evidence, and documents in support thereof.

Pferd has complied fully with this request through, *inter alia*, its Preliminary Non-Infringement Contentions, by identifying in detail which limitations of the claims of the '317 patent are not met by the Accused Product, Pferd's construction of the limitations, Pferd's analysis of literal and equivalent infringement, and facts, testimony and documents in support thereof.

00987229

MASSACHUSETTS ::: RHODE ISLAND ::: DISTRICT OF COLUMBIA

Emily A. Berger, Esq.
January 24, 2006
Page 2

BURNS *&* LEVINSON LLP

Saint-Gobain is, and has been for many months, obligated to respond to Pferd's Interrogatories, including:

> 3.    For each claim of the '317 patent that Saint-Gobain asserts is infringed by an accused product, state Saint-Gobain's construction of each claim element identified in its Response to Interrogatory No. 2.

Saint-Gobain has failed to respond to this Interrogatory, among many others. Liability fact discovery closes on January 26, 2006. Absent a satisfactory response, we will proceed with a Motion to Compel Answers to this and other Interrogatories identified in my letter of January 23, 2006.

In addition, Saint-Gobain is, and has been for many months, obligated to provide a Privilege Log as required by the Fed. R. Civ. P. and Pferd's Interrogatories, to wit:

> 8.    If Saint-Gobain objects to fully identifying a document or communication because of an asserted privilege or protection, the document or communication must still be described in sufficient detail for Pferd to assess the applicability of the asserted privilege or protection, as set forth in Fed. R. Civ. P. 26(b)(5). Accordingly, without limitation, the date, type, author (or speaker), recipient, and general subject matter of any such document or communication must be identified.

Pferd will provide its Privilege Log detailing any pre-suit documents Pferd asserts are privileged on January 25, 2006, and requires that Saint-Gobain provides its Privilege Log on January 25th as well. Your proposal that privilege logs be exchanged after close of discovery is unacceptable. Liability fact discovery closes on January 26, 2006. Absent a satisfactory response, we will proceed with a Motion to Compel production of a Privilege Log.

I understand that we have agreed to provide supplemental responses identifying which particular documents each party has produced in response to each party's numbered Document Requests. Pferd will provide its supplemental response on January 25, 2006. Please advise whether Saint-Gobain will be prepared to provide its identification of which particular documents it has produced in response to each of Pferd's numbered Document Requests on January 25, 2006. Liability fact discovery closes on January 26, 2006. Absent a satisfactory response, we will

Emily A. Berger, Esq.
January 24, 2006
Page 3

BURNS & LEVINSON LLP

proceed with a Motion to Compel production of a Supplemental Response.

Truly,

Merton E. Thompson
Attorney

cc:    Pferd, Inc.
       James H. Belanger, Esq.
       Laura L. Carroll, Esq.

**<u>EXHIBIT C</u>**



Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

January 26, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*mthompson@burnslev.com*

Merton E. Thompson Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

      Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
               Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
               <u>Our File No. S1432-6004</u>

Dear Merton:

      I write to memorialize Saint-Gobain's positions set forth in the teleconference today.

      As we noted, we have no obligation to supplement Saint-Gobain's responses to Pferd's requests for production where Saint-Gobain's documents were produced as they were kept in the ordinary course of business, no additional documents responsive to your requests exist, where documents are privileged and appear on the privilege log, or where responsive documents are not required to be produced at this time due to bifurcation of the case. Nevertheless, we have agreed to confirm that no additional responsive, relevant documents exist that relate to liability discovery. As we explained, with regard to many of the requests that you cited (e.g., about commercialization of the product after the critical date for the patent), such documents are irrelevant to liability and we will not produce them now.

      With regard to Pferd's Interrogatory No. 3, we also agreed to supplement Saint-Gobain's response to this interrogatory based on the representation that Pferd considers its response to Saint-Gobain's Interrogatory No. 4, requesting claim construction of any term Pferd contends is not met in the Accused Products, to be the two terms highlighted in its Preliminary Non-Infringement Contentions. Since Courts do not interpret claim terms except where there is a genuine dispute over the meaning, Saint-Gobain will supplement its answers with constructions for those limitations.


LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Merton E. Thompson, Esq.
January 26, 2006
Page 2

Saint-Gobain also agreed to supplement its answer to Pferd's Interrogatory No. 8, to the extent that the information requested is in Saint-Gobain's possession and was not disclosed during the 30(b)(6) deposition of Guy Timm.

We agreed to provide the supplements above, should they be necessary, by the end of next week.

Finally, we offered to make Ms. Porter available for a 4-hour deposition next week, despite the fact that we believe that your deposition notice was untimely and noticed for an improper purpose. Our offer remains open until the end of the day.

We believe that was the extent of our agreements, but please let me know if you believe we missed something.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

EAB/cdd

**EXHIBIT D PART 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PFERD, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
NO. CV 05-40035 FDS

## PFERD, INC.'S PRELIMINARY NON-INFRINGEMENT CONTENTIONS

### INTRODUCTION

Pursuant to the agreement of the parties, Defendant Pferd, Inc. ("Pferd"), submits these Preliminary Non-Infringement Contentions, without prejudice, and reserves its ability to supplement, amend and/or modify these contentions as circumstances warrant. These contentions relate to what plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain"), has stated are the claims it is likely to assert, claims 1-11 and 13-24 of the patent-in-suit, U.S. Patent No. 5,895,317 ("the '317 patent").

These Non-Infringement Contentions constitute Pferd's good faith attempt to respond without the benefit of Saint-Gobain's proposed claim constructions. Pferd therefore reserves the right to modify, supplement, and/or amend these Preliminary Non-Infringement Contentions. In addition, Pferd reserves the right to modify and amend these Preliminary Non-Infringement Contentions after claim terms are construed by the Court.

## CONTENTIONS

In brief, Pferd's Non-Infringement Contention is that the Accused Device (*i.e.*, the "mini-hub" which Pferd markets in conjunction with certain Type 27 grinding wheels of a 4-inch to 5-inch diameter) lacks at least two limitations required by each and every claim of the '317 patent. As you are certainly aware, the "all elements rule" provides that every limitation of a claim is material, and that an accused product lacking a particular element cannot infringe the claim. Furthermore, the Supreme Court has held that the doctrine of equivalents "is not allowed such broad play as to eliminate [an] element in its entirety." *Warner-Jenkinson v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997). It is a fundamental principle of patent law that, to prove infringement, the patentee must show that each and every limitation of the asserted claim is present in the accused product, either literally or equivalently. If the patentee fails to show the presence of even a single claim limitation, that is enough to negate an allegation of infringement of the claim.

An examination of the accused device plainly shows that the limitation "backing flange has a substantially concave surface adapted to face the backing face" is not present. This limitation is required by every claim of the '317 patent. Saint-Gobain is confined by its own characterization of "concave," namely, "Disc shaped flange 16 extends radially from a medial portion of bushing 14 and terminates at peripheral lip 18. Lip 18 is generally cylindrical, depending from flange 16 in the axial direction towards grinding face end 29 of the bushing. Lip 18 thus provides flange 16 with a generally concave surface, including cavity 20, that faces grinding face end 29 of bushing 14" (emphasis added). As the Accused Device lacks a lip and is substantially flat/discoid, it cannot infringe. (*See* Fig. 1).

Fig. 1



Even more apparent is the fact that the Accused Device lacks the limitation "annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel." This limitation is required by every claim of the '317 patent. As has been pointed out repeatedly to Saint-Gobain, it is mechanically impossible for the closest analogous structure on the Accused Device to "engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel." The Accused Device is only offered in one size and assembled to a narrow and specific size wheel, namely, Type 27 grinding wheels of a 4-inch to 5-inch diameter. Additionally, the wheels are of consistent geometry as they must conform to the ANSI Type 27 standard. At the fixed diameter of the closest analogous structure of the Accused Device and within the limited range of geometries of relevant wheels, a simple mechanical test establishes that the closest

analogous structure of the Accused Device does not engage the backing surface. A feeler gauge may be inserted around the periphery, establishing without question that there is no engagement or annular contact surface on the Accused Device.

*Claim Interpretation*

To determine whether a product infringes a U.S. patent is a two-step inquiry. First, a court construes or interprets the claim. That is, the court resolves any disputes as to the meaning of the particular claim terminology. Second, the properly construed claim is compared to the accused product to determine whether there is literal infringement or infringement under the doctrine of equivalents. *See Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211-12 (Fed. Cir. 1998).

Claim construction is a question of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). Patent claims should be construed as they would be by those skilled in the art. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). The first step in claim construction is to consider the text of the claims, giving the terms in the claims their customary and ordinary meaning as understood by one skilled in the art. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chemicals, Ltd.*, 78 F.3d 1575, 1575 (Fed. Cir. 1996).

Dictionary definitions may be used to inform the ordinary meaning of a claim term. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 134 (Fed. Cir. 2001). Over-reliance on dictionary definitions, however, "divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its

particular context, which is the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005).

*The Doctrine of Equivalents*

A product which does not literally infringe a patent claim may still infringe under the doctrine of equivalents. *See Warner-Jenkinson Co.*, 520 U.S. 17. The touchstone under the doctrine of equivalents is whether the differences between the accused product and the claimed invention are insubstantial. Where the differences are not insubstantial, there should be no infringement under the doctrine of equivalents. *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998). In making a determination under the doctrine of equivalents, the court may consider whether the accused product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed invention. *See Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998).

An amendment made during prosecution which narrows the scope of a claim to satisfy a requirement of the Patent Act may give rise to prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). When the patentee is unable to explain the reason for the amendment, prosecution history estoppel bars the application of the doctrine of equivalents as to the amended element. *See id.* at 740. Even where an explanation for the amendment can be established, the patentee's decision to narrow the claims may be presumed to be a general disclaimer of the territory between the original claim and the amended claim, and the burden should be on the patentee to show that the amendment did not surrender the subject matter in question. *See id.*

*The Substantially Concave Limitation*

The plain language of the claims of the '317 patent clearly requires this limitation. Independent claim 1, for example, recites "wherein said backing flange has a substantially concave surface adapted to face the backing face." Similarly, independent claim 17 recites "applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein," "the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel." Finally, independent claim 24 recites "said backing flange having a substantially concave surface adapted to face the backing face." Each of the remaining claims of the '317 patent depends, either directly or indirectly, from independent claims 1 or 17 and therefore includes at least the same limitations.

The claim limitation "substantially concave" must be interpreted to mean "largely but not necessarily wholly rounded inward." Therefore, the substantially concave surface limitation requires a grinding wheel hub having a backing flange, wherein the backing flange has a surface that is largely but not necessarily wholly rounded inward, and wherein the surface is adapted to face a backing face of a grinding wheel. The reason this interpretation is compelled by the law and facts follows.

The ordinary meaning of the word "concave" is "hollowed or rounded inward like the inside of a bowl." *Merriam Webster's Collegiate Dictionary* (10th ed. 1993).

Although the term "substantially" is not inherently indefinite, the Federal Circuit has made clear that it is to be interpreted narrowly. "Expressions such as 'substantially' are used in patent documents *when warranted by the nature of the invention*, in order to accommodate the *minor variations* that may be appropriate to secure the invention." *Verve, LLC v. Crane Cams,*

*Inc.,* 311 F.3d 1116, 1120 (Fed. Cir. 2002) (emphasis added). The term "substantially," in other words, is not to be interpreted to encompass a broad range of embodiments deviating from the feature modified by the term "substantially," but rather is to be interpreted narrowly to encompass only *minor variations.*

Furthermore, the Federal Circuit has noted that the ordinary meaning of "substantially" is *"considerable in ... extent"* or *"largely* but not wholly *that which is specified." Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358, 1366 (Fed. Cir. 2001) (emphasis added).

The specification of the '317 patent, considered in light of this judicial guidance, supports the interpretation provided herein, namely that "substantially concave" means "largely but not necessarily wholly rounded inward." The specification of the '317 does not use or define "substantially concave" or any similar term anywhere in the specification. Rather, the specification discloses a single embodiment of a grinding wheel hub having a concave surface for facing the backing face of the grinding wheel, and for mechanically and/or chemically attaching the hub to the wheel. The closest analogous structure on the Accused Device is substantially flat and therefore does not infringe.

In short, the applicant: (1) added the substantially concave surface limitation to the claims in response to a rejection of the claims over prior art, thereby securing allowance of the '317 patent; (2) expressly argued that the substantially concave surface limitation distinguished the claims over the cited prior art; and (3) provided no suggestion that the substantially concave surface limitation was not added for a reason of patentability. In summary, the plain language of the claims, the specification, and the prosecution history of the '317 patent all support the

conclusion that the substantially concave surface limitation is limited to a surface that either actually is concave, or that departs only in minor variation from a concave surface.

The substantially concave surface limitation is entitled to no scope of equivalents under the doctrine of equivalents because the patentee is estopped from asserting any equivalents for the substantially concave surface limitation under the doctrine of prosecution history estoppel. "The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ('PTO') has narrowed the literal scope of a claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 344 F.3d 1359 (Fed. Cir. 2003), *cert. den'd*, 124 S.Ct. 2018 (2004). An amendment that has narrowed the literal scope of a claim creates a rebuttable presumption that "the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Id.* at 1367. This presumption applies not only to amendments to existing claim limitations, but also to narrowing amendments that add additional claim limitations. *See Honeywell International Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*).

The substantially concave surface limitation narrowed the literal scope of the claims by excluding embodiments not having substantially concave surfaces. The addition of the substantially concave surface limitation therefore raises the first *Festo* presumption.

*The Annular Engagement Surface Limitation*

The plain language of the claims of the '317 patent clearly requires this limitation. Independent claim 1, for example, recites "an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel." Similarly, independent claim 17 recites "the backing flange having … an annular engagement

surface along an outermost circumference of said backing flange," "the annular engagement surface being adapted to engage the backing face of the wheel." Finally, independent claim 24 recites "an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel."

The term "engage" is known to mean "interlock or mesh." This requires at least that the annular engagement surface make contact with the backing face of the wheel, and is consistent with the ordinary meaning of the word "engage" in the context of mechanics: "to interlock with" or "to cause (mechanical parts) to mesh." *Merriam Webster's Collegiate Dictionary* (10th ed. 1993). The annular engagement surface limitation of the '317 patent therefore requires a surface that is adapted to interlock or mesh with the backing face of the wheel. The closest structure on the Accused Device clearly does not engage or contact the backing face of the wheel and therefore there can be no literal infringement.

As with the previous analysis of the substantially concave limitation, the annular engagement surface limitation was added by amendment during prosecution to Clams 1, 17 and 24 to overcome a prior art rejection. Accordingly, under the same legal analysis set forth above, the annular engagement surface limitation is entitled to no scope of equivalents under the doctrine of equivalents because the patentee is estopped from asserting any equivalents for the annular engagement surface limitation under the doctrine of prosecution history estoppel.

<u>**EXHIBIT D PART 2**</u>

| CLAIMS CONTENTIONS | NON-INFRINGEMENT |
|---|---|
| 1. A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; | It was well known in the art to have a grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center.<br><br>The Accused Device, like the prior art, contains the recited features. |
| said grinding wheel hub comprising: an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | It was well known in the art to have a grinding wheel hub comprising: an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture<br><br>The Accused Device, like the prior art, contains the recited features. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | It was well known in the art to have a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |

| | |
|---|---|
| a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | It was well known in the art to have a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.<br><br>The Accused Device, like the prior art, contains the recited features. |
| an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel; | This limitation is not found on the Accused Device. |
| wherein said backing flange has a substantially concave surface adapted to face the backing face; | This limitation is not found on the Accused Device. |
| and said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel. | This limitation is not found on the Accused Device. |
| 2. The grinding wheel hub as set forth in claim 1, wherein: | SEE ABOVE |
| the backing flange has a bond surface adapted to face the backing face; | It was well known in the art to have the backing flange having a bond surface adapted to face the backing face.<br><br>The Accused Device, like the prior art, contains the recited features. |
| and said bond surface is sized and shaped to provide a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | This limitation is not found on the Accused Device. |

| 3. The grinding wheel hub as set forth in Claim 1, wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. | SEE ABOVE

It was well known in the art to have a grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face.

The Accused Device, like the prior art, contains the recited features. |
|---|---|
| 4. The grinding wheel hub as set forth in Claim 1, further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface. | This limitation is not found on the Accused Device. |
| 5. The grinding wheel hub as set forth in Claim 4, wherein said backing flange and said peripheral lip define said substantially concave surface. | This limitation is not found on the Accused Device. |
| 6. The grinding wheel hub as set forth in Claim 5, wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel. | This limitation is not found on the Accused Device. |
| 7. The grinding wheel hub as set forth in Claim 2, wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel. | This limitation is not found on the Accused Device. |
| 8. The grinding wheel hub as set forth in Claim 2, wherein said flange further comprises a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive. | This limitation is not found on the Accused Device. |

| | |
|---|---|
| 9. The grinding wheel hub as set forth in Claim 8 wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | SEE ABOVE<br>It was well known in the art to have a plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 10. The grinding wheel hub as set forth in Claim 1, wherein said annular engagement surface is adapted for surface to surface engagement with the backing face. | This limitation is not found on the Accused Device. |
| 11. The grinding wheel hub as set forth in Claim 10, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. | This limitation is not found on the Accused Device. |
| 13. The grinding wheel hub as set forth in claim 12, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. | It was well known in the art to have an abrasive grinding wheel including a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 14. the grinding wheel hub as set forth in Claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. | It was well known in the art to have a grinding wheel hub as set forth in Claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |

| | |
|---|---|
| 15.  The grinding wheel hub of Claim 7, wherein the adhesive is an epoxy resin. | It was well known in the art to have an adhesive that is an epoxy resin.<br><br>The Accused Device, like the prior art contains the recited features. |
| 16.  A grinding wheel assembly adapted for being mounted on a grinding apparatus, comprising; | It was well known in the art to have a grinding wheel assembly adapted for being mounted on a grinding apparatus.<br><br>The Accused Device, like the prior art, contains the recited features. |
| an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel; | It was well known in the art to have an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |
| the grinding wheel hub of Claim 1; | SEE ABOVE. |
| and a bonding agent between the backing face and the wheel hub. | It was well known in the art to have a bonding agent between the backing face and the wheel hub.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 17. A method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said method comprising: | It was well known in the art to have a method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |

| | |
|---|---|
| providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | It was well known in the art to have a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture.<br><br>The Accused Device, like the prior art, contains the recited features. |
| inserting the aperture bushing through and in engagement with the surface of the mounting aperture; | It was well known in the art to insert the aperture bushing through and in engagement with the surface of the mounting aperture<br><br>The Accused Device, like the prior art, contains the recited features. |
| fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel; | It was well known in the art to fabricate a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |
| applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel; | This limitation is not found on the Accused Device. |
| disposing the backing flange on the aperture bushing to engage the annular engagement surface with the backing face of the wheel, the annual engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel; | This limitation is not found on the Accused Device. |

| | |
|---|---|
| wherein the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel. | It was well known in the art to have a wheel that is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 18.  The method as set forth in claim 17, wherein said step of providing the backing flange with a concave surface further comprises the steps of providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface. | This limitation is not found on the Accused Device. |
| 19.  The method as set forth in claim 17, wherein the bonding agent comprises an epoxy resin. | It was well known in the art to have a bonding agent comprises an epoxy resin.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 20.  The method as set forth in claim 17, further comprising the step of providing the concave surface with a plurality of surface irregularities adapted to provide a textured surface area for engagement with the bonding agent. | This limitation is not found on the Accused Device. |
| 21.  The method as set forth in claim 19, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | It was well known in the art to have a plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 22.  The method as set forth in claim 17, wherein the annular engagement surface is in superimposed engagement with a portion of the backing face. | This limitation is not found on the Accused Device. |

## EXHIBIT E

CONFIDENTIAL INFORMATION

FILED SEPARATELY UNDER SEAL

**EXHIBIT F**



LOWRIE, LANDO
&ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

January 27, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*mthompson@burnslev.com*

Merton E. Thompson Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
       Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
       <u>Our File No. S1432-6004</u>

Dear Merton:

I write in response to your letter of today, which I believe mischaracterizes our conversation yesterday.

As you might imagine, our position, during our conversation, in yesterday's follow-up correspondence, and today is the same. We specifically put the details of the conversation in writing yesterday. That letter was sent to you shortly after our conversation, prior to the close of business, prior to the close of discovery, and prior to the close of the discovery deadline. You did not move to compel at that time, and you cannot do so at a later time.

We were <u>very</u> clear during our conversation and in the immediate follow-up correspondence that Saint-Gobain would not provide what you term "commercialization" documents to the extent that they were not related to validity (and therefore inappropriate during fact discovery in a bifurcated case). We were <u>very</u> clear that we considered documents created after the critical date, that is one year prior to the filing of the patent-in-suit, to fall into that category.

We also, after explaining our positions, stated that we believed that our document production was complete but that we would confirm our search for responsive documents in certain categories for you.

Riverfront Office Park, One Main Street, Eleventh Floor, Cambridge, MA  02142   T 617-395-7000   F 617-395-7070
WWW.LL-A.COM



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Merton E. Thompson, Esq.
January 27, 2006
Page 2

Nothing has changed, other than a desire on your part to mischaracterize what was said from what we said in the call and in the follow-up letter. If Pferd wanted to move to compel production "on all identified requests," in light of the positions outlined during the conversation and follow-up correspondence, it should have done so yesterday. That was the purpose of your asking us to send, and of our sending, a letter confirming what we agreed to do in advance of the close of discovery.

In each instance on the privilege log, where the names you mention exist, the documents withheld are attorney-client privileged communications. Guy Timm, Doug Nixon, James Levine, Claude Tardy, Peter Bell, Carl Rapp, and Chad Nunnery are Saint-Gobain employees who requested legal advice. Donna Neylon is an administrator to an attorney, as is Joyce Bellersose. Tom Hammill and Brian Sullivan were working at the request of an attorney. Jane Cercena, Giles Colas, Mark Mathisen, Carol Cooper, and Tom Kinisky are Saint-Gobain employees who requested legal advice. Tim Feagans and Robert Gibbons are attorneys.

With regard to your closing comment that the certification filed with Saint-Gobain's Motion to Preclude yesterday was incorrect, we strongly disagree. You cannot dispute that we discussed our filing of this motion, and that you would not agree that Pferd had a duty to disclose its invalidity or willfulness contentions before the close of fact discovery or to withdraw those defenses; your denial that a conference occurred is frivolous. In light of all of the above, we think it best to continue to confer in writing on these issues instead of by telephone at this time.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

EAB/cdd

## EXHIBIT G



LOWRIE, LANDO
&ANASTASI, LLP
*Devoted to Intellectual Property Law*

Laura A. Shine
Litigation Paralegal
lshine@ll-a.com
direct dial 617-395-7059

January 25, 2006

***BY EMAIL AND BY MAIL***

Laura L. Carroll, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02210

Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No.: 05-cv-40035 (FDS)
Our File No. S1432-6004

Dear Ms. Carroll:

Enclosed please find Saint-Gobain Abrasives, Inc.'s privilege log.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Laura A. Shine

LAS/
Enclosures
cc:    Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Mary E. Porter, Esq.

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 1 | 4/21/1993 | Legal Department | Guy Timm | | 2 | Internal document re possible patent application | AC, WP |
| 2 | 4/30/1993 | David Bennett, Esq., Stephen L. Borst, Esq., Thomas M. DiMauro, Esq., Brian M. Kolkowski, Esq., Volker R. Ulbrich, Esq. | Joyce Bellerose | Donna L. Neylon | 1 | Internal memo re possible patent application | WP |
| 3 | 5/5/1993 | Peter Bell | Claude-Alain Tardy, | Carl Repp, James Levine | 2 | Internal legal memo re possible patent application | AC, WP |
| 4 | 5/21/1994 | Doug Nixon | Brian Kolkowski, Esq. | | 11 | Correspondence re U.S. patent application | AC, WP |
| 5 | 5/24/1996 | Guy Timm | Doug Nixon | | 6 | Correspondence re legal research re possible litigation | AC, WP |
| 6 | 7/24/1996 | Guy Timm | Mary E. Porter, Esq. | | 2 | Correspondence re possible patent application | AC, WP |
| 7 | 8/6/1996 | Mary E. Porter, Esq. | Chad Nunnery | | 2 | Correspondence re possible patent application | AC, WP |
| 8 | 8/13/1996 | Mary E. Porter, Esq. | Chad Nunnery | | 2 | Correspondence re possible patent application | AC, WP |
| 9 | 8/14/1996 | Guy Timm | Mary E. Porter, Esq. | | 1 | Correspondence re possible patent application | AC, WP |
| 10 | 8/14/1996 | Guy Timm | Mary E. Porter, Esq. | | 1 | Correspondence re prosecution of U.S. patent application | AC, WP |
| 11 | 8/19/1996 | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re research re possible patent application | AC, WP |
| 12 | 9/3/1996 | Richard Sampson, Esq. | Mary E. Porter, Esq. | | 1 | Correspondence re prosecution of U.S. patent application | AC, WP |
| 13 | 9/5/1996 | Tom Hamill | Richard Sampson, Esq. | | 4 | Correspondence re research related patent prosecution | AC, WP |
| 14 | 9/9/1996 | Richard Sampson, Esq. | Tom Hamill | | 2 | Correspondence re research related to patent prosecution | AC, WP |
| 15 | 9/9/1996 | Richard Sampson, Esq. | National Patent Services | | 4 | Document re research related to patent prosecution | AC, WP |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 16 | 9/10/1996 | Guy Timm | Richard Sampson, Esq. | | 4 | Correspondence re prosecution of U.S. patent application | AC, WP |
| 17 | 9/20/1996 | Mary E. Porter, Esq. | Richard Sampson, Esq. | | 2 | Correspondence re research related to patent prosecution | AC, WP |
| 18 | 12/10/1996 | Mary E. Porter, Esq. | Guy Timm | | 35 | Correspondence re prosecution of U.S. patent application | AC, WP |
| 19 | 12/11/1996 | | Mary E. Porter, Esq. | | 1 | Handwritten notes re telephone conference with Guy Timm re possible patent application | AC, WP |
| 20 | 12/19/1996 | Guy Timm | Saint-Gobain IP Law Department | | 1 | Internal document re patent application | AC |
| 21 | 11/17/1997 | David P. Gordon, Esq. | Suzanne G. Gendreau | | 1 | PCT patent application | AC |
| 22 | 2/26/1998 | John Bateman | Mary E. Porter, Esq. | | 1 | Correspondence re prosecution of Columbian patent application | AC |
| 23 | 4/30/1998 | David P. Gordon, Esq. | Suzanne G. Gendreau | | 1 | Correspondence re prosecution of PCT patent application | AC |
| 24 | 6/22/1998 | | Mary E. Porter, Esq. | | 1 | Handwritten legal notes re prosecution of patent application | AC, WP |
| 25 | 9/1/1998 | | Mary E. Porter, Esq. | | 3 | Internal memo re filing of US and foreign patent applications | AC, WP |
| 26 | 11/11/1998 | Miguel N. Armando | Mary E. Porter, Esq. | | 1 | Correspondence re prosecution of Argentinean patent application | AC |
| 27 | 11/13/1998 | | Mary E. Porter, Esq. | | 8 | Draft of document relating to patent prosecution | AC, WP |
| 28 | 4/1/1999 | David P. Gordon, Esq. | Suzanne G. Gendreau | | 1 | Draft of communication re prosecution of PCT patent application | WP |
| 29 | 4/5/1999 | David P. Gordon, Esq. | Suzanne G. Gendreau | | 1 | Draft of correspondence re prosecution of PCT patent application | WP |
| 30 | 5/18/1999 | B.S. Wellington | Suzanne G. Gendreau | David P. Gordon, Esq. | 1 | Draft of correspondence re prosecution of Australian patent application | WP |

2

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 31 | 6/2/1999 | The Commissioner of Patents | Gowling, Strathy & Henderson | | 1 | Draft of letter re prosecution of Canadian patent application | AC WP |
| 32 | 10/29/1999 | Neil Tuffrey | Mary E. Porter, Esq. | | 10 | Draft of correspondence re prosecution of New Zealand patent application | WP |
| 33 | 11/1/1999 | B.S. Wellington | Mary E. Porter, Esq. | | | Draft of correspondence re prosecution of Australian patent application | WP |
| 34 | 11/13/1999 | European Patent Office | Mary E. Porter, Esq. | | 1 | Draft of communication to European Patent Office re prosecution of PCT patent application | WP |
| 35 | 11/13/1999 | European Patent Office | Mary E. Porter, Esq. | | 2 | Draft of communication to European Patent Office re prosecution of PCT patent application | WP |
| 36 | 11/13/1999 | European Patent Office | Mary E. Porter, Esq. | | 1 | Draft of communication to European Patent Office re prosecution of PCT patent application | WP |
| 37 | 5/23/2000 | Neil Tuffrey | Mary E. Porter, Esq. | | 3 | Draft of correspondence re prosecution of Australian patent application | WP |
| 38 | 7/7/2000 | Say Sujintaya | Suzanne G. Gendreau | | 1 | Draft of correspondence re prosecution of Thai patent application | WP |
| 39 | 7/19/2000 | Say Sujintaya | Suzanne G. Gendreau | | 1 | Draft of correspondence re prosecution of Thai patent application | WP |
| 40 | 8/13/2000 | Mary E. Porter, Esq. | Mary E. Porter, Esq. | | 1 | Handwritten legal notes re telephone conference re possible litigation | AC, WP |
| 41 | 8/29/2000 | Jane Cercena | Guy Timm | | 1 | Correspondence re possible litigation | AC |
| 42 | 8/29/2000 | Jane L. Cercena, Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re possible litigation | AC |
| 43 | 9/8/2000 | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence providing documents for review | AC, WP |
| 44 | 9/24/2000 | Guy Timm, Mary E. Porter, Esq., | Jane Cercena | | 1 | Correspondence re possible litigation | AC, WP |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 45 | 9/26/2000 | Giles Colas, Mark Mathisen, Jane Cercena, Tom Kinisky, Tim Feagans | Mary E. Porter, Esq. | Guy Timm | 11 | Internal memo re possible infringement of patent | AC, WP |
| 46 | 9/26/2000 | Mary E. Porter, Esq. | Carol A. Cooper | | 2 | Correspondence re possible litigation | AC, WP |
| 47 | 9/26/2000 | Mary E. Porter, Esq. | Carol A. Cooper | | 1 | Correspondence re possible litigation | AC, WP |
| 48 | 9/28/2000 | Guy Timm | Mary E. Porter, Esq. | | 2 | Correspondence re possible litigation | AC, WP |
| 49 | 9/28/2000 | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re possible litigation | AC, WP |
| 50 | 9/28/2000 | Mary E. Porter, Esq. | Guy Timm | | 3 | Correspondence re possible litigation | AC, WP |
| 51 | 10/2/2000 | Mary E. Porter, Esq. | Mark E. Mathisen | | 1 | Correspondence re possible litigation | AC |
| 52 | 10/12/2000 | Guy Timm | Mary E. Porter, Esq. | | 2 | Communication re possible infringement of patent | AC, WP |
| 53 | 10/12/2000 | Guy Timm | Mary E. Porter, Esq. | | 2 | Communication re possible infringement of patent | AC, WP |
| 54 | 10/12/2000 | Guy Timm | Mary E. Porter, Esq. | | | Correspondence re possible infringement of patent | AC |
| 55 | 10/12/2000 | Freeman Dunn | Mary E. Porter, Esq. | | 2 | Draft of correspondence re possible litigation | WP |
| 56 | 10/12/2000 | Ron Haarsma | Mary E. Porter, Esq. | | 2 | Draft of correspondence re possible litigation | WP |
| 57 | 10/17/2000 | Guy Timm | Mary E. Porter, Esq. | | 1 | Correspondence re possible litigation | AC, WP |
| 58 | 10/18/2000 | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re possible litigation | AC, WP |
| 59 | 11/29/2000 | | Mary E. Porter, Esq. | | 2 | Handwritten note re telephone conference with S. Sworthby re patent prosecution | WP |
| 60 | 12/13/2000 | Freeman Dunn | Mary E. Porter, Esq. | | 1 | Draft of correspondence re possible litigation | WP |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc's Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 61 | 5/1/2001 | | Mary E. Porter, Esq. | | 1 | Handwritten note re telephone conference with Guy Timm | AC, WP |
| 62 | 7/24/2001 | | Mary E. Porter, Esq. | | 1 | Handwritten notes re possible patent application | AC, WP |
| 63 | 7/25/2001 | Dennis Mondolino, Esq. | Mary E. Porter, Esq. | Tim Feagans | 1 | Draft of Correspondence re possible litigation | WP |
| 64 | 8/6/2001 | Freeman Dunn | Mary E. Porter, Esq. | | 1 | Draft of correspondence re possible litigation | WP |
| 65 | 8/6/2001 | Vince Novak | Mary E. Porter, Esq. | | 2 | Draft of correspondence re possible litigation | WP |
| 66 | 8/6/2001 | Dennis Mondolino, Esq. | Mary E. Porter, Esq. | | 1 | Draft of Correspondence re possible litigation | WP |
| 67 | 8/13/2001 | Robert G. Gibbons | Mary E. Porter, Esq. | | 1 | Draft of Correspondence re possible litigation | WP |
| 68 | 8/14/2001 | Robert G. Gibbons | Mary E. Porter, Esq. | | 1 | Draft of Correspondence re possible litigation | WP |
| 69 | 10/21/2001 | Robert G. Gibbons | Mary E. Porter, Esq. | | 22 | Draft of Correspondence re possible litigation | WP |
| 70 | 11/13/2001 | Mary E. Porter, Esq. | Robert G. Gibbons, Esq. | Dennis J. Mondolino | 6 | Correspondence re possible litigation | AC, WP |
| 71 | 11/28/2001 | Junichi Tsuruta | Mary E. Porter, Esq. | | 2 | Draft of correspondence re prosecution of Japanese patent application | WP |
| 72 | 4/24/2002 | Junichi Tsuruta | Mary E. Porter, Esq. | | 1 | Draft of correspondence re prosecution of Japanese patent application | WP |
| 73 | 5/8/2002 | Tetsuji Koga | Mary E. Porter, Esq. | | 1 | Draft of correspondence re prosecution of Japanese patent application | WP |
| 74 | 5/9/2002 | Mary E. Porter, Esq. | Richard Sampson, Esq. | | 1 | Correspondence re prosecution of U.S. Patent | AC, WP |
| 75 | 5/20/2002 | Tetsuji Koga | Mary E. Porter, Esq. | | 1 | Draft of Correspondence re prosecution of Japanese patent application | WP |
| 76 | 8/14/2002 | Miguel N. Armando | Mary E. Porter, Esq. | | 2 | Correspondence re prosecution of Argentinean patent application | AC |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc's Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 77 | 2/25/2003 | Bruce Dudley, Esq. | Mary E. Porter, Esq. | | 7 | Draft of correspondence re prosecution of Canadian patent application | WP |
| 78 | 5/28/2003 | Norma Garcia-Calderon | Mary E. Porter, Esq. | | 1 | Draft of correspondence re prosecution of Mexican patent application | WP |
| 79 | 6/26/2003 | John Bateman | Mary E. Porter, Esq. | | 12 | Draft of correspondence re prosecution of Columbian patent application | WP |
| 80 | 9/5/2003 | Takashi Ishida | Mary E. Porter, Esq. | | 1 | Draft of correspondence re prosecution of Japanese patent application | WP |
| 81 | 9/22/2003 | Ana Paula Silva Jardim | Mary E. Porter, Esq. | | 1 | Draft of correspondence re prosecution of Brazilian patent application | WP |
| 82 | 10/1/2003 | Fernando Noetinger | Mary E. Porter, Esq. | | 1 | Correspondence re prosecution of Argentinean patent application | AC |
| 83 | 10/17/2003 | Saint-Gobain Corporation | Rosa Ma Vargas Castillion | | 3 | Correspondence re prosecution of Mexican patent application | AC, WP |
| 84 | 2/23/2004 | Peter C. Lando, Esq. | Mary E. Porter, Esq. | | 1 | Correspondence re possible litigation | AC |
| 85 | 2/23/2004 | Peter C. Lando, Esq. | Mary E. Porter, Esq. | | 1 | Draft of correspondence re possible litigation | WP |
| 86 | 5/30/2004 | Mary E. Porter, Esq. | Guy Timm Rosa Ma Vargas Castillion | | 1 | Correspondence re possible litigation | AC, WP |
| 87 | 7/1/2004 | Saint-Gobain Corporation | Rosa Ma Vargas Castillion | | 1 | Correspondence re prosecution of Mexican patent application | AC |
| 88 | 8/13/2004 | | Mary E. Porter, Esq. | | 1 | Handwritten legal notes re telephone conference re possible litigation | AC, WP |
| 89 | 9/27/2004 | Martha Lucia Rincon | Mary E. Porter, Esq. | | 2 | Draft of correspondence re prosecution of Columbian patent application | WP |
| 90 | 12/2/2004 | Frank N. Langs | Mary E. Porter, Esq. | | 2 | Draft of Correspondence re possible litigation | WP |
| 91 | 12/3/2004 | Frank N. Langs | Mary E. Porter, Esq. | | 2 | Draft of correspondence re possible litigation | WP |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

|  | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 92 | 12/6/2004 | | Mary E. Porter, Esq. | | 1 | Handwritten legal notes re telephone conference re possible litigation | WP |
| 93 | 12/14/2004 | Matthew B. Lowrie, Esq. | Mary E. Porter, Esq. | | 1 | Correspondence re possible litigation | AC, WP |
| 94 | 12/31/2004 | | Mary E. Porter, Esq. | | 1 | Handwritten legal notes re telephone conference re possible litigation | WP |
| 95 | | Guy Timm | Mary E. Porter, Esq. | | 1 | Correspondence re possible infringement of patent | AC |
| 96 | | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re patent | WP |
| 97 | | Mary E. Porter, Esq. | | | 22 | Draft of patent application | WP |
| 98 | | Mary E. Porter, Esq. | | | 2 | Internal documents re manufacturing | AC, WP |
| 99 | | Mary E. Porter, Esq. | Richard Sampson, Esq. | | 1 | Correspondence re prosecution of U.S. patent application | AC, WP |
| 100 | | Mary E. Porter, Esq. | Richard Sampson, Esq. | | 1 | Correspondence re: prosecution of U.S. patent application | AC, WP |
| 101 | | Mary E. Porter, Esq. | Richard Sampson, Esq. | | 4 | Correspondence re research related to patent prosecution | AC, WP |
| 102 | | Tom Hamill | Richard Sampson, Esq. | | 3 | Correspondence re research related to patent prosecution | AC, WP |
| 103 | | Mary E. Porter, Esq. | Richard Sampson, Esq. | | 31 | Draft of patent application | AC, WP |
| 104 | | Brian Sullivan | Richard Sampson, Esq. | | 2 | Correspondence re prosecution of patent prosecution | AC, WP |
| 105 | | | Mary E. Porter, Esq. | | 1 | Internal document re possible patent applications with attorney notes | WP |
| 106 | | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re possible infringement of patent | AC |
| 107 | | Mary E. Porter, Esq. | Guy Timm | | 1 | Correspondence re possible litigation | AC, WP |
| 108 | | Guy Timm | Mary E. Porter, Esq. | | | Correspondence re possible infringement of patent | AC |
| 109 | | | | | | Draft of internal document relating to patent prosecution | AC |
| 110 | | Mary E. Porter, Esq. | Guy Timm, Rudy | | 1 | Correspondence re legal issue with handwritten notes | AC |
| 111 | | Mary E. Porter, Esq. | | | 4 | Correspondence re possible litigation | AC |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 112 | | | Mary E. Porter, Esq. | | 4 | Draft of document relating to patent prosecution | AC, WP |
| 113 | | | Mary E. Porter, Esq. | | 2 | Draft of document relating to patent prosecution | AC, WP |
| 114 | | | Mary E. Porter, Esq. | | 2 | Draft of document relating to patent prosecution | AC, WP |
| 115 | | | Mary E. Porter, Esq. | | 20 | Draft of document relating to patent prosecution | WP |
| 116 | | Guy Timm | S. Gendreau | | 11 | Internal memo re draft of document re patent prosecution | AC, WP |
| 117 | | | | | 1 | Internal document relating to patent prosecution | WP |
| 118 | | David P. Gordon, Esq. | Suzanne G. Gendreau | | 3 | Correspondence re prosecution of PCT patent application | AC |
| 119 | | | | | 8 | Draft of document relating to patent prosecution | AC, WP |
| 120 | | | | | 22 | Draft of document relating to patent prosecution | AC, WP |
| 121 | | | Mary E. Porter, Esq. | | 2 | Draft of document relating to patent prosecution | AC, WP |
| 122 | | | | | 18 | Draft of document relating to patent prosecution | AC, WP |
| 123 | | | | | 18 | Draft of document relating to patent application | AC, WP |
| 124 | | | Mary E. Porter, Esq. | | 3 | Draft of document relating to patent prosecution | AC, WP |
| 125 | | Luisa Natacha Reyes | Suzanne G. Gendreau | | 1 | Draft of correspondence re prosecution of Venezuelan patent application | WP |
| 126 | | Bruce Dudley, Esq. Matthew B. Lowrie, Esq. | Suzanne G. Gendreau | | 1 | Draft of correspondence re prosecution of Canadian patent application | WP |
| 127 | | | Mary E. Porter, Esq. | | 1 | Draft of correspondence re post-litigation matters | WP |

8

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05cv40035
Saint-Gobain Abrasives, Inc.'s Privilege Log

| | Date | Recipient | Author | CC | Pages | Summary | Priv |
|---|---|---|---|---|---|---|---|
| 128 | | Martha Lucia Rincon | Suzanne G. Gendreau | | 1 | Draft of correspondence re prosecution of Columbian patent application | WP |
| 129 | | Jan Ruggeberg | Mary E. Porter, Esq. | | 3 | Draft of correspondence re German patent application | WP |
| 130 | | | Mary E. Porter, Esq. | | 2 | Internal document re possible patent application with handwritten legal notes | AC, WP |

9

**EXHIBIT H**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
|  | ) NO. CV 05-40035 FDS |
| PFERD, INC., | ) |
| Defendant. | ) |

## PFERD, INC.'S PRELIMINARY NON-INFRINGEMENT CONTENTIONS

### INTRODUCTION

Pursuant to the agreement of the parties, Defendant Pferd, Inc. ("Pferd"), submits these Preliminary Non-Infringement Contentions, without prejudice, and reserves its ability to supplement, amend and/or modify these contentions as circumstances warrant. These contentions relate to what plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain"), has stated are the claims it is likely to assert, claims 1-11 and 13-24 of the patent-in-suit, U.S. Patent No. 5,895,317 ("the '317 patent").

These Non-Infringement Contentions constitute Pferd's good faith attempt to respond without the benefit of Saint-Gobain's proposed claim constructions. Pferd therefore reserves the right to modify, supplement, and/or amend these Preliminary Non-Infringement Contentions. In addition, Pferd reserves the right to modify and amend these Preliminary Non-Infringement Contentions after claim terms are construed by the Court.

## CONTENTIONS

In brief, Pferd's Non-Infringement Contention is that the Accused Device (*i.e.*, the "mini-hub" which Pferd markets in conjunction with certain Type 27 grinding wheels of a 4-inch to 5-inch diameter) lacks at least two limitations required by each and every claim of the '317 patent. As you are certainly aware, the "all elements rule" provides that every limitation of a claim is material, and that an accused product lacking a particular element cannot infringe the claim. Furthermore, the Supreme Court has held that the doctrine of equivalents "is not allowed such broad play as to eliminate [an] element in its entirety." *Warner-Jenkinson v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997). It is a fundamental principle of patent law that, to prove infringement, the patentee must show that each and every limitation of the asserted claim is present in the accused product, either literally or equivalently. If the patentee fails to show the presence of even a single claim limitation, that is enough to negate an allegation of infringement of the claim.

An examination of the accused device plainly shows that the limitation "backing flange has a substantially concave surface adapted to face the backing face" is not present. This limitation is required by every claim of the '317 patent. Saint-Gobain is confined by its own characterization of "concave," namely, "Disc shaped flange 16 extends radially from a medial portion of bushing 14 and terminates at peripheral lip 18. Lip 18 is generally cylindrical, depending from flange 16 in the axial direction towards grinding face end 29 of the bushing. Lip 18 thus provides flange 16 with a generally concave surface, including cavity 20, that faces grinding face end 29 of bushing 14" (emphasis added). As the Accused Device lacks a lip and is substantially flat/discoid, it cannot infringe. (*See* Fig. 1).

Fig. 1



Even more apparent is the fact that the Accused Device lacks the limitation "annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel." This limitation is required by every claim of the '317 patent. As has been pointed out repeatedly to Saint-Gobain, it is mechanically impossible for the closest analogous structure on the Accused Device to "engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel." The Accused Device is only offered in one size and assembled to a narrow and specific size wheel, namely, Type 27 grinding wheels of a 4-inch to 5-inch diameter. Additionally, the wheels are of consistent geometry as they must conform to the ANSI Type 27 standard. At the fixed diameter of the closest analogous structure of the Accused Device and within the limited range of geometries of relevant wheels, a simple mechanical test establishes that the closest

analogous structure of the Accused Device does not engage the backing surface. A feeler gauge may be inserted around the periphery, establishing without question that there is no engagement or annular contact surface on the Accused Device.

*Claim Interpretation*

To determine whether a product infringes a U.S. patent is a two-step inquiry. First, a court construes or interprets the claim. That is, the court resolves any disputes as to the meaning of the particular claim terminology. Second, the properly construed claim is compared to the accused product to determine whether there is literal infringement or infringement under the doctrine of equivalents. *See Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211-12 (Fed. Cir. 1998).

Claim construction is a question of law. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 391 (1996). Patent claims should be construed as they would be by those skilled in the art. *See Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1477 (Fed. Cir. 1998). The first step in claim construction is to consider the text of the claims, giving the terms in the claims their customary and ordinary meaning as understood by one skilled in the art. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chemicals, Ltd.,* 78 F.3d 1575, 1575 (Fed. Cir. 1996).

Dictionary definitions may be used to inform the ordinary meaning of a claim term. *See Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 134 (Fed. Cir. 2001). Over-reliance on dictionary definitions, however, "divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its

particular context, which is the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005).

*The Doctrine of Equivalents*

A product which does not literally infringe a patent claim may still infringe under the doctrine of equivalents. *See Warner-Jenkinson Co.,* 520 U.S. 17. The touchstone under the doctrine of equivalents is whether the differences between the accused product and the claimed invention are insubstantial. Where the differences are not insubstantial, there should be no infringement under the doctrine of equivalents. *See Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1349 (Fed. Cir. 1998). In making a determination under the doctrine of equivalents, the court may consider whether the accused product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed invention. *See Dawn Equip. Co. v. Kentucky Farms Inc.,* 140 F.3d 1009, 1016 (Fed. Cir. 1998).

An amendment made during prosecution which narrows the scope of a claim to satisfy a requirement of the Patent Act may give rise to prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 736 (2002). When the patentee is unable to explain the reason for the amendment, prosecution history estoppel bars the application of the doctrine of equivalents as to the amended element. *See id.* at 740. Even where an explanation for the amendment can be established, the patentee's decision to narrow the claims may be presumed to be a general disclaimer of the territory between the original claim and the amended claim, and the burden should be on the patentee to show that the amendment did not surrender the subject matter in question. *See id.*

*The Substantially Concave Limitation*

The plain language of the claims of the '317 patent clearly requires this limitation. Independent claim 1, for example, recites "wherein said backing flange has a substantially concave surface adapted to face the backing face." Similarly, independent claim 17 recites "applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein," "the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel." Finally, independent claim 24 recites "said backing flange having a substantially concave surface adapted to face the backing face." Each of the remaining claims of the '317 patent depends, either directly or indirectly, from independent claims 1 or 17 and therefore includes at least the same limitations.

The claim limitation "substantially concave" must be interpreted to mean "largely but not necessarily wholly rounded inward." Therefore, the substantially concave surface limitation requires a grinding wheel hub having a backing flange, wherein the backing flange has a surface that is largely but not necessarily wholly rounded inward, and wherein the surface is adapted to face a backing face of a grinding wheel. The reason this interpretation is compelled by the law and facts follows.

The ordinary meaning of the word "concave" is "hollowed or rounded inward like the inside of a bowl." *Merriam Webster's Collegiate Dictionary* (10th ed. 1993).

Although the term "substantially" is not inherently indefinite, the Federal Circuit has made clear that it is to be interpreted narrowly. "Expressions such as 'substantially' are used in patent documents *when warranted by the nature of the invention*, in order to accommodate the *minor variations* that may be appropriate to secure the invention." *Verve, LLC v. Crane Cams,*

*Inc.,* 311 F.3d 1116, 1120 (Fed. Cir. 2002) (emphasis added). The term "substantially," in other words, is not to be interpreted to encompass a broad range of embodiments deviating from the feature modified by the term "substantially," but rather is to be interpreted narrowly to encompass only *minor variations*.

Furthermore, the Federal Circuit has noted that the ordinary meaning of "substantially" is "*considerable in ... extent*" or "*largely* but not wholly *that which is specified*." *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358, 1366 (Fed. Cir. 2001) (emphasis added).

The specification of the '317 patent, considered in light of this judicial guidance, supports the interpretation provided herein, namely that "substantially concave" means "largely but not necessarily wholly rounded inward." The specification of the '317 does not use or define "substantially concave" or any similar term anywhere in the specification. Rather, the specification discloses a single embodiment of a grinding wheel hub having a concave surface for facing the backing face of the grinding wheel, and for mechanically and/or chemically attaching the hub to the wheel. The closest analogous structure on the Accused Device is substantially flat and therefore does not infringe.

In short, the applicant: (1) added the substantially concave surface limitation to the claims in response to a rejection of the claims over prior art, thereby securing allowance of the '317 patent; (2) expressly argued that the substantially concave surface limitation distinguished the claims over the cited prior art; and (3) provided no suggestion that the substantially concave surface limitation was not added for a reason of patentability. In summary, the plain language of the claims, the specification, and the prosecution history of the '317 patent all support the

conclusion that the substantially concave surface limitation is limited to a surface that either actually is concave, or that departs only in minor variation from a concave surface.

The substantially concave surface limitation is entitled to no scope of equivalents under the doctrine of equivalents because the patentee is estopped from asserting any equivalents for the substantially concave surface limitation under the doctrine of prosecution history estoppel. "The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ('PTO') has narrowed the literal scope of a claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 344 F.3d 1359 (Fed. Cir. 2003), *cert. den'd*, 124 S.Ct. 2018 (2004). An amendment that has narrowed the literal scope of a claim creates a rebuttable presumption that "the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Id.* at 1367. This presumption applies not only to amendments to existing claim limitations, but also to narrowing amendments that add additional claim limitations. *See Honeywell International Inc. v. Hamilton Sundstrand Corp.,* 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*).

The substantially concave surface limitation narrowed the literal scope of the claims by excluding embodiments not having substantially concave surfaces. The addition of the substantially concave surface limitation therefore raises the first *Festo* presumption.

*The Annular Engagement Surface Limitation*

The plain language of the claims of the '317 patent clearly requires this limitation. Independent claim 1, for example, recites "an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel." Similarly, independent claim 17 recites "the backing flange having ... an annular engagement

surface along an outermost circumference of said backing flange," "the annular engagement surface being adapted to engage the backing face of the wheel." Finally, independent claim 24 recites "an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel."

The term "engage" is known to mean "interlock or mesh." This requires at least that the annular engagement surface make contact with the backing face of the wheel, and is consistent with the ordinary meaning of the word "engage" in the context of mechanics: "to interlock with" or "to cause (mechanical parts) to mesh." *Merriam Webster's Collegiate Dictionary* (10th ed. 1993). The annular engagement surface limitation of the '317 patent therefore requires a surface that is adapted to interlock or mesh with the backing face of the wheel. The closest structure on the Accused Device clearly does not engage or contact the backing face of the wheel and therefore there can be no literal infringement.

As with the previous analysis of the substantially concave limitation, the annular engagement surface limitation was added by amendment during prosecution to Clams 1, 17 and 24 to overcome a prior art rejection. Accordingly, under the same legal analysis set forth above, the annular engagement surface limitation is entitled to no scope of equivalents under the doctrine of equivalents because the patentee is estopped from asserting any equivalents for the annular engagement surface limitation under the doctrine of prosecution history estoppel.

PFERD, INC.,

By its attorneys,

Date:  January 4, 2006

Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel.  617-345-3000
Fax   617-345-3299

**CLAIMS**                                      **NON-INFRINGEMENT**
**CONTENTIONS**

| CLAIMS CONTENTIONS | NON-INFRINGEMENT |
|---|---|
| 1.  A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; | It was well known in the art to have a grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center.<br><br>The Accused Device, like the prior art, contains the recited features. |
| said grinding wheel hub comprising: an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | It was well known in the art to have a grinding wheel hub comprising: an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture<br><br>The Accused Device, like the prior art, contains the recited features. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | It was well known in the art to have a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |

| | |
|---|---|
| a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | It was well known in the art to have a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.<br><br>The Accused Device, like the prior art, contains the recited features. |
| an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel; | This limitation is not found on the Accused Device. |
| wherein said backing flange has a substantially concave surface adapted to face the backing face; | This limitation is not found on the Accused Device. |
| and said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel. | This limitation is not found on the Accused Device. |
| 2.  The grinding wheel hub as set forth in claim 1, wherein: | SEE ABOVE |
| the backing flange has a bond surface adapted to face the backing face; | It was well known in the art to have the backing flange having a bond surface adapted to face the backing face.<br><br>The Accused Device, like the prior art, contains the recited features. |
| and said bond surface is sized and shaped to provide a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | This limitation is not found on the Accused Device. |

| | |
|---|---|
| 3. The grinding wheel hub as set forth in Claim 1, wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. | SEE ABOVE<br><br>It was well known in the art to have a grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 4. The grinding wheel hub as set forth in Claim 1, further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface. | This limitation is not found on the Accused Device. |
| 5. The grinding wheel hub as set forth in Claim 4, wherein said backing flange and said peripheral lip define said substantially concave surface. | This limitation is not found on the Accused Device. |
| 6. The grinding wheel hub as set forth in Claim 5, wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel. | This limitation is not found on the Accused Device. |
| 7. The grinding wheel hub as set forth in Claim 2, wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel. | This limitation is not found on the Accused Device. |
| 8. The grinding wheel hub as set forth in Claim 2, wherein said flange further comprises a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive. | This limitation is not found on the Accused Device. |

| | |
|---|---|
| 9.  The grinding wheel hub as set forth in Claim 8 wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | SEE ABOVE<br>It was well known in the art to have a plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 10.  The grinding wheel hub as set forth in Claim 1, wherein said annular engagement surface is adapted for surface to surface engagement with the backing face. | This limitation is not found on the Accused Device. |
| 11.  The grinding wheel hub as set forth in Claim 10, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. | This limitation is not found on the Accused Device. |
| 13. The grinding wheel hub as set forth in claim 12, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. | It was well known in the art to have an abrasive grinding wheel including a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 14.  the grinding wheel hub as set forth in Claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. | It was well known in the art to have a grinding wheel hub as set forth in Claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |

| | |
|---|---|
| 15. The grinding wheel hub of Claim 7, wherein the adhesive is an epoxy resin. | It was well known in the art to have an adhesive that is an epoxy resin.<br><br>The Accused Device, like the prior art contains the recited features. |
| 16. A grinding wheel assembly adapted for being mounted on a grinding apparatus, comprising; | It was well known in the art to have a grinding wheel assembly adapted for being mounted on a grinding apparatus.<br><br>The Accused Device, like the prior art, contains the recited features. |
| an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel; | It was well known in the art to have an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |
| the grinding wheel hub of Claim 1; | SEE ABOVE. |
| and a bonding agent between the backing face and the wheel hub. | It was well known in the art to have a bonding agent between the backing face and the wheel hub.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 17. A method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said method comprising: | It was well known in the art to have a method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |

| | |
|---|---|
| providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | It was well known in the art to have a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture.<br><br>The Accused Device, like the prior art, contains the recited features. |
| inserting the aperture bushing through and in engagement with the surface of the mounting aperture; | It was well known in the art to insert the aperture bushing through and in engagement with the surface of the mounting aperture<br><br>The Accused Device, like the prior art, contains the recited features. |
| fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel; | It was well known in the art to fabricate a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |
| applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel; | This limitation is not found on the Accused Device. |
| disposing the backing flange on the aperture bushing to engage the annular engagement surface with the backing face of the wheel, the annual engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel; | This limitation is not found on the Accused Device. |

| | |
|---|---|
| wherein the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel. | It was well known in the art to have a wheel that is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 18.  The method as set forth in claim 17, wherein said step of providing the backing flange with a concave surface further comprises the steps of providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface. | This limitation is not found on the Accused Device. |
| 19.  The method as set forth in claim 17, wherein the bonding agent comprises an epoxy resin. | It was well known in the art to have a bonding agent comprises an epoxy resin.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 20.  The method as set forth in claim 17, further comprising the step of providing the concave surface with a plurality of surface irregularities adapted to provide a textured surface area for engagement with the bonding agent. | This limitation is not found on the Accused Device. |
| 21.  The method as set forth in claim 19, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | It was well known in the art to have a plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture.<br><br>The Accused Device, like the prior art, contains the recited features. |
| 22.  The method as set forth in claim 17, wherein the annular engagement surface is in superimposed engagement with a portion of the backing face. | This limitation is not found on the Accused Device. |

| | |
|---|---|
| 23. The method as set forth in claim 22, wherein said annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel. | This limitation is not found on the Accused Device. |
| 24. A grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said grinding wheel hub comprising: | It was well known in the art to have a grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.

The Accused Device, like the prior art, contains the recited features. |
| an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | It was well known in the art to have an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture.

The Accused Device, like the prior art, contains the recited features. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | It was well known in the art to have a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel.

The Accused Device, like the prior art, contains the recited features. |

| A backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | It was well known in the art to have a backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.<br><br>The Accused Device, like the prior art, contains the recited features. |
|---|---|
| said backing flange having a substantially concave surface adapted to face the backing face; | This limitation is not found on the Accused Device. |
| an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center; | This limitation is not found on the Accused Device. |
| wherein said substantially concave surface of said flange provides a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | This limitation is not found on the Accused Device. |

**<u>EXHIBIT I</u>**

BURNS & LEVINSON LLP

MERTON E. THOMPSON
617.345.3697
MTHOMPSON@BURNSLEV.COM

125 SUMMER STREET  BOSTON, MA 02110
T 617.345.3000  F 617.345.3299
WWW.BURNSLEV.COM

BY EMAIL AND FIRST CLASS MAIL

January 27, 2006

Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, Eleventh Floor
Cambridge, MA  02142

      Re:    <u>Saint-Gobain Abrasives, Inc. v. Pferd, Inc.</u>
               U.S.D.C. (D. Mass.) Civil Action No. 05-40035 FDS

Dear Emily:

I am writing, among other matters, to respond to your letter of January 26, 2006, which purports to memorialize the matters we discussed and agreed to during a teleconference that day pursuant to Local Rule 37.1.

You now state that Saint-Gobain has no obligation to supplement its response to Pferd's Request for Production.  Please advise if you are recanting your unambiguous, and accepted, proposal to supplement Saint-Gobain's responses made in your letter of January 19, 2006.

Prior to the teleconference, Pferd had requested in writing that Saint-Gobain supply or supplement its Responses to Interrogatories Nos. 2-5, 8-10, and 12-14.  During the teleconference, Saint-Gobain agreed to provide Responses/supplements to Interrogatory Nos. 3,4,8 and 14 by next Friday, February 3, 2006.  With respect to Interrogatory No. 5, Saint-Gobain stated that it did not need to provide the requested "objective evidence of non-obviousness" because, in Saint-Gobain's view, it would be responsive to an affirmative defense that Pferd could not advance.  Pferd stated that it would review Saint-Gobain's promised discovery responses and re-consider at that time whether a Motion to Compel Answers would still be necessary.  In addition, Pferd noted that it considers Saint-Gobain's previously provided Answers to Pferd's Interrogatories Nos. 10 and12 have been shown to be untrue through the deposition testimony provided by Saint-Gobain.

Pferd agrees that it responded to Saint-Gobain Interrogatory No. 4 and considers its response correct.  However, Pferd does not agree that this response in any way disposes of, or limits, claim construction issues in the case, as is inferred by your letter.

00 986996

MASSACHUSETTS ::: RHODE ISLAND ::: DISTRICT OF COLUMBIA

Emily A. Berger, Esq.
January 27, 2006
Page 2

BURNS & LEVINSON LLP

Prior to the teleconference, Pferd had requested in writing that Saint-Gobain supply or supplement its Responses to Document Requests Nos. 7-11, 13-15, 17-19, 23, 24, 34, 36-38, and 40. During the teleconference, Saint-Gobain agreed to review its Responses to Document Requests and supplement as indicated. Pferd stated that it would not file a Motion to Compel Responses to Document Requests until Saint-Gobain completed it review. I take it from your letter that you completed your review in the 90 minutes that elapsed between the end of the and teleconference and your email letter of yesterday. Pferd does not accept your confirmation that your document production is complete, or that Saint-Gobain should be allowed to determine whether a document is relevant to a discrete issue in the case. Any request that appears "reasonably calculated to lead to the discovery of admissible evidence" is appropriate in discovery. As Pferd considers issues such as the first commercialization activities involving the Saint-Gobain mini-hub, as likely to lead to discovery of admissible evidence, Pferd will move to compel production on all identified requests.

After reviewing Saint-Gobain's Privilege Log, Pferd requests that Saint-Gobain specify whether Guy Timm, Doug Nixon, Donna Neylon, Joyce Bellerose, Carl Repp, James Levine, Claude-Alain Tardy, Peter Bell, Chad Nunnery, Tom Hamill, Jane Cercena, Giles Colas, Mark Mathisen, Tom Kinisky, Tim Feagans, Carol Cooper, Brian Sullivan and Robert Gibbons are attorneys and if so, for whom. If one of the above identified individuals in not an attorney, please state whether the individual was a Saint-Gobain employee requesting or receiving legal advice on the date(s) privilege was claimed with respect to a document authored or addressed to said individual.

Please let us know immediately when you are available, Monday, January 30, to confer with us by telephone concerning these matters, in accordance with Local Rules 37.1 and 7.1(A)(2).

Lastly, regarding Saint-Gobain's Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses, we do not agree that Saint-Gobain complied with its obligations under Local Rule 7.1(A)(2) and Pferd considers the certification filed with Saint-Gobain's motion to be incorrect.

Truly,

Merton E. Thompson
Attorney

cc:    Pferd, Inc.
       James H. Belanger, Esq.
       Laura L. Carroll, Esq.

009 86996

**EXHIBIT J**

9/29/05

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

SAINT-GOBAIN ABRASIVES, INC.,

          Plaintiff,

v.

PFERD, INC.,

          Defendant.

Civil Action No.:  05-cv-40035 (FDS)

## SAINT-GOBAIN ABRASIVES, INC.'S RESPONSES TO PFERD, INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") hereby responds to the Requests for the Production of Documents and Things propounded by Pferd, Inc. ("Pferd").

Saint-Gobain's investigations are ongoing, and Saint-Gobain reserves the right to supplement, amend, or modify these responses if additional or different information is discovered.

Saint-Gobain's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document.

### General Objections

The following general objections are incorporated by reference into each Response set forth hereafter.

1.      Saint-Gobain objects to all requests that call for production of documents protected from discovery by the attorney-client privilege, work product immunity, and/or any

other applicable privilege or protection. Responsive documents that are subject to the attorney-client privilege and/or work product immunity, or that are otherwise immune from discovery, will be identified in a schedule of withheld documents pursuant to Fed. R. Civ. P. 26(b)(5). Saint-Gobain anticipates that the parties will exchange such schedules at a mutually agreeable time.

2.     Saint-Gobain objects to these requests as overly broad, unnecessarily burdensome, and as calling for the production of documents which are confidential to Saint-Gobain, and which are not relevant to the issues in this litigation.

3.     Saint-Gobain objects to these requests to the extent they call for third-party information or information or documents protected from disclosure under any confidentiality obligation imposed by contract, by order or by understanding binding upon Saint-Gobain.

4.     Saint-Gobain objects to these requests to the extent that they purport to impose any duty beyond that specified in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

5.     Saint-Gobain objects to these requests as unnecessarily burdensome to the extent they seek information or documents already in Pferd's possession.

6.     Saint-Gobain objects to these requests to the extent they seek information or documents not readily in the possession, custody or control of Saint-Gobain.

7.     Saint-Gobain objects to these requests to the extent they seek information or documents that Saint-Gobain has sought from Pferd through its discovery requests of Pferd.

8.     Saint-Gobain objects to these requests to the extent they call for information or documents that Saint-Gobain requires a reasonable opportunity to discover and analyze before providing a complete response.

9.    Saint-Gobain objects to these requests to the extent they call for production of documents not in existence at the time the suit was initiated.

10.    Saint-Gobain objects to these requests as vague and ambiguous.

11.    Saint-Gobain objects to these requests to the extent they seek Saint-Gobain's contentions on issues not raised in this suit and/or not material to an issue raised in this suit.

12.    Saint-Gobain objects to these requests to the extent they are premature.

13.    Saint-Gobain's responses to these requests are subject to and without waiver of any objections, including claims of privilege and/or work product.

14.    Saint-Gobain objects to these requests to the extent they call for production of documents or things first made after the date of filing of this lawsuit.

## Document Requests

### Document Request No. 1

All documents and things concerning the conception, development activities, and reduction to practice of the subject matter of each claim of the '317 patent.

### RESPONSE TO DOCUMENT REQUEST NO.1

Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317

patent, to the extent such documents exist.

Document Request No. 2

All documents and things concerning development of the subject matter disclosed and/or claimed in the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 2

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 3

All documents and things concerning disclosures to others of any aspect of the subject matter of the claims of the '317 patent made prior to December 18, 1995.

RESPONSE TO DOCUMENT REQUEST NO. 3

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product

doctrine. Saint-Gobain also objects to the extent this request calls for information confidential to third parties. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 4

    All documents and things concerning all efforts to commercialize the subject matter disclosed and/or claimed in the '317 patent made prior to December 18, 1995.

RESPONSE TO DOCUMENT REQUEST NO. 4

    Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain also objects to the extent this request calls for information confidential to third parties. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 5

    All documents and things concerning experiments referring or relating to the subject matter disclosed and/or claimed in the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 5

    Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to

this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 6

All documents and things concerning the contributions of each person who contributed to the development of the subject matter disclosed and/or claimed in the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 6

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 7

All documents and things concerning any communication with a third party about the subject matter disclosed and/or claimed in the '317 patent prior to the filing of the application leading to the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 7

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain also objects to the extent this request calls for information confidential to third parties. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 8

All documents and things concerning prior art known by Saint-Gobain that pertains to the subject matter disclosed and/or claimed in the '317 patent, whether or not cited to the U.S. Patent and Trademark Office, including, but not limited to, hubs, flanges, wheels, specifications, catalogs, shop drawings, patents, published patent applications, books, journals, manuals, articles, course materials, seminar materials, and drawings.

RESPONSE TO DOCUMENT REQUEST NO. 8

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and

things, including documents protected by the attorney-client privilege or the work product

doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work

product, non-cumulative documents in its possession, custody, or control concerning the '317

patent, to the extent such documents exist.

Document Request No. 9

All documents and things concerning objective evidence of nonobviousness of the
subject matter claimed in the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 9

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to

this request as overly broad and unnecessarily burdensome on the grounds and to the extent that

it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to

the extent that it calls for the production of confidential, proprietary, or privileged documents and

things, including documents protected by the attorney-client privilege or the work product

doctrine. Subject to, and without waiving the foregoing, Saint-Gobain declines to respond to this

Request at this time unless and until Pferd produces evidence of obviousness.

Document Request No. 10

All documents and things concerning the preparation and prosecution of the application
leading to the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 10

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to

this request as overly broad and unnecessarily burdensome on the grounds and to the extent that

it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to

the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 11

All documents and things concerning the preparation and prosecution of each and every patent application that claims priority from (or the benefit of the filing date of) the application leading to the '317 patent, including patent applications filed in countries other than the United States.

RESPONSE TO DOCUMENT REQUEST NO. 11

Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 12

All documents and things concerning any extrinsic evidence upon which Saint-Gobain intends to rely to interpret any of the claims of the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 12

Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.


Document Request No. 13

All documents and things concerning patentability searches and/or opinions pertaining to the subject matter disclosed and claimed in the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 13

Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 14

All documents and things concerning opinions or studies that have been conducted to ascertain the scope, validity, or enforceability of the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 14

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 15

All documents and things concerning each equivalent known or foreseen by Saint-Gobain for any of the structures or features recited by Saint-Gobain in claims prior to the time of issuance of the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 15

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317

- 11 -

patent, to the extent such documents exist.


## Document Request No. 16

All documents and things concerning advertising or promotional materials used or considered by Saint-Gobain in connection with its commercialization of the subject matter disclosed and/or claimed in the '317 patent.

## RESPONSE TO DOCUMENT REQUEST NO. 16

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.


## Document Request No. 17

All documents and things concerning Saint-Gobain's use of the subject matter disclosed and/or claimed in the '317 patent.

## RESPONSE TO DOCUMENT REQUEST NO. 17

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product

doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 18

All documents and things concerning Saint-Gobain's use of the subject matter disclosed and/or claimed in the '317 patent to manufacture products for sale.

RESPONSE TO DOCUMENT REQUEST NO. 18

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 19

All documents and things concerning the efforts of Saint-Gobain to commercialize the subject matter disclosed and/or claimed in the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 19

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to

the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

## Document Request No. 20

All documents and things concerning the basis for Saint-Gobain's claim of damages.

## RESPONSE TO DOCUMENT REQUEST NO. 20

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

## Document Request No. 21

All documents and things supporting Saint-Gobain's claim of damages.

## RESPONSE TO DOCUMENT REQUEST NO. 21

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to

this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

Document Request No. 22

All documents and things concerning licenses granted in or to the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 22

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

<u>Document Request No. 23</u>

All patent procurement policies and patent licensing policies of Saint-Gobain.

<u>RESPONSE TO DOCUMENT REQUEST NO. 23</u>

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

<u>Document Request No. 24</u>

All documents and things concerning all steps taken by Saint-Gobain to enforce the '317 patent against any third party, including, but not limited to, charges of infringement of the '317 patent and/or offers of license in and/or to the '317 patent.

<u>RESPONSE TO DOCUMENT REQUEST NO. 24</u>

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work

product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 25

All documents and things concerning any claim by Saint-Gobain that money damages would be an insufficient remedy for Saint-Gobain in this case.

RESPONSE TO DOCUMENT REQUEST NO. 25

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

Document Request No. 26

All documents and things concerning sales and profitability information about all products made or sold by Saint-Gobain that fall within the scope of the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 26

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to

- 17 -

the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

Document Request No. 27

All documents and things concerning the number of units sold of all products made or sold by Saint-Gobain that fall within the scope of the '317 patent.

RESPONSE TO DOCUMENT REQUEST NO. 27

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.

As Pferd has declined to produce damages-related documents at this time, Saint-Gobain will do the same until agreement between the parties as to a mutual time and scope for such an exchange has been reached.

Document Request No. 28

All documents and things concerning all activities undertaken by Saint-Gobain to mark products manufactured using the process and/or device claimed in the '317 patent in compliance with 35 U.S.C. § 287.

RESPONSE TO DOCUMENT REQUEST NO. 28

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 29

All documents concerning each accused product.

RESPONSE TO DOCUMENT REQUEST NO. 29

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317

patent, to the extent such documents exist.

Document Request No. 30

All documents concerning Saint-Gobain's claim that "Pferd is . . . making, selling, offering to sell, and using within the United States goods covered by one or more of the claims of the '317 patent."

RESPONSE TO DOCUMENT REQUEST NO. 30

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 31

All documents concerning Saint-Gobain's claim that "Pferd is inducing and contributing to infringement by others of the '317 patent, literally and/or by equivalents."

RESPONSE TO DOCUMENT REQUEST NO. 31

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product

doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 32

All documents concerning Saint-Gobain's claim that "Pferd is causing others to make, use, sell, or offer to sell goods covered by the '317 patent within the United States."

RESPONSE TO DOCUMENT REQUEST NO. 32

Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.


Document Request No. 33

All documents concerning Saint-Gobain's claim that "Pferd's infringement of the '317 patent is and has been willful."

RESPONSE TO DOCUMENT REQUEST NO. 33

Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and

things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 34

To the extent not covered elsewhere in these requests, all opinions or studies concerning each accused product.

RESPONSE TO DOCUMENT REQUEST NO. 34

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 35

All communications between Saint-Gobain and any other person concerning Pferd or the subject matter of this proceeding.

RESPONSE TO DOCUMENT REQUEST NO. 35

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that

- 22 -

it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

<u>Document Request No. 36</u>

To the extent not covered elsewhere in these requests, all documents and things concerning the '317 patent and corresponding patents and patent applications issued and/or filed in countries other than the United States.

<u>RESPONSE TO DOCUMENT REQUEST NO. 36</u>

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents and to the extent that it is duplicative of other requests. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 37

     To the extent not covered elsewhere in these requests, all documents and things concerning any information that supports any of the allegations in the pleadings.

## RESPONSE TO DOCUMENT REQUEST NO. 37

     Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents and to the extent that it is duplicative of other requests.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.

Document Request No. 38

     To the extent not covered elsewhere in the requests, all documents and things concerning any information that refutes any of the allegations in the pleadings.

## RESPONSE TO DOCUMENT REQUEST NO. 38

     Saint-Gobain incorporates its general objections.  Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents and to the extent that it is duplicative of other requests.  Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine.  Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession,

custody, or control concerning the '317 patent, to the extent such documents exist.


Document Request No. 39

All documents and things concerning Saint-Gobain's policies for the making and retention of records, including, but not limited to, electronic documents, electronic drawings and electronic mail.

RESPONSE TO DOCUMENT REQUEST NO. 39

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of confidential, proprietary, or privileged documents and things, including documents protected by the attorney-client privilege or the work product doctrine. Saint-Gobain will produce responsive, discoverable, non-privileged, non-work product, non-cumulative documents in its possession, custody, or control concerning the '317 patent, to the extent such documents exist.


Document Request No. 40

To the extent not covered elsewhere in the requests, all documents and things identified in response to Pferd's First Set of Interrogatories or otherwise relied on as a source of responsive information to the Interrogatories.

RESPONSE TO DOCUMENT REQUEST NO. 40

Saint-Gobain incorporates its general objections. Specifically, Saint-Gobain objects to this request as overly broad and unnecessarily burdensome on the grounds and to the extent that it calls for "all" documents and to the extent that it is duplicative of other requests. Saint-Gobain further objects to this request on the grounds and to the extent that it calls for the production of

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC.

Dated: September 29, 2005          by: _____

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

- 26 -