## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 05-40035-FDS |
| | ) | |
| PFERD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DEFENDANT PFERD, INC. IN OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE SUPPLEMENTATION OF PFERD'S INVALIDITY OR WILLFULNESS DEFENSES

### I.    Introduction.

Defendant Pferd, Inc. ("Pferd"), hereby opposes the motion of plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain"), to "preclude supplementation of Pferd's invalidity or willfulness defenses" (Docket #12).  Despite its title, Saint-Gobain's motion actually seeks to preclude Pferd from relying on its pleaded patent invalidity defenses and its defense to Saint-Gobain's allegations of willfulness, due to allegedly incomplete contention discovery.  Since fact discovery has been extended until the end of March, this motion is now premature, and should be denied on that basis alone.[1]

---

[1]    For the Court's information, Pferd provided a 21-page comprehensive response to a contention interrogatory propounded by Saint-Gobain.  A copy of that response was attached as Exhibit A to Saint-Gobain's motion to preclude (*see* Docket #13-2), and a copy is attached hereto as Exhibit A as well, for ease of reference.  Nonetheless, Pferd is willing to confer with Saint-Gobain to address the motion's protestations, and to supplement that response to the extent Saint-Gobain genuinely wants more information.  It should also be noted that Pferd has properly moved to compel, pursuant to Fed. R. Civ. P. 37, for discovery Pferd contends is needed to formulate its defenses.  (*See* Docket #14-15, 18-19.)  Fed. R. Civ. P. 33(c) specifically contemplates that "the court may order that … a [contention] interrogatory need not be answered until after designated discovery has been completed."

As this Court is aware, Saint-Gobain alleges that Pferd is infringing Saint-Gobain's U.S. Patent No. 5,895,317 ("the '317 patent"), entitled "Wheel Hub for Longer Wheel Life."  The hub disclosed in the '317 patent is utilized on a particular type and size of grinding wheel, specifically, 4 to 5½-inch diameter depressed center (referred to as "Type 27") grinding wheels.  Saint-Gobain contends that a "mini-hub" which Pferd purchases from outside vendors and attaches to Pferd's 4 to 5½-inch diameter Type 27 grinding wheels infringes the '317 patent.

In this initial phase of liability fact discovery, Pferd has amply disclosed its invalidity contentions in sufficient detail for Saint-Gobain counsel to prepare defenses and conduct expert discovery relating thereto, and to proceed with *Markman* and, if necessary, trial preparation.  Expert discovery has not yet been scheduled, let alone taken.  Saint-Gobain can hardly contend later that a Pferd expert report with its customary detail would somehow unfairly surprise them, or that its own experts cannot reach conclusions concerning the seven primary prior art references relied upon by Pferd at this time.  Saint-Gobain's motion to preclude can only be viewed as a "Hail Mary" tactic to avoid that expert and court scrutiny, not to mention the requirements of Fed. R. Civ. P. 56.  In its motion, Saint-Gobain falsely portrays Pferd's orderly discovery as chaos, mischaracterizes Pferd's pleadings, and apparently hopes the Court will believe that Saint-Gobain's sophisticated patent trial counsel are in the dark as to Pferd's invalidity case by sheer repetition that it is so.

Saint-Gobain's motion to preclude also seeks to prevent Pferd from relying on any opinion of counsel in defense against Saint-Gobain's claim of willful infringement, to the extent Pferd has not produced such opinion during this liability fact discovery

phase of this case.  As this Court is aware, a finding of "willfulness" can enhance damages.  In this case, however, damages have been bifurcated, and the parties have not yet embarked on any discovery concerning damages.  Pferd's decision whether to waive the attorney-client privilege which protects an opinion of counsel, and disclose any opinion should likewise be postponed unless or until liability is established.  If the Court eschews this standard practice, Pferd will obey the Court's determination and make that election.  For this Court instead to strike Pferd's defense to willfulness would be draconian and unwarranted.

II.    **Argument.**

     **A.    Pferd's Anticipation Contentions Are Adequately Disclosed.**

If a patent claim is disclosed in a single prior art reference (expressly or inherently), the patent claim is invalid for anticipation over that reference.  *See* 35 U.S.C. §102.  In its invalidity contentions, Pferd has identified five primary prior art references which Pferd contends anticipate the '317 patent.  *See* Exh. A (and Docket #13-2), pp.2-3, References 1-4, 7.[2]  Pferd further supplied element claim charts identifying specific aspects in that prior art.  *See id.*, pp.10-21.

The '317 patent and these prior art references all address grinding wheel hub technologies.  These pieces of  prior art do not present "needle-in-haystack" complexity which Saint-Gobain would have the Court believe prevents Saint-Gobain or its expert from having notice of Pferd's contentions.  Two of the five references are closely related:

---

[2]    Saint-Gobain repeatedly asserts in its moving papers that certain prior art cited by Pferd was already before the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the '317 patent.  It is specious even to suggest that this would disqualify such art as a basis for this Court's invalidity finding.  *See, e.g., Prima Tek II, L.L.C. v. Polypap,* 412 F.3d 1284, 1287 (Fed. Cir. 2005) (court invalidated patent in suit, based on prior art before the USPTO patent examiner).

U.S Patent No. 5,538,464 ("the '464 patent") (*see* Exh. A, Ref. 1), which predates the '317 patent, and its corresponding commercial embodiment shown in the dated Dualock Hub catalog (*see id.*, Ref. 3). (Copies of Ref. 1 and Ref. 3 are attached hereto as Exhibits B and C.) Pferd has also produced in discovery the physical "mini-hub" product shown in Ref. 3, and provided deposition testimony that this mini-hub was used by Pferd years before Saint-Gobain applied for the '317 patent.[3] As Saint-Gobain well knows, the '464 patent teaches: "On smaller depressed center grinding wheels, flat surface or cut off wheels and the like, the backing member may take the form of a flat washer like member." (Exh. B, col. 4, lines 44-48.) Thus, it is well established that Saint-Gobain's claimed novelty in its invention, *i.e.*, a small diameter hub for Type 27 depressed center grinding wheels, was known in the prior art.

Type 27 grinding wheels to which the hubs at issue are attached meet standard specifications set by a national board, the American National Standards Institute ("ANSI"). Pferd's Ref. 2 is the 1988 edition of the ANSI Standard for Type 27 Grinding Wheels, a copy of which was produced by Pferd in discovery (Bates Nos. PF 1233-1363). Section 5.1.2.3 of the 1988 ANSI Standard (produced as Bates No. PF 1293) provides that Type 27 grinding wheels which are 5 inches in diameter or smaller must have hubs "at least one third wheel diameter."

---

[3]    As this Court is aware, under 35 U.S.C. §102, a patent may not be obtained in the U.S. if the invention was in public use or sale more than one year before filing a patent application. This one-year-prior-to-application date is known as the "critical date" of a patent.



The accompanying illustration in that ANSI Standard clearly teaches that a small hub or flange can be used on a small diameter Type 27 grinding wheel. Saint-Gobain can hardly contend that it fails to understand the national standard which applies to its patented product.

Pferd's Ref. 4 is plaintiff's own document – a drawing which depicts a hub which Saint-Gobain has admitted was in use and on sale in the U.S. before the critical date, *i.e.*, more than one year prior to Saint-Gobain's application for the '317 patent, and thus anticipating. *See* 35 U.S.C. §102(b). (A copy of Ref. 4 is attached as Exhibit D.) With respect to both Refs. 3 and 4, Pferd obtained testimony that corroborates that these commercial embodiments were on sale or in public use prior to the critical date, including, in both cases, Saint-Gobain testimony. *See, e.g.,* Exhibit E, excerpts of the deposition testimony of Guy Timm, Saint-Gobain's Rule 30(b)(6) witness and the named inventor of the '317 patent, pp.19, 46-47.

Ref. 7 is a third party commercial hub that was on sale and in use in the U.S. prior to the critical date. Moreover, Pferd obtained in discovery a shipping invoice showing that this hub was in Saint-Gobain' possession nearly nine months prior to the critical date, and Mr. Timm, Saint-Gobain's Rule 30(b)(6) witness, confirmed that was the case. *See* Exh. E, p.69. Pferd went even further to attempt to assuage Saint-Gobain by

providing a detailed claim chart which identifies where each limitation in claim 1 of the '317 patent is met in Ref. 7.  *See* Exh. A (and Docket #13-2), p.21.

>    **B.**    **Pferd's Obviousness Contentions Are Adequately Disclosed.**

Even if a single reference does not anticipate, a combination of references may be used to invalidate a patent if the subject matter as a whole is obvious in light thereof to a person of ordinary skill in the art.  *See* 35 U.S.C. §103.  The five references Pferd has identified as anticipatory (Ref. 1-4, 7) need not be expounded upon in an obviousness contention, because anticipation is the "ultimate form of obviousness."  *In re Baxter Travenol Labs.*, 952 F.2d 388, 392 (Fed Cir. 1991).

Nonetheless, Pferd identified and discussed its two remaining primary prior art references (Refs. 5-6) in combination with Refs. 1, 3 and 7.  Pferd further identified the person of ordinary skill in the art ("an engineer or  technologist with working knowledge of the designs, use and characteristics of hubbed Type 27 grinding wheels and general mechanical part design expertise."  *See* Exh. A (and Docket #13-2), p.4.  Pferd further disclosed that the person of ordinary skill in the art would be motivated to use various diameter hub sizes, including smaller diameters, given the available art and teachings therein.  Such a factual situation is the essence of invalidity for obviousness.  *See id.*; 37 U.S.C. §103(a).

>    **C.**    **Pferd's "Inadequate Description" Contentions Are Adequately**
>            **Disclosed.**

35 U.S.C. §112 requires, in part, that a "specification shall contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall

set forth the best mode contemplated by the inventor of carrying out his invention." In this case, Pferd has asserted an affirmative defense under §112. Proof of defenses under this section relies on the views of a hypothetical person of ordinary skill in the art and therefore nearly always requires expert testimony. Pferd is developing evidence for its §112 defenses for the expert discovery phase of this case. Preclusion of Pferd's §112 defense at this stage of the litigation would be unwarranted.

### D.    Saint-Gobain's Motion Is Legally and Procedurally Unfounded.

If Saint-Gobain contends it needed more discovery, or more detail about the contention discovery it already has received from Pferd, a motion to compel would have been appropriate. If Saint-Gobain was so sure that the prior art disclosed and Pferd's contentions thereon as a matter of law do not create a prima facie case of invalidity, a motion for summary judgment would have been appropriate. Instead, Saint-Gobain elected to circumvent and subvert the procedural rules by bringing a motion to strike defenses for, ostensibly, lack of notice. Even if Saint-Gobain had moved to compel, and won, and Pferd then inadequately complied with such an order, a Rule 37(b)(2) sanction of striking a key defense would be the most excessive penalty, reserved for willful disobedience of a Court Order. *See, e.g., Creative Gifts, Inc. v. UFO*, 235 F. 3d 540, 549 (10th Cir. 2000) (striking of 23 counterclaims justified in light of defendant's egregious and continual discovery order violations).[4]

---

[4]    In *Texas Instruments, Inc. v. Hyundai Electronics Industries Co., Ltd.*, No. 98-74, 1999 U.S. Dist. LEXIS 21523 (E.D. Texas 1999), a case cited by Saint-Gobain in its motion to preclude, the Court issued an order precluding the defendant from offering certain prior art at trial, where the defendant had failed to identify, let alone produce, thousands of pages of prior art, until after the close of discovery and despite a court order to do so. *See id.*, at *10-11.

The cases cited by Saint-Gobain do not support such extraordinary relief.  In two cases, the courts excluded evidence in cases where JMOL or JNOV was granted <u>after a jury hearing the evidence</u> found a patent defendant had met its evidentiary burden as to invalidity.  *See ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 550-51 (Fed. Cir. 1998); *Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil,* 308 F.3d 1167 (Fed. Cir. 2002).  Saint-Gobain also cited a case which limited a defendant's ability to use prior art in a summary judgment motion where the prior art was not *identified* until after the close of *all* discovery at the end of a three-year period.  *See Recycling Scis. Int'l, Inc. v. Gencor Indus., Inc*., No. 95-4422, 1999 U.S. Dist. LEXIS 3927, at *41 (N.D. Ill. 1999).[5]

In sharp contrast, in this case, the initial phase of liability fact discovery is still open, and expert discovery on liability issues has not begun.  Patent infringement and validity proofs are rarely made without the aid of experts who consider the fact discovery and other evidence and reach conclusions comparing the claimed invention to the prior art, in the case of invalidity, and to the accused device, in the case of infringement.  Pferd is continuing to engage in discovery under the current Scheduling Order and has filed two Motions to Compel which, if granted, should provide added support to Pferd's defenses.

**E.    The Court Should Postpone Pferd's Election To Produce An Opinion To the Damages Phase**

Willful infringement can lead to enhanced damages.  *See* 35 U.S.C. §284, 285; *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir. 2004) (*en banc*).  An alleged infringer can obtain opinion of counsel as to non-

---

[5]    Similarly, in another case cited by Saint-Gobain, *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del. 2003), the Court precluded the defendants from utilizing a supplemental expert report, submitted a month after the close of all discovery, and from relying upon certain prior art references cited in that report, which had not been disclosed prior to the close of discovery, in violation of the court's scheduling order.

infringement, invalidity or both.  Under *Knorr-Bremse*, 383 F.3d at 1341, a determination of good faith or non-willful conduct does not require an opinion of counsel.  The election to rely on an opinion and waive privilege thereto is a serious matter, and Pferd contends that it should be reserved until necessary – in the damages phase, if liability is established.

It is common practice in patent infringement cases for the trial to be bifurcated, first, for a determination of liability, and second, for a determination of willfulness, if the alleged infringer is held liable.  *See, e.g., Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991); 7 *Chisum on Patents*, §20.03[4][b][v] (2005).

Rather than move to compel that election and disclosure (a motion which this Court would likely deny as premature), Saint-Gobain again moves to strike reliance on an opinion outright.  Saint-Gobain relies on a statement made at the August 2005 Scheduling Conference, indicating that Pferd was not relying on opinion of counsel *at that time* ("Well, <u>as of this point</u> [August 25, 2005], we're not relying on opinion of counsel on the willfulness issue.") (*emphasis added*).  *See* excerpt from August 25, 2005 Scheduling Conference Transcript, attached as Exhibit F.

In essence, in its motion to preclude, Saint-Gobain contends that discovery relating to willfulness in this case was required to be addressed during the liability fact discovery period.  While that topic was briefly addressed at the August 25, 2005 Scheduling Conference, no determination was made about when discovery as to willfulness would be taken.  *See* Exh. F, pp. 30-31; *see also* the Electronic Clerk's Notes for proceedings held before Judge F. Dennis Saylor IV:  Scheduling Conference held on 8/25/2005, ("Court orders that Liability discovery will be completed by 12/15/2005").

The scheduling order makes no mention of willfulness discovery, and, as noted above, discovery concerning willfulness is typically addressed in the damages phase, not the liability phase, of a patent case.

Regardless, no discovery period in this case is closed, given the Court's recent ruling. Accordingly, if the Court concludes that willfulness is to be tried in the fact liability discovery phase of this case, Pferd will promptly obey any Order to make an election.

**III.     Conclusion.**

For all the foregoing reasons, defendant Pferd, Inc., respectfully submits that Saint-Gobain's motion to exclude Pferd's invalidity and willfulness defenses is inappropriate and unfounded, and should be denied.

> **PFERD, INC.,**
>
> By its attorneys,

Date: February 10, 2006

/s/ Laura L. Carroll_____
Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel. 617-345-3000
Fax 617-345-3299

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that today I caused a true and correct copy of this Opposition to

be served by electronic and First Class Mail upon the following counsel of record:

      Matthew B. Lowrie, Esq.
      Emily A. Berger, Esq.
      Lowrie, Lando & Anastasi, LLP
      Riverfront Office Park
      One Main Street – 11th Floor
      Cambridge, MA 02142


Dated: February 10, 2006       <u>/s/ Laura L. Carroll</u>
                            Laura L. Carroll

# EXHIBIT A

## to Defendant Pferd, Inc.'s Memorandum in Opposition to Saint-Gobain's Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| SAINT-GOBAIN ABRASIVES, INC.,    ) | |
| ) | |
| Plaintiff,    ) | CIVIL ACTION |
| ) | NO. 05-40035 FDS |
| v.    ) | |
| ) | |
| PFERD, INC.,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

## PFERD, INC.'S SECOND REVISED PRELIMINARY INVALIDITY CONTENTIONS

## INTRODUCTION

Defendant Pferd, Inc. ("Pferd"), hereby submits these Second Revised Preliminary Invalidity Contentions, without prejudice, and reserves its ability to supplement, amend and/or modify these contentions as circumstances warrant. These contentions relate to what plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain"), has stated are the claims it is likely to assert, claims 1-11 and 13-24 of the patent-in-suit, U.S. Patent No. 5,895,317 ("the '317 patent").

These Invalidity Contentions constitute Pferd's good faith attempt to respond without the benefit of Saint-Gobain's claim construction. Pferd therefore reserves the right to modify, supplement, and/or amend these Preliminary Invalidity Contentions.

The references presently deemed to be the most relevant for the '317 patent are listed below. In addition, a listing of the cited prior art of record for each patent, and other relevant prior art references, on which Pferd reserves the right to rely, is attached as Exhibit A.

## CONTENTIONS

**A.    Primary Prior Art References**

1.    U.S. Patent No. 5,538,464 ("MacKay patent" or "the '464 patent")

2.    ANSI Type 27 Grinding Wheel Standard (Bates No. PF 1233-1364)

3.    Dualock Catalog (Bates No. PF 1365-1369)

4.    Norton Drawing No. (Bates No. SG00451)

5.    U.S. Patent No. 4,240,230 ("Ferrantini patent" or "the '230 patent")

6.    U.S. Patent No. 3,136,100 ("Robertson patent" or "the '100 patent")

7.    Shakespeare LZ Hub drawing and LZ hub(Bates Nos . PF 0127 and PF 1621)

**B.    Anticipation (35 U.S.C. § 102)**

All claims of the '317 patent are anticipated by one of more of Primary Prior Art

References 1, 2, 3, 4 and 7.  Reference 3 shows a mini-hub, with all the features claimed in the

'317 patent and discloses a method for assembling the hub to a grinding wheel that anticipates

the method claims of the '317 patent.  Reference 4 shows that the invention of the '317 patent

was ready for patenting prior to the critical date of the application.  Moreover, witness testimony

from Saint-Gobain raises a serious question as to whether Reference 4 was on sale prior to the

critical date of the '317 patent.  References 2, 3 and 7 describe, or show, a mini-hub for use with

Type 27 grinding wheels.  Reference 7 show a prior art mini-hub with all the features claimed in

the '317 patent and discloses by inference a method for assembling the hub to a grinding wheel

that anticipates the method claims of the '317 patent.  Charts illustrating where each claim element of Claim 1 of the '317 patent can be found in Reference 7 are attached hereto as Exhibit C.

By way of corroboration as to the prior art status of the Primary Prior Art References we note that References 1,2,5 and 6 are dated official documents that speak for themselves.  With respect to Reference 3, a dated document, witness testimony from Pferd and Saint-Gobain corroborate its status as prior art, as do documents Bates numbered. PF 1475-1620.  With further respect to Reference 3, witness testimony from Saint-Gobain confirmed its prior art status and that Saint-Gobain itself had purchased versions of Reference 3 prior to the critical date of the '317 patent.  .Further corroboration of the prior art status of Reference 3 may be provided through testimony of previously identified witnesses.  With respect to Reference 4, a dated document, witness testimony from Saint-Gobain confirmed its date and status.  With respect to Reference 7, a dated document (in part), witness testimony from Pferd and Saint-Gobain corroborated its status as prior art, as does Defendant's Exhibit No. 11 from the Rule 30(b)(6) Deposition of Saint-Gobain and Bates No. PF 1474.

## C.    Obviousness (35 U.S.C. § 103)

All claims of the '317 patent are obvious over either the Mackay patent in view of the Ferrantini patent and/or the Robertson patent.  A person of ordinary skill in the art would have had a motivation to adapt or combine these references because the combination is suggested by

the nature of the problem to be solved, and the references themselves suggest the combination in that all the references are directed to grinding wheel art.  Pferd characterizes the person of ordinary skill in the art as an engineer or technologist with working knowledge of the design, use and characteristics of hubbed Type 27 grinding wheels, the ANSI B7.1 Standard (Reference 2) and general mechanical part design expertise.

All claims of the '317 patent are also obvious over either Reference 3 and/or 7.  A person of ordinary skill in the art would have known to make the minor modification in diameter  that distinguishes the preferred embodiment of the'317 patent from Reference 7, as that reference is directed to the relevant grinding wheel art, namely, small diameter Type 27 grinding wheels as it was also well known in the art (see Reference 2) that hubs or flanges for small diameter Type 27 grinding wheels could be of reduced diameter compared to larger size wheels.  A person of ordinary skill in the art would have known to make a change in the hub material and fastening style of Reference 3 that distinguishes it from the preferred embodiment of the'317 patent from Reference 3, as that reference is directed to the relevant grinding wheel art, namely, small diameter Type 27 grinding wheels and the alternative materials and fastening style were also well known in the art.

Charts illustrating where each element can be found in each cited reference and additional obviousness notations are attached hereto as Exhibit B.

## D.     Invalidity Under 35 U.S.C. §§ 112(1) and 112(2)

The asserted claims are invalid under these sections in that the claims are vague and indefinite and the specification does not set forth the alleged invention so as to enable one skilled in the art to make and use the invention without undue experimentation.  The claims are also

invalid under these sections because the written description does not disclose that the inventors were in possession of the claimed invention, the specification as originally filed fails to support the claim, and the specification fails to disclose the best mode of practicing the invention.

**E.      Inequitable Conduct**

The '317 patent is invalid and/or unenforceable due to inequitable conduct on the part of

Saint-Gobain, as it failed to disclose prior art including Reference 3, which on information and

belief, was known to John Marone of Norton Corporation.  Moreover, Saint-Gobain admitted to

having purchased versions of Reference 3 prior to the critical date of the '317 patent.  Saint-

Gobain also failed to disclose Reference 2, which it admits was in the possession of Norton

Corporation.  Furthermore, Saint-Gobain failed to disclose Reference 4, which it admits was in

the possession of Norton Corporation and on-sale prior to the date of application.  Furthermore,

Saint-Gobain failed to disclose Reference 7, which it admits is material and was in Norton/Saint-

Gobain's possession.


                                  **PFERD, INC.,**

                                  By its attorneys,


Date:  January 26, 2006                   _/s/_ Merton E. Thompson
                                  Laura L. Carroll (BBO #076180)
                                  Merton E. Thompson (BBO #637056)
                                  Anne C. Pareti (BBO #660496)
                                  BURNS & LEVINSON LLP
                                  125 Summer Street
                                  Boston, MA  02110
                                  Tel.  617-345-3000
                                  Fax   617-345-3299

**EXHIBIT A**

U.S. Patent No. 5,538,464

U.S. Patent Documents


489149
566883
791159
791791
872932
1162970
1724742
1998919
2278301
2567782
3041797
3081584
3136100
3210892
3500592
3566547
3596415
3621621
3800483
3879178
3912411
3960516
4015371
4026074
4054425
4088729
4240230
4322920
4439953
4449329
4541205
4601661
4637170
4694615
4754577
4760670
4878316
4924634

4934107
4979336
5031361
5072223

Foreign Patent Documents

2172823 GB

U.S. Patent No. 4,240,230

U.S. Patent Documents

3136100
3210892
3500592
3800483
4015371
4138804

U.S. Patent No. 3,136,100

U.S. Patent Documents

2810239
2823496
3040485
3041797

Additional Prior Art References

PF 0072-75      US Patent No. 3,081,584 (Bullard)
PF 0081-85      US Patent No. 4,015,371 (Grayston)
PF 0090-94      US Patent No. 4,774,788 (Shacham)
PF 0095-106    US Patent No. 5,494,368 (Matthews)
PF 0107-114    US Patent No. 5,718,621 (Turley)

Other References

<u>Bates No.</u>

PF 0121-126   Shakespeare – Fig. 1 and Fig. 3, from website
PF 0127      Shakespeare shop drawing 5/3/94
PF 0128      Shakespeare production record 5/14/90
PF 0129      Ridco shop drawing 11/27/72-4/2/73
PF 0130-135   Ridco shop drawings 1/7/86
PF 0136-137   Ridco invoice to Bullard, 11/29/85
PF 0138      Pferd drawing (from Ridco)
PF 0139      Shakespeare drawing (from Ridco)
PF 0140-141   Norton drawing (from Ridco), 8/3/78
PF 0142-143   Ridco letter to Norton with drawing, 2/5/85
PF 0144      Ridco letter, with shipment, to Norton
PF 0145-148   Donahue Industries, with pictures of flanges/hubs.

**EXHIBIT B**

| CLAIMS | INVALIDITY CONTENTIONS |
|---|---|
| 1.  A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; | It was well known in the art to have a grinding wheel with a depressed center (See Primary Prior Art References 1, 2, and 3)  Moreover, Primary Prior Art Reference 3 discloses all limitations herein.  Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| said grinding wheel hub comprising: an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | The '230 patent discloses a grinding wheel hub comprising an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture.  Moreover, Primary Prior Art Reference 3 discloses all limitations herein.  Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | The '230 patent discloses a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel.  Moreover, Primary Prior Art Reference 3 discloses all limitations herein.  Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | The '230 patent discloses a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.  Moreover, Primary Prior Art Reference 3 discloses all limitations herein.  Moreover, Primary Prior Art Reference 7 |

| | discloses all limitations herein. |
|---|---|
| an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel; | The '230 patent discloses an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| wherein said backing flange has a substantially concave surface adapted to face the backing face; | The '230 patent discloses the feature wherein said backing flange has a substantially concave surface adapted to face the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| and said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel. | Primary Prior Art Reference 3 discloses all limitations herein.<br><br>One of skill in the art would have known to use the disclosure of the '464 patent in combination with the teaching of the '230 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 2. The grinding wheel hub as set forth in claim 1, wherein: | |
| the backing flange has a bond surface adapted to face the backing face; | The '100 patent discloses the feature wherein the backing flange has a bond surface adapted to face the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 |

| | disclose all limitations herein. |
|---|---|
| and said bond surface is sized and shaped to provide a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 3.  The grinding wheel hub as set forth in Claim 1, wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. | The '230 patent discloses a grinding wheel hub wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 4.  The grinding wheel hub as set forth in Claim 1, further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface. | The '230 patent discloses a grinding wheel hub further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 5.  The grinding wheel hub as set forth in Claim 4, wherein said backing flange and said peripheral lip define said substantially concave surface. | The '230 patent discloses a grinding wheel hub wherein said backing flange and said peripheral lip define said substantially concave surface.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

| | |
|---|---|
| 6.  The grinding wheel hub as set forth in Claim 5, wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel. | The '230 patent discloses a grinding wheel hub wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 7.  The grinding wheel hub as set forth in Claim 2, wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel. | The '100 patent discloses the feature wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel.<br><br>Primary Prior Art Reference 3 discloses all limitations herein.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 8.  The grinding wheel hub as set forth in Claim 2, wherein said flange further comprises a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive. | The '230 patent describes a flange having a plurality of surface irregularities.  The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 9.  The grinding wheel hub as set forth in Claim 8 wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | The '230 patent describes a flange having a plurality of surface irregularities.  The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in |

| | |
|---|---|
| | combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 10.  The grinding wheel hub as set forth in Claim 1, wherein said annular engagement surface is adapted for surface to surface engagement with the backing face. | The '230 patent describes an annular engagement surface, which is adapted for surface to surface engagement with the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 11.  The grinding wheel hub as set forth in Claim 10, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel hub, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. |
| 13. The grinding wheel hub as set forth in claim 12, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel hub, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. |
| 14.  the grinding wheel hub as set forth in Claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel hub, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. |
| 15.  The grinding wheel hub of Claim 7, wherein the adhesive is an epoxy resin. | The '100 patent describes a grinding wheel hub wherein the adhesive is an epoxy resin. Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

| | |
|---|---|
| 16.  A grinding wheel assembly adapted for being mounted on a grinding apparatus, comprising; | It was well known in the art to have a grinding wheel assembly adapted for being mounted on a grinding apparatus (see Primary Prior Art References 1, 2, and 3). <br><br> Moreover, both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, a grinding wheel assembly adapted for being mounted on a grinding apparatus. |
| an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel; | The '230 patent discloses an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel. <br><br> Moreover, Primary Prior Art Reference 3 discloses all limitations herein. <br><br> Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| the grinding wheel hub of Claim 1; | See above. |
| and a bonding agent between the backing face and the wheel hub. | The '100 patent discloses a bonding agent between the backing face and the wheel hub. <br><br> Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 17. A method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said method comprising: | It was well known in the art to have a method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel (see Primary Prior Art References 1, 2, and 3). <br><br> Moreover, Primary Prior Art Reference 3 discloses all limitations herein. <br><br> Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension | The '230 patent discloses a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial |

| | |
|---|---|
| through and engagement with the surface of the mounting aperture; | extension through and engagement with the surface of the mounting aperture. |
| | Moreover, Primary Prior Art Reference 3 discloses all limitations herein. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| inserting the aperture bushing through and in engagement with the surface of the mounting aperture; | The '230 patent discloses inserting the aperture bushing through and in engagement with the surface of the mounting aperture. |
| | Moreover, Primary Prior Art Reference 3 discloses all limitations herein. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel; | The '230 patent discloses fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel. |
| | Moreover, Primary Prior Art Reference 3 discloses all limitations herein. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel; | The '100 patent discloses applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel. |
| | Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| disposing the backing flange on the aperture bushing to engage the annular engagement surface with the backing face of the wheel, the annual engagement surface being adapted to | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, disposing the backing flange on the aperture bushing to engage the annular engagement |

| | |
|---|---|
| engage the backing face of the wheel proximate a periphery of the depressed center of the wheel; | surface with the backing face of the wheel, the annual engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel. |
| wherein the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel. | One of skill in the art would have known to use the disclosure of the '100 patent in combination with the teaching of the '464 patent and Primary Prior Art Reference 3, since all patents/references relate to the grinding wheel art.

Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 18.  The method as set forth in claim 17, wherein said step of providing the backing flange with a concave surface further comprises the steps of providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface. | One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '464 patent and Primary Prior Art Reference 3, since all patents/references relate to the grinding wheel art.

Primary Prior Art Reference 3 discloses all limitations herein.

Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 19.  The method as set forth in claim 17, wherein the bonding agent comprises an epoxy resin. | The '100 patent discloses a bonding agent between the backing face and the wheel hub.

Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 20.  The method as set forth in claim 17, further comprising the step of providing the concave surface with a plurality of surface irregularities adapted to provide a textured surface area for engagement with the bonding agent. | The '230 patent describes a concave flange having a plurality of surface irregularities.  The '100 patent describes use of adhesive.

One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.

Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

| 21.  The method as set forth in claim 19, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | The '230 patent describes a flange having a plurality of surface irregularities extending radially from said aperture.  The '100 patent describes use of adhesive.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of the '100 patent, since both patents relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| --- | --- |
| 22.  The method as set forth in claim 17, wherein the annular engagement surface is in superimposed engagement with a portion of the backing face. | The '230 patent describes an annular engagement surface, which is in superimposed engagement with a portion of the backing face.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| 23.  The method as set forth in claim 22, wherein said annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel. | Both Primary Prior Art Reference 3 and 7 discloses all limitations herein, namely, an annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel. |
| 24.  A grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said grinding wheel hub comprising: | The '230 patent describes a grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel.<br><br>Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 |

| | |
|---|---|
| | discloses all limitations herein. |
| an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | The '230 patent discloses a grinding wheel hub comprising an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture. Moreover, Primary Prior Art Reference 3 discloses all limitations herein. Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | The '230 patent discloses a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel. Moreover, Primary Prior Art Reference 3 discloses all limitations herein. Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| A backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | The '230 patent discloses a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face. Moreover, Primary Prior Art Reference 3 discloses all limitations herein. Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| said backing flange having a substantially concave surface adapted to face the backing face; | The '230 patent discloses the feature wherein said backing flange has a substantially concave surface adapted to face the backing face. Moreover, Primary Prior Art Reference 3 discloses all limitations herein. Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
| an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center; | The '230 patent discloses an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel. |

|  | Moreover, Primary Prior Art Reference 3 discloses all limitations herein.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |
|---|---|
| wherein said substantially concave surface of said flange provides a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | The '100 patent discloses applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein. Primary Prior Art Reference 3 discloses a substantially concave surface of said flange which provides a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face.<br><br>One of skill in the art would have known to use the disclosure of the '230 patent in combination with the teaching of Primary Prior Art Reference 3, since both references relate to the grinding wheel art.<br><br>Moreover, Primary Prior Art Reference 7 discloses all limitations herein. |

**EXHIBIT C**

Shakespeare LZ Hub Bates No. PF 1621
and 5 inch Type 27 wheel
Defendant's Exhibits 10 and 25







1. A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; said grinding wheel hub comprising:

an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture;

a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel;

a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face;

an annular engagement surface disposed along a periphery of said backing flange, and adapted to engage the backing face of the wheel;

wherein said backing flange has a substantially concave surface adapted to face the backing face; and

said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel.

00987334

# EXHIBIT B

to Defendant Pferd, Inc.'s Memorandum in
Opposition to Saint-Gobain's Motion to
Preclude Supplementation of Pferd's
Invalidity or Willfulness Defenses

US005538464A

# United States Patent [19]

## MacKay, Jr.

[11] **Patent Number:** 5,538,464

[45] **Date of Patent:** Jul. 23, 1996

[54] **DISPOSABLE ABRASIVE WHEEL HAVING DISPOSABLE MOUNTING HUB INCLUDING IMPROVED METAL PRESSURE CAP AND METHOD OF MANUFACTURING THE SAME**

[76] Inventor: **Joseph H. MacKay, Jr.**, 17551 Cabela Dr., San Diego, Calif. 92127

[21] Appl. No.: **290,200**

[22] Filed: **Aug. 15, 1994**

[51] Int. Cl.$^6$ .................................................. **B24B 41/00**

[52] U.S. Cl. ...................................... **451/342**; 451/510

[58] Field of Search .................................. 451/342, 510, 451/548, 490, 508, 509, 521, 512, 360, 363

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 489,149 | 1/1893 | Hyde . |
| 566,883 | 9/1896 | Higgins . |
| 791,159 | 5/1905 | Norton . |
| 791,791 | 6/1905 | Hurford . |
| 872,932 | 12/1907 | Hall . |
| 1,162,970 | 12/1915 | Binford . |
| 1,724,742 | 8/1929 | Albertson et al. . |
| 1,998,919 | 4/1935 | Ball et al. . |
| 2,278,301 | 3/1942 | Bauer . |
| 2,567,782 | 9/1951 | Rhees . |
| 3,041,797 | 7/1962 | Moffly . |
| 3,081,584 | 3/1963 | Bullard . |
| 3,136,100 | 6/1964 | Robertson, Jr. . |
| 3,210,892 | 10/1965 | Perham . |
| 3,500,592 | 3/1970 | Harrist . |
| 3,566,547 | 3/1971 | Lonaberger et al. .................. 451/342 |
| 3,596,415 | 8/1971 | Donahue .......................... 451/510 |
| 3,621,621 | 11/1971 | Husack . |
| 3,800,483 | 4/1974 | Sherman . |
| 3,879,178 | 4/1975 | Bosma . |
| 3,912,411 | 10/1975 | Moffat . |
| 3,960,516 | 6/1976 | Biardi . |
| 4,015,371 | 4/1977 | Grayston . |
| 4,026,074 | 5/1977 | Malarz . |
| 4,054,425 | 10/1977 | Sherman . |
| 4,088,729 | 5/1978 | Sherman . |
| 4,240,230 | 12/1980 | Ferantini . |
| 4,322,920 | 4/1982 | Wells . |
| 4,439,953 | 4/1984 | Hasegawa . |
| 4,449,329 | 5/1984 | Horney . |
| 4,541,205 | 9/1985 | Patrello . |
| 4,601,661 | 7/1986 | May . |
| 4,637,170 | 1/1987 | Block ..................................... 451/342 |
| 4,694,615 | 9/1987 | Mackay, Jr. . |
| 4,754,577 | 7/1988 | Mackay, Jr. ......................... 451/342 |
| 4,760,670 | 8/1988 | Mackay, Jr. ......................... 451/342 |
| 4,878,316 | 11/1989 | Mackay, Jr. ......................... 451/342 |
| 4,924,634 | 5/1990 | Mackay, Jr. ......................... 451/342 |
| 4,934,107 | 6/1990 | Mackay, Jr. ......................... 451/342 |
| 4,979,336 | 12/1990 | Mackay, Jr. ......................... 451/342 |
| 5,031,361 | 7/1991 | Mackay, Jr. ......................... 451/342 |
| 5,072,223 | 12/1991 | Buc . |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2172823 | 10/1986 | United Kingdom | .................. 451/342 |

*Primary Examiner*—Bruce M. Kisliuk
*Assistant Examiner*—Derris H. Banks
*Attorney, Agent, or Firm*—Robbins, Berliner & Carson

[57] **ABSTRACT**

A disposable abrasive wheel for mounting on a rotatable threaded spindle of a power tool. The abrasive wheel contains a retaining nut on one side and a backing member on the other side non-removably secured together on the abrasive wheel without the aid of adhesives in such a manner that the abrasive wheel is placed in compression when it is operably secured upon the spindle of the power tool under operative loads. A metal pressure cap extends outwardly from the backing member and has an upper flat surface for engaging a should formed on the spindle of the power tool during operation of the finishing article. The metal pressure cap includes an inner surface defining a plurality of grooves. A peripheral wall extends upwardly from the retaining nut into the pressure cap and includes portions thereof disposed within said grooves.

**10 Claims, 3 Drawing Sheets**





*FIG. 1*



*FIG. 3*



*FIG. 4*



*FIG. 2*





*FIG. 5*

*FIG. 7*

*FIG. 6*

*FIG. 8*

5,538,464

1

**DISPOSABLE ABRASIVE WHEEL HAVING
DISPOSABLE MOUNTING HUB INCLUDING
IMPROVED METAL PRESSURE CAP AND
METHOD OF MANUFACTURING THE SAME**

### FIELD OF THE INVENTION

This invention relates generally to abrasive articles and more particularly to abrasive wheels having a mounting hub permanently affixed thereto with the combination adapted for quick attachment and release to an appropriate portable power tool. The abrasive wheel may be disposed of when spent.

### BACKGROUND OF THE INVENTION

The use of rotatably driven abrasive articles is widespread and familiar in our industrial society. One of the more serious problems encountered in the use of such devices resides in the provision of effective means for preventing undesired or accidental disassociation of the article from the shaft, spindle or other rotatable drive means on which it is mounted. This problem is particularly acute when the connection between the article and its driving shaft or spindle is intentionally detachable to facilitate quick removal and replacement of the article. Into this category fall a host of devices, for example, portable powered grinders wherein the grinding wheels employed are intentionally detachable from the power driven shaft so that they may be readily replaced. To properly mount the grinding wheel upon the shaft, provision must be made to provide sufficient clamping force and also to secure the wheel rotationally.

One means of securing the grinding wheel to the drive shaft has been to provide an appropriate backing member with a central opening which is aligned with an opening provided in the depressed center abrasive grinding wheel. A bolt or nut member (depending upon the configuration of the drive shaft; that is, whether it is externally or internally threaded) is then inserted from the face side of the grinding wheel and is then tightened in place. In this manner a plurality of loose parts are configured in a completed assembly ready for use. As the grinding wheel is utilized the appropriate clamping force is provided to securely affix the grinding wheel to the drive shaft. Such an assembly, however, typically requires appropriate tools such as wrenches or the like to attach and remove the grinding wheel from the drive shaft. Such a device is shown in U.S. Pat. Nos. 489,149; 3,596,415; 1,998,919; 566,883; 507,223; 1,162,970; 791,159; 489,149 and 3,210,892.

Subsequently it became desirable to affix the mounting hub permanently to the grinding wheel so that the entire unit may be attached and detached from the drive shaft and discarded when the grinding wheel has been worn down. In these types of devices it is customary to utilize an adhesive such as an epoxy resin or the like between the backing member and the back surface of the grinding wheel to retain integrity between the mounting hub and the grinding wheel to secure the wheel rotationally.

Even though the adhesive tended to work quite well in most applications, it was discovered that in some instances the adhesive would break loose and the grinding wheel would rotate relative to the mounting hub. Such was particularly the case since the hub was a one-piece member which was internally threaded and held in place upon the grinding wheel by swaging an extension thereof into place, thus providing a fixed clamping force holding the grinding wheel. No additional clamping force was exerted during

2

further rotation of the wheel during use as was the case with the traditional nut which was secured from the face as above described. As a result various keyways and corresponding key structures were developed between the wheel and the mounting hub and used in conjunction with the adhesive to preclude rotational movement between the mounting hub and the grinding wheel. Examples of such devices are shown in U.S. Pat. Nos. 3,136,100; 4,015,371; 2,278,301; 3,081,584; 3,500,592; 3,800,483; 4,240,230 and 4,541,205.

Additional prior art patents known to applicant are U.S. Pat. Nos. 3,041,797; 3,879,178; 1,724,742; 3,912,411; 3,879,178; 3,960,516; 4,026,074; 4,054,425; 4,088,729; 4,322,920; 4,439,953; 4,449,329; 4,601,661; 791,791; 872,932; 2,567,782; 3,136,100; 3,210,892 and 3,621,621.

The devices utilized in the prior art for providing the disposable finishing article assembly including the permanent affixed mounting hub generally provide the service intended. There are, however, certain inherent disadvantages found with regard to the various devices. Such disadvantages are that in manufacturing, the utilization of an adhesive adds additional labor to the cost of manufacturing. In certain of the devices, parts must be keyed together and properly aligned in order to function appropriately. In addition thereto, through the utilization of die-cast mounting hubs which are included as an integral unitary part of the backing member there is no additional clamping force exerted upon the finishing article as it is being rotated by the power tool. Furthermore, such mounting hubs are relatively bulky, take up space and add substantial weight and additional cost to the completed product.

To solve the problems of the prior art as briefly summarized above, applicant has developed an abrasive article having a drive member non-removably affixed thereto for mounting on a rotatable spindle of a power tool. The drive member includes a backing member and a retaining nut positioned on opposite sides of the abrasive article with the retaining nut upset or swaged to hold the retaining nut and the backing member together on opposite sides of the abrasive article. A pressure cap is provided and may take various forms and may be constructed of different materials. For example, the pressure cap may be metal or plastic and may be secured to the backing member through a rotational mechanism or through upsetting or clamping the backing member. The pressure cap engages a shoulder on the spindle of the power tool and through engagement between the treads and the retaining nut and the threaded spindle as well as the forces applied by the pressure cap. The abrasive article is placed in compression between the backing member and a flange on the retaining nut during use of the abrasive article when such is operatively secured upon the spindle of the power tool. Such devices are illustrated and described in applicant's issued patents; namely 4,694,615; 4,754,577; 4,760,670; 4,924,634; 4,979,336 and 5,031,361. These patents of applicant constitute the best prior art known to applicant. The disclosure of applicant's U.S. Pat. No. 4,694,615 is incorporated herein by reference.

### SUMMARY OF THE INVENTION

An abrasive wheel having a drive member non-removably affixed thereto for mounting on a rotatable spindle of a power tool. The drive member includes a backing member having a central opening therethrough secured by a retaining nut positioned on the opposite side from the backing member. The retaining nut extends through an opening in the abrasive wheel from the face toward the back of the finishing

5,538,464

3

article and has a radial flange at one end thereof seated against the abrasive wheel face. A pressure cap defining a central opening extends outwardly from the backing member. The pressure cap includes an inner surface defining a plurality of spaced apart grooves. Means extending upwardly from the end of said retaining nut opposite said flange is disposed within said grooves to secure the retaining nut, backing member and pressure cap on said wheel without the use of adhesives while permitting limited longitudinal movement therebetween. The pressure cap extends longitudinally away from the backing member for the top of the pressure cap to engage the power tool spindle for placing the abrasive wheel in compression between said backing member and radial flange during use thereof when the finishing article is operatively secured upon the spindle of the power tool.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a cross sectional view of a preferred embodiment of a finishing article assembly constructed in accordance with the principles of the present invention and mounted in operable position on the spindle of a power tool;

FIG. 2 is an exploded view of the structure as illustrated in FIG. 1;

FIG. 3 is a cross sectional view taken about the lines 3—3 in FIG. 2 of a backing member constructed in accordance with the present invention and having a pressure cap affixed thereto;

FIG. 4 is a cross sectional view of a retaining nut constructed in accordance with the principles of the present invention;

FIG. 5 is a bottom plan view of a pressure cap constructed in accordance with the principles of the present invention;

FIG. 6 is an enlarged cross sectional view of the pressure cap taken about the lines 6—6 of FIG. 5;

FIG. 7 is an enlarged fragmentary cross sectional view illustrating a preferred embodiment for securing the pressure cap, the backing member and the retaining nut to the abrasive wheel; and

FIG. 8 illustrates the manner in which the securing operation may be performed.

DETAILED DESCRIPTION

By reference now to FIGS. 1 through 7, there is illustrated a preferred embodiment of a disposable abrasive wheel drive member assembly constructed in accordance with the principles of the present invention. The term abrasive wheel is intended herein to be a generic term for abrasive devices constructed in accordance with the present invention which may take many forms, such, for example, as grinding wheels of all types including depressed center wheels, flat disks, cut off wheels, diamond blades, or the like. For purposes of ease of illustration and clarity of description only a seven (or nine) inch diameter depressed center grinding wheel will be shown and described. It will, however, be understood by those skilled in the art that other disposable abrasive articles which may be placed in compression during use thereof may be substituted for the grinding wheel shown. As is shown in FIGS. 1 through 7, a depressed center grinding wheel 10 has a disposable drive member or hub assembly 12 permanently affixed thereto without the use of adhesives so that the grinding wheel may be attached to the threaded spindle 14 of an appropriate power tool 16. According to the principles of the present invention, a disposable mounting hub or drive

4

member is constructed in such a manner that when the grinding wheel is placed in operation upon the spindle 14 the grinding wheel 10 is placed in compression and the more force that is applied to the grinding wheel during utilization thereof, the greater the operational compression becomes. As a result of placing the grinding wheel in such compression the grinding wheel is maintained upon the spindle and at the same time, through the compression or clamping force, the grinding wheel 10 cannot rotate relative to the drive member or hub assembly 12. However, as a result of the construction of the drive member, the spent grinding wheel may be easily removed from the spindle for disposal usually without the utilization of hand tools or the like.

As is clearly shown, the grinding wheel 10 includes a back surface 18 and a front surface 20. The central portion of the grinding wheel is depressed as viewed from the front thereof and as is shown at 22, with a corresponding central raised portion 24 on the back thereof. A centrally located aperture 26 is provided in the depressed center portion of the grinding wheel 10. The purpose of the depressed center of the grinding wheel 10 is to insure that the driving member or spindle does not protrude beyond the face portion 20 of the wheel 10 and thus interfere with a workpiece during the time the grinding wheel 10 is being utilized. However, when certain types of abrasive articles are utilized such that the outer circumference is used instead of the face, then a depressed center may not be necessary or included in the article.

A backing member 28 is provided and is adapted to be received on the back surface 18 of the grinding wheel 10 about the raised portion 24. The backing member 28 has a diameter which is less than the diameter of the wheel 10. The backing member 28 defines a second central aperture 30 therethrough which is aligned with the aperture 26 in the grinding wheel 10. The backing member 28 is preferably stamped from sheet metal.

As is shown more specifically in FIG. 3, the backing member 28 includes an inner surface 36 and an outer surface 38. The inner surface 36 is disposed opposed the back surface 18 of the abrasive finishing wheel 10. The inner surface 36 includes a land 40. The land 40 is formed about the outer peripheral portion of the backing member 28. On seven and nine inch wheels with depressed centers the land 40 always engages the back surface 18 of the abrasive finishing wheel away from the depressed center. On smaller depressed center grinding wheels, diamond wheels, flat surface or cut off wheels and the like, the backing member may take the form of a flat washer like member.

As shown in FIG. 4, a retainer nut 44 includes a body portion 46 which is hollow and has a radially outwardly extending flange 48 at a first end 50 thereof. The internal surface of the body 46 has threads 56 formed therealong for attachment to the threaded spindle 14 of the power tool. A continuous wall 52 extends upwardly from the body 46 and terminates in a rim 53. The wall 52 is relatively thin and as will be described more in detail below may be upset or swaged. The nut 44 is inserted through the aperture 26 in the grinding wheel and the aperture 30 in the backing member 28 from the front surface 20 toward the rear surface 18 of the grinding wheel 10. The wall 52 of the nut 44 extends through the opening 30 in the backing member 28.

The nut 44 is preferably constructed from a metal die casting but may be formed from an aluminum extrusion which is then machined to provide the flange 48 and the threads 46. Alternatively the nut may be formed from steel bar stock, molded plastic, composite materials, or formed by cold heading.

5,538,464

| 5 | 6 |

**5**

To provide proper operational compressive forces on the disposable grinding wheel as above described, a pressure cap **60** forms a part of the hub assembly **12**. The metal pressure cap **60** is formed as a hexagonal nut shaped member having a hollow body **72**, and an inner surface **73**. Preferably the metal pressure cap **60** is formed by metal die casting, however, it will be recognized that it may be formed from molded plastic or composite material. The metal pressure cap **60** includes a first or rear surface **62** for engaging a surface **64** on the power tool spindle when the grinding wheel is in an operable position on the power tool **16**. A second or front surface **66** on the metal pressure cap **60** rests upon the outer surface **38** of the backing member **28**.

The inner surface **73** of the pressure cap **60** defines a plurality of grooves **80, 82, 84, 86, 88** and **90**. The grooves **80–90** terminate at the upper surface **62** in a plurality of apertures **92–102**. Also extending inwardly radially from the surface **73** is a plurality of ribs **104, 106, 108, 110, 112** and **114**. The ribs **104–114** are disposed between adjacent grooves **80–90** respectively. The ribs **104–114** provide strength to the flat surfaces **116–126** forming the hexagonal nut form of the pressure cap **60**.

The pressure cap **60** at the end **128** thereof includes in the embodiment as illustrated an extension **130**. The extension **130** extends through the opening **30** in the backing member **28** and is turned as shown at **132** in FIG. 3 to retain the pressure cap on the backing member **28** so that it protrudes outwardly therefrom. It will be appreciated by those skilled in the art that a relatively minor amount of material is required to secure the pressure cap **60** to the backing member **28** because there is no tension force being applied which would tend to separate the pressure cap from the backing member. Those skilled in the art will also recognize that the pressure cap and the backing member may be constructed of a unitary die cast structure if such is desired or, alternatively, from a unitary molded plastic or composite member depending upon the particular application. The combination of the metal pressure cap **60** and the backing member **28** is retained in position on the abrasive wheel **10** by upsetting the continuous wall **52** so that portions thereof extend into the grooves **80–90**. Once installed, the retaining nut **44**, the backing member **28** and the metal pressure cap **60** remain permanently on the grinding wheel **10** and are disposed of along with the spent wheel **10**. The hollow body **72** of the metal pressure cap **60** defines an aperture **61** for receiving the spindle **14** of the power tool. When assembled, the apertures **26, 30** and **61** are aligned axially.

As is illustrated more particularly in FIG. 8 along with FIGS. 1, 6 and 7, the hub assembly is affixed to the wheel **10** by upsetting sections of the wall **52** extending upwardly from the nut **44** so that these sections of the wall **52** are disposed within and extend into the grooves **80–90** formed in the inner surface **73** of the pressure cap **60**. During assembly the retainer nut **44** is inserted through the opening **26** in the wheel **10** with the wall **52** extending upwardly from the rear surface **18** thereof. The combination of the backing member **28** with the pressure cap **60** affixed thereto is then disposed such that the wall **52** is received within the hollow body **72** of the pressure cap **60**. An appropriate tool such as is illustrated at **132** in FIG. 8 is inserted into the apertures **92–102** of the body **72** of the pressure cap **60**. An appropriate force F is applied downwardly thereto as shown by the arrow **134**. The end **136** of the tool is appropriately shaped to engage the rim **53** of the wall **52** and upset the wall **52** thereof driving sections of the wall **52** into the grooves **80–90**. When such is done the retaining nut and the combination of the metal pressure cap and the backing member

**6**

are held in place on the wheel **10**. By causing the sections of the wall **52** to engage the grooves **80–90** of the pressure cap **60** it will be recognized by those skilled in the art that the pressure cap and the nut are rotationally locked together. Also by extending the sections of the wall into the grooves there is an axial securing together of these elements on the wheel **10**. The assembly is also accomplished such that there is permitted limited axial movement so that when the wheel is operably affixed to the spindle **14** the wheel is placed in compression through forces applied by the pressure cap downwardly and by the flange **50** on the nut **44** upwardly through the forces generated by the cooperative threads between the spindle and the retaining nut **44**.

Although a groove has been provided at the point where the flat surfaces of the outer surface of the pressure cap **60** come together so that in the hexagonal form there are six such grooves it should be understood by those skilled in the art that a smaller number of grooves may be utilized, for example, such as two disposed opposed each other. However, by providing the additional two opposed sets of such grooves additional strength for the rotational locking is provided.

It will be understood by those skilled in the art that by providing the hexagonal form with the rotational locking as above described one may, if desired, utilize a wrench to remove the spent abrasive wheel from the power tool **16** when it is required to replace it with a fresh wheel. Experience, has however, taught that because of the particular way in which the present invention is constructed it may be easily removed from the power tool by hand.

The force necessary to cause the grinding wheel **10** to be placed in compression is generated upon attachment of the spindle **14** to the threads **56** in the nut **44**. By reference to FIG. 1 it will be noted that when the grinding wheel is threaded upon the spindle **14** the surface **62** engages the spindle **64**. The interengagement between the threads **14** and **56** of the spindle and nut, respectively, urge the nut upward toward the backing member **28** as the wheel is seated upon the spindle. At the same time, the spindle seat **64** applies a downward force to surface **62** of the pressure cap **60** which in turn, through the surface **66** applies a downward force to the backing member **28**. Therefore, this mutual clamping force causes the grinding wheel to be placed in compression. Those skilled in the art will recognize that as the grinding wheel **10** is used by being placed against a workpiece, additional torque is applied causing the grinding wheel to be further tightened onto the spindle **14**. That is, if the grinding wheel moves, even incrementally, during contact with a workpiece, the friction between the nut and the grinding wheel center causes the nut to rotate in a further tightening direction. Such rotation of the nut further urges the nut toward the flange which in turn applies a further force to the flange. The more the grinding wheel is tightened the greater the operational compression force becomes and the more securely the grinding wheel **10** is clamped between the backing member **28** and the flange **48** on the nut **44**. As a result of this strong clamping or compression the grinding wheel **10** is precluded from movement relative to the hub or driving member **12** and at the same time is precluded from disengaging from the spindle **14**. It will be recognized by those skilled in the art that the grinding wheel assemblies as illustrated in FIGS. 1 through 7 and as above described require no adhesive for construction and may be simply and easily assembled, are relatively light in weight as compared to the prior art devices utilizing the solid cast hubs and provides a secure attachment of the abrasive article to the power tool and through the utilization of the increased

5,538,464

7

compression precludes relative rotation of the grinding wheel with respect to the driving member. It has been discovered that the utilization of the device as above described and as constructed in the preferred embodiment is extremely smooth in operation with no vibration. The reason for such extremely smooth operation is that all of the parts are perfectly aligned one with the other with the abutting surfaces parallel when in compression and only the wheel 10 can cause any vibration and then only if it is not properly balanced during the construction thereof.

Through the structures as illustrated and described, all currently known sizes of depressed center grinding wheels may be accommodated. In addition thereto flat grinding wheels and diamond wheels may also be accommodated.

There has thus been disclosed a disposable abrasive article driving member assembly which securely holds the article during operation, which is light in weight, vibration-free, and less expensive than prior art throw-away articles while meeting all safety standards currently known and in existence.

What is claimed is:

1. In an abrasive article having a face, a back and a first centrally disposed aperture therethrough with a disposable drive member non-removably affixed thereto for mounting on a threaded rotatable spindle of a power tool, the drive member including a backing member having an inner and outer surface and a diameter smaller than the diameter of said abrasive article and a second centrally disposed aperture therethrough aligned with said first aperture, and a retainer nut having a hollow internally threaded body having first and second ends and a first radially outwardly extending flange extending from said first end of said body, said body extending through said first and second apertures from said face toward said back with said radial flange seated against said face, the improvement comprising:

a pressure cap extending outwardly from said backing member outer surface and having inner and outer surfaces and defining a third centrally (disposed aperture therethrough aligned with said first and second apertures, said pressure cap inner surface defining a plurality of spaced apart grooves with portions of said cap inner surface disposed there between; and

means including a wall extending upwardly from said second end of said body, portions of said wall being upset and extending into said spaced apart grooves to non-removably axially secure said retaining nut and said backing member together on said article without the use of adhesives, said backing member and said retaining nut moving toward each other to compress said finishing article therebetween as operative loads are applied to said finishing article during use on said power tool.

2. The improvement as defined in claim 1 wherein said wall is continuous and includes a rim.

3. The improvement as defined in claim 2 which further includes a plurality of ribs extending radially inwardly from said pressure cap inner surface.

4. The improvement as defined in claim 2 wherein said portion of said wall extending into each of said grooves is a different portion of said wall including said rim.

5. The improvement as defined in claim 1 wherein said pressure cap outer surface is in the form of a hexagonal nut having flat surfaces.

8

6. The improvement as defined in claim 5 wherein each of said apertures is disposed adjacent a common terminus of adjacent flat surfaces.

7. The method of manufacturing a disposable abrasive article having a drive member non-removably affixed within a centrally disposed aperture thereof including the steps of:

providing a backing member having a pressure cap extending outwardly therefrom upon one side of said abrasive article, said pressure cap including a plurality of grooves on an inner surface thereof;

providing a retaining nut having a hollow internally threaded body and a radially-outwardly extending flange at one end of said body and a wall extending upwardly from the opposite end of said body;

inserting said retainer nut through said centrally disposed aperture so that said wall extends into said pressure cap adjacent said grooves;

placing a tool into engagement with said wall; and

applying a force to cause said tool to upset at least a portion of said wall to drive said portion of said wall into that groove adjacent said portion of said wall.

8. The method as defined in claim 7 wherein said pressure cap further includes a plurality of apertures aligned with said grooves and inserting said tool through said apertures.

9. The method as defined in claim 8 wherein said tool is inserted through a plurality of apertures simultaneously.

10. In an abrasive article having a face, a back and a first centrally disposed aperture therethrough with a disposable drive member non-removably affixed thereto for mounting on a threaded rotatable spindle of a power tool, the drive member including a backing member having an inner and outer surface and a diameter smaller than the diameter of said abrasive article and a second centrally disposed aperture therethrough aligned with said first aperture, and a retainer nut having a hollow internally threaded body having first and second ends and a first radially outwardly extending flange extending from said first end of said body, said body extending through said first and second apertures from said face toward said back with said radial flange seated against said face, the improvement comprising:

a pressure cap extending outwardly from said backing member outer surface and having inner and outer surfaces and defining a third centrally disposed aperture therethrough aligned with said first and second apertures, said pressure cap inner surface defining a plurality of spaced apart grooves, said pressure cap having an upper flat surface for engaging said spindle wherein said upper flat surface defines a plurality of apertures, each of said grooves being aligned with one of said apertures; and

means including a continuous wall having a rim extending upwardly from said second end of said body, a different part of said wall including said rim extending into each of said spaced apart grooves to non-removably secure said retaining nut and said backing member together on said article without the use of adhesives, said backing member and said retaining nut moving toward each other to compress said finishing article therebetween as operative loads are applied to said finishing article during use on said power tool.

* * * * *

# EXHIBIT C

to Defendant Pferd, Inc.'s Memorandum in
Opposition to Saint-Gobain's Motion to
Preclude Supplementation of Pferd's
Invalidity or Willfulness Defenses

# THE
# DUALOCK HUB





A Dualock Hub Cap & Nut are uniquely locked together on a wheel in two ways:







## ⇩ AXIALLY LOCKED ⇩

Permanently gripping the wheel between the Cap & Nut for convenience in mounting - - but in such a way that the Nut can automatically tighten during grinding so the **wheel cannot slip.**





## ROTATIONALLY LOCKED

Permitting the use of a wrench on the cap, if desired, for removing the wheel from the grinder spindle. (The wheel is almost always removable without a wrench.)

*There is no system to hold a wheel that's more*
*CONVENIENT - - EASY - - SAFE - - EFFECTIVE*

**WHEELFAST®**                    **TARTAN, INC.**

Case 4:05-cv-40035-FDS    Document 23    Filed 02/10/2006    Page 3 of 6

# THE DUALOCK HUB





DUALOCK HUB CAPS & HUB NUTS

## SIMILARITIES

## DUALOCK/ CONVENTIONAL



CONVENTIONAL EQUIPMENT



MOUNTING A WHEEL
WITH LOOSE DUALOCK PARTS

A Dualock Hub holds a wheel on a grinder in much the same way as does conventional equipment - - a rigid plate supports the back of the wheel while a retaining nut holds it on the grinder.

Both methods are self-tightening during grinding so the **wheel cannot slip.**



MOUNTING A WHEEL
WITH CONVENTIONAL EQUIPMEN

## THE DUALOCK DIFFERENCE



No loose parts - - the two parts of a Dualock Hub (Hub Cap & Nut) are locked together on the wheel.

The Dualock Hubbed wheel is threaded (hand tight) onto the grinder spindle as a single unit.

After use, the Dualock Hubbed wheel is removed as unit; usually by hand, without the need for a wrench.



*There is no system to hold a wheel that's more CONVENIENT - - EASY - - SAFE - - EFFECTIVE*

# WHEELFAST®

# TARTAN, INC.




# DUALOCK HUB INSTALLATION

Two components - Hub Cap and Hub Nut - are locked (swaged) together on a wheel to form a Dualock Hub.



### Hub Caps are available in two sizes:



Hub Cap Small
(Part #HCS)
for 4¹/₂"-5" wheels

Hub Cap Large
(Part #HCL)
for 7"- 9" wheels

Hub Nuts are available in 4 barrel lengths to accommodate a range of wheel thicknesses from approximately .100" (2.55MM) to .300" (7.80MM).

BARREL LENGTH



| PART # | BARREL LENGTH | FOR USE ON |
|--------|---------------|------------|
| HN300 | .300" | } 4¹/₂" - 5" Wheels |
| HN400 | .400" | |
| HN500 | .500" | } 7" - 9" Wheels |
| HN600 | .600" | |

A properly installed Dualock Hub

- Will automatically tighten during use so the **wheel cannot slip.**

- Cannot be turned on the wheel by hand.



The Nut length preferred fo specific wheel type and si is the shortest that permits proper Hub installation.




**WHEELFAST®**

(OVER)

▦ **TARTAN, IN**

Case 1:05-cv-40035-FDS   Document 85-4   Filed 09/15/07   Page 47 of 54

# DUALOCK HUB INSTALLATION



## EQUIPMENT & TOOLING

A Dualock Hub Cap & Nut are locked together on a wheel quickly and easily, in one operation (without adhesives) using simple tooling available from Tartan.



7" Wheel Hub Cap Large Hub Nut    Positioned on Installation Tool

4½" Wheel Hub Cap Small Hub Nut    Positioned on Installation Tool

Manual & Air Presses capable of applying the force required to swage (lock) the Hub Cap and Nut together are also available from Tartan.



Manual Press



Air Press

## TOOL MAINTENANCE



Installation Tool

- Tool should be cleaned periodically with air blast and/or solvent.

**Swage Pin Matrix can be easily replaced.**



Removing Screw Plug

- Remove Screw Plug in bottom of Body and drop out Pin Matrix, Spring & Nut Pilot.

- Insert replacement Matrix and rotate to permit groove in Pin end of Matrix to drop over locating pin in Tool Body.



Swage Pin Matrix

- Insert Nut Pilot & Spring.

- Insert and tighten Screw Plug.



Disassembled Tool

**WHEELFAST®**

(OVER)

**TARTAN, INC**

**TARTAN, INC.**

**WHEELFAST**

DUALOCK

Part Prices
( each )

| Part # | Part Name | Used On Wheel Diam. | Total Quantity Ordered ( All Parts Combined ) | | |
|--------|-----------|---------------------|--------|--------|---------|
| | | | 10000 | 25000 | 100000 |
| HN300 | Hub Nut 300 | $4\frac{1}{2}"-5"$ | $.152 | $.145 | $.138 |
| HN400 | Hub Nut 400 | $4\frac{1}{2}"-5"$ | .162 | .154 | .147 |
| HN500 | Hub Nut 500 | 7"-9" | .172 | .164 | .156 |
| HN600 | Hub Nut 600 | 7"-9" | .182 | .173 | .165 |
| HCS | Hub Cap Small | $4\frac{1}{2}"-5"$ | .158 | .151 | .144 |
| HCL | Hub Cap Large | 7"-9" | .264 | .252 | .240 |

Minimum order quantity per part---2500

All prices f.o.b. shipping point

3/95

# EXHIBIT D

to Defendant Pferd, Inc.'s Memorandum in Opposition to Saint-Gobain's Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses

## Confidential

Filed under Protective Order.

# EXHIBIT E

to Defendant Pferd, Inc.'s Memorandum in Opposition to Saint-Gobain's Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses

## Confidential

Filed under Protective Order.

# EXHIBIT F

to Defendant Pferd, Inc.'s Memorandum in
Opposition to Saint-Gobain's Motion to
Preclude Supplementation of Pferd's
Invalidity or Willfulness Defenses

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COPY

- - - - - - - - - - - - - - - - - - - - - - - - - - -
SAINT-GOBAIN,                          )
          Plaintiff,                   )
                                       )           DOCKET NO.:
     Vs.                               )           CV 05-40045
                                       )
PFERD,                                 )
          Defendant.                   )
- - - - - - - - - - - - - - - - - - - - - - - - - - -

SCHEDULING CONFERENCE

BEFORE:   The Honorable F. Dennis Saylor, IV

                    United States District Court
                    District of Massachusetts
                    595 Main Street
                    Worcester, Massachusetts
                    Thursday, August 25, 2005
                    Courtroom No. 2

           *   *   *   *   *   *   *   *   *   *

                    TARALLO & TARALLO
                PROFESSIONAL COURT REPORTERS
                      P.O. BOX 85
                AUBURN, MASSACHUSETTS 01501
TEL: (508) 832-0048              FAX: (508) 832-0209

1   magistrate judge.  Mr. Lowrie?

2                   MR. LOWRIE:  I believe that the parties

3   have not so consented.

4                   THE COURT:  And I think I don't have

5   the certifications required under the local rule

6   about conversations with the client.

7                   MR. LOWRIE:  Those conversations have

8   been had.  I meant to bring the certification with

9   me, but I did not.

10                  THE COURT:  The important thing is the

11  conversation, not piece of paper.  If you represent

12  that you had the conversation, that's fine.  Ms.

13  Carroll.

14                  MS. CARROLL:  Your Honor, we filed ours

15  electronically, but I actually brought the ink

16  version since in this new age I didn't know if the

17  Court wanted an ink version as well.  But I filed

18  it the same day that the joint statement was filed.

19                  THE COURT:  Okay.  Then somehow I

20  missed it.  Again, the important thing is you had

21  the conversation, not the piece of paper, two

22  pieces of paper.

23                  MR. LOWRIE:  Your Honor, there is -- it

24  occurred to me that there is one ambiguity in the

31

1    schedule.

2                 THE COURT:  Yes.

3                 MR. LOWRIE:  Often people ask for a

4    bifurcation of damages and liability because of an

5    attorney opinion.  There is an issue of willfulness

6    of infringement.  The issue of willfulness is often

7    interwoven with the issue of liability.

8                 And so it would be my proposal -- and I

9    hope this is what the Court is ordering -- that the

10   discovery on that issue is going forward with the

11   liability rather than being held off for the

12   accounting phase.

13                THE COURT:  Miss Carroll.

14                MS. CARROLL:  Well, as of this point,

15   we're not relying on opinion of counsel on the

16   willfulness issue.

17                THE COURT:  All right.  Based on that

18   representation, I think there is probably not an

19   issue.  If it changes, the parties can feel free to

20   ask me for clarification.

21                And by the way, you should also feel

22   free to request a telephone conference particularly

23   for something that is going to be relatively short.

24   You need not come out here, which is one way to cut