UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PFERD, INC., )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO. 05-cv-40035 (FDS) |

**SAINT-GOBAIN'S OPPOSITION TO PFERD'S
<u>MOTION TO COMPEL DEPOSITION</u>**

Plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") hereby opposes the motion by Pferd, Inc. ("Pferd") to compel the deposition of Mary Porter, in-house counsel at Saint-Gobain.

**INTRODUCTION**

After the close of business on January 18, 2006, Pferd emailed a deposition notice to Saint-Gobain's law firm, requesting the deposition of Ms. Porter, who is Saint-Gobain's in-house attorney and who is assisting in the litigation.

Pferd's motion should be denied. Ms. Porter is not an officer, director or managing agent of Saint-Gobain[1]; thus her appearance for a deposition may not be compelled by a deposition notice. <u>See</u> Fed. R. Civ. P. 30. The appearance of a non-party, such as Ms. Porter, must be secured by serving a subpoena.

---

[1] Ms. Porter is an assistant secretary of the corporation, a position with limited authority relating to intellectual property matters only. She has no authority to bring or settle litigation. Plaintiff does not believe that this position would be considered one of "officer" as contemplated by the Rule. Neither is Ms. Porter a "managing agent," under Rule 30, as she is not invested with general powers to exercise her discretion and judgment in dealing with corporate matters.

Even if Pferd had issued and served a subpoena on Ms. Porter, the evening of January 18, instead of emailing a deposition notice to Saint-Gobain's law firm, Pferd nevertheless would not be entitled to take the deposition, for three additional reasons: (1) Pferd still would have failed to provide "reasonable notice," because the deposition was to occur just six days (and just four business days) after Pferd sent the notice by email to Saint-Gobain's law firm; (2) the lack of "reasonable notice" could not be remedied within the discovery period; and (3) the failure to do so earlier is inexcusable because Pferd was aware that Ms. Porter possessed any information for which they would seek a deposition for the entirety of the fact discovery period (i.e., at least since Saint-Gobain's Initial Disclosures were served on August 5, 2005). In short, Pferd's efforts were untimely.

Finally, even if Pferd had served a subpoena on Ms. Porter and did so at a time that constituted "reasonable notice" (both of which Pferd, in reality, failed to do), Pferd still would not be permitted to take the deposition. Ms. Porter is an attorney actively involved in the case; such depositions should be permitted only in compelling circumstances. Here, Pferd has not articulated <u>any</u> basis for questioning Ms. Porter on any topic likely to include non-privileged information. The motion to compel should be denied.

## ARGUMENT

**I.   A "DEPOSITION NOTICE" PROVIDES NO BASIS TO COMPEL THE DEPOSITION OF A NON-PARTY**

Pferd did not issue a subpoena for Ms. Porter during the fact discovery period, but merely issued a deposition notice. Because Ms. Porter is an employee, not an officer, director, or managing agent, her presence at a deposition must be obtained by subpoena. Pferd's motion to compel the deposition must, therefore, be denied.

It is well established that an employee of a corporate party is treated in the same way as any other witness and that his or her presence must be obtained by subpoena rather than by a notice. Magistrate Judge Collings, of this Court, has dealt with this situation before and ruled that the "depositions of non-managing agents and servants of a corporate party must be noticed as individuals" and "each must be served with a subpoena." GTE Prods. Corp. v. Gee, 115 F.R.D. 67, 69-70 (D. Mass. 1987); see also Wright, Miller & Marcus, 8A Federal Practice & Procedure: Civil 2d §2103, pp. 36-37 ("Except where the employee has been designated by the corporation under Rule 30(b)(6)," or is an officer, director, or managing agent, "an employee is treated in the same way as any other witness," and "his or her presence must be obtained by subpoena rather than notice."). The exception is where that employee of the corporate party was designated by the corporation under FRCP 30(b)(6), or is an officer, director or managing agent. Id.

In GTE, the discovery period had not expired, and counsel for the defendants were permitted to later serve subpoenas. Here, however, Pferd's untimely notice can no longer be remedied, as the discovery period has closed.[2]

Because she is an individual and not a party to this litigation, Ms. Porter had no obligation to appear. Thus, there is nothing to compel, and Pferd did not seek this discovery during the discovery period in a manner consistent with the Federal Rules.

---

[2] Saint-Gobain would be unfairly prejudiced by any additional delay in the discovery of this case. It had already agreed to extend the liability discovery period by a month, in part to allow for the original 30(b)(6) deposition of Saint-Gobain that had been timely noticed within the original discovery period.

3

## II.     EVEN HAD PFERD SUBPOENAED A DEPOSITION, IT WOULD HAVE BEEN UNTIMELY

### A.     THE NOTICE WAS NOT TIMELY

When it finally got around serving a <u>notice</u>, on the evening of January 18, Pferd provided just <u>four business days'</u> notice. This is not the required "reasonable notice" of a desire to take deposition of Ms. Porter.

Pferd's claims that it provided seven days' notice, but this is both misleading and irrelevant. One of the "days" was what remained of January 18, after the close of business hours. Two of the days were intervening weekend days. For purposes of notice and preparing for a deposition, there were only <u>four business days</u> between the time the notice was sent and the proposed start of the deposition. Furthermore, this notice was sent to outside counsel and <u>not the nonparty individual Pferd was seeking to depose</u>.

In addition to being factually incorrect, Pferd's argument is also legally incorrect. Pferd cites Massachusetts State Court Rules (which require "at least seven days' notice") to support its claim that it provided "reasonable notice" under the Federal Rules of Civil Procedure. "Reasonable notice" under the Federal Rules is interpreted according to the circumstances of the case. <u>See</u> 8A C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2111 (1994) ("Obviously no fixed rule can be laid down because much will depend on the other circumstances of the particular case."). Many federal courts, however, have enacted local rules requiring ten (10) days or more notice to the opposing party. <u>See, e.g.</u>, M.D. Fla. LR 3.02 (10 days); D. N.Mex. LR 30 (14 days). This jurisdiction does not have a federal local rule to guide it, but four business days' notice is shorter than most courts would approve.

In addition, the circumstances made that four-day period entirely unreasonable. Pferd has been aware of this witness for over five months. As Pferd itself points out, Saint-Gobain alerted

4

Pferd that Ms. Porter possessed information concerning the subject matter and prosecution of the patent-in-suit numerous times early on in the case. Saint-Gobain's Initial Disclosures were provided to Pferd on August 5, 2005, and Saint-Gobain's initial response to Pferd's Interrogatory No. 15 was provided on September 29, 2005. See Exhibits 2 and 3 to Defendant's Motion.

As Pferd also notes, the liability discovery period was initially set to close on December 15, 2005. Yet, Pferd did not even send the notice for its 30(b)(6) deposition until November 29, 2005, several months after Ms. Porter's role in the prosecution of the patent-in-suit was disclosed to Pferd. Saint-Gobain notified Pferd of its intention to make Mr. Timm its corporate representative less than one week after receiving the 30(b)(6) notice and prior to the entry of a discovery extension by the Court. No other deposition notices were sent during the discovery period as initially scheduled, and no comments or requests were otherwise made for the deposition of Ms. Porter until one week prior to the extended close of the discovery period.

That Pferd has known about Ms. Porter for such a long time weighs heavily in favor of a finding that four business days notice was not reasonable. See, e.g., In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 320, 327 (N.D. Ill. 2005) (denying motion to compel where the moving party had noticed the depositions only slightly more than two weeks before the close of discovery of two witnesses it had known about for months prior); In re Stratosphere Corp. Sec. Litig., 183 F.R.D. 684, 687 (D. Nev. 1999) (six days' notice to nonparty deponent and five days' notice to defendant of deposition of nonparty witness was unreasonably short, especially in light of fact that plaintiff knew witness planned to contest any taking of his deposition).

Pferd's claim that the 30(b)(6) deponent was not sufficiently prepared cannot support an argument that it is entitled to depose Ms. Porter. These are distinct issues. If Pferd found the 30(b)(6) witness to be ill-prepared, the remedy would be to seek another 30(b)(6) witness, or to

5

continue the deposition until the offered witness was sufficiently prepared to testify.[3] In any event, Pferd is not entitled to choose Saint-Gobain's 30(b)(6) designee; thus, any quarrels about the adequacy of Saint-Gobain's 30(b)(6) witness have no bearing on Pferd's claimed right to depose Ms. Porter. Pferd is simply trying to parlay its feigned complaints about the 30(b)(6) deposition into an excuse for taking <u>an entirely different deposition, of litigation counsel, that it failed to notice in a timely manner</u>. Pferd was aware of Ms. Porter, and her role at Saint-Gobain, months ago. Pferd could have noticed a timely deposition of Ms. Porter, but choose not to.

### B. PFERD'S FAILURE TO TIMELY NOTICE THE DEPOSITION COULD NOT AND STILL CANNOT BE REMEDIED

In this case, much as in <u>In re Sulfuric Acid Antitrust Litigation</u>, the moving party knew of the witness for months prior to seeking a deposition, waited until a week prior to the close of discovery to notice the deposition, filed an untimely motion to compel after the close of discovery,[4] and "the conditions giving rise to their predicament [were] attributable to having waited to the last minute to notice the depositions." <u>Id</u>. at 328.

Immediately upon receipt of Pferd's notice of deposition, Saint-Gobain objected to the unreasonably short notice and responded that the deposition "will not be going forward." <u>See</u> Exhibit 7 to Defendant's Motion. Saint-Gobain maintained that position, and the time for the noticed deposition passed. Pferd did not then immediately move to compel before the close of discovery.

---

[3] Of course, Rule 30(b)(6) does not require the production of the "most knowledgeable" individual in the company to testify on each topic. This would be unworkable in many cases. Instead, the Rule merely requires a witness sufficiently educated to testify on each topic. <u>See</u> Fed. R. Civ. P. 30.

[4] Pferd's motion was filed at 8:38 p.m. on January 26, with their supporting memorandum following it, well after discovery had closed at 6 p.m. that day and with no excuse for their tardiness.

6

During a telephone conference on the day that was the deadline for the close of discovery, Saint-Gobain did offer to provide Ms. Porter for four hours the following week, despite its objections, in an effort to resolve the dispute (as discussed below, Pferd has not articulated any need for this deposition of litigation counsel, let alone a need for anything more than half a day of non-privileged testimony). Pferd declined that offer, did not file a motion to compel until after the close of discovery, and now seeks to draw out the discovery period for discovery it should have sought months ago.

### III. PFERD CANNOT JUSTIFY DEPOSING SAINT-GOBAIN'S IN-HOUSE LITIGATION COUNSEL

Pferd has not articulated any basis for questioning Ms. Porter, who is in-house counsel for Saint-Gobain responsible for supervision of the handling of this case, on topics likely designed to garner discoverable information. Ms. Porter was not only a prosecuting attorney of the application resulting in the patent-in-suit, but she has also been litigation counsel to the plaintiff in this action.

In general, depositions of counsel are strongly discouraged. See Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). Their use is to be considered only when (1) no other means exists to obtain the desired information; (2) the information sought is relevant and nonprivileged; and (3) the information sought is crucial to case preparation. Id; see also Theissen v. General Elec. Capital Corp., 267 F.3d 1095, 1112 (10th Cir. 2001) (holding that district court properly applied three-part Shelton test in denying plaintiff's request to depose defendant's corporate counsel because plaintiff failed to establish that no means existed to obtain information sought other than to depose opposing counsel). Pferd has demonstrated no compelling need for the deposition of in-house counsel. See West Peninsular Title Co. v. Palm

7

Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (holding that party seeking attorney's deposition bears the burden to demonstrate compelling need and propriety of deposition).

Pferd claims that it "justifiably seeks information concerning what was disclosed to the USPTO during the prosecution of the '317 patent." (See Def. Br. at 8.[5])

This argument only confirms the impropriety of Pferd's request. See Resqnet.com, Inc. v. Lansa, Inc., No. 01-3578, 2004 U.S. Dist. LEXIS 13579, at *13-14 (S.D.N.Y. July 21, 2004) (prohibiting the deposition of the prosecuting attorney, noting that "the prosecution histories speak for themselves," and giving no credence to the defendant's asserted purpose of the deposition being "to elicit facts concerning the communications between Kaplan, as counsel for the patent applicants, and the U.S. Patent and Trademark Office or other third parties").

Pferd certainly is not entitled to privileged communications between Ms. Porter and her client or to her mental impressions made during prosecution. It is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation. In re Regents of the Univ. of California, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (holding that the joint client doctrine and the community of interest doctrine apply to and protect legal advice and communications between the patent applicant or patentee and attorneys of its optionee/licensee). The privilege extends to consultations made during patent prosecution. Id. at 1391. ("Consultation with counsel during patent prosecution meets the criteria of compliance with law and meeting legal requirements, thereby reducing or avoiding litigation, and is within the scope of subject matter that is subject to the attorney-client privilege.").

Indeed, Pferd has no authority on point for the remarkable proposition that it should be permitted to depose counsel. Pferd cites only three decisions in its brief, none of which are in the

---

[5] Def. Br. refers to the Memorandum of Defendant Pferd Inc. in Support of Its Motion to Compel Deposition. (Docket No. 15.)

First Circuit,[6] and all of which are readily distinguishable. For example, Pferd cites TeKnowledge Corp. v. Akamai Technologies, Inc., No. 02-5741, 2005 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. August 10, 2004) for the proposition that the work product privilege does not apply to patent prosecution. (See Def. Br., at 8.) That is not an accurate characterization of the holding, or even the dicta, in that case. In TeKnowledge, the parties had agreed to limit the scope of the work product privilege, which issue was hardly addressed by the court. See TeKnowledge, 2005 U.S. Dist. LEXIS 19109, at * 7-8. Rather, the focus of the case was on the attorney-client privilege, with an adaptation, in that district, of a line of cases that courts should apply the normal requirements of the attorney-client privilege to technical communications, because the patent application process is a cooperative effort between attorney and client. See id. (citing Knogo Corp. v. U.S., 1980 U.S. Ct. Cl. LEXIS 1262 (Ct. Cl. 1980)). Although the court did allow foundational questions to be asked at the deposition, the court "remind[ed] both parties that they are free to discover technical information and the meaning of claim terms from the inventors themselves, without implicating the attorney-client privilege." Id. In this case, the attorney-client privilege would apply to information concerning the application resulting in the '317 patent.

Pferd also misinterprets Bristol-Myers Squibb Co. v. Rhone-Polenc Rorer, Inc., 1998 U.S. Dist. LEXIS 12, at *17 (S.D.N.Y. January 6, 1998). Although that case involved the depositions of two patent attorneys, the court drew a distinction between the questions that were permissibly posed to the patent attorney who merely filed the patent application and the greater restrictions imposed for the deposition of the attorney who had been involved in substantive

---

[6] On procedural issues not unique to patent law, such as whether litigation counsel has information such that he should be deposed, the Federal Circuit defers to the law of the regional circuit. See Resqnet.com, Inc. v. Lansa, Inc., 2004 U.S. Dist. LEXIS 13579, at *13-14 (citing Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1381 (Fed. Cir. 2003)).

9

patent prosecution.  See id.  ("Questions asked of Savina are more likely to implicate privileged information in light of his role in the current litigation and as an RPR employee.").

Although Saint-Gobain concedes that it is not anomalous for a party to seek the deposition of the attorney who prosecuted the patent at issue in a litigation, Pferd must still establish that Ms. Porter's deposition is "either appropriate or necessary."  Resqnet.com, Inc., at *13-14.  It has not even attempted to do so (and such an argument may not be introduced for the first time in a reply brief).

In Resqnet.com, the court prohibited the deposition of the prosecutor of the patent-in-suit, where discovery had been completed and where the defendant had not demonstrated a sufficient need to depose the attorney.  See id.  The court there saw through the defendant's purported purpose of "elicit[ing] facts" regarding the prosecution of the patent-in-suit, noting that the defendant "has had access to the file wrapper since the beginning of this matter … and has identified no specific topic or new information as to which [the attorney's] testimony would be necessary."  Id.

In this case, Pferd has already retrieved the information it allegedly seeks through the documents produced and the deposition of the inventor of the patent-in-suit.  It long ago received a copy of the file history.  Its efforts to seek this same information from the in-house counsel who is involved in the litigation should be seen for the transparent ploy that it is and should be prohibited.

Pferd also claims that it "has a legitimate interest in learning about communications between Ms. Porter and Shakespeare concerning the '317 patent."  See Def. Br., at 8.  Pferd has no basis to complain, here, as it has been in receipt of the content of these communications since November of 2005, when Saint-Gobain provided copies of Ms. Porter's letters to Shakespeare in

its initial document production.  Pferd failed to fully question Saint-Gobain's 30(b)(6) witness, claiming that it was not in receipt of these previously produced documents.  Counsel for Saint-Gobain then pointed Pferd specifically to that portion of the production where it could find copies of those communications, that is, in the production that had been made many months ago, shortly after the deposition.

Pferd's problem is not that Saint-Gobain has withheld documents or information or that Saint-Gobain's 30(b)(6) witness was not prepared.  Pferd's problem is that it has been unprepared, ill-equipped, and untimely in its efforts to properly seek the information it supposedly desires.

## CONCLUSION

For the reasons described above, Saint-Gobain respectfully requests that Pferd's Motion to Compel Deposition be DENIED.

**SAINT-GOBAIN ABRASIVES, INC.,**

By its attorneys,

| | |
|---|---|
| February 10, 2006 | /s/ Emily A. Berger<br>Matthew B. Lowrie (BBO # 563414)<br>Aaron W. Moore (BBO # 638076)<br>Emily A. Berger (BBO # 650841)<br>LOWRIE, LANDO & ANASTASI, LLP<br>Riverfront Office Park<br>One Main Street - 11th Floor<br>Cambridge, MA 02142<br>Tel: 617-395-7000<br>Fax: 617-395-7070 |

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of Saint-Gobain's Opposition to Pferd's Motion to Compel Deposition was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants this 10th day of February, 2006.

        Laura L. Carroll, Esq.
        lcarroll@burnslev.com
        Merton E. Thompson, Esq.
        mthompson@burnslev.com
        BURNS & LEVINSON LLP
        125 Summer Street
        Boston, MA 02210

Dated: February 10, 2006                      /s/ Emily A. Berger