UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 05-cv-40035 (FDS) |
| ) | |
| PFERD, INC., ) | |
| ) | |
| Defendant. ) | |

## SAINT-GOBAIN'S OPPOSITION TO PFERD'S
## MOTION TO COMPEL DISCOVERY

Plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") hereby opposes the motion by

Pferd, Inc. ("Pferd") to compel discovery.

On February 3, 2006, Pferd filed the instant motion over a week after the close of

discovery in this case and after the corresponding court-ordered deadlines, without leave to do

so. It also filed the motion prior to reviewing the supplemental discovery responses that Saint-

Gobain agreed to provide, and did provide, on that day.[1]

Pferd's motion should be denied in all respects. First, Pferd seeks supplemental

discovery responses which it received, as agreed, on the day it filed the instant motion, and thus,

most of its requests are moot. Second, to the extent that Saint-Gobain did not specifically

supplement certain discovery requests, it was not obligated to do so either because of the

bifurcation of liability and damages in this case or because all relevant, non-privileged

information has already been produced. Additionally, Pferd's allegations of "litigation

---

[1]     Correspondence from E. Berger to M. Thompson regarding Pferd's Request for
Production of Documents and the corresponding Supplemental Interrogatory Answers are
attached as Exhibits A and B, respectively, to this Opposition.

misconduct" are entirely unfounded.  Finally, Pferd's demands relating to documents disclosed on Saint-Gobain's privilege log are untimely, were never raised during any conference or in any correspondence to Saint-Gobain's counsel, and include unfounded allegations that have no basis in law or in fact.

Pferd has not articulated <u>any</u> basis for requiring additional supplementation or an extension of the liability discovery period.  The motion to compel should be denied.

## ARGUMENT

### I.    SAINT-GOBAIN HAS ALREADY PROVIDED ALL DISCOVERABLE INFORMATION THAT IS SOUGHT BY PFERD'S MOTION

Pferd's motion to compel discovery should be denied because nothing remains to be produced and counsel has confirmed this.  At Pferd's request, on January 26, during a phone conference held on the day of the close of discovery, Saint-Gobain agreed to confirm that no additional documents responsive to Pferd's Requests for the Production of Documents existed and to provide any necessary supplements to Pferd's Interrogatories by the end of the following week.  <u>See</u> Exhibit C to Defendant's Motion.  During the phone conference, and again in the correspondence memorializing that conference, Saint-Gobain's counsel explained that it would be verifying that no responsive, non-privileged documents relevant to the <u>liability</u> phase of discovery remained to be produced.  <u>See id</u>.  By the end of that week, that is, on February 3, 2006, Saint-Gobain confirmed that no such documents existed.  <u>See</u> letter from E. Berger to M. Thompson of February 3, 2006, attached as Exhibit A hereto.  In short, there is nothing to be ordered to be produced.  On February 3, Saint-Gobain also provided Supplemental Responses to all of the Interrogatories that Pferd suggested Saint-Gobain had agreed to supplement during the January 26 phone conference.  <u>See</u> letter of January 26, 2006 from E. Berger to M. Thompson, Exhibit C to Defendant's Motion.  Pferd nevertheless filed the instant motion on February 3, the

date Saint-Gobain was to supplement, but Pferd did not wait to see what the supplementation

was that Saint-Gobain provided.  This motion should be denied, as a reply brief is too late for

Pferd to take up whether the supplemental responses are adequate.

II.     **PFERD'S REQUEST FOR ADDITIONAL
        SUPPLEMENTATION IS UNTIMELY**[2]

    A.     **SAINT-GOBAIN NEVER AGREED TO PROVIDE THE FURTHER
               SUPPLEMENTATION SOUGHT BY PFERD'S MOTION**

      Although Saint-Gobain does not agree that it "promised to provide answers to Pferd's

Interrogatories 3, 4, 8, and 14," that was clearly the limit of Pferd's understanding of any

agreement, even according to its own brief.  See Def. Br. at 5.[3]  Following the correspondence on

the issue, and in an effort to resolve and narrow the issues of dispute, Saint-Gobain did, in fact,

supplement those four interrogatory answers nonetheless.  See Exhibit B attached hereto.  There

can be no mistake that this was the extent of the supplementation that Pferd might have expected

to receive on February 3, as explained in both Pferd's brief and its correspondence.  See Def. Br.

at 5; Exhibit I to Defendant's Motion.

      As such, there can be no basis for Pferd waiting more than one week after the

teleconference, the exchange of confirmatory correspondence, and the close of discovery to raise

issues on other interrogatories (and it is unclear from the brief exactly what those issues are), i.e.,

---

[2] Saint-Gobain does not agree that a motion to compel after the January 26 deadline is reasonable
on any basis.  Pferd was not aware at the time that discovery closed that the Court would
contemplate any extension of the discovery period for any reason and, thus, had a duty to
resolve or raise the issues in the instant motion prior to February 3.  For purposes of this
opposition, however, Saint-Gobain has suggested that even if the Court were to entertain the
notion that Pferd was entitled to move on a limited basis after the close of discovery, that
basis should include no more than what was specifically discussed prior to the close of
discovery.

[3] Def. Br. refers to Defendant's Memorandum in Support of Its Motion to Compel Discovery.
(Docket No. 19.)

Interrogatories 2, 5, 9, 10, 12 and 13 and Document Requests 1-11, 13-15, 17, 19, 23, 24, 34, 36, 38, 40.

Saint-Gobain will attempt to, nevertheless, address the specific interrogatories raised in Pferd's brief and responds similarly (if not the same, only because the exact language was not transcribed) to the responses it provided during the January 26 teleconference with Pferd.

***Interrogatory No. 2***:  On November 30, 2005, Saint-Gobain provided Pferd with Infringement Claim Charts (in color), attached hereto as Exhibit C, that identified the claims asserted to be infringed and used arrows to point to where on the accused products the elements of each claim were satisfied.  The interrogatory asks for nothing more.

***Interrogatory No. 5***:  Saint-Gobain explained that it was satisfied that objective evidence of nonobviousness was provided during the 30(b)(6) deposition of Saint-Gobain which supplemented this response with reference to unique advantages, the longtime failure of others, and the fact that Saint-Gobain's design has been almost universally copied. See Exhibit A attached hereto.  Saint-Gobain also mentioned the lack of necessity of any additional response to this interrogatory at this time to the extent that Pferd sought information after the critical date to the filing of the application resulting in the patent-in-suit, because any evidence that became available after the critical date would go solely to damages and not to liability.  See id.; see also Exhibit C to Defendant's Motion.  Notably, Pferd has refused to provide similar information about its own products on the ground that damages and liability were bifurcated (at Pferd's request).

***Interrogatory No. 9***:  Saint-Gobain verified that there was no public disclosure of the subject matter claimed in the patent-in-suit prior to the critical date to the filing of the application resulting in the same.

*__Interrogatory No. 10__*:  Saint-Gobain verified that it neither made nor used in public any products that embodied the subject matter claimed in the patent-in-suit before filing the patent application.  Saint-Gobain has never wavered from this position and otherwise stood by its objections in response to Interrogatory No. 10.  Contrary to Pferd's statement, "[n]o response received," is simply wrong.  <u>See</u> Saint-Gobain's Answers to Pferd's First Set of Interrogatories, attached hereto as Exhibit D ("Saint-Gobain products may be covered by the claims of the patent-in-suit or may be used in systems or in ways that would be covered by the patent-in-suit and states that none of these products was made, used in public, or offered for sale prior to the earliest effective filing date for the patent-in-suit.").

*__Interrogatory No. 12__*:  As Pferd notes in its brief, <u>see</u> Def. Br. at 3, Saint-Gobain believes that commercial activities, to the extent that they occur less than one year before the earliest effective filing date for the patent-in-suit, are not relevant to liability issues and intends to submit any such evidence that is relevant to damages in this bifurcated case during that phase of discovery.  Pferd has yet to explain to Saint-Gobain or this Court how any evidence of commercial activities after that time would bear on the issues of liability.

*__Interrogatory No. 13__*:  Contrary to Pferd's statement with regard to Saint-Gobain's answer to this Interrogatory, "[i]ncomplete response received," Saint-Gobain did answer formally and reminded Pferd of its Answer during the January 26 teleconference.  <u>See</u> Exhibit D ("Saint-Gobain states that any such prior art was disclosed to the United States Patent and Trademark Office and will be produced to Pferd as described in Saint-Gobain's Responses to Pferd's First Set of Requests for the Production of Documents, served on even date herewith.").

As to Pferd's *__Document Requests 1-11, 13-15, 17, 19, 23, 24, 34, 36, 38, 40__*, Pferd essentially points to the number of pages of documents that it believes Saint-Gobain has

provided in response to the requests. We do not understand what relief Pferd could possibly be requesting. As Saint-Gobain has stated numerous times, it has provided (or logged on its privilege log) all of the documents relevant to liability discovery (as noted in its objections to the requests) that are responsive to these requests and that it has in its possession, custody, or control. Saint-Gobain has nothing else to produce. See Exhibit A.

### B.    SAINT-GOBAIN DID NOT AGREE TO PROVIDE SEPARATE WRITTEN SUPPLEMENTAL DOCUMENT REQUEST RESPONSES

As a preliminary matter, Pferd does not have any right to separate supplemental responses. Pferd does not contend otherwise. Rather, Pferd purports to request enforcement of an agreement that was never made.

On January 19 (mid-day), Saint-Gobain did agree to "identify the documents responsive to each document request" if Pferd "agree[d] to do the same" and suggested choosing a date of "mutual exchange." See Exhibit A to Defendant's Motion. As the January 25 discovery cutoff approached, and still with no response from Pferd, Saint-Gobain considered the issue (and the offer) to be moot and expired. Then, from out of the blue, Pferd's counsel sent an email at 8 p.m. on January 24 proposing "that the parties produce privilege logs and supplemental document responses . . . by tomorrow, Wednesday January 25" and asked that Saint-Gobain "confer with [Pferd] by telephone regarding these matters." See Exhibit B to Defendant's Motion. Saint-Gobain did not agree to provide the supplemental document responses at that point (explaining in the subsequent teleconference why it thought doing so the night before the close of discovery would be pointless) but noted that it "would be pleased to exchange privilege logs." See Electronic Mail from E. Berger to M. Thompson, attached as Exhibit E hereto; see also Exhibit C to Defendant's Motion (memorializing the teleconference).

### III.    PFERD'S CONCERNS REGARDING SAINT-GOBAIN'S PRIVILEGE LOG ARE UNTIMELY, UNFOUNDED, AND HAVE NO SUPPORT IN THE LAW

With regard to Pferd's comments on Saint-Gobain's privilege log,[4] this is an issue that is not only raised for the first time with the Court a week after the close of the discovery period, but it is also the first time that it was raised to Saint-Gobain.  Not only did Pferd fail to seek a 7.1 conference with regard to this issue, it failed to raise the issue in any correspondence, and did not respond at all to Saint-Gobain's expression of unawareness as to what the motion to compel would cover when it received a request for an assent to a motion for leave to file documents under seal (much less raise an issue with regard to the privilege log).  See Electronic Mail from E. Berger to M. Thompson of February 3, attached as Exhibit F hereto ("We do not know what your motion to compel will cover, but in any event, we believe that any such motion would be untimely.").  This is entirely inappropriate, and Pferd's motion could be denied on this basis alone.  See Hasbro, Inc. v. Serafino, 168 F.R.D. 99, 100-101 (D. Mass. 1996) (denying defendant's motion to compel where defendant "failed to comply with either Fed. R. Civ. P. 37(a)(1) or Local Rule 7.1, both of which require a moving party to confer with opposing counsel in a good faith effort to narrow issues before engaging the court in the dispute").

Even had Pferd properly raised this issue in a timely fashion, it would not be entitled Saint-Gobain's privileged documents.  Pferd is wrong about what types of documents are privileged.  Pferd's sole reasoning for seeking documents listed on Saint-Gobain's privilege log is an unsupported statement that "[c]ommunications between an inventor and patent counsel are not inherently privileged."  Def. Br. at 4.  Of course, this naked statement is misleading, at best.

---

[4]    It is noteworthy that Pferd listed only four documents on its privilege log and failed to provide the basis for withholding them.  As of January 26, 2006, Pferd produced only 1,621 pages of documents, far less than Saint-Gobain, which produced 3,509 pages and a detailed privilege log (attached as Exhibit G to Defendant's Motion).

Communications between an inventor and patent counsel are most certainly privileged, as described by the numerous cases below. The issues are not even arguable, as evidenced by Pferd's utter failure to support its bald assertions as to the law surrounding the privilege of patent-related documents.[5]

Saint-Gobain provided descriptions of the documents that it withheld on the basis of privilege that it believes are sufficient to demonstrate why the documents were withheld. See Exhibit G to Defendant's Motion. The documents that Pferd calls attention to were all documents that are covered by either the attorney-client privilege or the work product doctrine, but Saint-Gobain cannot elaborate on the specific documents that Pferd calls attention to beyond the descriptions listed because further elaboration may result in a disclosure of the privileged nature of the document. Saint-Gobain nevertheless endeavors to support why its withholding of communications between an inventor and patent attorney is valid and other privileged documents is valid.

Massachusetts has expressly addressed the protections surrounding legal advice relating to patent applications. "The rendering of legal advice regarding patentability is a quintessential role for lawyers; the sanctity of communications in this context are entitled to no less protection than other attorney/client communications." Minnesota Mining & Manufacturing Co. v. Ampad Corp., No. 85-0457-F, 1987 U.S. Dist. LEXIS 14437, at *4-*5, 7 U.S.P.Q.2d 1589 (D. Mass. May 14, 1987) (denying defendant's motion to compel production of a Record of Invention and a Patent Proposal because they were confidential communications made for the purposes of securing legal (as opposed to business) advice concerning the preparation or prosecution of a

---

[5]    Pferd cites only one case, Stryker Corp. v. Intermedics Orthopedics, 145 F.R.D. 298 (E.D.N.Y. 1992), in its entire brief, and the line of cases that Stryker adopts (albeit in another jurisdiction) is the same line of cases most widely recognized and described herein.

patent application).  Where a client has a reasonable intention that the communication would

remain confidential, it may be withheld.  See, e.g., Laitram Corp. v. Hewlett-Packard Co., 827 F.

Supp. 1242, 1246 (E.D. La. 1993) (This approach "appears to be more consistent with the

professional realities of the patent attorney-client relationship and less open to error as it seeks to

examine documents in light of the relationship between patent attorney and client within the

application process, rather than just examining a document in isolation from that process.").

The Federal Circuit has also confirmed attorney-client privilege of inventor-patent

attorney communication.  See In re Regents of U. of California, 101 F.3d 1386, 1391 (Fed. Cir.

1996) ("Consultation with counsel during patent prosecution meets the criteria of compliance

with law and meeting legal requirements, thereby reducing or avoiding litigation, and is within

the scope of subject matter that is subject to the attorney-client privilege.").

The Federal Circuit has even granted mandamus to reverse an order requiring production

of inventor-patent attorney communications.  In re Spalding Sports Worldwide, Inc., 203 F.3d

800, 806 (Fed. Cir. 2000) ("We do not consider that it is necessary to dissect the document to

separately evaluate each of its components. It is enough that the overall tenor of the document

indicates that it is a request for legal advice or services.").

Saint-Gobain notes that it did provide documents intended for transmission to the PTO in

its document production to Pferd, and withheld and logged drafts that were intended for

consultation and submission.  Those are plainly privileged and "reflect the complex discourse

between an inventor and his patent attorney and their efforts to obtain the strongest permissible

patent protection for the invention." Conner Peripherals, Inc. v. Western Digital Corp., No. C93-

20117, 1993 U.S. Dist. LEXIS 20149, at *14, 31 U.S.P.Q.2d 1042 (N.D. Cal. June 8, 1993)

(holding that all contested documents were privileged, including draft patent applications, opinion letters and attorney's notes).

## CONCLUSION

For the reasons described above, Saint-Gobain respectfully requests that Pferd's Motion to Compel Discovery be DENIED.

**SAINT-GOBAIN ABRASIVES, INC.,**

By its attorneys,

February 17, 2006

/s/ Emily A. Berger
Matthew B. Lowrie (BBO # 563414)
mlowrie@LL-A.com
Aaron W. Moore (BBO # 638076)
amoore@LL-A.com
Emily A. Berger (BBO # 650841)
eberger@LL-A.com
LOWRIE, LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Saint-Gobain's Opposition to Pferd's Motion to Compel Discovery was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants  this 17th day of February, 2006.

Laura L. Carroll, Esq.
lcarroll@burnslev.com
Merton E. Thompson, Esq.
mthompson@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02210

Dated:  February 17, 2006                                     /s/ Emily A. Berger

# EXHIBIT A



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

February 3, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*mthompson@burnslev.com*

Merton E. Thompson Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
       Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
       <u>Our File No. S1432-6004</u>

Dear Merton:

As we discussed, and as I noted in my letter of January 26, we agreed to confirm by today that Saint-Gobain is not aware of any additional responsive, relevant documents that relate to liability. We have so confirmed this with our client.

We also agreed to supplement Interrogatory Nos. 3 and 8, which I have attached.

In your letter to me of January 27, you noted that your understanding that Saint-Gobain agreed to provide supplements to Interrogatory Nos. 4 and 14, as well. Although we do not believe we expressly agreed to do so and think that your letter of January 27 was an untimely effort to preserve discovery issues after the close of discovery, we have provided supplements to these as well.

Your letter of January 27 also incorrectly says that "[w]ith respect to Interrogatory No. 5, Saint-Gobain stated that it did not need to provide the requested 'objective evidence of non-obviousness.'" As we explained during the conference, Mr. Timm's testimony during the 30(b)(6) deposition supplemented our responses with reference to unique advantages, the longtime failure of others, and the fact that Saint-Gobain's design has been almost universally copied. As we also expressly stated during the conference, and in my follow-up letter, many of the requests you cited seek documents more appropriate for production during the damages discovery phase in this bifurcated case. Not only did Pferd not say on the January 26 conference call that it would reconsider "whether a Motion to Compel Answers would still be necessary,"



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Merton E. Thompson, Esq.
February 3, 2006
Page 2

but it is particularly inappropriate for Pferd to attempt to buy itself time to move to compel after waiting for answers that Saint-Gobain expressly stated it would not be providing at this time.

Similarly, your letter of January 27 states that "Pferd does not accept your confirmation that your document production is complete, or that Saint-Gobain should not be allowed to determine whether a document is relevant to a discrete issue in the case." You then state that "Pferd will move to compel production on all identified requests." It is our position that Pferd knew and understood our positions on these issues prior to the deadline for filing a motion to compel and did not do so. Saint-Gobain agreed to confirm and did confirm that documents relating to liability discovery have been produced. Saint-Gobain articulated this position numerous times during our conversation and outlined it in its follow-up correspondence. A motion to compel on these grounds would be inappropriate, and we would oppose it.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

SAINT-GOBAIN ABRASIVES, INC.,

        Plaintiff,

v.

PFERD, INC.,

        Defendant.

Civil Action No.:  05-cv-40035 (FDS)

## SAINT-GOBAIN ABRASIVES, INC.'S SUPPLEMENTAL ANSWERS TO PFERD, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Saint-Gobain Abrasives, Inc. ("Saint-Gobain") hereby supplements its responses to the First Set of Interrogatories propounded by Pferd, Inc. ("Pferd").

Saint-Gobain's investigations are ongoing, and Saint-Gobain reserves the right to supplement, amend, or modify these responses if additional or different information is discovered.

Saint-Gobain's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document.

### General Objections

The following general objections are incorporated by reference into each Answer set forth hereafter.

1.      Saint-Gobain objects to interrogatories that call for information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege or protection.

2.      Saint-Gobain objects to these interrogatories as overly broad, unnecessarily burdensome, and calling for information that is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.

3.      Saint-Gobain objects to providing information that Saint-Gobain is under a legal or contractual duty not to disclose to a third party.

4.      Saint-Gobain objects to these interrogatories to the extent that they impose any duty beyond that specified in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

5.      Saint-Gobain objects to these interrogatories as unnecessarily burdensome to the extent they seek information already in Pferd's possession.

6.      Saint-Gobain objects to these interrogatories to the extent they seek information not readily in the possession, custody or control of Saint-Gobain.

7.      Saint-Gobain objects to these interrogatories to the extent they seek information that Saint-Gobain has sought from Pferd through its discovery requests of Pferd.

8.      Saint-Gobain objects to these interrogatories to the extent they call for information that Saint-Gobain requires a reasonable opportunity to discover and analyze before providing a complete response.

9.      Saint-Gobain objects to these interrogatories to the extent they call for information not in existence at the time the suit was initiated.

10.     Saint-Gobain objects to these interrogatories as vague and ambiguous.

11.     Saint-Gobain objects to these interrogatories to the extent they seek Saint-

Gobain's contentions on issues not raised in this suit and/or not material to an issue raised in this

suit.

12.     Saint-Gobain objects to these interrogatories to the extent they are premature.

13.     Saint-Gobain's responses to these interrogatories are subject to and without

waiver of any objections, including claims of privilege and/or work product.

### Interrogatories

Interrogatory No. 3

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused
product, state Saint-Gobain's construction of each claim element identified in this Response to
Interrogatory No. 2.

ANSWER TO INTERROGATORY NO.3

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily

burdensome, and calls for information that is not relevant to the claim or defense of any party.

Saint-Gobain further objects to this interrogatory on the grounds that it is premature given that

Pferd has yet to provide any meaningful discovery concerning its products and has not yet

provided its non-infringement contentions. Saint-Gobain can only fully develop its infringement

positions after it has received from Pferd information relating to the products described in its

discovery requests and in response to Pferd's Interrogatory No. 1. Saint-Gobain further objects

to this interrogatory as duplicative of other interrogatories. Saint-Gobain also objects to this

interrogatory on the grounds and to the extent that it calls for the production of confidential,

proprietary, and/or privileged information, including information protected by the attorney-client

privilege or the work product doctrine. Subject to the foregoing, Saint-Gobain states that the

terms of the claims have their ordinary meaning but reserves the right to amend this response as discovery proceeds.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully state its infringement positions.

SUPPLEMENTAL ANSWER TO INTERROGATORY NO.3

On the basis that Pferd has represented that its Preliminary Non-Infringement Contentions identify in detail Pferd's construction of the limitations of the asserted claims that it asserts are not met by its products and does not disagree that the constructions of the terms "substantially concave" and "annular engagement surface" appear to be the only ones at issue, Saint-Gobain states that these terms should be interpreted as follows. "Substantially concave" means "considerable amount of an inner portion of the hub at a level below an outermost portion of the hub." "Annular engagement surface" means "a surface of an outermost portion of the hub," such that where that surface is "adapted to engage" or "is engaged with" the backing face of the wheel, "engage" means "to lie" or "be positioned" proximate an outermost circumference of the depressed center of the wheel. The doctrine of claim differentiation applies to distinguish the majority of the asserted claims, where claim 10 states "wherein said annular engagement surface is adapted for surface to surface engagement with the backing face."

Interrogatory No. 4

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused product, under the doctrine of equivalents, state the basis for such assertion for each such product on an element by element basis.

ANSWER TO INTERROGATORY NO. 4

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature given that Pferd has yet to provide any meaningful discovery concerning its products. Saint-Gobain can only fully develop its infringement positions after it has received from Pferd information relating to the products described in its discovery requests and in response to Pferd's Interrogatory No. 1. Saint-Gobain further objects to this interrogatory as duplicative of other interrogatories. Saint-Gobain also objects to this interrogatory on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully state its infringement positions.

SUPPLEMENTAL ANSWER TO INTERROGATORY NO.4

Saint-Gobain supplements its answer to the extent that a Court was to conclude "substantially concave" requires a rounded surface as Pferd contends. To the extent that this limitation is not met literally in the accused devices, the accused devices are equivalent in that they perform substantially the same function (e.g., provide an area for glue), in substantially the same way (e.g., with room within the Hub for epoxy), to achieve substantially the same result (e.g., where the epoxy adheres to the interior of the Hub and the backing face inside of the outermost edge of the depressed center).

Saint-Gobain supplements its answer to the extent that a Court was to conclude "annular engagement surface" is interpreted to require interlocking or meshing as Pferd contends. To the extent that this limitation is not met literally in the accused devices, the accused devices are equivalent in that they perform substantially the same function (e.g., permitting bonding only within the outermost edge of the depressed center and without extending into an area beyond the outermost edge of the depressed center in a manner that could interfere with operation), in substantially the same way (e.g., by not extending into an area beyond the outermost edge of the depressed center in a manner that could interfere with operation), to achieve substantially the same result (e.g., the metal of the Hub cannot contact a work piece even if it breaks through the grinding wheel).

Saint-Gobain does not understand Pferd to contend that any other limitation would not be met literally.

Interrogatory No. 8

For each claim of the '317 patent, state the date of conception and the date of reduction to practice of the subject matter claimed.

ANSWER TO INTERROGATORY NO. 8

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that Pferd has not sufficiently detailed its invalidity contentions, particularly with

- 6 -

regard to asserting any prior art that would require Saint-Gobain to establish conception and reduction to practice earlier than the earliest effective filing date of the application that matured into the patent-in-suit. If and to the extent that Pferd does attempt to invalidate the patent-in-suit and Saint-Gobain will seek to rely on an earlier date of conception, Saint-Gobain will supplement this interrogatory answer.

Saint-Gobain further states that constructive reduction to practice was complete by the filing date of the patent-in-suit. Persons with knowledge of such reduction to practice include the named inventors and the attorneys involved in the prosecution of the patents, as identified in the file history that is being produced by Saint-Gobain in response to the Pferd document requests.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 8

Saint-Gobain further states that the invention claimed by the patent-in-suit was conceived at least as early as April 1993 and that constructive reduction to practice was complete by the filing date of the patent-in-suit. Saint-Gobain further supplements its answer to this interrogatory by referring to the 30(b)(6) deposition testimony of Mr. Timm.

Interrogatory No. 14

Describe the person of ordinary skill in the art at the time of the alleged invention of the subject matter claimed in the '317 patent.

ANSWER TO INTERROGATORY NO. 14

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-

- 7 -

Gobain objects to this interrogatory as calling for a legal conclusion. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

<u>SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 14</u>

Saint-Gobain further states that a person of ordinary skill in the art is a person with a college bachelor's degree in mechanical engineering or two to three years of work experience in design or use of grinding wheel assemblies.

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC.

Dated: February 3, 2006          by:

Matthew R. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

- 8 -

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2006, a true copy of Saint-Gobain Abrasives, Inc.'s Supplemental Answers to Pferd, Inc.'s First Set of Interrogatories was served by electronic mail and First Class U.S. Mail to the following:

>Laura L. Carroll, Esq.
>Merton E. Thompson, Esq.
>Anne C. Pareti, Esq.
>BURNS & LEVINSON LLP
>125 Summer Street
>Boston, MA 02110

Emily A. Berger

# EXHIBIT C

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

*U.S. Patent No. 5,895,317*

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| **Claim 1** | |
| A grinding wheel hub for mounting an abrasive grinding wheel having a depressed center on a grinding apparatus, | As shown below, (Pferd sells) a grinding wheel hub (A) specifically for mounting an abrasive grinding wheel (B) having a depressed center (C1) on a grinding apparatus. Pferd has made this combination, induced others to do so, and sells them together where there is no substantial use for these components together, other than for assembly in a manner meeting the limitations below.  |
| the abrasive grinding wheel having a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, | The abrasive grinding wheel has a grinding face (left) and a backing face (right) disposed on opposite sides of the abrasive grinding wheel.  |
| and a substantially flat, depressed center, having a mounting aperture being disposed centrally within the depressed center; said grinding wheel hub comprising: | There is a substantially flat, depressed center (C2) which has a mounting aperture (D) disposed centrally within the depressed center.  |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | There is an aperture bushing (E) of substantially cylindrical configuration , which is adapted for co-axial extension through and engagement with the surface of the mounting aperture.<br><br> |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | There is a grinding face fastener (F) disposed on the aperture busing and adapted to engage the grinding face of the wheel.<br><br> |
| a backing flange extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | There is a backing flange (G) extending substantially radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face.<br><br> |
| wherein said backing flange has a substantially concave surface adapted to face the backing face; and | The backing flange has a substantially concave surface (H) adapted to face the backing face.  As shown below, when broken apart, the surface is sufficiently concave to hold a bonding agent, which bonds the backing flange to the abrasive grinding wheel and most or all of the interior surface of the backing flange is recessed from the outer edge. |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
|  |  |
| said annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel. | The annular engagement surface is adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel (see A and C1 above). |
| **Claim 2** |  |
| The grinding wheel hub as set forth in claim 1, wherein: the backing flange has a bond surface adapted to face the backing face; and | The backing flange has a bond surface (I) adapted to face the backing face. The picture immediately below shows where the bonding agent caused portions of the grinding wheel to break off and remain adhered to the bonding surface of the backing flange. The bonding surface shown below also includes surface irregularities in the form of ribs, which may assist in the strength of the bond to the wheel.  |
| said bond surface is sized and shaped to provide a cavity between said backing flange and the backing face of the grinding wheel when said annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | There is a bond surface sized and shaped to provide a cavity between the backing flange and the backing face of the grinding wheel when the annular engagement surface is engaged with the backing face, the cavity being adapted for receipt of a bonding agent therein to bond the grinding wheel hub to the abrasive grinding wheel (see I above). |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| **Claim 3** | |
| The grinding wheel hub as set forth in claim 1, wherein said grinding face fastener comprises a grinding face end of said aperture bushing, said grinding face end adapted for being flanged radially outward from the mounting aperture to engage the grinding face. | The face fastener comprises a grinding face end of said aperture bushing, where the grinding face end is adapted for being flanged radially outward from the mounting aperture to engage the grinding face (see F and G above). |
| **Claim 4** | |
| The grinding wheel hub as set forth in claim 1, further comprising a peripheral lip depending substantially axially from a terminal circumference of said flange, said peripheral lip terminating at said annular engagement surface. | There is a peripheral lip (J) depending substantially axially from a terminal circumference of the flange, and the peripheral lip terminates at the annular engagement surface.  |
| **Claim 5** | |
| The grinding wheel hub as set forth in claim 4, wherein said backing flange and said peripheral lip define said substantially concave surface. | The backing flange and the lip define a substantially concave surface (see G, H, and J above). |
| **Claim 6** | |
| The grinding wheel hub as set forth in claim 5, wherein the cavity is defined by said aperture bushing member, said backing flange and said peripheral lip, in combination with the backing face of the abrasive grinding wheel. | The cavity is defined by the aperture bushing member, the backing flange and the peripheral lip, in combination with the backing face of the abrasive grinding wheel (see E, G, H, J, and the backing face above). |
| **Claim 7** | |
| The grinding wheel hub | Adhesive is disposed within the cavity to bond the grinding wheel hub |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| as set forth in claim 2, wherein adhesive is disposed within the cavity to bond the grinding wheel hub to the abrasive grinding wheel. | to the abrasive grinding wheel (see I above). |
| **Claim 8** | |
| The grinding wheel hub as set forth in claim 2, wherein said flange further comprises a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive. | There is a plurality of surface irregularities adapted to provide a textured surface area for engagement with the adhesive (see I above). |
| **Claim 9** | |
| The grinding wheel hub as set forth in claim 8, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | There are a plurality of grooves extending radially from said aperture (see I above). |
| **Claim 10** | |
| The grinding wheel hub as set forth in claim 1, wherein said annular engagement surface is adapted for surface to surface engagement with the backing face. | The annular engagement surface is adapted for surface to surface engagement with the backing face (see A1 and C1 above). |
| **Claim 11** | |
| The grinding wheel hub as set forth in claim 10, wherein said annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face. | The annular engagement surface, in an axial cross-section thereof, is disposed at an oblique angle relative the co-axial direction, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face (see A1 and C1 above). |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| **Claim 13** | |
| The grinding wheel hub as set forth in claim 12, wherein the abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion. | The abrasive grinding wheel includes a substantially discoid depressed center that fairs in a radially outward direction into a substantially concavo-convex stub portion, the generally concavo-convex stub portion fairing radially outward therefrom into a grinding portion, said annular engagement surface being adapted to engage the backing face of the abrasive grinding wheel proximate the fairing of the depressed center into the concavo-convex stub portion (see C1 and C2 above). |
| **Claim 14** | |
| The grinding wheel hub as set forth in claim 13, wherein the abrasive grinding wheel comprises an ANSI Type 27 wheel. | The abrasive grinding wheels sold by Pferd include ANSI Type 27 wheels. See <http://www.pferdusa.com/products/206/20608/index.html>. |
| **Claim 15** | |
| The grinding wheel hub of claim 7, wherein the adhesive is an epoxy resin. | The adhesive on the bond surface of the Pferd product sold and shown above appears to be an epoxy resin. |
| **Claim 16** | |
| A grinding wheel assembly adapted for being mounted on a grinding apparatus, comprising; | There is a grinding wheel assembly adapted for being mounted on a grinding apparatus (see A, B, and C1 above). |
| an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel; | There is an abrasive grinding wheel having a depressed center and a mounting aperture disposed centrally therein, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel (see photos and labels referenced in claim 1 above). |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| the grinding wheel hub of claim 1; and | See A1, E, F, G, and H above. |
| a bonding agent between the backing face and the wheel hub. | There is a bonding agent between the backing face and the wheel hub (see I above). |
| **Claim 17** | |
| A method of mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said method comprising: | Examination of a manufactured wheel revealed that Pferd has made or induces others to make an abrasive grinding wheel for mounting on a grinding apparatus, where the abrasive grinding wheel has substantially flat depressed center with a mounting aperture disposed centrally within the depressed center.  There is a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel (as shown in reference to claim 1 above).  There is no substantial use for these components together, other than for assembly in a manner meeting the limitations below. |
| providing a grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | A grinding wheel hub having an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture is provided (see photos and labels referenced in claim 1 above). |
| inserting the aperture bushing through and in engagement with the surface of the mounting aperture; | The aperture bushing (see E above) is inserted through and in engagement with the surface of the mounting aperture. |
| fabricating a grinding face fastener on the aperture bushing by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel; | A grinding face fastener (see F above) on the aperture bushing (see E above) by flanging an end of the aperture bushing to engage a portion of the grinding face of the wheel within the depressed center of the wheel (see C1 and C2 above) is included. |
| applying a bonding agent to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a | There is a bonding agent applied to a substantially concave bond surface of a backing flange adapted to receive the bonding agent therein, the backing flange having a substantially discoid shape and an annular engagement surface along an outermost circumference of the backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel (see photos and labels referenced in claims 1 and 2 above). |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| substantially discoid shape and an annular engagement surface along an outermost circumference of said backing flange, and the bond surface being adapted for superposed alignment with the backing face of the abrasive wheel; | |
| disposing the backing flange on the aperature bushing to engage the annular engagement surface with the backing face of the wheel, the annular engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel; | There is disposed on the aperature bushing (see E above) a backing flange (see G above) to engage the annular engagement surface with the backing face of the wheel, the annular engagement surface being adapted to engage the backing face of the wheel proximate a periphery of the depressed center of the wheel. |
| wherein the wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of grinding wheel hub to the backing face of the wheel. | The wheel is captured between the grinding face fastener and the backing flange, and the bonding agent bonds the backing flange of the grinding wheel hub to the backing face of the wheel (see photos and labels referenced in claim 1 above). |
| **Claim 18** | |
| The method as set forth in claim 17, wherein said step of providing the backing flange with a concave surface further comprises the steps of providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface. | The examination of the manufactured combination also reveals that the backing flange with a concave surface further included providing a peripheral lip depending substantially axially from a terminal circumference of said flange and terminating the peripheral lip at the annular engagement surface (see J above). |
| **Claim 19** | |
| The method as set forth in claim 17, wherein the bonding agent comprises an epoxy resin. | The adhesive on the bond surface of the Pferd product sold and shown above appears to be an epoxy resin. |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| **Claim 20** | |
| The method as set forth in claim 17, further comprising the step of providing the concave surface with a plurality of surface irregularities adapted to provide a textured surface area for engagement with the bonding agent. | There is a concave surface with a plurality of surface irregularities (see I above) adapted to provide a textured surface area for engagement with the bonding agent. |
| **Claim 21** | |
| The method as set forth in claim 19, wherein said plurality of surface irregularities comprises a plurality of grooves extending radially from said aperture. | The plurality of surface irregularities comprises a plurality of grooves extending radially from the aperture (see I above). |
| **Claim 22** | |
| The method as set forth in claim 17, wherein the annular engagement surface is in superimposed engagement with a portion of the backing face. | The annular engagement surface is in superimposed engagement with a portion of the backing face (see photos and labels referenced in claim 1 above). |
| **Claim 23** | |
| The method as set forth in claim 22, wherein said annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, said annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel. | The annular engagement surface, in an axial cross-section, is disposed at an oblique angle relative the axial direction of said hub, the annular engagement surface being adapted for superimposed engagement with a portion of the backing face disposed at an oblique angle relative the axial direction of the abrasive grinding wheel (see photos and labels referenced in claim 1 above). |
| **Claim 24** | |
| A grinding wheel hub for mounting an abrasive grinding wheel on a | There is a grinding wheel hub for mounting an abrasive grinding wheel on a grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain '317 Patent | Pferd Depressed Center Grinding Wheels (Type 27) sold or used with Shakespeare Hubs |
|---|---|
| grinding apparatus, the abrasive grinding wheel having a substantially flat, depressed center, a mounting aperture disposed centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel, said grinding wheel hub comprising: | centrally within the depressed center, and a grinding face and a backing face disposed on opposite sides of the abrasive grinding wheel (see photos and labels referenced in claim 1 above). |
| an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture; | There is an aperture bushing of substantially cylindrical configuration, adapted for co-axial extension through and engagement with the surface of the mounting aperture (see photos and labels referenced in claim 1 above). |
| a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel; | There is a grinding face fastener disposed on said aperture bushing and adapted to engage the grinding face of the wheel (see photos and labels referenced in claims 1 and 3 above). |
| a backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face; | There is a backing flange of substantially discoid shape extending radially outward from said aperture bushing member, and adapted for superposed alignment with the backing face (see photos and labels referenced in claim 1 above). |
| said backing flange having a substantially concave surface adapted to face the backing face; | There is a backing flange having a substantially concave surface adapted to face the backing face (see photos and labels referenced in claim 1 above). |
| an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center; | There is an annular engagement surface disposed along a periphery of said backing flange and adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center (see photos and labels referenced in claim 1 above). |
| wherein said substantially concave surface of said flange provides a cavity between said backing flange and the backing face of the grinding | The substantially concave surface of the flange provides a cavity between the backing flange and the backing face of the grinding wheel when the annular engagement surface is engaged with the backing face, the cavity adapted for receipt of a bonding agent therein to bond the grinding wheel hub to the abrasive grinding wheel (see photos and labels referenced in claim 1 above). |

Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
D. Mass. No 05-cv-40035 (FDS)
Saint-Gobain Abrasives, Inc.'s Infringement Claim Chart

| Saint-Gobain<br><br>'317 Patent | Pferd Depressed Center Grinding Wheels (Type 27)<br>sold or used with Shakespeare Hubs |
|---|---|
| wheel when said annular engagement surface is engaged with the backing face, the cavity adapted for receipt of a bonding agent therein to bond said grinding wheel hub to the abrasive grinding wheel. | |

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>PFERD, INC.,<br><br>        Defendant. | Civil Action No.:  05-cv-40035 (FDS) |

## SAINT-GOBAIN ABRASIVES, INC.'S ANSWERS TO PFERD, INC.'S
## FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Saint-Gobain Abrasives, Inc. ("Saint-Gobain") hereby responds to the First Set of Interrogatories propounded by Pferd, Inc. ("Pferd").

Saint-Gobain's investigations are ongoing, and Saint-Gobain reserves the right to supplement, amend, or modify these responses if additional or different information is discovered.

Saint-Gobain's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document.

General Objections

The following general objections are incorporated by reference into each Answer set forth hereafter.

1.     Saint-Gobain objects to interrogatories that call for information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege or protection.

2.     Saint-Gobain objects to these interrogatories as overly broad, unnecessarily burdensome, and calling for information that is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.

3.     Saint-Gobain objects to providing information that Saint-Gobain is under a legal or contractual duty not to disclose to a third party.

4.     Saint-Gobain objects to these interrogatories to the extent that they impose any duty beyond that specified in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

5.     Saint-Gobain objects to these interrogatories as unnecessarily burdensome to the extent they seek information already in Pferd's possession.

6.     Saint-Gobain objects to these requests to the extent they seek information not readily in the possession, custody or control of Saint-Gobain.

7.     Saint-Gobain objects to these interrogatories to the extent they seek information that Saint-Gobain has sought from Pferd through its discovery requests of Pferd.

8.     Saint-Gobain objects to these interrogatories to the extent they call for information that Saint-Gobain requires a reasonable opportunity to discover and analyze before providing a complete response.

9.     Saint-Gobain objects to these interrogatories to the extent they call for information not in existence at the time the suit was initiated.

10.     Saint-Gobain objects to these interrogatories as vague and ambiguous.

11.    Saint-Gobain objects to these interrogatories to the extent they seek Saint-Gobain's contentions on issues not raised in this suit and/or not material to an issue raised in this suit.

12.    Saint-Gobain objects to these interrogatories to the extent they are premature.

13.    Saint-Gobain's responses to these interrogatories are subject to and without waiver of any objections, including claims of privilege and/or work product.

## Interrogatories

Interrogatory No. 1

Identify each accused product.

ANSWER TO INTERROGATORY NO.1

Saint-Gobain objects on the grounds that this interrogatory is premature as Pferd has not yet provided any discovery with regard to its products.  Subject to the foregoing, Saint-Gobain states that it believes that some or all of Pferd's depressed center grinding wheels (Type 27) (as that phrase is used in Pferd's catalog, available on-line at http://www.pferd.com/images/PferdProducts/PDF_V20/206.PDF), that are specified for use with or provided with hubs that, when mounted on the grinding wheel, do not contact the outer, flat portion of the grinding wheel, infringe the claims of the '317 patent. Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully develop its infringement positions.

Interrogatory No. 2

Identify each claim of the '317 patent that Saint-Gobain asserts to be infringed by each accused product, and, for each such claim, identify where on each accused product is a backing

flange that has a substantially concave surface adapted to face the backing face; and where on each accused product is an annular engagement surface adapted to engage the backing face of the wheel proximate an outermost circumference of the depressed center of the wheel.

## ANSWER TO INTERROGATORY NO. 2

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature given that Pferd has yet to provide any meaningful discovery concerning its products. Saint-Gobain can only fully develop its infringement positions after it has received from Pferd information relating to the products described in its discovery requests and in response to Pferd's Interrogatory No. 1. Saint-Gobain further objects to this interrogatory as duplicative of other interrogatories. Saint-Gobain also objects to this interrogatory on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine. Saint-Gobain states that it will likely assert direct or indirect infringement of claims 1-11 and 13-24 but reserves the right to amend this list as discovery progresses.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully state its infringement positions.

## Interrogatory No. 3

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused product, state Saint-Gobain's construction of each claim element identified in this Response to Interrogatory No. 2.

ANSWER TO INTERROGATORY NO.3

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature given that Pferd has yet to provide any meaningful discovery concerning its products and has not yet provided its non-infringement contentions. Saint-Gobain can only fully develop its infringement positions after it has received from Pferd information relating to the products described in its discovery requests and in response to Pferd's Interrogatory No. 1. Saint-Gobain further objects to this interrogatory as duplicative of other interrogatories. Saint-Gobain also objects to this interrogatory on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine. Subject to the foregoing, Saint-Gobain states that the terms of the claims have their ordinary meaning but reserves the right to amend this response as discovery proceeds.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully state its infringement positions.

Interrogatory No. 4

For each claim of the '317 patent that Saint-Gobain asserts to be infringed by an accused product, under the doctrine of equivalents, state the basis for such assertion for each such product on an element by element basis.

ANSWER TO INTERROGATORY NO. 4

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature given that Pferd has yet to provide any meaningful discovery concerning its products. Saint-Gobain can only fully develop its infringement positions after it has received from Pferd information relating to the products described in its discovery requests and in response to Pferd's Interrogatory No. 1. Saint-Gobain further objects to this interrogatory as duplicative of other interrogatories. Saint-Gobain also objects to this interrogatory on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully state its infringement positions.


Interrogatory No. 5

Specify all objective evidence of nonobviousness for the claims of the '317 patent upon which Saint-Gobain may rely and state the basis and nexus thereof.

ANSWER TO INTERROGATORY NO. 5

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged

information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that Pferd has not set forth evidence of obviousness and, therefore, objective indicia of nonobviousness of the patent-in-suit are not necessary at this time.

Interrogatory No. 6

State the basis for all damage theories Saint-Gobain will advance in this action.

ANSWER TO INTERROGATORY NO. 6

Saint-Gobain objects to this interrogatory on the grounds that it is premature given that Pferd has yet to provide any discovery on the damages issue. Saint-Gobain can only fully develop its damages positions after it has received from Pferd detailed information regarding, for example, Pferd's sales, costs, and profits. Saint-Gobain further objects to this interrogatory as premature on the grounds that certain damages calculations will only be known by Saint-Gobain following consultation with a damages expert (after that expert has access to the Pferd information described above).

Pferd has declined to respond to interrogatories regarding damages-related information. As such, Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully develop its damages positions.

<u>Interrogatory No. 7</u>

State the basis for Saint-Gobain's claim that the alleged infringement of the '317 patent by Pferd was willful.

<u>ANSWER TO INTERROGATORY NO. 7</u>

Saint-Gobain objects on the grounds that this interrogatory is overly broad and unnecessarily burdensome. Saint-Gobain further objects to this interrogatory on the grounds that it is premature given that Pferd has yet to provide any meaningful discovery. Saint-Gobain can only fully develop its willful infringement position after it has received from Pferd information concerning Pferd's knowledge and conduct.

Subject to and without waiving the general objections and/or any specific objections, Saint-Gobain states that the claims of willful infringement will be supported by Pferd's failure to act in good faith, i.e., despite long having notice of the patent-in-suit, Pferd has failed to act reasonably and prudently, continuing to manufacture and sell the accused (and, in some cases copied) products without permission, failing to obtain competent opinion of counsel, and attempting to provoke unreasonable delays in this litigation.

Saint-Gobain will supplement this response after Pferd has complied with its discovery obligations and produced the documents and information necessary for Saint-Gobain to fully develop its willful infringement position.

<u>Interrogatory No. 8</u>

For each claim of the '317 patent, state the date of conception and the date of reduction to practice of the subject matter claimed.

ANSWER TO INTERROGATORY NO. 8

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that Pferd has not sufficiently detailed its invalidity contentions, particularly with regard to asserting any prior art that would require Saint-Gobain to establish conception and reduction to practice earlier than the earliest effective filing date of the application that matured into the patent-in-suit. If and to the extent that Pferd does attempt to invalidate the patent-in-suit and Saint-Gobain will seek to rely on an earlier date of conception, Saint-Gobain will supplement this interrogatory answer.

Saint-Gobain further states that constructive reduction to practice was complete by the filing date of the patent-in-suit. Persons with knowledge of such reduction to practice include the named inventors and the attorneys involved in the prosecution of the patents, as identified in the file history that is being produced by Saint-Gobain in response to the Pferd document requests.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 9

For each claim of the '317 patent, state the date of first disclosure of the subject matter claimed to any person not employed by Saint-Gobain.

ANSWER TO INTERROGATORY NO. 9

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that Saint-Gobain did not publicly disclose the subject matter of the '317 patent to any person not employed by Saint-Gobain prior to one year before the earliest effective filing date for the patent-in-suit.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 10

Identify all products made by Saint-Gobain that fall within the scope of the claims of the '317 patent.

ANSWER TO INTERROGATORY NO. 10

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party.

- 10 -

Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that certain Saint-Gobain products may be covered by the claims of the patent-in-suit or may be used in systems or in ways that would be covered by the patent-in-suit and states that none of these products was made public or offered for sale prior to the earliest effective filing date for the patent-in-suit.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 11

Identify any licenses or agreements concerning the '317 patent.

ANSWER TO INTERROGATORY NO. 11

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that this interrogatory relates to damages, and Pferd has declined to exchange

- 11 -

damages-related discovery at this time.

Saint-Gobain expressly reserves the right to supplement this response as discovery

progresses.


Interrogatory No. 12

For each claim of the '317 patent, state the date and circumstances of the first commercial
activities involving the subject matter claimed including, but not limited to, offers for sale.

ANSWER TO INTERROGATORY NO. 12

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily

burdensome, and calls for information that is not relevant to the claim or defense of any party.

Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-

Gobain objects to this interrogatory as duplicative. Saint-Gobain also objects to this

interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the

production of confidential, proprietary, and/or privileged information, including information

protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-

Gobain states that its products that are covered by the claims of the patent-in-suit or may be used

in systems or in ways that would be covered by the patent-in-suit and states that none of these

products was made public or offered for sale prior to the earliest effective filing date for the

patent-in-suit.

Saint-Gobain expressly reserves the right to supplement this response as discovery

progresses.

- 12 -

Interrogatory No. 13

Identify all items of prior art relevant to the subject matter disclosed and/or claimed in the '317 patent in the custody and/or control of Saint-Gobain, including Saint-Gobain's patent prosecution counsel.

ANSWER TO INTERROGATORY NO. 13

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain objects to this interrogatory as duplicative. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving any objections, and to the extent it is understood, Saint-Gobain states that any such prior art was disclosed to the United States Patent and Trademark Office and will be produced to Pferd as described in Saint-Gobain's Responses to Pferd's First Set of Requests for the Production of Documents, served on even date herewith.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 14

Describe the person of ordinary skill in the art at the time of the alleged invention of the subject matter claimed in the '317 patent.

ANSWER TO INTERROGATORY NO. 14

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party.

Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain objects to this interrogatory as calling for a legal conclusion. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 15

Identify the persons (including, but not limited to, any patent lawyer, patent agent and/or Saint-Gobain employee) most knowledgeable about the preparation and prosecution of the application that led to the '317 patent.

ANSWER TO INTERROGATORY NO. 15

Saint-Gobain objects on the grounds that this interrogatory is overly broad, unnecessarily burdensome, and calls for information that is not relevant to the claim or defense of any party. Saint-Gobain further objects to this interrogatory on the grounds that it is premature. Saint-Gobain objects to this interrogatory as calling for a legal conclusion. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Subject to the foregoing, Saint-Gobain states that its employee, Mary E. Porter, was primarily responsible for the preparation and prosecution of the application that led to the '317 patent.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Interrogatory No. 16

Identify any person you intend to all to testify as an expert at trial, and include the following: (a) the subject matter on which that person is expected to testify; (b) the substance of the facts and opinions to which that person is expected to testify; and (c) a summary of the ground for each such opinion

ANSWER TO INTERROGATORY NO. 16

Saint-Gobain objects to this interrogatory on the grounds that it is premature, as Saint-Gobain has not yet identified any fact or expert trial witness. Saint-Gobain also objects to this interrogatory as vague and ambiguous, and on the grounds and to the extent that it calls for the production of confidential, proprietary, and/or privileged information, including information protected by the attorney-client privilege or the work product doctrine.

Saint-Gobain expressly reserves the right to supplement this response as discovery progresses.

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC.

Dated: September 29, 2005        by:

Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

- 15 -

## VERIFICATION

The undersigned states that he is <u>PLANT MANAGER</u> at Saint-Gobain Abrasives, Inc., that he has read Saint-Gobain Abrasives, Inc.'s Answers to Pferd, Inc.'s First Set of Interrogatories, that he is authorized to sign this Verification, and that he is informed and believes that the facts stated in such responses are correct, based on the records of Saint-Gobain Abrasives, Inc. and information reasonably available to its employees, agents, and/or legal representatives.

Dated this 29th day of September, 2005.          SAINT-GOBAIN ABRASIVES, INC.,

F. Guy Timpa, _____

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2005, a true copy of Saint-Gobain Abrasives, Inc.'s Answers to Pferd, Inc.'s First Set of Interrogatories was served by electronic mail and First Class U.S. Mail to the following:

Laura L. Carroll, Esq.
Merton E. Thompson, Esq.
Anne C. Pareti, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

Emily A. Berger

769397.2

- 17 -

# EXHIBIT E

**Laura Shine**

| | |
|---|---|
| **From:** | Emily Berger |
| **Sent:** | Wednesday, January 25, 2006 3:31 PM |
| **To:** | Laura Carroll; Matthew B. Lowrie |
| **Cc:** | Merton Thompson; James Belanger; SG6004 |
| **Subject:** | Saint-Gobain v. Pferd: Exchange of Privilege Logs |

Dear Laura,

We would be pleased to exchange privilege logs with you today.  Please let me know of your intended method of service, and we will agree to serve them in the same manner.

Thank you,

Emily

# EXHIBIT F

## Laura Shine

| | |
|---|---|
| **From:** | Emily Berger |
| **Sent:** | Friday, February 03, 2006 5:31 PM |
| **To:** | Merton Thompson; Laura Carroll |
| **Cc:** | SG6004 |
| **Subject:** | RE: Exhibit E to Pferd's motion to compel |

Dear Merton,

We do not know what your motion to compel will cover, but in any event, we believe that any such motion would be untimely.

We would not, however, make objections to your filing Saint-Gobain's confidential materials under seal with respect to any motion, provided you continue to agree to the same with respect to any of our needs to file Pferd's confidential materials under seal in the future.

Thank you,

Emily

**From:** Merton Thompson [mailto:mthompson@burnslev.com]
**Sent:** Friday, February 03, 2006 2:17 PM
**To:** Laura Carroll; Emily Berger
**Cc:** Merton Thompson
**Subject:** RE: Exhibit E to Pferd's motion to compel

Dear Emily,

We will be filing a Motion to Compel today and it includes an exhibit with excerpts from Timm's deposition. I assume that you will assent to us filing that exhibit under seal as you did with our prior motion. A draft motion is attached.

Please let me know if you will assent.

Merton Thompson, Esq.
Burns & Levinson, LLP
125 Summer Street
Boston, MA 02110

t-(617) 345-3697
f-(617) 345-3299

mthompson@burnslev.com

The information contained in this message is privileged and confidential as attorney-client communication and protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

Disclosure Under IRS Circular 230: To ensure compliance with requirements recently imposed by the IRS, we inform you that any tax advice contained in this communication, including any attachments, was not intended or written to be used, and cannot be used, for the purpose of avoiding federal tax related penalties or promoting, marketing or recommending to another party any tax related matters addressed herein.

2/16/2006

**From:** Laura Carroll
**Sent:** Friday, January 27, 2006 2:54 PM
**To:** Emily Berger
**Cc:** Merton Thompson
**Subject:** Exhibit 5 to Pferd's motion to compel

Dear Emily,

Exhibit 5 to Pferd's motion to compel deposition is excerpts from Guy Timm's deposition. As you know, the protective order in this case provides that all deposition transcripts remain confidential for 30 days following receipt of a certified copy of the transcript. We do not yet have a certified copy of Mr. Timm's transcript, and Exhibit 5 was taken from the draft transcript we received from the court reporter. While we do not believe that anything in the portions of the transcript to which we have cited contain confidential information, we recognize that the entire transcript must be treated as confidential at this time, per the Protective Order.

We are therefore required by Local Rule 7.2 to make a motion to the Court for leave to file this exhibit under seal, before we can file it with the Court. I have attached a draft motion to this email for your consideration. If you are willing to assent to it, let me know, and I will add that to the motion. Thank you.

Laura L. Carroll, Esq.
Burns & Levinson LLP
125 Summer Street
Boston, MA  02110
617-345-3339 (direct dial)
617-345-3299 (fax)
LCarroll@burnslev.com
www.burnslev.com