UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| SAINT-GOBAIN ABRASIVES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 05-cv-40035 (FDS) |
| v. ) | |
| ) | |
| PFERD, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPLY BRIEF IN SUPPORT OF SAINT-GOBAIN'S
MOTION TO PRECLUDE SUPPLEMENTATION OF
PFERD'S INVALIDITY OR WILLFULNESS DEFENSES**

Plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") submits this reply in support of its Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses. (Docket No. 12.) It is believed that this reply will aid the Court in its resolution of the motion and that counsel need not request leave to file this memorandum, as it has been less than seven business days since service of Pferd's Opposition brief.

Pferd's Opposition addresses few of the issues posed in Saint-Gobain's opening brief. For example, it does not respond in any way to Saint-Gobain's request to preclude Pferd from relying on its laundry list of 70 pieces of prior art that was attached to its seven so-called "primary" references. Pferd also fails to confront Saint-Gobain's central argument regarding those "primary" references -- namely, Pferd's failure to present even a prima facie case of invalidity, based upon them.

Pferd's Opposition boils down to four points: (1) Pferd asserts that its identification of seven "primary" references adequately discloses its invalidity

contentions, even without explaining why they constitute prior art, what they disclose, or how they supposedly invalidate any patent claim, (2) Pferd's contends that it may wait, until the damages phase of discovery, to produce an opinion of counsel that it supposedly relied upon, as a defense to willful patent infringement, (3) Pferd asserts that Saint-Gobain's motion -- filed at the close of discovery -- is premature, because Pferd supposedly somehow knew that the Court would later extend the discovery period (albeit, for limited purposes only), and (4) Pferd contends that Saint-Gobain should have sought its requested relief by a motion to compel (although it is not Saint-Gobain's duty to supplement Pferd's answers) or a motion for summary judgment (to which Pferd would apparently like to be free to respond with undisclosed contentions in response).  All of Pferd's points lack merit.

**ARGUMENT**

I.     **SAINT-GOBAIN'S MOTION TO PRECLUDE IS TIMELY AND IS LEGALLY AND PROCEDURALLY CORRECT AS TO BOTH INVALIDITY AND WILLFULNESS DEFENSES**

A.  **Saint-Gobain's Motion to Preclude Is Not "Premature"**

This Court's Procedural Provisions -- attached to the Notice of Scheduling Conference (Docket No. 6) -- state that "[e]xcept for good cause shown, motions to compel discovery, motions for protective orders, motions to quash, <u>motions to strike discovery responses, and similar motions</u> must be filed no later than the close of fact discovery or the close of expert discovery, whichever deadline is relevant."  <u>Id</u>. at p. 4 (emphasis added).  Upon the close of liability fact discovery on January 26, 2006,[1] and having seen no efforts by Pferd in response to Saint-Gobain's numerous requests that it

---

[1] Following a request by a Joint Motion of the parties (Docket No. 11), the Court ordered that the liability discovery deadline be extended to January 26, 2006.

support its invalidity and willfulness contentions (particularly with regard to Pferd's laundry list of prior art listed on Exhibit A to its invalidity contentions), Saint-Gobain filed the instant motion in compliance with the orders contained in the Court's Procedural Provisions.

In view of the January 26 discovery deadline, the Court had scheduled a status conference for January 31, 2006, so as to determine the status of the case <u>following the close of fact discovery</u>.  At that conference, Pferd asked "for an additional 60 days to wrap up the fact discovery."  (Docket No. 28, at p. 10.)

The Court did <u>not</u> grant that request.  After some discussion, the Court made the following conclusion:  "I'm going to be stingy in terms of permitting additional fact discovery.  If you can make out a case that it is something that you were entitled to during -- while discovery was open, and you didn't get for some reason, I'll entertain that."  <u>Id</u>. at p. 13.

There can be no question from the discussion that ensued that the Court <u>did not extend the fact discovery period for all purposes</u>, as Pferd suggests, but rather that the Court was willing to hear out the parties on the pending issues.  In that respect, the instant motion was one properly filed and now currently pending the Court's decision on the matter; <u>it is not a motion that Pferd may now properly dispute as premature</u>.

Here, Pferd has not even purported to explain why it did not disclose its arguments earlier and it could hardly have waited until after the close of discovery (January 26) to disclose its contentions in reliance on the extension of discovery – which was not even requested until January 31.

**B.  This Motion Is Not Legally or Procedurally Incorrect**

While Pferd is correct in that there are other legal or procedural motions that Saint-Gobain might have brought in an effort to highlight Pferd's utter failure to meet its discovery obligation, Pferd's opposition demonstrates that Saint-Gobain chose a proper vehicle for doing so.

Saint-Gobain's motion to preclude Pferd from supplementing its invalidity or willfulness defenses calls out Pferd's inability to make a <u>prima facie</u> case <u>and seeks to prevent Pferd from raising new issues after the close of discovery</u>.  Now comes Pferd, precisely because Saint-Gobain did raise this crucial issue at this time, asserting that it has every right to continue "to engage in discovery" that it should have engaged in before, so as to support an invalidity defense on which it bears the burden of proof, and to retain the option of relying on an opinion of counsel in defense to the charge of willfulness, stating that the "[t]he scheduling order makes no mention of willfulness discovery, and, …discovery concerning willfulness is typically addressed in the damages phase, not the liability phase."  Def. Br. at 8, 9.[2]

Saint-Gobain was thus correct in its suspicions that Pferd would attempt to unfairly and unreasonably raise new evidence after the close of fact discovery and, thus, seeks in this motion to prevent Pferd from doing so.  As described in the opening brief, Pferd had five months to raise these issues, yet it did not seek an extension of time within the discovery period.  Accordingly, the time has now passed for raising new evidence or arguments in support of its invalidity defense and defense to the charge of willful infringement.

---

[2] Def. Br. refers to the Memorandum of Defendant Pferd, Inc. in Opposition to Plaintiff's Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses.  (Docket No. 23.)

## II.     PFERD'S SEVEN PRIMARY REFERENCES DO NOT SUPPORT A PRIMA FACIE CASE OF INVALIDITY

Pferd attempts to shirk its responsibilities to present a <u>prima facie</u> case of invalidity by asking Saint-Gobain's "sophisticated patent trial counsel" to do it for them. <u>See</u> Def. Br. at 2, 3.  Defendant's discussions of "Hail Mary" tactics and the lack of the references' "needle-in-haystack" complexity, do not amount to invalidity contentions. <u>See id</u>.  Indeed, Pferd's arguments about the alleged simplicity of the technology at issue only highlight Pferd's inexcusable failure to meet its own discovery obligations.

Saint-Gobain brought suit on a patent that is presumed valid and it is Pferd's burden (by clear and convincing evidence) to show otherwise.  "[A] patent is presumed valid, and this presumption exists at every stage of the litigation."  <u>Canon Computer Sys. v. Nu-Kote Int'l</u>, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  "The ultimate question … is whether the challenger's evidence of invalidity is sufficiently persuasive that it is likely to overcome the presumption of patent validity."  <u>PPG Indus., Inc. v. Guardian Indus. Corp.</u>, 75 F.3d 1558, 1566 (Fed. Cir. 1996) (finding that defendant's argument based on the alleged prior art patent failed to "raise[] a substantial question" of invalidity.).

Here, Saint-Gobain contends that the challenger to the patent, that is, Pferd, has "fail[ed] to identify any persuasive evidence of invalidity" by the close of the fact discovery period and so cannot succeed on the merits of any such defense if it is prohibited from raising new evidence after the close of discovery.  <u>Canon</u>, 134 F.3d at 1088.

Pferd has not met its burden, and no amount of name-calling or attempts to put the burden on Saint-Gobain to figure out what Pferd's contentions might be is going to change that.  In its brief, just as in its invalidity contentions themselves, Pferd states that

it has named five primary prior art references that anticipate the patent-in-suit, but <u>it does not support that statement</u>.

As to U.S. Patent No. 5,538,464 (the "'464 patent), <u>Pferd remains unwilling to explain its defense or offer evidence to support it, during the fact discovery period in this case</u> and should not be permitted to argue that the '464 patent renders invalid any claim of Saint-Gobain's '317 patent.  The fact that the Patent Office has necessarily considered and rejected this theory may not and does not in and of itself require that Pferd be precluded from relying on it (and, despite Pferd's contention, see Def. Br. at 3 n.2, Saint-Gobain never suggested otherwise), but it does emphasize that Pferd's burden is an <u>especially difficult</u> one -- an especially difficult burden that Pferd has not met.  The "presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing."  <u>Intervet Am., Inc. v. Kee-Vet Labs., Inc</u>., 887 F.2d 1050, 1054 (Fed. Cir.1989).  By consequence, the movant's "burden is <u>especially difficult</u> when the prior art was before the PTO examiner during prosecution of the application."  <u>Hewlett-Packard Co. v. Bausch & Lomb Inc</u>., 909 F.2d 1464, 1467 (Fed. Cir. 1990) (emphasis added).

Pferd has not explained, in detail, the basis for its contentions, and its fact witnesses were completely incapable of expounding on the written contentions (and at times even directly contradicted them, as described in the opening brief).  They certainly have presented no written responses or oral testimony that explains in detail how each claim element is disclosed in the prior art references, as required.  <u>See</u>, <u>e.g.</u>, <u>Schumer v. Lab. Computer Sys., Inc</u>., 308 F.3d 1304, 1315, 64 USPQ2d 1832, 1841 (Fed. Cir. 2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the

art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."); Briggs & Riley Travelware, LLC v. Paragon Luggage, Inc., 324 F. Supp. 2d 395, 399 (S.D.N.Y. 2003) ("Conclusory testimony is insufficient to meet [the Schumer] standard. Furthermore, it is 'not. . . the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out.'").

        As to the Dualock Catalog, contrary to Pferd's implication, Pferd did not provide evidence that the hub it claims is shown in the Dualock Catalog was in public use or on sale more than one year before the filing of the application resulting in the patent-in-suit. Furthermore, technologically speaking, Pferd still has not presented evidence that the Dualock hub anticipates or renders the '317 patent obvious in view of any other reference.  Even in its Opposition (p. 4), Pferd makes only conclusory statements, asserting that it "produced in discovery the physical 'mini-hub' product" that is show in the Dualock Catalog.  This statement does not explain any reason why the hub of the Dualock Catalog would disclose "each and every limitation of [the] claimed invention." Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000).  Such a statement, similar to those made in Pferd's invalidity contentions, does not meet the burden of clear and convincing proof of invalidity.

        Pferd's discussion of the 1988 edition of the ANSI Standard for Type 27 Grinding Wheels suffers from similar problems.  Pferd claims that the issue is a simple one to understand for the ANSI Standard "teaches that a small hub or flange can be used on a small diameter Type 27 grinding wheel."  See Def. Br. at 5.  Yet, the USPTO examiner

had <u>numerous</u> references before it that disclosed a small hub on a wheel.  This reference discloses absolutely nothing that was not before the Patent Examiner when the claims were allowed.  If anything, it was merely cumulative or prior art, and, thus, Pferd's mere reference to it is unpersuasive.  <u>See</u>, <u>e.g.</u>, <u>FMC Corp. v. Manitowoc Co</u>., 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed. Cir. 1987) (holding that "prior art or information was not material . . . because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO").

Pferd is absolutely incorrect that it obtained testimony that corroborates that commercial embodiments of the Norton Drawing (Norton is Saint-Gobain's predecessor company) were on sale or in public use prior to the critical date.  See Def. Br. at 5.  It obtained no such testimony from its own witnesses, and it certainly obtained no such testimony from Saint-Gobain's witnesses, as it asserts.  Pferd cites (and attaches) a portion of the testimony of Saint-Gobain's 30(b)(6) witness.  There is no reference to a commercial embodiment of the Norton Drawing at all, much less any testimony about such an embodiment being on sale or in public use prior to the critical date to the filing of the application resulting in the patent-in-suit.  <u>See</u> Exhibit E to Def. Br. at pp. 19.

Similarly, Saint-Gobain's 30(b)(6) witness expressly denies that there was a commercial embodiment of a Dualock Catalog Hub that was used in the 1980s.  <u>See</u> Exhibit E to Def. Br. at pp. 46-47.  Pferd presents no corroborated evidence of any public use of the Dualock Catalog Hub.

Pferd's final allegedly anticipatory "primary prior art" reference is the Shakespeare LZ Hub drawing.  Pferd does not even attempt to show how this hub is remotely similar to the one claimed in the patent-in-suit, much offer a complete element-

by-element analysis. This drawing again does not depict an anticipatory reference.

Indeed, Pferd's own 30(b)(6) witness said that the LZ Hub is not even of the type of hub

covered by the patent-in-suit.  (Deposition of LeBlanc at 139-40.)[3]

Finally, as to the additional two remaining "primary prior art" references that

Pferd alleges render the patent obvious, that is, U.S. Patent Nos.  4,240,230 (the "'230

patent") and 3,136,100 (the "'100 patent"), Pferd completely fails to meet the standards

for obviousness at any point in its contentions or in its opposition.  Pferd has not

established how these patents would be combined to render the claims of the patent-in-

suit obvious, nor has Pferd explained the basis for such a combination.  Pferd also fails to

mention or address the fact that the references were <u>cited to the PTO</u>, which renders their

burden <u>especially difficult</u>, as described above.

## III.    PFERD DOES NOT DENY THAT IT HAS NO BASIS FOR IDENTIFIYING THE 70 ADDITIONAL REFERENCES LISTED AS SUPPORTING ITS INVALIDITY CONTENTIONS

In its First Set of Interrogatories, Saint-Gobain requested that Pferd state the basis

for its affirmative defenses that the patent-in-suit is invalid.  See Interrogatories Nos. 9

and 10 of Saint-Gobain's First Set of Interrogatories, attached as Exhibit B.  The answer

included a laundry list of 70 or so references, without an iota of explanation as to the

bearing any of them had on any issue in the case.  Saint-Gobain specifically set this forth

in its motion as one very significant reason as to why Pferd should be precluded from

relying on these references.

### <u>Pferd makes not one statement in its opposition to refute this</u>.

---

[3] Pferd has currently designated the entirety of the deposition transcript as confidential. Should evidence of the conclusions stated herein regarding the testimony and objections be required, Saint-Gobain may file the transcript, or portions thereof, under seal.

Pferd has continued to refuse to articulate a coherent (or <u>prima facie</u>) theory that any Saint-Gobain claim is invalid based on any prior art, but does not even attempt to set forth its usual conclusory statements as to why it continues to maintain that the 70 references attached as Exhibit A to its invalidity contentions have any bearing on this suit. Apparently, Pferd thinks there are no repercussions for keeping its witnesses uneducated about its factual contentions and providing an unexplained 70-reference interrogatory answer to keep Saint-Gobain unaware of Pferd's actual contentions and from taking discovery on them. Accordingly, Pferd should be precluded from relying on these 70 references.

## IV.    PFERD HAS WAIVED ITS RIGHT TO PRODUCE AN OPINION

With respect to Pferd's sudden request to "postpone" discovery of willfulness, there can be no serious question that Pferd is violating the procedure that was ordered by this Court many months ago (on August 25, 2005) and which Pferd has misrepresented in its Opposition (pp. 9-10).

At the August 25 scheduling conference, the issue of whether the Court would bifurcate and stay discovery on Pferd's willful patent infringement was discussed:

Mr. Lowrie:         Often people ask for a bifurcation of damages and liability because of an attorney opinion. There is an issue of willfulness of infringement. The issue of willfulness is often interwoven with the issue of liability.
                    And so <u>it would be my proposal – and I hope this is what the Court is ordering – that the discovery on that issue is going forward with the liability rather than being held off for the accounting phase</u>.

The Court:          Miss Carroll.

Ms. Carroll:        Well, <u>as of this point, we're not relying on opinion of counsel on the willfulness issue</u>.

> The Court:                 All right.  Based on that representation, I think there is
> probably not an issue.  <u>If it changes, the parties can feel free to ask
> me for clarification.</u>

<u>See</u> Exhibit F to Def. Br., at 31 (emphasis added).

Thus, discovery on Pferd's willful infringement proceeded and -- if Pferd ever decided to rely on an opinion of counsel -- Pferd was required to ask the Court to determine whether the bifurcation order should be altered.  Pferd's arguments in its Opposition (pp. 8-10) are entirely beside the point.[4]  Pferd <u>never</u> alerted the Court as to whether Pferd had changed its mind about relying on any legal opinion.  It is only now, well after the close of discovery on willfulness, that Pferd has changed its mind (or at least wants to keep open the option of changing its mind).  The time for doing so has long passed.  Because it disclosed no opinions or other legal advice during discovery, Pferd must not be permitted to rely on any legal advice to defend against charges of willful infringement.

---

[4] In any event, because questions of willfulness are closely connected with infringement, there are substantial reasons for keeping the issue of willfulness together with liability – for purposes of both discovery and trial.  <u>See</u>, <u>e.g.</u>, <u>Kimberly-Clark Corp. v. James River Corp.</u>, 131 F.R.D. 607, 609 (D. Ga. 1989) ("[T]he liability issues in this complex patent infringement case are separate and distinct from damages issues. However, the willfulness determination, i.e., the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. Defendant's motion to separate the willfulness determination from the liability phase of the trial is, therefore, denied.").

## CONCLUSION

For these reasons, and for the reasons expressed in its opening brief, Saint-Gobain respectfully requests that its Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses (Docket No. 12) be GRANTED.

**SAINT-GOBAIN ABRASIVES, INC.,**

By its attorneys,

February 17, 2006

/s/ Emily A. Berger
Matthew B. Lowrie (BBO # 563414)
Aaron W. Moore (BBO # 638076)
Emily A. Berger (BBO # 650841)
LOWRIE, LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed today through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Laura L. Carroll, Esq.
lcarroll@burnslev.com
Merton E. Thompson, Esq.
mthompson@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02210

Dated: February 17, 2006

/s/ Emily A. Berger