IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

SAINT-GOBAIN ABRASIVES, INC.,

                Plaintiff,

v.

PFERD, INC.,

                Defendant.

Civil Action No.:  05-cv-40035 (FDS)

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF SAINT-GOBAIN**
**AND VALLEY DIE FOR PROTECTIVE ORDER OF VALLEY DIE**

Pursuant to Federal Rule of Civil Procedure 26(c), Saint-Gobain Abrasives, Inc. ("Saint-Gobain") and Valley Die Castings, Inc. ("Valley Die"), hereby move for a protective order to stay enforcement of the third-party subpoena issued in this case by defendant Pferd, Inc. ("Pferd") to Andrew Brown of Valley Die Castings, Inc. on or about February 24, 2006 (the "Subpoena").

The Court should order that the Subpoena be withdrawn and that fact discovery sought for the first time after the January 26, 2006 cut-off not be had, for at least the following reasons:

        the Subpoena, which is directed to the vendor of certain of Saint-Gobain's products, was noticed almost a month after the close of fact discovery and without any effort to justify why the deposition was not sought in the discovery period; and

        the materials and testimony sought are not relevant to the factual claim or defense of any party (other than damages, which have been bifurcated at Pferd's request), in particular because most or all of it is after the filing of the patent-in-suit and would, therefore, be relevant

only to damages issues.

Saint-Gobain requests, therefore, that the Court enter the proposed Protective Order attached to this motion as Exhibit A.

## BACKGROUND

### A.    The Parties and the Claims in this Case

This is a patent case involving claims by Saint-Gobain that Pferd infringes Saint-Gobain's patent directed generally to grinding wheels and hubs.

### B.    Procedural Background.

The Complaint in this case was filed on February 24, 2005, alleging infringement of one patent. At the scheduling conference in this case, Pferd contended that it is a small company and that it wished to bifurcate damages discovery. The Court agreed, and discovery began.

The Court initially set a close of discovery for December 15, 2005 but extended that deadline at the parties' request to January 26, 2006.

January 26 came and went without either party requesting additional time for discovery. Pursuant to the Court's order, however, both parties filed motions to compel on the date that fact discovery closed (although Pferd's first motion to compel was untimely, as it was filed electronically after 6 p.m. and therefore receives a filing date _after_ the deadline).

At a status hearing held a few days after discovery closed, however, Pferd requested that the discovery period be extended to allow the Court to decide the motions to compel. (Docket No. 28, at p. 10.) The Court did _not_ grant that request.

After some discussion, the Court reached the following conclusion: "I'm going to be stingy in terms of permitting additional fact discovery. If you can make out a case that it is something that you were entitled to during -- while discovery was open, and you didn't get for

2

some reason, I'll entertain that."  Id. at p. 13.

Apparently, Pferd then unilaterally decided that deadlines do not apply to it.

Pferd filed its Responses to Saint-Gobain's Second Set of Requests for Production almost a week late, after the close of discovery, without requesting an extension, despite their having been timely served by hand 30 days prior to the close of discovery.

Pferd also filed a second motion to compel, this time well after the Court-ordered deadline of January 26.  For most or all of the subject matter of that motion, Pferd made no effort to explain why the motion was not filed before the deadline in its opening brief.  (See Docket No. 19.)  In its reply brief, Pferd only exacerbated the point, agreeing that the motion to compel was moot as to the only interrogatories which Saint-Gobain had agreed to consider supplementing (for those, one could justify filing a motion concerning the adequacy of the supplementation after the close of discovery).  Pferd has yet to provide any explanation as to why it could not have filed its motion before discovery closed.

After this, Pferd then began attempting to take free-ranging discovery as though the discovery period had just opened – steadfastly refusing to explain why it did not seek this additional discovery during the discovery period.  As one example, Pferd recently served Requests for Admission on Saint-Gobain.

For the subject matter of this motion, Pferd purported to issue a subpoena to Andrew Brown of Valley Die Castings, Inc.  On February 7, 2006 (two weeks after discovery closed), Pferd first provided counsel for Saint-Gobain with a notice of a document subpoena but not the subpoena itself.  When Pferd finally provided a copy at Saint-Gobain's request, Saint-Gobain alerted Pferd that the subpoena was defective.  After waiting another week to cure the defects, on February 24, Pferd re-served the subpoena, curing the defects but this time adding a new

command that Mr. Brown appear for deposition.

###### C.    The Subpoena

Valley Die has little or nothing in the way of relevant, responsive, non-privileged information.  A copy of the Subpoena and Deposition Notice is attached as Exhibit B.

Saint-Gobain has explained to Pferd (during the discovery period) numerous times why it would not provide documents that are not pertinent to liability (damages having been bifurcated at Pferd's request).

Specifically, Saint-Gobain (and now Valley Die) has explained that documents created after the critical date of the filing of the patent-in-suit would not provide any support to a Pferd defense of invalidity.  See Letter from E. Berger to M. Thompson of January 26, 2006 ("As we explained [during the teleconference], with regard to many of the requests that you cited (e.g., about commercialization of the product after the critical date for the patent), such documents are irrelevant to liability and we will not produce them now."), attached hereto as Exhibit C; see also Letter from E. Berger to L. Carroll of February 16, 2006, attached hereto as Exhibit D ("At a minimum, any documents created after the filing of the patent-in-suit that Pferd seeks from Valley Die Castings, Inc. that are in its possession are certainly not relevant at this time or to the breadth described, prior to the opening of damages discovery.").

Furthermore, Valley Die explained that it did not have any documents responsive to any of the categories sought that were created prior to the filing of the patent-in-suit in December 1996.  See Exhibit D.  Valley Die provided this explanation prior to re-issuance of the defective subpoena, yet the document requests were not amended in any way.

Prior to filing this motion, counsel for Saint-Gobain and Valley Die requested Pferd's justification for seeking the deposition of Andrew Brown after the close of discovery.  See Letter

from E. Berger to M. Thompson of February 17, 2006, attached hereto as Exhibit E.  Pferd never

responded.  Mr. Brown was not even employed by Valley Die from mid-1993 to December

1996, presumably the only relevant time frame on which he would be questioned.[1]

## ARGUMENT

The Court should issue a protective order requiring Pferd to withdraw the Subpoena, and

Pferd should be restricted from seeking any further discovery from Valley Die Castings, Inc.  To

subpoena and depose a third-party after the close of fact discovery, without justification and on

matters for which it has already stated that it does not have relevant information, is unnecessary,

prejudicial, and a waste of time and resources.

**A.     The Subpoena Is Untimely and Intended to Harass a Saint-Gobain Supplier**

There can be little doubt that the Subpoena is untimely.  Pferd made no effort to seek

discovery of Valley Die <u>during the fact discovery period</u>.

What is more, there is no doubt that Pferd must justify its failure to seek this discovery

earlier.  This Court cautioned the parties that:

> I'm going to be stingy in terms of permitting additional fact discovery.  If you can make
> out a case that it is something that you were entitled to during -- while discovery was
> open, and you didn't get for some reason, I'll entertain that.

(Docket No. 28, at p. 13.)  There is also no question that Pferd has not offered any

explanation or justification for failing to seek this discovery before.  Saint-Gobain has asked for

an explanation and Pferd has been silent in response.  <u>See</u> Exhibit E.

Pferd has not tried to justify its untimely efforts, because it cannot justify them.  Pferd

was certainly aware of Valley Die and its relationship with Saint-Gobain <u>prior</u> to the close of the

fact discovery period.  Saint-Gobain's 30(b)(6) witness testified about its relationship with

---

[1] Andrew Brown would sign a supporting affidavit to this effect should the Court require one.

Valley Die prior to the close of the fact discovery period.[2]

Because Pferd was aware of Valley Die before the discovery cutoff, the discovery should be denied as this Court already observed at the status conference.  See Docket No. 28, at p. 13; see also McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (finding that where a party "is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied."); Mortgage Info. Servs. v. Kitchens, 210 F.R.D. 562, 568 (W.D.N.C. 2002) ("Because the subpoena duces tecum was not timely served in this case, Defendant's Motion for a Protective Order will be granted and the subpoena will be quashed."); Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., 116 F.R.D. 363, 365 (M.D.N.C. 1987) ("A reasonable discovery schedule may be enforced, even if relevant discovery is denied, unless extenuating circumstances compel a contrary finding.").

Finally, this Subpoena, made to Saint-Gobain's commercial supplier, is simply an effort to harass, and should be denied for this reason as well.  In Harris v. Wells, No. 89-391, 1990 U.S. Dist. LEXIS 13215 (D. Conn. Sept. 4, 1990), for example, the Court stayed third-party subpoenas in part because the defendant's subpoenas to the third-parties threatened to have a negative impact on the plaintiff's business relationship with the third parties and most of the documents could have been obtained from the plaintiff directly.  Id. at *12-13.  As that is precisely the (intended) result of the Subpoena issued by Pferd, and as the discovery was not sought until after the close of the fact discovery period, it should be prohibited.

---

[2] Should Pferd contest this fact, or should the Court require it, Saint-Gobain will submit a portion of the deposition referring to Valley Die under seal.

6

**B.     Pferd Cannot Show Relevance or Need
for the Information Sought in the Subpoenas**

In the Subpoena, Pferd seeks documents and testimony with extraordinary breadth and no

relevance to the liability issues in this case.  For example, Pferd seeks "[a]ll documents and

things concerning Valley Die Castings' design, manufacture, production, and provision of

Hubs."  See Exhibit B.

This request seeks to capture the entirety of what the company does.  There are no limits

on time frame.  There are no limits on scope.  There is no legitimate request to seek relevant

documents.  There is only harassment of Saint-Gobain's vendor.

Indeed, Pferd asked this Court to bifurcate discovery on damages because of the burden

Pferd claims would result in having to produce this very range of documents.  See Transcript of

August 25, 2005 Scheduling Conference, at p. 18-21, attached hereto as Exhibit F (Pferd's

counsel noting that damages discovery is "daunting" and seeking to "avoid the expense of

damages discovery, damages experts and all of that" through bifurcation).  The Court granted

Pferd's request, and Pferd has steadfastly refused to produce documents about its sales.

For Pferd to now seek to impose this very same burden on a third-party is hypocrisy at its

worst.  Pferd can justify neither the timing of its request (after the close of discovery) nor its

scope.

Other categories, such as one for "[a]ll documents and things concerning Valley Die

Castings' presence in Saint-Gobain's facilities," on the other hand, could have been discovered

directly from Saint-Gobain.  See Exhibit B.  Pferd, however, never asked Saint-Gobain for

information about Valley Die.

To the extent that some broader category of documents generally listed in Pferd's

requests to Saint-Gobain might have covered information about "Valley Die Castings' presence"

in its facilities (although no category even seeks information about any Saint-Gobain <u>vendor</u>), Pferd has never pointed it out.

Further, Saint-Gobain specifically informed Pferd during the discovery period that Saint-Gobain would not provide damages discovery to Pferd while Pferd was refusing to provide such discovery to Saint-Gobain on the ground that damages discovery is not yet open.

In short, the information sought by the Subpoena is not discoverable because it is not "relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b)(1).  It only seeks information from after the filing of the patent application.

Pferd has the burden to show discoverability, and it has made no effort to do so.  <u>See</u>, <u>e.g.</u>, <u>Mannington Mills, Inc. v. Armstrong World Industries, Inc</u>., 206 F.R.D. 525, 528 (D. Del. 2002) (granting non-party's motion to quash subpoena).

While the discovery standards are generally quite liberal, "[d]iscovery may not be had regarding a matter which is not 'relevant to the subject matter involved in the pending action.'" <u>See</u>, <u>e.g.</u>, <u>Micro Motion, Inc. v. Kane Steel Co., Inc</u>., 894 F.2d 1318, 1322 (Fed. Cir. 1990). Moreover, "[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information."  <u>Id</u>.

Here, not only is the Subpoena untimely, but the information sought by it is not relevant to liability, or likely to lead to relevant information, and would be unduly burdensome to produce, as <u>Pferd</u> told this Court when arguing that it should not have to produce its own copies of this very class of documents.  <u>See</u> Exhibit F.

## <u>CONCLUSION</u>

For the foregoing reasons, Saint-Gobain and Valley Die respectfully request that their

motion for protective order of Valley Die be GRANTED and that fact discovery sought for the

first time after the January 26, 2006 deadline not be had.

<div style="margin-left: 50%;">

Respectfully submitted,

SAINT-GOBAIN ABRASIVES, INC. and
VALLEY DIE CASTINGS, INC.,

</div>

Dated: March 6, 2006                    by:     /s/ Emily A. Berger
                                                Matthew B. Lowrie, BBO No. 563,414
                                                Aaron W. Moore, BBO No. 638,076
                                                Emily A. Berger, BBO No. 650,841
                                                LOWRIE, LANDO & ANASTASI, LLP
                                                Riverfront Office Park
                                                One Main Street - 11th Floor
                                                Cambridge, MA 02142
                                                Tel: 617-395-7000
                                                Fax: 617-395-7070

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | |
| Plaintiff, | Civil Action No.:  05-cv-40035 (FDS) |
| v. | |
| PFERD, INC., | |
| Defendant. | |

## [PROPOSED] ORDER GRANTING JOINT MOTION OF SAINT-GOBAIN AND VALLEY DIE FOR PROTECTIVE ORDER OF VALLEY DIE

For good cause shown, the Joint Motion of Saint-Gobain and Valley Die for Protective

Order of Valley Die is hereby GRANTED.  Pferd, Inc. shall immediately withdraw its subpoena

on Valley Die Castings, Inc. and is restricted from seeking any further discovery from Valley

Die Castings, Inc. in this action without first obtaining an order permitting such discovery from

this Court.

SO ORDERED

Date:_____

_____
Hon. F. Dennis Saylor, IV

780836.1

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | ) |
| Plaintiff, | ) |
| v. | )    CIVIL ACTION<br>)    NO. 05-40035-FDS |
| PFERD, INC., | ) |
| Defendant. | ) |

TO:   Matthew B. Lowrie, Esq.
       Aaron W. Moore, Esq.
       Emily A. Berger, Esq.
       Lowrie, Lando & Anastasi, LLP
       Riverfront Office Park
       One Main Street – 11th Floor
       Cambridge, MA 02142

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 30, Defendant

Pferd, Inc. ("Pferd") will take the deposition, upon oral examination, of Andrew Brown

of Valley Die Castings, Inc., at the office of Atlas & Hall LLP, 818 Pecan, McAllen, TX

78501 on Thursday, March 9, 2006, beginning at 10:00 a.m. The witness is required to

bring all documents and things available to him to the deposition which are responsive to

Attachment A. The deposition will be recorded by videographic and stenographic means

before a Notary Public in and for the State of Texas or before such other officer

authorized to administer oaths and will continue from day to day until concluded.

You are invited to attend and cross-examine the witness.

PFERD, INC.,

By its attorneys,

Date: February 24, 2006

*[signature]*

Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel. 617-345-3000
Fax 617-345-3299

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this Notice of

Deposition to be served, by electronic and First Class Mail upon the following counsel of

record:

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142

Dated: February 24, 2006

*[signature]*

Laura L. Carroll

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.    "Pferd" means Pferd, Inc., defendant in this action,

2.    "Saint-Gobain" means plaintiff Saint-Gobain Abrasives, Inc., its predecessor Norton Corporation, and includes its officers, directors, employees, brokers, attorneys, investigators, affiliates, parent corporations, holding companies, subsidiaries and all other persons who have acted or purport(ed) to act on Saint-Gobain's behalf.

3.    The term "the '317 patent" shall mean U.S. Patent No. 5,895,317.

4.    "Valley Die Castings" means Valley Die Castings, Inc. and any predecessors and successors in interest.

5.    "Grinding Wheel" means depressed center (Type 27) grinding wheels.

6.    "Hub" means any hub for use with a Grinding Wheel.

7.    "Document(s)" means any written, recorded and/or graphic matter, however produced or reproduced, and includes the original and any copy differing from the original of any printed, written, typed, recorded, graphic, or photographic matter, any computerized printout, computer program, computer data base, electronic mail or any other form of electronic communication or other tangible matter from whatever source, whether produced or reproduced or stored on paper, cards, tapes, discs, belts, films, computer storage devices, or any other material or device, whether sent or received or neither, and includes, without limitation, all writings, correspondence, letters, journals, notebooks, analyses, drawings, pictures, tables, graphs, pleadings, bills, logs, proposals, offers, recordings, films, videotapes, computer discs, digital videodiscs ("DVD's"), files, time logs or other indications of work done or time spent, telephone message slips, charts, data sheets, statistics, facsimiles, contracts, agreements, policies,

studies, transcripts, summaries, newspaper or magazine materials, pamphlets, brochures, books, ledgers, registers, reports, accounts, financial statements, prospectuses, minutes, agendas, invoices, purchase orders, order confirmations, statements, checks, receipts, returns, estimates, projections, memoranda, notes, interoffice and intra-office communications, notations of any sort of conversations, bulletins, photographs, work papers, work sheets, and all drafts, alterations, modifications, and changes and amendments of any kind and all other documents, tangible or retrievable, of any kind.

8.    "Things" means any physical item that is not a document that is responsive to a request, including, but not limited to, product samples, tooling, dies, prototypes and the like.

9.    "Concerning" means relating to, referring to, describing, evidencing, constituting, comprising, indicating, evidencing, discussing, involving, explaining, summarizing, being logically connected to, being causally connected to, being chronologically connected to, or mentioning in any way the subject material of the Request.

10.    The singular shall be construed to include the plural and the plural to include the singular. The words "and" and "or" shall be construed both disjunctively and conjunctively.

11.    If you contend that any otherwise responsive document is privileged or not otherwise subject to discovery: (a) identify the withheld document by author, addressee, date, number of pages, and subject matter, (b) state the basis for your contention that the document is not subject to discovery, and (c) identify each such person to whom a copy of the withheld document was sent, or to whom the withheld document, or its contents, or any part thereof, was disclosed.

12.    Documents produced shall include each copy of any document that is not identical to the original of such document and shall include any copy of any document upon which any

marking or notation is made that is not made upon the original of such document or upon any other copy thereof.

## DOCUMENTS AND THINGS TO BE PRODUCED

1.   All documents and things provided, demonstrated, or sent by Valley Die Castings to Saint-Gobain concerning Hubs.

2.   All documents and things concerning the '317 patent.

3.   All documents and things concerning Valley Die Castings' design, manufacture, production, and provision of Hubs.

4.   All documents and things concerning Valley Die Castings' design, manufacture, production, and provision of Hubs to Weiler Corporation.

5.   All documents and things concerning Valley Die Castings' presence in Saint-Gobain's facilities.

6.   All documents and things concerning Valley Die Castings' contribution or assistance to Saint-Gobain in the design or manufacture of Hubs.

7.   All documents and things concerning Valley Die Castings' design, manufacture, production, and provision of Hubs to Saint-Gobain, including but not limited to, tooling, dies, drawings, contracts, invoices, and shipping documentation.

8.   All documents and things concerning or evidencing Valley Die Castings' knowledge of Hubs for Grinding Wheels.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC.,       ) | |
|                     ) | |
|           Plaintiff,       ) | CIVIL ACTION |
|                     ) | NO. 05-40035-FDS |
| v.                     ) | |
|                     ) | |
| PFERD, INC.,             ) | |
|                     ) | |
|           Defendant.      ) | |
| | |

TO:   Matthew B. Lowrie, Esq.
        Aaron W. Moore, Esq.
        Emily A. Berger, Esq.
        Lowrie, Lando & Anastasi, LLP
        Riverfront Office Park
        One Main Street – 11th Floor
        Cambridge, MA 02142

### NOTICE OF ISSUANCE OF NON-PARTY SUBPOENA

**PLEASE TAKE NOTICE** that, pursuant to Rules 34(c) and 45 of the Federal

Rules of Civil Procedure, the undersigned attorney will issue one subpoena, a copy that is

attached, which commands the production of those documents and things listed on the

subpoena, at the time and place stated therein. Said subpoena will be served upon:

Andrew Brown
Valley Die Castings, Inc.
5216 N. 26th Street
McAllen, TX 78504

PFERD, INC.,

By its attorneys,

Date: February 24, 2006

_(signature)_

Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel. 617-345-3000
Fax 617-345-3299

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this Notice of

Issuance of Non-Party Subpoena to be served, by electronic and First Class Mail upon the

following counsel of record:

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142

Dated: February 24, 2006

_(signature)_

Laura L. Carroll

· AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

__Southern__                      DISTRICT OF      __Texas__

Saint-Gobain Abrasives, Inc.

V.

Pferd, Inc.

**SUBPOENA IN A CIVIL CASE**

# MISCELLANEOUS M-06-018

Case Number:[1]    05-40035-FDS
D. Mass.

TO:  Andrew Brown
     Valley Die Castings, Inc.
     5216 N. 26th Street
     McAllen, TX  78504

G  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

XG  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Atlas & Hall, LLP, 818 Pecan, McAllen, Texas | March 9, 2006  10:00 a.m. |

GX  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):
                  See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Atlas & Hall, LLP, 818 Pecan, McAllen, Texas | March 9, 2006 9:00 a.m. |

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Olwa Garcia, Deputy Clerk* | 2/23/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
*1701 W. Bus Hwy 83*
*McAllen, TX 78541*

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                  DATE                          SIGNATURE OF SERVER

                                               _____
                                               ADDRESS OF SERVER

                                               _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT C



LOWRIE, LANDO
&ANASTASI, LLP
*Devoted to Intellectual Property Law*

**Emily A. Berger**
eberger@LL-A.com
direct dial 617-395-7038

January 26, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*mthompson@burnslev.com*

Merton E. Thompson Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

Re:    Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
       Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
       <u>Our File No. S1432-6004</u>

Dear Merton:

I write to memorialize Saint-Gobain's positions set forth in the teleconference today.

As we noted, we have no obligation to supplement Saint-Gobain's responses to Pferd's requests for production where Saint-Gobain's documents were produced as they were kept in the ordinary course of business, no additional documents responsive to your requests exist, where documents are privileged and appear on the privilege log, or where responsive documents are not required to be produced at this time due to bifurcation of the case. Nevertheless, we have agreed to confirm that no additional responsive, relevant documents exist that relate to liability discovery. As we explained, with regard to many of the requests that you cited (e.g., about commercialization of the product after the critical date for the patent), such documents are irrelevant to liability and we will not produce them now.

With regard to Pferd's Interrogatory No. 3, we also agreed to supplement Saint-Gobain's response to this interrogatory based on the representation that Pferd considers its response to Saint-Gobain's Interrogatory No. 4, requesting claim construction of any term Pferd contends is not met in the Accused Products, to be the two terms highlighted in its Preliminary Non-Infringement Contentions. Since Courts do not interpret claim terms except where there is a genuine dispute over the meaning, Saint-Gobain will supplement its answers with constructions for those limitations.



Merton E. Thompson, Esq.
January 26, 2006
Page 2

Saint-Gobain also agreed to supplement its answer to Pferd's Interrogatory No. 8, to the extent that the information requested is in Saint-Gobain's possession and was not disclosed during the 30(b)(6) deposition of Guy Timm.

We agreed to provide the supplements above, should they be necessary, by the end of next week.

Finally, we offered to make Ms. Porter available for a 4-hour deposition next week, despite the fact that we believe that your deposition notice was untimely and noticed for an improper purpose. Our offer remains open until the end of the day.

We believe that was the extent of our agreements, but please let me know if you believe we missed something.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

EAB/cdd

# EXHIBIT D



**LOWRIE, LANDO**
**&ANASTASI, LLP**
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

February 16, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*lcarroll@burnslev.com*

Laura L. Carroll, Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

   Re: Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
     Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
     <u>Our File No. S1432-6004</u>

Dear Laura:

  This letter is in response to your Notice of Issuance of Non-Party Subpoena (the "Notice") naming Valley Die Castings, Inc. and served on Andrew Brown in the above case. It provides you with Valley Die Castings, Inc.'s objections to the Subpoena under Fed. R. Civ. P. 45(c)(2)(b).

  As a preliminary matter, Saint-Gobain was not served with a copy of the <u>subpoena</u> that you served, only with a copy of the Notice thereof. As such, please provide us immediately with a copy of the subpoena, as served, on Mr. Brown.

  In addition, we understand that your firm contacted Mr. Brown. We wish to inform you that our firm is representing Valley Die Castings, Inc. with respect to this action, and we ask that he be contacted only through counsel.

  Valley Die Castings, Inc. does not have any documents that are responsive to any of the categories in the Notice that were created prior to the filing of the patent-in-suit. Documents created on or after the filing date of the patent-in-suit are not relevant to the litigation.

  Furthermore, the breadth of the categories of documents would literally require a small company to turn itself inside out to produce documents to support Pferd's fishing expedition. At a minimum, any documents created after the filing of the patent-in-suit that Pferd seeks from Valley Die Castings, Inc. that are in its possession are certainly not relevant at this time or to the breadth described, prior to the opening of damages discovery.

Riverfront Office Park, One Main Street, Eleventh Floor, Cambridge, MA 02142 T 617-395-7000 F 617-395-7070

WWW.LL-A.COM



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Laura L. Carroll, Esq.
February 16, 2006
Page 2

Valley Die Castings, Inc. objects specifically to the untimely nature of this subpoena. It was first contacted by Pferd almost two weeks after the close of liability discovery and prior to the opening of damages discovery. As the Notice and subpoena are untimely, as the subpoena was never properly served on counsel, and as there are no documents pre-dating the filing date of the patent-in-suit, no documents will be produced in response to the subpoena of Valley Die Castings, Inc.

Despite the statements made above, Valley Die Castings, Inc. is continuing its investigations and reserves the right to supplement, amend, or modify its objections with respect to particular documents should it be required to do so. Valley Die Castings, Inc.'s responses are not to be construed as a waiver of any right or objection, or as an admission of any kind.

In addition to the foregoing, the following general objections are further incorporated by reference into each response set forth below, should Valley Die Castings be compelled to produce any of the documents sought by Pferd. It also reserves the rights to make specific objections to the subpoena subject to a ruling that it be required to produce any responsive documents at any time.

1.     Valley Die Castings, Inc. objects to topics/requests that call for production of documents protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege or protection. Responsive documents that are subject to the attorney-client privilege and/or work product immunity, or that are otherwise immune from discovery, could be identified in a schedule of withheld documents pursuant to Fed. R. Civ. P. 26(b)(5). Valley Die Castings, Inc. understands that the direct parties to this action have already exchanged such logs, however, and would object to any request that Valley Die Castings, Inc. be immediately required to produce such a log.

2.     Valley Die Castings, Inc. objects to the subpoena as a whole on the grounds that it seeks information that appears to be irrelevant to the underlying action and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, even if the information sought by the subpoena can be said to be relevant to the claims asserted in the litigation, it seems clear that Pferd would have been better served by timely directing these inquiries to Saint-Gobain directly, rather than to Valley Die Castings, Inc.

3.     Valley Die Castings, Inc. objects to producing documents in February 2006, as it requires sufficient time for Valley Die Castings, Inc. to locate, meaningfully review, and produce documents responsive to the multiple categories of materials identified in the subpoena.

4.     Valley Die Castings, Inc. objects to these topics/requests as overly broad, unnecessarily burdensome, and calling for information and/or documents that are neither relevant nor reasonably calculated to lead to discovery of admissible evidence.



LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Laura L. Carroll, Esq.
February 16, 2006
Page 3

     5.     Valley Die Castings, Inc. objects to providing information or documents that Valley Die Castings, Inc. is under a legal or contractual duty not to disclose to a third party.

     6.     Valley Die Castings, Inc. objects to providing information or documents that contain confidential and/or trade secret information. The subpoena calls for a substantial amount of confidential information that is proprietary to Valley Die Castings, Inc. and/or its customers, and Valley Die Castings, Inc. is not willing to produce any such information, in the form of documents or testimony, absent a sufficient protective agreement or order.

     7.     Valley Die Castings, Inc. objects to these topics/requests to the extent that they impose any duty beyond those specified in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

     8.     Valley Die Castings, Inc. objects to these topics/requests as unnecessarily burdensome to the extent they seek information or documents already in the possession, custody or control of any party to the underlying action.

     9.     Valley Die Castings, Inc. objects to these topics/requests to the extent they seek information or documents not readily in its possession, custody or control.

     10.    Valley Die Castings, Inc. objects to these topics/requests as vague and ambiguous.

Thank you for your attention to this matter.

                          Sincerely,

                          LOWRIE, LANDO & ANASTASI, LLP

                          Emily A. Berger

EAB/cdd

# EXHIBIT E



LOWRIE, LANDO & ANASTASI, LLP
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@LL-A.com
direct dial 617-395-7038

February 17, 2006

<u>Via U.S. First-Class Mail and Electronic Mail</u>
*mthompson@burnslev.com*

Merton E. Thompson Esq.
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110

Re:     Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
Civil Action No. 05-cv-40035 (FDS), D. Mass. (Central Division)
<u>Our File No. S1432-6004</u>

Dear Merton:

Thank you for providing us with a copy of the Subpoena to Valley Die Casting, Inc. (the "Subpoena") over a week after it was served. In addition to the objections and comments we noted yesterday in response to the Notice of the Subpoena, it is now also apparent that the Subpoena is defective and not in compliance with Rule 45. As such, it is clear that no response is required.

As to your inquiry regarding Mr. Brown, we will not be making him available for deposition, not least because you have provided no justification for seeking this deposition after the close of discovery. If you have a basis for the late notice, please let us know.

Sincerely,

LOWRIE, LANDO & ANASTASI, LLP

Emily A. Berger

EAB/cdd

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


------------------------------
SAINT-GOBAIN,                 )
        Plaintiff,            )
                             )        DOCKET NO.:
   Vs.                        )        CV 05-40045
                             )
PFERD,                        )
        Defendant.            )
------------------------------




SCHEDULING CONFERENCE



BEFORE:   The Honorable F. Dennis Saylor, IV




                        United States District Court
                        District of Massachusetts
                        595 Main Street
                        Worcester, Massachusetts
                        Thursday, August 25, 2005
                        Courtroom No. 2


            *   *   *   *   *   *   *   *   *   *


                   **TARALLO & TARALLO**
                PROFESSIONAL COURT REPORTERS

                      P.O. BOX 85
               AUBURN, MASSACHUSETTS 01501
     TEL: (508) 832-0048          FAX: (508) 832-0209

1   I mean, some people want joint claim construction

2   statements first and then briefs or however Your

3   Honor would like to approach it.  But I would like

4   to suggest that we do that towards the end of this

5   calendar year, and then we can tag on the end of

6   that following claim construction, we can add

7   another period for discovery if necessary.

8            The discovery we've been asked for

9   especially in the damages in terms of financials

10  when we believe we're talking about a single

11  product that only fits on two smaller size wheels,

12  you know, is rather daunting, and I don't think it

13  will be necessary for Pferd on construction.

14            THE COURT:  What do the parties propose

15  in terms of a claim construction schedule?

16            Let's say that I do an orthodox

17  discovery where it basically says depositions and

18  requests for documents will proceed over the next X

19  number of months.  What is the next step that you

20  think ought to happen?  Shall I set a deadline

21  where you have to do such and such?

22            Let me hear from plaintiff first.

23            MR. LOWRIE:  Yes, Your Honor.  If an

24  orthodox ruling were entered, my suggestion would

1  be that we let the parties go through their initial

2  rounds of discovery which is the interrogatories

3  and document exchanges.  Maybe each party can

4  decide how they want to order the depositions, but

5  there might be depositions taken.  And at that

6  point -- you know, maybe just one or two, not the

7  full set -- and at that point, it might be sensible

8  to come back to the Court and say okay, it does

9  appear that this is focusing down, or it may be

10  that there is a difference of opinion.

11          So the problem is without -- in the

12  absence of any discovery whatsoever, it's hard to

13  make a solid recommendation.  There are districts,

14  as Miss Carroll said, the Northern District of

15  California has a set of rules that kind of tries

16  to, in advance of knowing what the case is about,

17  sets one template for everything.  That particular

18  set of rules are pretty much only in the Northern

19  District of California.  The other hundred or

20  however many districts there are have not followed

21  that for the very reason that Mr. Lee commented is

22  that although -- I think the quote from the article

23  is, Generally accepted that barring a case so clear

24  that quick resolution is -- oh, no.  I'm sorry.

1    Although the prediscovery claim interpretation

2    under those rules may encourage settlement and more

3    important focus discovery, ultimately it's

4    inefficient because it outweighs the benefits.

5             So those rules and that type of

6    proceeding, Your Honor, runs for about 18 months

7    for resolution of the case.  The proposed schedule

8    that the parties presented to the judge calls for

9    the close of all discovery and I think the initial

10   expert reports are exchanged in February of next

11   year.  It's a very focused time period.  So to say

12   by the end of the year isn't really saying much

13   before the close of discovery.  That might be an

14   appropriate time.

15            But my suggestion would be that the

16   Court hold a status conference, set it for maybe

17   early November, and get a report of the parties as

18   to whether we agree on the time of the Markman

19   Hearing or not.

20            THE COURT:  Miss Carroll.

21            MS. CARROLL:  What I would suggest,

22   Your Honor, is trying to set some deadlines now.

23   You know, obviously my client would like in

24   particular to avoid the expense of damages

1    discovery, damages experts and all of that.  If

2    that turns out not to be necessary, I am confident

3    given that we are talking about a single product

4    that we sell, that based on the claim construction

5    we will know if we have an issue or not on

6    infringement.  And I don't think we'll need to go

7    the rest of the way one way or the other.

8              What I would recommend is we can do it

9    one of two ways.  One way would be for Mr. Lowrie

10   and I to agree to confer after this initial round

11   of discovery, maybe at the end of September, and

12   figure out where we have -- we believe that there

13   are terminology in the claims, what language needs

14   to be construed, and talk, you know, discuss that

15   with each other under a set timetable and then

16   present Your Honor with a chart that has, you know,

17   here is the language we think needs construing and

18   here is Mr. Lowrie's version and here is ours, and

19   then have a briefing schedule based on that with

20   affirmative -- we can do it -- I've done it both

21   ways where the patent owner does it first and the

22   defendant responds, and the case we have in New

23   Hampshire where we're doing simultaneous briefs.

24   And I'm open to doing it either way.