# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC., ) | **REDACTED** |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | NO. 05-40035-FDS |
| v. ) | |
| ) | |
| PFERD, INC., ) | |
| ) | |
| Defendant. ) | |

## OPPOSITION OF DEFENDANT PFERD, INC., TO JOINT MOTION OF SAINT-GOBAIN AND VALLEY DIE FOR PROTECTIVE ORDER OF VALLEY DIE

### I.   Introduction.

Defendant Pferd, Inc. ("Pferd"), hereby opposes the Joint Motion of plaintiff Saint-Gobain Abrasives, Inc. ("Saint-Gobain") and non-party Valley Die Castings, Inc. ("Valley Die") for a protective order (Docket #32). After repeated stonewalling by Saint-Gobain in discovery, Pferd resorted to serving a deposition subpoena *duces tecum* on Saint-Gobain's hub vendor, Valley Die, which is located in McAllen, Texas.[1] Saint-Gobain's and Valley Die's motion should be denied, because the discovery sought from Valley Die is necessary and likely to be highly probative of a key defense in this case, and is timely.

---

[1]   A copy of the subpoena at issue is attached as **Exhibit 1**.

## II.    Argument.

### A.    The Information Sought from Valley Die is Highly Probative.

In this action, Saint-Gobain alleges that Pferd is infringing Saint-Gobain's U.S. Patent No. 5,895,317 ("the '317 patent"), entitled "Wheel Hub for Longer Wheel Life." Saint-Gobain contends that a "mini-hub," which Pferd purchases from outside vendors and attaches to Pferd's 4 to 5½-inch diameter Type 27 depressed center grinding wheels, infringes the '317 patent.

If a patent claim is disclosed in a single prior art reference (expressly or inherently), that patent claim is invalid for anticipation over that reference. *See* 35 U.S.C. §102. As described more fully in Pferd's Memorandum in Opposition to Saint-Gobain's Motion to Preclude Supplementation of Pferd's Invalidity or Willfulness Defenses (Docket #23-1), Pferd has identified a few primary prior art references which Pferd contends anticipate the '317 patent. One of the key references, designated "Ref. 4" in Pferd's invalidity contentions, directly relates to the information Pferd is seeking from Valley Die.

Pferd's Ref. 4 is Saint-Gobain's own document – it is a drawing which depicts a mini-hub which Saint-Gobain has admitted was in use and on sale in the U.S. before the "critical date," *i.e.*, more than one year prior to December 18, 1996, the date Saint-Gobain submitted its application for the '317 patent, and thus qualifies as "prior art" which could invalidate the asserted patent claims. *See* 35 U.S.C. §102(b). (A copy of Ref. 4, which Saint-Gobain produced in discovery as Bates number SG00451, is attached as **Exhibit 2**.) At the deposition of Guy Timm, the named inventor of the '317 patent and Saint-Gobain's Rule 30(b)(6) designee, Mr. Timm acknowledged that **REDACTED**

**REDACTED**

*See*

excerpts from deposition of Mr. Timm, attached as **Exhibit 3**, pp.29-31. Mr. Timm also

testified how **REDACT** *See id.*, pp.31-35.

This is powerful evidence that his reference, if legitimate prior art under §102, renders

the asserted patent invalid.[2]

**REDACTED**

Mr. Timm further acknowledged

*See id.*, pp.19, 46-47. More specifically, Mr.

Timm testified that Ref. 4 (SG00451) was

*See* Exh. 3, p.26. That document is dated October 13, 1995, two

months before the critical date for the '317 patent. Mr. Timm further testified that the

**REDACTED** (see Exh. 3, p.18);

*Id.*, p.19. Mr. Timm described **REDACTED**

' *Id.*, p.41.

As explained below, unless Saint-Gobain is willing to stipulate that Ref. 4

(SG00451) is legitimate enabling prior art under §§102 and 103, establishing that the

disclosed mini-hub was in commercial and public use before the critical date, Pferd must

pursue evidence from Valley Die to help establish facts supporting this essential defense.

While Mr. Timm acknowledged that Ref. 4 (Bates No. SG00451) was

**REDACTED** (Exh. 3, p.28) he initially contended that it was not

*Id.*, p.29. This testimony and other

---

[2]    Pferd can, and will, further support that point with other testimony and evidence, and the
       reference may also serve as a basis for invalidity due to obviousness, under 35 U.S.C. §103.
       The separate issue of whether this is prior art is the issue here.

assertions by counsel suggest that Saint-Gobain's tactic will be litigation-induced revisionist history attempting to disqualify this invalidating prior art as incomplete or pre-commercial by the critical date.

Despite Mr. Timm's assertion that Ref. 4 (SG00451)                he later admitted that **REDACTED**
. *See*

*id.*, p.37. As Mr. Timm explained, Saint-Gobain (known as Norton Company at that time) **REDACTED**

;                                                            *See*

*id.*, pp.37-44. Attached as **Exhibit 4** is a copy of Weiler's drawing of the Saint-Gobain mini-hub (Ref. 4 and SG00451) which Weiler utilized in its production of hubbed flap disks for Saint-Gobain. *See id.*, pp.35-36.

Mr. Timm would not admit **REDACTED**                *See id.*,

p.42. When asked if the contract with Weiler for the production of hubbed flap disks was **REDACTED**                two months before the critical date, Mr. Timm responded, **REDACTED**

Given the testimony that the mini-hub shown in Ref. 4 (SG00451) not only

**REDACTED**

**REDACTED**

*See id.*, pp. 40, 43-45.  Mr.

Timm testified that                                    *See id.*  He also testified that

**REDACTED**

*See id.*, p.45.

The subpoena directed to Valley Die (Exh. 1) seeks to obtain, in testimony and/or

in documents, more information concerning this early, and perhaps invalidating,

commercialization of a mini-hub disclosed in the '317 patent.  Pferd is entitled not only

to any relevant documents which may exist, but also to discover Valley Die's collective

knowledge of this subject, as well as the *pendente lite* communications between Saint-

Gobain and this third party witness.  Valley Die's testimony on the prior art issue itself is

admissible and highly relevant corroborating evidence.

    **B.**    **Pferd's Subpoena to Valley Die Is Not Untimely.**

        Clearly relevant, Pferd's subpoena to Valley Die is also timely.  As an initial

matter, as should be evident from the above discussion, Pferd is plainly not seeking

information from Valley Die which relates to the damages portion of this litigation.

Pferd agrees that damages discovery has been bifurcated and deferred.

        Mr. Timm, Saint-Gobain's Rule 30(b)(6) designee, was not available for

deposition until January 17, 2006, only nine days prior to the liability discovery deadline

set by the Court in its electronic order of December 6, 2005.  At his deposition, as noted

above, Mr. Timm disclosed for the first time the identity of Saint-Gobain's hub vendor,

as well as Valley Die's considerable role in the invention covered by the '317 patent.

In this litigation, Saint-Gobain has produced no responsive documents relating to this issue except a copy of Ref. 4 (SG00451). Moreover, Saint-Gobain also failed to identify Valley Die in response to interrogatories which sought information about the development of the invention, as well as any early commercialization.[3] Once Valley Die was identified by Mr. Timm, Pferd decided that it should attempt to obtain documents and information from Valley Die. Pferd first served a document subpoena on Valley Die on February 7, 2006. *See* Docket #35, Exh. B. In response, in a letter dated February 16, 2006, Saint-Gobain's counsel asserted that they were representing Valley Die, objected to the subpoena, and claimed that Valley Die had no responsive documents. *See* Docket #35, Exh. D. If so, responding to the subpoena should entail only a deposition of Valley Die, which is relevant and admissible evidence. Accordingly, Pferd served the deposition subpoena at issue (Exh. 1) on Valley Die.

Although this subpoena was served after January 26, Pferd had been diligently pursuing discovery concerning the invention and any commercialization from Saint-Gobain, as is evident from Pferd's pending Motion to Compel Discovery (Docket #18 and 19). Valley Die was identified by Saint-Gobain for the first time little more than a week before the deadline for completing liability discovery, and the parties were actively engaged in several major discovery disputes during that time period. Pferd also brought

---

[3]    Pferd undeniably sought such information from Saint-Gobain early on in this litigation. In document requests served in August 2005, for example, Pferd asked Saint-Gobain to produce documents concerning "the conception, development activities, and reduction to practice of the subject matter of each claim of the '317 patent" (Request No. 1), and "all efforts to commercialize the subject matter disclosed and/or claimed in the '317 patent made prior to December 18, 1995," the critical date (Request No. 4). Pferd sought similar information in interrogatories, which were also served last August. As detailed in Pferd's pending Motion to Compel (Docket #18 and 19), Saint-Gobain produced virtually nothing in response to the document requests, and failed to disclose Valley Die's apparently central role in the development and early commercialization of the invention.

this outstanding discovery to the Court's attention at the January 31, 2006 status

conference, notifying the Court of its intention to seek discovery from a third party

(Valley Die) during the 60-day discovery extension granted by the Court at that

conference. *See* the status conference transcript, attached hereto as **Exhibit 5**, p.13.  As

Saint-Gobain insistently notes, the Court stated that it was "going to be stingy in terms of

permitting additional fact discovery" *Id.*  Pferd respectfully submits that the highly

relevant, narrow and relatively unburdensome fact discovery it seeks should be allowed,

even under the most conservative view of the "stingy" standard.  The Court indicated at

the status conference that the parties could pursue further discovery if they could make a

showing that they had sought it and were entitled to it during the liability discovery

period. *See id.*, pp.14-15.  The information Pferd is seeking from Valley Die is

information Pferd first sought from Saint-Gobain in August 2005, long before the close

of this phase of discovery.

    The present circumstances are more compelling than those in *Parkway Gallery

Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 363 (M.D.N.C.

1987), a case cited by Saint-Gobain.  In that case, the Court permitted the plaintiffs to

take depositions and other discovery from third parties which plaintiffs first sought two

months after the close of the discovery, where the Court recognized the clear relevance of

the discovery sought, and the need to obtain it from third parties after it became clear that

the defendant lacked the information, and found that plaintiffs, "[w]hile perhaps not

acting with utmost celerity, … [had] been sufficiently diligent in pressing this issue."
116 F.R.D. at 366.[4]

Pferd notes that Saint-Gobain's counsel has asserted that Valley Die has no
relevant documents, and that Andrew Brown, the Valley Die representative who is the
subject of the subpoena, was not employed by Valley Die prior to the date the '317 patent
was filed. *See* Docket #35-1, p.5. In an effort to resolve this dispute, Pferd's counsel
proposed a brief telephonic deposition of Mr. Brown, at which he would be asked to
describe any search Valley Die made for relevant documents, and to identify any Valley
Die employees (current or former) who were employed there prior to December 18, 1996,
and may have knowledge of the development of the invention which is the subject of the
'317 patent. *See* Docket #34-2. Pferd raises this point because it may well be that Mr.
Brown has only limited relevant information, and that there is another, more appropriate
witness who should be deposed.

**III.    Conclusion.**

In sum, Saint-Gobain is "playing dumb" concerning its own prior art, yet it
accuses Pferd of "harassing" the third party identified by Saint-Gobain as knowledgeable.
The sought discovery's evidentiary value to Pferd's key defense dwarfs the *de minimis*
burden on Valley Die. Indeed, according to Saint-Gobain, there will be no documents

---

[4]    The other cases cited by Saint-Gobain reflect dilatory discovery practices, bordering on
discovery abuse, which are not present here. In *Mortgage Information Services, Inc. v.
Kitchens*, 210 F.R.D. 562 (W.D.N.C. 2002), for example, the Court quashed a discovery
subpoena served only five days before trial, while in *McNerney v. Archer Daniels Midland
Company*, 164 F.R.D. 584 (W.D.N.Y. 1995), the Court quashed a subpoena served well after
the discovery deadline, where the Court found, among other things, that the plaintiff had been
"aware of [the documents it sought to subpoena] well before the discovery deadline." In the
present case, Pferd learned of Valley Die's existence only a few days before the deadline for
the completion of liability discovery.

and little testimony on the subject. But, a potentially dispositive stone will not be left unturned.

For all the foregoing reasons, defendant Pferd, Inc., asks that this Court deny Saint-Gobain's and Valley Die's motion for protective order, and grant such other and further relief as this Court deems just and reasonable.

PFERD, INC.,

By its attorneys,

Date:  March 13, 2006

/s/ Laura L. Carroll
Laura L. Carroll (BBO #076180)
Merton E. Thompson (BBO #637056)
Anne C. Pareti (BBO #660496)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel.  617-345-3000
Fax   617-345-3299

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this Opposition to be served by electronic and First Class Mail upon the following counsel of record:

Matthew B. Lowrie, Esq.
Emily A. Berger, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142

Dated: March 13, 2006

/s/ Laura L. Carroll
Laura L. Carroll

# EXHIBIT 1

to Pferd's Opposition to Joint Motion of
Saint-Gobain and Valley Die
for Protective Order of Valley Die

• AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

_Southern_ _____    DISTRICT OF    _Texas_ _____

Saint-Gobain Abrasives, Inc.

V.

Pferd, Inc.

**SUBPOENA IN A CIVIL CASE**

**MISCELLANEOUS M-06-018**

Case Number:[1]    05-40035-FDS
D. Mass.

TO:   Andrew Brown
      Valley Die Castings, Inc.
      5216 N. 26th Street
      McAllen, TX  78504

G   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

XG   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
     in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Atlas & Hall, LLP, 818 Pecan, McAllen, Texas | March 9, 2006   10:00 a.m. |

Gx   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
     place, date, and time specified below (list documents or objects):
     See Attachment A.

| PLACE | DATE AND TIME |
| --- | --- |
| Atlas & Hall, LLP, 818 Pecan, McAllen, Texas | March 9, 2006 9:00 a.m. |

G   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| _Nora Garcia_, Deputy Clerk | 2/23/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
1701 W. Bus Hwy 83
McAllen, TX 78501

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 2·27·06<br>@ 6:25 pm | 104 Cardinal<br>mcAllen Texas |

SERVED ON (PRINT NAME) | MANNER OF SERVICE

_Andrew Brown_ | _Hand Delivered_

SERVED BY (PRINT NAME) | TITLE

_Joe Moreno_ | _Process Server_

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___2-27-06___
DATE

_Joe Moreno_
SIGNATURE OF SERVER

_2134 Van Tassel Circle_
ADDRESS OF SERVER

_Edinburg Texas   78539_

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1.     "Pferd" means Pferd, Inc., defendant in this action,

2.     "Saint-Gobain" means plaintiff Saint-Gobain Abrasives, Inc., its predecessor Norton Corporation, and includes its officers, directors, employees, brokers, attorneys, investigators, affiliates, parent corporations, holding companies, subsidiaries and all other persons who have acted or purport(ed) to act on Saint-Gobain's behalf.

3.     The term "the '317 patent" shall mean U.S. Patent No. 5,895,317.

4.     "Valley Die Castings" means Valley Die Castings, Inc. and any predecessors and successors in interest.

5.     "Grinding Wheel" means depressed center (Type 27) grinding wheels.

6.     "Hub" means any hub for use with a Grinding Wheel.

7.     "Document(s)" means any written, recorded and/or graphic matter, however produced or reproduced, and includes the original and any copy differing from the original of any printed, written, typed, recorded, graphic, or photographic matter, any computerized printout, computer program, computer data base, electronic mail or any other form of electronic communication or other tangible matter from whatever source, whether produced or reproduced or stored on paper, cards, tapes, discs, belts, films, computer storage devices, or any other material or device, whether sent or received or neither, and includes, without limitation, all writings, correspondence, letters, journals, notebooks, analyses, drawings, pictures, tables, graphs, pleadings, bills, logs, proposals, offers, recordings, films, videotapes, computer discs, digital videodiscs ("DVD's"), files, time logs or other indications of work done or time spent, telephone message slips, charts, data sheets, statistics, facsimiles, contracts, agreements, policies,

studies, transcripts, summaries, newspaper or magazine materials, pamphlets, brochures, books, ledgers, registers, reports, accounts, financial statements, prospectuses, minutes, agendas, invoices, purchase orders, order confirmations, statements, checks, receipts, returns, estimates, projections, memoranda, notes, interoffice and intra-office communications, notations of any sort of conversations, bulletins, photographs, work papers, work sheets, and all drafts, alterations, modifications, and changes and amendments of any kind and all other documents, tangible or retrievable, of any kind.

8.    "Things" means any physical item that is not a document that is responsive to a request, including, but not limited to, product samples, tooling, dies, prototypes and the like.

9.    "Concerning" means relating to, referring to, describing, evidencing, constituting, comprising, indicating, evidencing, discussing, involving, explaining, summarizing, being logically connected to, being causally connected to, being chronologically connected to, or mentioning in any way the subject material of the Request.

10.    The singular shall be construed to include the plural and the plural to include the singular.  The words "and" and "or" shall be construed both disjunctively and conjunctively.

11.    If you contend that any otherwise responsive document is privileged or not otherwise subject to discovery:  (a) identify the withheld document by author, addressee, date, number of pages, and subject matter, (b) state the basis for your contention that the document is not subject to discovery, and (c) identify each such person to whom a copy of the withheld document was sent, or to whom the withheld document, or its contents, or any part thereof, was disclosed.

12.    Documents produced shall include each copy of any document that is not identical to the original of such document and shall include any copy of any document upon which any

marking or notation is made that is not made upon the original of such document or upon any other copy thereof.

## DOCUMENTS AND THINGS TO BE PRODUCED

1.    All documents and things provided, demonstrated, or sent by Valley Die Castings to Saint-Gobain concerning Hubs.

2.    All documents and things concerning the '317 patent.

3.    All documents and things concerning Valley Die Castings' design, manufacture, production, and provision of Hubs.

4.    All documents and things concerning Valley Die Castings' design, manufacture, production, and provision of Hubs to Weiler Corporation.

5.    All documents and things concerning Valley Die Castings' presence in Saint-Gobain's facilities.

6.    All documents and things concerning Valley Die Castings' contribution or assistance to Saint-Gobain in the design or manufacture of Hubs.

7.    All documents and things concerning Valley Die Castings' design, manufacture, production, and provision of Hubs to Saint-Gobain, including but not limited to, tooling, dies, drawings, contracts, invoices, and shipping documentation.

8.    All documents and things concerning or evidencing Valley Die Castings' knowledge of Hubs for Grinding Wheels.

# EXHIBIT 2

to Pferd's Opposition to Joint Motion of
Saint-Gobain and Valley Die
for Protective Order of Valley Die

## Confidential

Filed Under Protective Order

# EXHIBIT 3

to Pferd's Opposition to Joint Motion of
Saint-Gobain and Valley Die
for Protective Order of Valley Die

## Confidential

Filed Under Protective Order

# EXHIBIT 4

to Pferd's Opposition to Joint Motion of
Saint-Gobain and Valley Die
for Protective Order of Valley Die



# EXHIBIT 5

to Pferd's Opposition to Joint Motion of
Saint-Gobain and Valley Die
for Protective Order of Valley Die

1

1          UNITED STATES DISTRICT COURT
2            DISTRICT OF MASSACHUSETTS

3

4   SAINT-GOBAIN ABRASIVES, INC.,)
                 Plaintiff,     )
5                               )
                                )
6   vs.                         )   CA No. 05-40035-FDS
                                )
7                               )
    PFERD, INC.,                )
8                Defendant.     )

9

10  BEFORE:  The Honorable F. Dennis Saylor, IV

11

12                      Status Hearing

13

14

15                      United States District Court
                        Courtroom No. 2
16                      595 Main Street
                        Worcester, Massachusetts
17                      January 31, 2006

18

19

20

21

22

23           Marianne Kusa-Ryll, RMR, CRR
                 Official Court Reporter
24           United States District Court
               595 Main Street, Room 514A
25             Worcester, MA 01608-2093
        Mechanical Steno - Transcript by Computer

```
 1    APPEARANCES:

 2
      Lowrie, Lando & Anastasi, LLP
 3    By Matthew B. Lowrie
      Riverfront Office Park
 4    One Main Street - 11th Floor
      Cambridge, Massachusetts 02142
 5    for the Plaintiff

 6    Burns & Levinson, LLP
      By Laura L. Carroll, Esquire and
 7    Merton E. Thompson, Esquire
      125 Summer Street
 8    Boston, Massachusetts 02110
      for the Defendant
 9
      Also Present:
10
      Mary E. Porter, Counsel
11    Saint-Gobain Corporation
      One New Bond Street
12    Worcester, Massachusetts 01615-0130

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.  Court is now open.  You may be

3     seated.

4          Case No. 05-40035, Saint-Gobain Abrasives versus

5     Pferd.

6          Counsel, please note your appearances for the record.

7          MR. LOWRIE:  On behalf of Saint-Gobain, Matt Lowrie;

8     and with the Court's permission, in-house counsel, Mary Porter,

9     will join me at the table.

10         THE COURT:  Good afternoon.

11         MS. CARROLL:  Laura Carroll, your Honor, from Burns &

12    Levinson, for Pferd, Inc., defendant in this action; and with

13    me is my colleague from Burns & Levinson, Merton Thompson.

14         THE COURT:  Good afternoon.

15         All right.  This is a status conference in this

16    matter.  I hope you all enjoyed the debate that you heard

17    regarding events in the Clinton High School.

18         According to my schedule, it looks like fact discovery

19    should have been completed, although I see a motion to compel a

20    deposition, which was filed on January 26th.

21         Mr. Lowrie, where are we in terms of discovery?

22         MR. LOWRIE:  Your Honor, you're correct.  In fact,

23    fact discovery was supposed to be complete as of January 26th.

24    It's not completely clear that that's the case.  There is a

25    motion to compel the deposition of Ms. Porter pending and also

1  a motion to either preclude evidence in light of the

2  inadequacy, in Saint-Gobain's view, of the disclosure of the

3  invalidity contentions.  And also there is an open issue as to

4  whether discovery has been complete with respect to

5  willfulness.

6          If the Court recalls in the August 25th scheduling

7  conference, I had said my understanding of the bifurcation was

8  that willfulness was going forward at the same time, because

9  there was no -- although the Court bifurcated damages

10  discovery, the frequent basis for making such a motion is the

11  presence of an attorney opinion, but the issues were all wound

12  together.  Ms. Carroll represented to the Court that there was

13  no such opinion, and the Court said, well, that seems to take

14  care of it.  One of the 30(b)(6) witnesses testified that they

15  had consulted with an attorney, to which we said, If you're

16  going to rely on it, we want to talk discovery on that.  It

17  hasn't happened.  So that's -- it's another issue pending.  I'm

18  not suggesting the Court necessarily address it today, but

19  there will be an opposition due in a couple of weeks.  But

20  those are the three things that remain open for fact discovery:

21  Ms. Porter's deposition, which is their motion to compel; the

22  issue with respect to whether they would be permitted to

23  supplement the invalidity contentions, factual contentions at a

24  later date; and the issue with respect to willfulness, which

25  the Court may resolve when it's all done, or the Court may



1    resolve when there is some additional fact discovery to be

2    done.

3              MS. CARROLL:  Your Honor.

4              THE COURT:  Ms. Carroll.

5              MS. CARROLL:  Thank you, your Honor.

6              THE COURT:  And I don't propose to take up the motions

7    now.  I don't need to hear argument on it.  I will give you a

8    chance to file an opposition.  In an hour and 18 minutes, I'm

9    losing my magistrate judge to retirement without having a new

10   one in place, and so I think I'm going to be handling discovery

11   motions, although I'm flatly refusing to handle arrests and

12   search warrants and so forth in the interim.  In fact, I bet if

13   you check the garage, I probably have lost my magistrate judge

14   already, so I will take up the discovery motions, but I will

15   give counsel a chance to oppose them in writing.

16             MS. CARROLL:  Okay.  Just a few things.  Just as a

17   procedural matter, your Honor, I filed late last week an

18   assented to motion to file one of the exhibits to the motion to

19   compel under seal.  That hasn't been ruled on yet, and so I've

20   held off sending your Honor a copy of Exhibit 5 to our motion

21   to compel.

22             THE COURT:  How -- sorry.

23             MS. CARROLL:  I filed it electronically.

24             THE COURT:  Ah, here it is.  Okay.  I'm sorry.  It was

25   stuck on the bottom.  Let me take a quick look at it.  How fat

6

1    is Exhibit 5?

2              MS. CARROLL:  I'm sorry.

3              THE COURT:  How fat is Exhibit 5?

4              MS. CARROLL:  Well, it's excerpts.  It's fairly

5    skinny.  I didn't bring the pages with me, your Honor.

6              THE COURT:  As long as it's not a thousand pages --

7              MS. CARROLL:  No.  No.

8              THE COURT:  -- or even a hundred pages, I will grant

9    the motion based --

10             MS. CARROLL:  No, what we -- yeah, what we did, your

11   Honor, is it's excerpts from the tran -- the 30(b)(6)

12   deposition of Mr. Timm, the Saint-Gobain witness, and it's only

13   a few pages from his deposition, your Honor; and the only

14   reason it's under seal, I'm not -- I don't mean to speak for

15   Saint-Gobain, but I'm not sure any of it's confidential, but we

16   have an agreement in our protective order the deposition

17   transcript stay confidential in their entirety for 30 days, and

18   we just took this deposition a little over a week ago.

19             THE COURT:  Motion granted.

20             MS. CARROLL:  And I will -- I will get that on file

21   either when I get back to the office today, or first thing

22   tomorrow morning --

23             THE COURT:  All right.

24             MS. CARROLL:  -- and you'll get it electronically.

25             In our view, your Honor, just a couple of issues to

7

1    add to and some -- one instance disagree with what Mr. Lowrie

2    said.  We had a -- a local Rule 37.1 discovery conference, your

3    Honor, on the 26th, after a fair amount of back and forth

4    letter writing and e-mails and discussions.  Some of that, as

5    it concerns Ms. Porter, is attached as exhibits to her motion.

6    I'm not getting into the merits of it, but we did have a

7    conference.  In our -- in our letter scheduling that,

8    requesting a conference, we had identified three -- what we saw

9    were three outstanding issues in discovery, one being Ms.

10    Porter's deposition, one being documents that we believed had

11    not been produced that we had requested that existed and had

12    not been produced, and one being interrogatory answers that we

13    felt were inadequate, or in some instances just not answered at

14    all by Saint-Gobain.

15          At that conference, Mr. Lowrie said that he would take

16    a look at that and supplement by this Friday, this coming

17    Friday.  We therefor have not yet filed a motion to compel as

18    to those documents that we believe have not been produced, or

19    as to the interrogatory answers we feel were inadequate.  I

20    don't know if we're going to need to do that or not.  It seemed

21    in the spirit of trying to work out discovery disputes that we

22    shouldn't jump the gun and move to compel.  We should grant the

23    week -- you know, supplement by a week from Friday, so that

24    would bring it to this Friday, the 3rd.  So it may be that

25    there will be an additional motion to compel.  I don't propose



1    to argue the merits of it now, but I just wanted to, you know,

2    mention that to you.  It's something, you know, we've started

3    drafting, but Mr. Thompson and I are hoping we won't need to

4    file it.

5         The other thing I would say on the willfulness issue.

6    As your Honor may recall, I was asked at that time not whether

7    we were going to rely on an opinion or not, but whether we had

8    one at that time.  At that time, we did not.

9         In our view, willfulness comes up in the context of

10   damages after infringement has been found.  We've not made a

11   decision as to whether we are going to rely on an opinion of

12   counsel yet or not.  Our -- our witness, our 30(b)(6) witness,

13   testified concerning, you know, the -- that he had sought an

14   opinion of counsel.  That was December.  That was a different

15   place than where we were in August.  But in our view, it's not

16   appropriate for us to be required to engage in discovery on

17   willfulness issues when we're in the liability phase.  There

18   has been no finding of infringement at this point.

19        You know, if and when we decide we're going to rely on

20   an opinion of counsel, we will so notify plaintiff's counsel,

21   and then we can determine what discovery is appropriate, but I

22   don't -- I think it's really putting the cart before the horse

23   at this point.

24        THE COURT:  All right.  I'm going to let you respond

25   in writing before I rule.  I'm not going to rule from the

1    bench.

2        I'm sorry.  Mr. Lowrie.

3        MR. LOWRIE:  Yes, just to note, things are sometimes

4    not so easy as they think.  With respect to the future motion

5    to compel, I don't know if they'll file it.  Our view is we had

6    a conference.  There were some documents where I said, No,

7    you're not entitled to those.  Those are damages documents.  It

8    was bifurcated at your request, if you want those moved to

9    compel, and there are other categories where I said, I agree

10    you're entitled to those.  I believe we produced them all.  I

11    will confirm.  And so there may be some things that in our view

12    is waived, and some that in our view are not.  And I assume

13    that that will all be presented to the Court in a timely way.

14    It's just I just didn't want to leave it out there that we had

15    a common understanding as to what happened in that

16    conversation.

17        And then with respect to willfulness, at the Court

18    conference -- I have the transcript.  It said, I hope this is

19    what the Court is ordering, the discovery on the issue of

20    willfulness will go forward with the liability, rather than

21    being held off for the accounting phase; and Ms. Carroll rose

22    and said, Well, at this point we're not relying on opinion of

23    counsel, and the Court said that resolved it.

24        It's a bit of a stretch to go after the case has been

25    filed and well through the discovery period you decide you

1    don't like how things are going, and then consult an opinion of

2    counsel.  There is an interesting legal question as to whether

3    an opinion rendered after the lawsuit is even effective.  So I

4    don't know if the Court is expecting briefing on that issue, or

5    if it will take it up with respect for a motion to preclude,

6    but it's our view that it's too late for them to do so.

7          THE COURT:  Well, despite my instinct to shoot from

8    the hip and get these sorts of things over with, I'm going to

9    rule on the papers.  All right.  And if you feel that there is

10    something you want to add by way of reply brief, if you find it

11    appropriate, I'll let you do that, consistent with the terms of

12    my scheduling order.

13          All right.  Does the schedule as set continue to make

14    sense?  Does it need to be modified?

15          MS. CARROLL:  Your Honor, my understanding is that

16    we're to come back and talk to you about what the next phase

17    was, in our view, because we do believe there are these motion

18    to compel issues outstanding.  We would ask for an additional

19    60 days to wrap up the fact discovery.  That's to allow time

20    for the briefing on the motions to compel and Saint-Gobain's

21    pending motion, you know, if it's -- I'm not pressing your

22    Honor to make decisions rapidly.  I'm just saying I think 60

23    days would be a reasonable amount of time.

24          I would then -- our proposal, we have just for your

25    Honor's information, plaintiff has given us preliminary

1    infringement contentions.  We've produced preliminary

2    invalidity contentions.  The parties have not exchanged

3    proposed claim terms.  We have provided a claim construction.

4    We do not have a claim construction from Saint-Gobain at this

5    point, but we would suggest that following the conclusion of

6    fact discovery we set forth the timetable, you know, exchange

7    the proposed claim terms, exchange of claim constructions, a

8    joint claim construction statement, you know, perhaps some

9    discovery on claim construction if the parties -- this is not

10   something I've talked to Mr. Lowrie about -- if the parties

11   deem it necessary.  And then have briefing for a Markman.  We

12   can talk about the timetable for each of those steps.

13        THE COURT:  Let me first ask Mr. Lowrie:  Do you think

14   60 dates is appropriate to wrap up fact discovery?

15        MR. LOWRIE:  Not exactly, your Honor.  As I understand

16   it, fact discovery is closed, and we have some pending

17   disputes.  If what Ms. Carroll is proposing is that we extend

18   fact discovery 60 days, and suddenly we start issuing new

19   deposition notices and interrogatories, that's not something I

20   thought about before, but it's very different than what I

21   thought was happening, which is that we've closed fact

22   discovery, and there may be additional fact discovery as a

23   result of the Court's rulings as to whether arguments are

24   barred or they'll be permitted, but discovery needs to be

25   provided on them, or something like that.  So it could be fact

12

1   discovery gets extended, but I would think that would be the

2   result of how the Court disposes of the pending motions, rather

3   than a simple extension now.

4        With respect to the time frame for the Court

5   addressing these things, that's okay, and my suggestion is that

6   Ms. Carroll and I talk about what makes sense for how we do a

7   Markman.  It may be that they are better rolled in with a

8   summary judgment, and it may be that they're not, but I think

9   there would be -- we do that in a more enlightened position

10   once the pending discovery issues are done.

11        THE COURT:  Well, here was my vision of it, I guess,

12   that is, I think a 60 day time periods makes sense for the

13   defendant to get oppositions into the motions for me to read

14   them, digest them, rule on them, for you to respond one way or

15   the other.  Maybe additional discovery is required, maybe not.

16   And then I set it for a conference 60 dates hence, at which

17   point -- and the parties should confer between now and then as

18   to a proposed timetable for the next steps, whatever those next

19   steps are, exchange of claim construction, information, or a

20   Markman hearing, or whatever, and then we have what is in

21   effect a status and further scheduling conference 60 days from

22   now and to set a timetable for the rest of the events up until

23   summary judgment, in any event, if not trial.

24        Does that make sense?

25        Mr. Lowrie.

13

1          MR. LOWRIE:  I believe so, your Honor.

2          THE COURT:  Ms. Carroll.

3          MS. CARROLL:  Yes, it does, your Honor.  I just have a

4     clarifying question.  I -- certain of the document requests

5     we've made where we have -- we believe we have not gotten

6     responsive documents at the dep -- the 30(b)(6) deposition of

7     the Saint-Gobain witness.  They identified some third parties

8     that we intend to subpoena documents from.  Those were

9     documents that we had hoped Saint-Gobain would have and have

10    produced in response to our requests.

11          I know it's a bit of an apple and a bit of an orange.

12    It's not quite a brand-new discovery request, but it's -- it's

13    documents that we have not been able to get from Saint-Gobain,

14    either because they have them and they are not giving them to

15    us, or they don't have them, but there are certain leads that

16    we do intend -- I'm just trying to be clear on the record that

17    we do intend to pursue during this 60-day period.

18          THE COURT:  Well, let me respond in this way.  I'm

19    going to be stingy in terms of permitting additional fact

20    discovery.  If you can make out a case that it is something

21    that you were entitled to during -- while discovery was open,

22    and you didn't get for some reason, I'll entertain that, but

23    I'm going to be --

24          MR. THOMPSON:  Your Honor, if I may be heard.

25          THE COURT:  Yes.

14

1          MR. THOMPSON:  There's an issue with -- and we

2     bifurcated discovery as to liability and damages, and there is

3     a significant issue in our minds, at least, as to whether there

4     is a 102 bar to this patent as a result of Saint-Gobain's own

5     actions.  Saint-Gobain is taking the position that any activity

6     that took place post critical date of the patent is irrelevant

7     to liability and are refusing to give us documents.  To our

8     view, that's gamesmanship of the bifurcation.  Now, there seems

9     to be strong evidence that, in fact, the product might have

10    been on sale prior to the critical date, but they're refusing

11    to give us any documents at all.

12          THE COURT:  My position is simple.  That may be a fair

13    comment.  It may not be.  It just has to be teed up right now.

14    Okay.  It really should have been teed up before discovery

15    closed.  I'm not -- I won't be too grudging in that regard, but

16    those issues need to be teed up now.  Okay.

17          Mr. Lowrie.

18          MR. LOWRIE:  As I understand, I agree, your Honor, and

19    I -- with what the Court said, and I disagree with what Mr.

20    Thompson said, and my suggestion is that discovery is closed.

21    Then if they can make a showing that we should have given them

22    something that identified this lead earlier, or whatever, that

23    is a good reason to have an exception, but --

24          THE COURT:  Or if you misinterpreted, you know, the

25    Court's order, or whatever --

1          MR. LOWRIE:  Okay.  Absolutely, your Honor.

2          THE COURT:  -- but it would have to be something that

3     at least arguably should have occurred during the first phase,

4     as opposed to we didn't get around to serving the deposition

5     notice.

6          MR. LOWRIE:  Yes, your Honor, and so what I want to be

7     clear about though is that I'm not going to go back and on

8     Wednesday see a bunch of third-party subpoenas that there

9     should be leave of the Court to take that step.

10          THE COURT:  I'm not going to make any ruling one way

11     or another.  I'm going to leave it open.  You can file motions

12     to compel, motions for protective order.  I can't sort it out

13     now.  Okay.  I just -- I'm going to be doing it in the

14     abstract, and I don't want to do that.  Okay.  If you think

15     you're entitled to do something that you haven't gotten, file a

16     motion to compel; if you think it's unfair, file a motion for

17     protective order.  As I indicated, unless Magistrate Judge

18     Hillman gets in here quickly, you're going to get me deciding

19     these things, and when I say I'm going to be stingy, what I

20     mean is fact discovery, you know, was supposed to be completed

21     by the deadline.  Sometimes people wrongfully withhold

22     documents, or mistakenly withhold documents, or whatever.

23     I -- my strong preference is that those motions should be filed

24     by the close of discovery deadline.  Since we're only a few

25     days removed from that, I'm not going to be too strict in that

1    regard, but I want these things teed up now, okay.

2           So let's set a new date for the end of March, the

3    beginning of April.

4           THE CLERK:  April 3rd.

5           THE COURT:  April 3rd, does that date work for

6    everyone?

7           MS. CARROLL:  Just give me a moment to check, your

8    Honor.

9           MR. LOWRIE:  I don't happen to know when the school

10   vacation --

11          THE COURT:  It's, I think, April -- if it's public

12   schools, April 15th to 20th, something like that.  Somewhere in

13   that time frame.

14          MR. LOWRIE:  Thank you, your Honor.

15          MS. CARROLL:  April 3rd, Monday, April 3rd?

16          THE COURT:  Is that right?

17          MS. CARROLL:  Yeah, that will be.

18          THE COURT:  All right.  April the 3rd at two o'clock

19   for a status conference.  The parties will confer regarding a

20   proposed timetable for the next set of events.  Make a joint

21   filing, if you can agree on things; if you can't, you can make

22   separate filings, and why don't we have those on file, let's

23   say, five days before the -- so the preceding Wednesday, five

24   days before the conference.  Okay.

25          The last question on my list is whether this is a

1    matter that is now appropriate for mediation.  I don't expect

2    so, but I feel obliged to answer -- ask the question.

3        Mr. Lowrie.

4        MR. LOWRIE:  Perhaps, your Honor, it's my

5    understanding that the parties are having some level of

6    separate discussion without the lawyers.  So where that goes, I

7    don't know, and whether as a result of that mediation is useful

8    or useless, I don't know.

9        THE COURT:  I'm not going to get involved in

10   settlement discussions or force settlement discussions,

11   particularly with two sophisticated companies.  I assume you're

12   going to act in your rational self-interests.  The only

13   question is whether the involvement of the Court in the form of

14   a mediator is going to serve any useful purpose, and we don't

15   have very many mediators around here right now.  It's the

16   magistrate judges basically.  So I'm not trying to force

17   anything down your throat, but if you think it would help, I'll

18   refer it for mediation.

19       Ms. Carroll.

20       MS. CARROLL:  Our client certainly would not be

21   opposed to mediation, your Honor.

22       THE COURT:  All right.  Mr. Lowrie.  And again if you

23   want to tell me it's premature, and you want to revisit it,

24   that's fine.  I just want to know where you stand on it.

25       MR. LOWRIE:  Yes, thank you, your Honor.  I should

1    have an answer for you now, but if I could send something into

2    the Court by the end of the week, it would give me a chance to

3    confer as to whether we think it's useful.

4         THE COURT:  Why don't you do this.  If you jointly

5    believe that a reference for mediation is appropriate, why

6    don't you file something jointly, and I'll refer it.  If you

7    want to be heard on the subject, and you can be heard by

8    telephone, contact Mr. Castles, and we can set up a conference

9    to talk about it.  If you want to wait until April 3rd and

10   think about it some more, we can do that, too.  Okay.  I'm not

11   going to force you one way or the other, but you know, if

12   it's -- if it would be useful, I'm going to do it.  And there

13   is a substantial likelihood that if I do refer it for

14   mediation, you're going to get hopefully Magistrate Judge

15   Hillman, assuming that he appears sometime soon.

16        Okay.

17        MR. LOWRIE:  Thank you.

18        THE COURT:  So you'll have someone with, if possible,

19   even less patent experience than I have.

20        Anything else for today?

21        MR. LOWRIE:  No, your Honor.

22        THE COURT:  Okay.  Thank you.  And we will go off the

23   record in Saint-Gobain.

24        And, Mr. Castles, will you bring the parties back in

25   for Matos, and I did sign the order on the joint motion.

19

1          MS. CARROLL:   Thank you.

2

3          (At 4:00 p.m., the Court was adjourned.)

4

5               C E R T I F I C A T E

6

7          I, Marianne Kusa-Ryll, Certified Realtime

8     Reporter, do hereby certify that the foregoing transcript,

9     consisting of 19 pages inclusive, is a true and accurate

10    transcription of my stenographic notes in Case No. 05-40035,

11    Saint-Gobain Abrasives, Inc. Versus Pferd, Inc., before F.

12    Dennis Saylor, IV, on January 31, 2006, to the best of my

13    skill, knowledge, and ability.

14

15

16                              _Marianne Kusa-Ryll_

17                         Marianne Kusa-Ryll, RMR, CRR

18                         Official Court Reporter

19

20

21

22

23

24

25