**LOWRIE, LANDO & ANASTASI, LLP**
*Devoted to Intellectual Property Law*

Emily A. Berger
eberger@ll-a.com
direct dial 617-395-7038

May 1, 2006

**VIA CM/ECF**

Ms. Lisa Roland
United States District Court
  For the District of Massachusetts
Donohue Federal Building
595 Main Street
Worcester, MA  01608

> Re:  Saint-Gobain Abrasives, Inc. v. Pferd, Inc.
>      C.A. No. 05-cv-40035 (FDS)

Dear Ms. Roland:

Please find herein comments and a declaration from Saint-Gobain made pursuant to Judge Hillman's Order of April 20, 2006 requesting a further submission regarding documents listed on Saint-Gobain's privilege log as 1-20, 45, 52-54, 95-104, 112-117, and 130, as it was provided to Pferd on January 25, 2006.

The disputed documents on Saint-Gobain's privilege log were withheld as either or both protected by the attorney-client privilege and/or the work product doctrine. Certain documents relate to the prosecution of the application resulting in the patent-in-suit or of other patent applications. Other documents relate to possible litigation. A brief overview of some of the law regarding the privileges that applies to the documents at issue is supplied below. In further support, attached please find a declaration of Mary Porter, Saint-Gobain's in-house Intellectual Property Counsel. Please also find attached a list of the job functions of the persons listed on Saint-Gobain's privilege log.

Should the Court still question the nature of the privilege of any of the documents, Saint-Gobain requests an opportunity to be heard at an *in camera* hearing before an order to produce documents is entered. Many details of the documents cannot be further elaborated upon in public papers due to the risk of disclosing privileged information. For this reason, specific documents are not necessarily categorized in conjunction with the statements of the law made below.

As a general matter, of course, communications made between privileged persons in confidence for the purpose of seeking, obtaining, or providing legal assistance to the client are attorney-client privileged. See Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, at p. 46 (2001) (citing *Restatement, The Law Governing Lawyers* § 118 (Tentative


LOWRIE, LANDO
& ANASTASI, LLP
*Devoted to Intellectual Property Law*

Ms. Lisa Roland
May 1, 2006
Page 2

Draft No. 1, 1988)). As a general matter, these include communications made between Ms. Mary Porter, Saint-Gobain's in-house Intellectual Property Counsel, and Mr. Guy Timm, inventor of the patent-in-suit in this litigation, regarding a possible patent application.

    Communications, other than those made directly between an attorney and her client may also be protected by the attorney-client privilege. A "privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation." Weeks v. Samsung Heavy Indus. Co., 1996 U.S. Dist. LEXIS 8554, at *11, 1996 WL 341537, at *4 (N.D. Ill. June 19, 1996). "The attorney-client privilege affords confidentiality to communications among clients, their attorneys, and the agents of both, for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding, so long as the communications were intended to be, and were in fact, kept confidential." Johnson v. Sea-Land Service, Inc., 2001 U.S. Dist. LEXIS 11447, at *4, 2001 WL 897185, at *2 (S.D.N.Y. Aug. 9, 2001). These considerations govern certain communications between Mr. Guy Timm, the inventor of the patent-in-suit in this litigation, and Mr. Doug Nixon, General Manager, Thin Wheels & CPD, North America, Saint-Gobain Abrasives, Inc.

    Within the patent context, the United States Court of Appeals for the Federal Circuit (which hears appeals of all patent cases) has held that the issue of privilege in connection with advice on patent prosecution is a question of Federal Circuit law. In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 804 (Fed. Cir. 2000) (granting writ of mandamus to reverse order by Court sitting in the First Circuit). The Federal Circuit has also held that the attorney-client privilege applies in the context of patent prosecution. See In re Regents of U. of California, 101 F.3d 1386, 1391 (Fed. Cir. 1996) ("Consultation with counsel during patent prosecution meets the criteria of compliance with law and meeting legal requirements, thereby reducing or avoiding litigation, and is within the scope of subject matter that is subject to the attorney-client privilege.").

    The Federal Circuit has also held that an invention record written to describe a new technology and the prior art for it is privileged as a whole, even if it includes technical information or lists of prior art. Spalding, 203 F.3d at 806.

    The Spalding Court concluded that the document was written for the purpose of securing legal advice – noting "first" that it was sent to the corporate legal department at the company. Id. at 805. The Court then held that:



Ms. Lisa Roland
May 1, 2006
Page 3

>Although Wilson contends that the portion of Spalding's invention record that lists prior art should be disclosed because it does not ask for legal advice, we do not consider that it is necessary to dissect the document to separately evaluate each of its components. It is enough that the overall tenor of the document indicates that it is a request for legal advice or service. Moreover, it is not necessary to expressly request confidential legal assistance when that request is implied. Finally, to the extent that Spalding's invention record may contain technical information, or refer to prior art, the inclusion of such information does not render the document discoverable, because requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art.

Id. at 806.

In view of Spalding, it is unsurprising that drafts of patent applications are also privileged. See, e.g., Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. 1993) ([referring to draft patent applications, opinion letters, and attorney's notes all held privileged:] "They discuss possible approaches by the attorney or inventor to prosecute a patent, and the legal effect of the patent application. Thus, the documents do not reflect merely communications of technical information relayed from an inventor to an attorney during the patent prosecution process. ... They reflect the complex discourse between an inventor and his patent attorney and their efforts to obtain the strongest permissible patent protection for the invention."); Rohm & Haas Co. v. Brotech Corp., 1993 U.S. Dist. LEXIS 3418, at *10-11 (D. Del. 1993) ("Drafts often contain information and communications relating to the subject matter of the document, including, for example, proposed material to be included, suggested additions and deletions, and comments on the contents, all of which are intended to be considered confidential between attorney and client and not intended for public disclosure.").

Finally, the work-product doctrine protects the impressions, observations, and opinions of a lawyer, such as Ms. Porter, that are made "with an eye toward litigation." Hickman v. Taylor, 329 U.S. 495, 511 (1947). If the prospect of litigation is identifiable because of specific claims that have already arisen, the fact that, at the time the document is prepared, litigation is still a contingency does not abdicate the privilege. American Optical Corporation v. Medtronic, Inc., 1972 U.S. Dist. LEXIS 11990 (D. Mass. 1972) (citing Stix Products, Inc. v. United Merchants & Manufacturing, Inc., 47 F.R.D. 334, 337 (S.D.N.Y. 1969) (finding multiple documents from pre- and post-license period, including legal opinions, memoranda, and records, protected by the work-product doctrine).



Ms. Lisa Roland
May 1, 2006
Page 4

      Again, to the extent any questions over the privilege log remain following the Court's review of this overview in conjunction with Ms. Porter's declaration, Saint-Gobain requests an opportunity to be heard.

                                          Sincerely,

                                          LOWRIE, LANDO & ANASTASI, LLP

                                          /s/ Emily A. Berger
                                          Emily A. Berger, BBO No. 650,841
                                          eberger@LL-A.com

Enclosure

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the foregoing LETTER TO MS. LISA ROLAND was filed through the ECF system and will be sent electronically to the registered participants, including those persons listed below, this 1st day of May, 2006.

                            Laura L. Carroll, Esq.
                            lcarroll@burnslev.com
                            Merton E. Thompson, Esq.
                            mthompson@burnslev.com
                            BURNS & LEVINSON LLP
                            125 Summer Street
                            Boston, MA 02110

                                          /s/ Emily A. Berger
                                          Emily A. Berger

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

SAINT-GOBAIN ABRASIVES, INC.,

    Plaintiff,

v.

PFERD, INC.,

    Defendant.

Civil Action No.: 05-cv-40035 (FDS)

## DECLARATION OF MARY E. PORTER, ESQ.

1. My name is Mary E. Porter. I am employed by Saint-Gobain Corporation, Worcester, Massachusetts as Intellectual Property Counsel. I have been employed in that capacity since April 1995. I am an attorney admitted to practice in the States of New York and Massachusetts and in the United States District Court for the Western District of New York. I am registered to practice before the United States Patent and Trademark Office.

2. My colleagues in the Saint-Gobain Corporation Law Department and I are responsible for the intellectual property of Saint-Gobain Abrasives, Inc. In that capacity I am called upon to render advice about a variety of intellectual property matters, including patent prosecution and other legal matters related to patent acquisition and maintenance, contractual transactions, client counseling, and possible or existing intellectual property litigation. In this capacity, I work closely with certain employees who are skilled and knowledgeable in providing information about particular technology, product areas, and corporate history, as

required to assist attorneys in patent prosecution or litigation-related patent analyses. Some such employees who have regularly assisted me by providing information required for legal analyses include: Guy Timm, Douglas I. Nixon, Chad Nunnery, Giles Colas, Mark Mathisen, Jane Cercena, and Tom Kinisky.

3. Other attorneys who are or were at one time employed by Saint-Gobain, such as Brian Kolkowski, worked closely with other employees within the company. Mr. Kolkowski would have relied on information provided by, for example, Claude-Alain Tardy, Peter Bell, Carl Rapp, and James Levine for information necessary for legal analysis.

4. In addition to Saint-Gobain employees outside of the legal department, I also work closely with other persons in the legal department, including other attorneys and non-attorney staff. Other attorneys who are or were at one time employed by Saint-Gobain include: Tim Feagans, David Bennett, Stephen Borst, Thomas DiMauro, Brian Kolkowski, and Volker Ulbrich. Non-attorney staff who are or were at one time employed by Saint-Gobain and associated with its legal department include: Suzanne Gendreau, Donna Neylon, and Joyce Bellerose.

5. Furthermore, I have worked with other attorneys outside of Saint-Gobain, including Richard L. Sampson, Jr., in connection with prosecuting patent applications for Saint-Gobain. Likewise, those outside counsel have employed persons to assist them in their legal work. Tom Hamill and Brian Sullivan are two examples of persons who assisted Mr. Sampson with the development of his legal analysis for purposes of advising Saint-Gobain.

6. I understand that I am submitting this declaration in part to clarify the following documents listed on Saint-Gobain's privilege log and currently under review by the Court: 1-20, 45, 52-54, 95-104, 112-117, and 130. In the following paragraphs, I will explain the basis for the privilege of each of these documents to the extent possible without revealing privileged information.

7. I have communicated with many of the persons identified on the privilege log regarding the invention, patent drafting, and the filing and prosecution of patents and for the purpose of defining the language and scope of the patent claims and the contents of the patent application(s). I used these communications to analyze legal issues and give legal advice concerning the intellectual property rights of my client.

8. The following documents were exchanged between Mr. Timm and me, attorneys or personnel in Saint-Gobain's legal department, or outside counsel and Mr. Timm for purposes of providing legal advice regarding a possible patent application and/or for communicating with him regarding the same: 1, 6, 9, 10, 11, 16, 18, 20, and 116.

9. The following documents were prepared by and/or exchanged between lawyers and/or between lawyers and their personnel or employees for purposes of evaluating a possible patent application for Mr. Timm and/or for communicating with him regarding the same: 2, 12, 13, 14, 15, 17, 19, 97, 99-104, 112-115, 117, and 130.

10. The following documents were exchanged between me (or person(s) in Saint-Gobain's legal department) and employees, other than Mr. Timm, in the company for purposes of evaluating a possible patent application and communicating with them regarding the same: 3, 4, 7, and 8.

11. The following documents were exchanged between Saint-Gobain employees outside of the legal department for purposes of gathering information requested by me (or other person(s) in Saint-Gobain's legal department) so that I could evaluate a possible patent application: 5.

12. In or around August 2000, I became aware of activities that we anticipated might result in litigation regarding Saint-Gobain's U.S. Patent No. 5,895,317. I instituted an investigation concerning the possible litigation and was assisted by a number of employees with knowledge of relevant technical and scientific information, as well as historical information on product development.

13. The executives, attorneys, and employees I asked to assist would frequently communicate amongst themselves as they gathered documents and verified facts, and then would meet with me to provide me with the information I needed. They usually copied me on emails or memos relating to gathering the requested information, but not always. I then would study the documents and related materials as I worked through my analysis before I provided advice to the company. Documents that I sent or received that relate to our investigation include: 45, 52-54, 95, 96, and 98.

14. From time to time, my client has requested that I provide legal representation by giving notice to third parties of my client's legal rights. Individual executives at Saint-Gobain typically are not identified in such external communications, thus making it clear that they are being represented by counsel, should not be contacted directly, and that responsive communications should go directly to the attorney representing them. In these circumstances, my client still seeks to be fully informed of my activities in enforcing its legal rights. I do so by including confidential "bcc" communications to the individual executives.

Subscribed to and sworn by me under the pains and penalties of perjury, this 1st day of May, 2006.


Dated : May 1, 2006                    /s/ Mary E. Porter
                                       Mary E. Porter
                                       Intellectual Property Counsel

**Job Functions of Persons on Saint-Gobain's Privilege Log**

| Author/Recipient | Job Function: Specific | General |
|---|---|---|
| Mary E. Porter ; David Bennett ; Thomas M. DiMauro ; Brian Kolkowski ; Volker Ulbrich | Intellectual Property Counsel, Law Department, Saint-Gobain | In-house Attorney |
| Stephen L. Borst | Chief Patent Counsel, Law Department, Saint-Gobain | In-house Attorney |
| Claude-Alain Tardy | President, Norton Company | Executive |
| Peter Bell | Research & Development Vice President, Norton Company | Executive |
| Carl Repp[sic]; James Levine | Senior Business Manager, Norton Company | Executive |
| Doug Nixon | General Manager, Norton Company | Executive |
| Guy Timm | Production Manager & Engineering Manager, Thin Wheels | Executive ; Inventor |
| Chad Nunnery | Engineer-Thin Wheel Manufacturing | Employee |
| Richard L. Sampson, Jr. | Attorney in private practice | Attorney |
| Tom Hamill | Patent Search Agent, National Patent Services | Agent |
| Brian Sullivan | Patent Draftsman PTI Service Co. | Agent |
| Giles Colas | President, Abrasives Branch, Saint-Gobain | Executive |
| Mark Mathisen | President, Norton Company | Executive |
| Jane Cercena | General Manager, Norton Company | Executive |
| Tom Kinisky | Research & Development Vice President, Abrasives Branch | Executive |
| Tim Feagans | Deputy General Counsel, Abrasives, North America | In-house Attorney |
| Suzanne Gendreau ; Donna Neylon ; Joyce Bellerose | Legal Assistant, Law Department, Saint-Gobain | Employee |