# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAINT-GOBAIN ABRASIVES, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION |
| | ) | NO. 05-40035-FDS |
| PFERD, INC., | ) | |
| Defendant. | ) | |

## ORDER
### June 8, 2006

**HILLMAN, M.J.**

<u>Nature of the Case</u>

Saint-Gobain Abrasives, Inc. ("Saint-Gobain" or "Plaintiff"), has filed a patent infringement claim against Pferd, Inc. ("Pferd" or "Defendant").

<u>Nature of the Proceeding</u>

On February 3, 2006, Pferd filed a Motion to Compel Discovery. By Order of Reference dated March 17, 2006, this matter has been referred to me for a ruling on the Motion Of Defendant Pferd, Inc. To Compel Discovery (Docket No. 18), to the extent that such motion seeks review and disclosure of documents designated Nos. 1-20, 45, 52-54, 95-104, 112-117 and 130 on Saint-Gobain Abrasives, Inc.'s privilege log.[1]

---

[1] That motion also sought further answers to interrogatories. However, only so much of the motion that seeks compulsion of document production was referred.

Background

Saint-Gobain has refused to produce the Designated Documents on the grounds that they are protected by the attorney-client privilege and/or the work product doctrine.  As part of its motion to compel, Pferd requested that Saint-Gobain submit the documents designated as Nos. 1-20, 45, 52-54, 95-104, 112-117 and 130 on its privilege log (the "Designated Documents") to the Court for *in camera* review.   Those documents were submitted for the courts review under seal  After an initial review of the pleadings and the documents in question I invited a further submission (see note 3, *infra*).

Discussion

The attorney-client privilege protects from disclosure any and all confidential "communications ... made by a client to an attorney for the purpose of obtaining legal advice or services".  In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed.Cir. 2000).  Saint-Gobain, as the party asserting that the Designated Documents are subject to the attorney-client privilege and/or work product doctrine, bears the burden of establishing that such documents may be withheld. Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 167 F.Supp.2d 108, 114-115 (D.Mass. 2001).  The fact that the communications may concern prior art or technical information does not vitiate the privilege "because requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art" Id., at 806.  Furthermore, "[c]onfidential communications made by personnel of the plaintiff corporation to patent counsel, or agent of patent counsel, if that agent is working at the direction of and under the supervision of patent counsel ... are protected under the attorney/client privilege if such confidential communications

were made for the purpose of securing legal (as opposed to business) advice concerning the preparation or prosecution of a patent application". Fromson v Anitec Printing Plates, Inc., 152 F.R.D. 2, 3 (D.Mass. 1993).

As to choice of law, "a district court sitting in a federal question case generally applies the privilege law of the regional circuit in which the court is located". Massachusetts Eye and Ear Infirmary, 167 F.Supp.2d at 114. However, the Federal Circuit, which has jurisdiction over district court appeals whose jurisdiction is based on 28 U.S.C. §1338, has held that where the determination of whether "materials are discoverable in a patent case ... relate to an issue of substantive patent law", the issue is governed by Federal Circuit law. Spalding, 203 F.3d at 803 (Federal Circuit privilege law applies for purposes of determining whether invention record submitted for patent evaluation is protected). Since First Circuit privilege law and Federal Circuit privilege law are consistent with respect to the issues before me, Id., at 114, it is not necessary for me to determine whether Federal Circuit privilege law or First Circuit privilege law applies with respect to any given document in this case.

Generally, the work product doctrine protects from discovery those materials prepared in anticipation of litigation.[2] A document is prepared in "anticipation of litigation" where "the primary motivating purpose underlying the preparation of [such document] was to aid in future litigation". Colonial Gas Co. v. Aetna Casualty and Surety Co., 144 F.R.D. 600, 605 (D.Mass. 1992)(emphasis supplied). Work product may consist of both: (1) material prepared for trial

---

[2] A party seeking documents which are subject to the work product doctrine may obtain discovery of the same "upon a showing that ... [such party] has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means". Fed.R.Civ.P. 26(b)(3). The only issue before me is whether Saint-Gobain has properly invoked the work product doctrine with respect to documents listed on its privilege log; that is, the question of whether Pferd can establish substantial need for any documents this Court finds subject to the work product doctrine remains open.

created by or for a party or its representative in anticipation of litigation, or (2) documents which contain the mental impressions, opinions, or litigation theories generated by or for a party or its representative concerning the litigation. See Fed.R.Civ.P. 26(b)(3).  "`[A]nticipation of litigation' requires both a reasonable anticipation of litigation as well as a causal connection between the work and the litigation. ... `[T]he lawyer must at least have a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable'". In re Polymedica Corp. Securities Litig., 235 F.R.D. 28, 30-31 (D.Mass. 2006).  As will be seen below, Saint-Gobain appears to have invoked the work product doctrine in an almost reflexive manner without any regard as to whether the anticipation of litigation requirement has been satisfied.

In addition to the motion to compel/opposition, I have reviewed the Designated Documents and Saint-Gobain's further explanation supporting its assertion that such documents are protected by the attorney-client privilege and/or the work product doctrine. See Letter to the Court, dated May 1, 2006 and the attached Declaration of Mary E. Porter, Esq. ("Porter Decl."). (Docket No. 46)[3].

---

[3]On April 20, 2006, I issued an Order (Docket No. 44), in which I informed Saint-Gobain that based on the information provided in its privilege log, I was having difficulty determining how a number of the documents were protected by the attorney-client privilege and/or work product doctrine.  The Order highlighted some specific areas of concern which I had with respect to certain categories of documents.  I then invited Saint-Gobain to file a supplemental submission, under seal, in which it could expand on its reasons for claiming that the Designated Documents are privileged.  In response, Saint-Gobain filed the aforementioned Letter and Porter Decl. (Saint-Gobain chose not to file the submission under seal).  While the Letter and Porter Decl. addressed some of the issues raised by my Order, Saint-Gobain chose to ignore those areas which I had indicated were causing me the greatest concern. For example, how documents created in or about 1996 could possibly have been considered prepared in anticipation of litigation and therefore, work product, or how letters sent to third-parties would be privileged.  Instead, Saint-Gobain gave me an additional discourse on the general law in this area and requested an opportunity to be heard if the Court had any additional questions relating to its privilege log.  In my April 20 Order, I gave Saint-Gobain an additional bite at the apple to which it probably was not entitled.  Based on what I would describe as its lack of meaningful response, I see no point in further delaying this matter by granting Saint-Gobain a further opportunity to attempt to justify its having designated as privileged those documents which I have found were improperly withheld.

Document Nos. 1-20

Saint-Gobain has asserted that Documents Nos. 1 and 3-19 are protected under the attorney-client privilege and work product doctrine, that Document No. 2 is protected as work product, and that Document No. 20 is protect under the attorney-client privilege.

I agree with Saint-Gobain that Document Nos. 1, 3, 6-19 are communications to and/or from counsel for the purpose of obtaining/giving legal advice and therefore, are protected under the attorney client privilege and need not be produced. [4]  I find that there is nothing to suggest that legal advice was either given or solicited in Document Nos. 4, 5 or 20.  While it is a close call, there is nothing on the face of Document No. 4 which would suggest that this document involved confidential communications concerning legal advice.  I am also not persuaded by Saint-Gobain's supplemental filing of May 1, 2006 that this Communication was to seek counsel's evaluation of the patent (see Porter Decl., at ¶10).  Therefore, I find that Document No. 4 is not protected by the attorney-client privilege.  As to Document No. 5, contrary to the assertion made in Paragraph 11 of the Porter Decl., Document No. 5 was clearly distributed in ordinary course of business and not for purposes of obtaining legal advice.  With respect to Document No. 20, simply put, there is no conceivable argument that Saint-Gobain can make which would justify claiming that Document No. 20 is protected by the attorney-client privilege.

In addition to invoking the attorney-client privilege, Saint-Gobain has claimed that Document Nos. 4 and 5 are protected as work product.  I will address that claim below.

---

[4] Saint-Gobain asserts that these documents are protected as work product.  For the reasons more fully described below in the body of this Order, I would find that none of these documents constitute work product as they were created well before the prospect of litigation.

However, since Saint-Gobain's only justification for withholding Document No. 20 is the attorney-client privilege (which I have found does not apply), Document 20 must be produced.

Saint-Gobain asserts that Document Nos. 2, 4 and 5 are protected as work product. It is clear from Saint-Gobain's own submissions, that the earliest date that can be claimed that litigation was anticipated was August 2000. See Porter Decl., at ¶12. There is simply no basis for Saint-Gobain to take the position that documents created or attorney's (or their representatives) opinions or mental impressions formed in or about 1996 were in "anticipation of litigation". In making this finding, I remind Saint-Gobain that while "litigation" may include adversarial proceedings before an administrative body, the mere filing of a patent application is a routine business matter and therefore, documents related thereto are not protected as work product. Cf. Pacific Gas And Electric Co. v. United States, 69 Fed. Cl. 784 (2006)(finding that only documents created for purposes of adversarial aspects of administrative proceedings are covered by work product; court relied, in part, on the following cases which hold that documents prepared for ex parte patent application proceeding before PTO are not work product: McCook Metals L.L.C. v. Alcoa, Inc., 192 F.R.D. 242 (N.D.Ill. 2000), Golden Trade, S.r.L v. Lee Apparel Co., No. Civ. 6291, 1992 WL 367070 at *4 (S.D.N.Y. Nov. 20, 1992) and In re Gabapentin Patent Litig., 214 F.R.D. 178 (D.N.J. 2003)).

For there reasons set forth above, I find that Document Nos. 2, 4, 5 and 20 were not prepared in anticipation of litigation and shall be produced.

Document Nos. 45 and 52-54.

Saint-Gobain asserts that Document Nos. 45, 52 and 53 are protected under the attorney-client privilege and work product doctrine and that Document No. 54 is protected under the

attorney-client privilege. I agree with Saint-Gobain that Document No. 45 is a confidential communication concerning legal advice and therefore, need not be disclosed. Document Nos. 52, 53 and 54 are letters sent to third parties; not only do they not concern legal advice, they are not confidential. While this Court is always willing to be educated and/or corrected, I am at a loss to understand any argument for their protection. Furthermore, I find that Saint-Gobain has not established that the "bcc" list is protected under the attorney-client privilege. Therefore, Document No. 54, to which only the attorney-client privilege is claimed, shall be disclosed.

I also find that documents 52 and 53 are not work product. First, Saint-Gobain has failed to establish that the communications were in anticipation of litigation. Second, even if the anticipation of litigation requirement were met, Saint-Gobain cannot claim work product protection as to letters sent to potential adversaries. Accord United States v. Massachusetts Institute of Technology, 129 F.3d 681 (1st Cir. 1997)(disclosure to adversary, real or potential, forfeits work product protection). Document Nos. 52-54 shall be disclosed.

### Document Nos. 95-104

Saint-Gobain asserts the attorney-client privilege and work product doctrine for Document Nos. 98-104, the attorney-client privilege as to Document No. 95 and the work product doctrine as to Document Nos. 96-97. Document No. 95 is a list of bcc's. Saint-Gobain has failed to establish that this document is a communication concerning legal advice. It shall be disclosed. I agree with Saint-Gobain that Document Nos. 100-104 are protected by the attorney-client privilege.[5] However, there is nothing in the record before to support a finding that

---

[5]Despite the dates on these documents, I find that they were not prepared in anticipation of litigation and therefore, they are not work product. I so find because the content of the documents make clear that they were created years earlier than they are dated (the documents appear to have been created around the time that the patent application was originally filed). In fact, Document No. 17 is identical to Document No. 101, except that Document

Document No. 98 was a confidential communication or that it involved the giving/receiving of legal advice.  Document No. 99 appears to be a business letter and does not involve the giving/receiving of legal advice.  Therefore, Document Nos. 98 and 99 are not protected by the attorney-client privilege.

Saint-Gobain asserts that Document Nos. 96-99 are work product.  I disagree.  There is nothing in the documents themselves or their context, nor anything submitted by Saint-Gobain which suggests that any of these documents were created/disseminated in anticipation of litigation.  Some of them clearly appear to be materials sent/received in the ordinary course of business.  Therefore, Document Nos. 96-99 shall be disclosed.

### Document Nos. 112-117 and 130

Saint-Gobain asserts that Document Nos. 112-114, 116 and 130 are protected under the attorney-client privilege and as work product and that Document Nos. 115 and 117 are protected as work product.  I agree with Saint-Gobain that Document Nos. 112-114, 116 and 130 are protected under the attorney client-privilege.[6]

Saint-Gobain asserts that Document Nos. 115 and 117 are work product.  However, it is clear that neither of these documents was created in anticipation of litigation.  In fact, Document

---

No. 17 is signed and dated years earlier.  Furthermore, Document No. 102 is substantially identical to Document No. 13, except that Document No. 13 is signed and dated years earlier.  I assume that some of these documents had been archived, that copies were printed out for purposes of this litigation and that the date of the documents automatically changed when opened.  In other words, the only logical explanation is that the dates on Document Nos. 101, 102 and 104 reflect a date on which they were accessed and printed, not the date they were created.

[6]Saint-Gobain had no basis for claiming that these documents were work product; it is clear that they were not prepared in anticipation of litigation.  Furthermore, like Document Nos. 101, 102 and 103, Document No. 116 appears to have been created years earlier than the cover page was dated. See note 5, *supra*.  Therefore, I find that such documents are not work product.

No. 117 is dated December 1996, years prior to any potential law suit.  Documents No. 115 and 117 must be disclosed.

Having reviewed Saint-Gobain's privilege log, I am compelled to remind Saint-Gobain that it must have a reasonable basis for claiming otherwise discoverable documents are shielded from disclosure under the attorney-client privilege/work product doctrine.  As to most of the documents I have ordered disclosed, I do not believe that there was any legitimate argument for claiming that such documents were protected under the attorney-client privilege/work product doctrine.

Conclusion

The Motion Of Defendant Pferd, Inc. To Compel Discovery (Docket No. 18), to the extent that such motion seeks review and disclosure of documents designated Nos. 1-20, 45, 52-54, 95-104, 112-117 and 130 on Saint-Gobain Abrasives, Inc.'s privilege log, is <u>allowed</u> as to Document Nos. 2, 4, 5, 20, 52-54, 95, 96, 97, 98,99, 115 and 117.  These documents shall be disclosed to Pferd on or before June 16, 1006.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE